IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| STATE OF TEXAS | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| vs. | ) Case No. _____ |
| | ) |
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION and | ) |
| | ) |
| JACQUELINE A. BERRIEN, in her official capacity as Chair of the Equal Opportunity Commission, | ) |
| | ) |
| *Defendants.* | ) |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1.   The State of Texas seeks declaratory and injunctive relief against the Equal Employment Opportunity Commission ("EEOC") and its recently promulgated "enforcement guidance." *See* EEOC, Consideration of Arrest and Conviction Records in Employment Decisions Under Title VII of the Civil Rights Act of 1964, No. 915.002 (Apr. 25, 2012) ("Enforcement Guidance," attached hereto as Ex. A). EEOC's Enforcement Guidance purports to limit the prerogative of employers, including Texas, to exclude convicted felons from employment. Texas brings this suit under section 10(a) of the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202. The State of Texas and its constituent agencies have the sovereign right to impose categorical bans on the hiring of criminals, and the EEOC has no authority to say otherwise.

## I. THE PARTIES

2. The Plaintiff is the State of Texas. Through its constituent agencies, the State employs hundreds of thousands of people.

3. The Defendants are the EEOC, a federal law-enforcement agency, as well as Jacqueline A. Berrien, the Chair of EEOC, who is sued in her official capacity. The EEOC is empowered to bring civil enforcement actions against employers for violating Title VII of the Civil Rights Act of 1964 ("Title VII"). *See* 42 U.S.C. § 2000e-6. The EEOC also may issue "right-to-sue" letters that allow private individuals to sue their employers for violating EEOC's interpretation of Title VII. *See id.* § 2000e-5(f).

## II. JURISDICTION AND VENUE

4. The Court has federal-question jurisdiction under 28 U.S.C. § 1331 because this suit concerns the scope of EEOC's authority under Title VII, and it also arises under the APA. The Court also has jurisdiction under 28 U.S.C. § 1346 because the EEOC is an agency of the United States. Finally, the Court has jurisdiction to compel an officer or employee of the EEOC to perform his or her duty under 28 U.S.C. § 1361.

5. Venue is proper in this District under 28 U.S.C. § 1391(e) because the State is a resident of this District, the State and its constituent agencies have employees in this District, and a substantial part of the events or omissions giving rise to the State's claim against EEOC's unlawful agency action occurred in this District.

6.  This Court is authorized to award the requested declaratory and injunctive relief under the APA, the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, and 28 U.S.C. § 1361.

### III.  FACTUAL ALLEGATIONS

#### A.  The EEOC and its Enforcement Guidance

7.  Congress has denied EEOC the authority to promulgate substantive rules interpreting Title VII. *General Electric Co. v. Gilbert*, 429 U.S. 125, 140–46 (1976). EEOC has authority to issue only "procedural regulations" to carry out the provisions of Title VII. *See* 42 U.S.C. § 2000e-12(a).

8.  On April 25, 2012, EEOC's Commissioners adopted, by a 4 to 1 vote, a document purporting to offer "enforcement guidance" for employers' use of arrest or conviction records. *See* Ex. A. That document directs employers to conform their hiring practices to EEOC's "guidance"; it directs individuals to file charges of discrimination for alleged violations of EEOC's "guidance"; and it directs EEOC staff to bring the full weight of the United States' enforcement authority to bear on those employers who might disobey the Commission's "guidance." In particular: "The Commission intends this document for use by employers considering the use of criminal records in their selection and retention processes; by individuals who suspect that they have been denied jobs or promotions, or have been discharged because of their criminal records; and by EEOC staff who are investigating

3

discrimination charges involving the use of criminal records in employment decisions." *Id.* at 3.

9. The Enforcement Guidance reflects EEOC's substantive interpretation of Title VII. In EEOC's view, hiring policies or practices that categorically exclude all convicted felons create an unlawful "disparate impact" under Title VII, and the statute instead mandates that all employers conduct "individualized assessments" of convicted felons' job applications. *Id.* at 9, 18–20. If an employer refuses to hire a convicted felon, it is the employer's burden to prove that the felony disqualification is "job related for the position in question and consistent with business necessity." *Id.* at 8; *see also id.* at 13–14 (urging employers not to "ask about convictions on job applications"). The Enforcement Guidance warns that EEOC will investigate and challenge employers who use felony convictions as "an absolute bar to employment." *Id.* at 11 n.90. And it further cautions that "[a]n employer's evidence of a racially balanced workforce will not be enough to disprove disparate impact." *Id.* at 10.

10. The Enforcement Guidance also instructs employers, including the State of Texas, to ignore state and local laws that disqualify convicted felons from holding certain jobs, to the extent those state and local laws conflict with EEOC's interpretation of Title VII. *See id.* at 24 ("States and local jurisdictions also have laws and/or regulations that restrict or prohibit the employment of individuals with records of certain criminal conduct. . . .

4

Unlike federal laws or regulations, however, state and local laws or regulations are preempted by Title VII.").

11.  EEOC already has launched hundreds of investigations against employers who, in EEOC's estimation, are insufficiently solicitous of convicted felons who want jobs.

12.  For example, EEOC is prosecuting G4S Secure Solutions (USA), Inc. ("G4S"), a private security company that provides security guards for government buildings, nuclear power plants, and other secure installations. When G4S explained that Pennsylvania law prohibited the company from hiring felons to work as security officers, the EEOC claimed that state law was preempted, argued that such categorical bans violate Title VII, and demanded that the company justify the "business necessity" of every criminal background check that it performed over a period of decades.

13.  On June 11, 2013, EEOC used its Enforcement Guidance to sue the national discount retailer Dollar General. *See* Compl., *EEOC v. Dolgencorp LLC d/b/a Dollar General*, Case No. 1:13-cv-4307 (N.D. Ill.). EEOC brought suit on behalf of 8,400 employees who were denied employment on account of their felony convictions. *Id*. at 4. For example, EEOC's lead plaintiff was denied employment as a "Stocker/Cashier" because her criminal-background check revealed two drug-related convictions. *Id*. at 5. In EEOC's view, however, Dollar General failed to carry its burden to prove that it had a "business necessity" not to hire twice-convicted drug

abusers to handle the company's money, serve the company's customers, and manage the company's assets. *Id.*

14.  Also on June 11, 2013, EEOC used its Enforcement Guidance to sue the carmaker BMW. *See* Compl., *EEOC v. BMW Manufacturing Co.*, Case No. 7:13-cv-01583 (D.S.C.).  EEOC sued on behalf of felons who were fired from their jobs at a BMW manufacturing facility. *Id.* at 2. BMW fired those employees because they had been convicted of various crimes including murder, rape, and other offenses involving "theft, dishonesty, and moral turpitude." *Id.* at 5 (internal quotation marks omitted). In EEOC's view, however, BMW failed to carry its burden to prove that it had a "business necessity" not to hire violent felons and convicted thieves to work in a warehouse with millions of dollars' worth of luxury automobiles. *Id.* at 7.

15.  The targets of these investigations and prosecutions have been subjected to sanctionable litigation tactics. For example, EEOC brought a disparate-impact lawsuit against a temporary staffing company named Peoplemark because it refused to hire a woman named Sherri Scott after her criminal-background check disclosed that she was "a two-time felon with convictions for housebreaking and larceny." Order, *EEOC v. Peoplemark, Inc.*, Case No. 1:08-cv-907 (W.D. Mich. Mar. 31, 2011). In an attempt to prove that Peoplemark's hiring policy created a disparate impact, EEOC conducted a three-year investigation of the company and subpoenaed 18,000 pages of corporate documents. Its investigation uncovered nothing, and

6

Peoplemark's decision not to hire Sherri Scott proved prudent when she went back to prison in the middle of EEOC's investigation for a *third* felony conviction (this one for felonious assault). *Id*. at 6 n.2. EEOC nonetheless continued to litigate against Peoplemark in an effort to harass the company and to "drive up [Peoplemark's] costs." *Id*. at 9. The United States District Court for the Western District of Michigan sanctioned EEOC by dismissing its complaint with prejudice, awarding Peoplemark over $750,000 in fees and costs, and concluding that EEOC's conduct "falls between frivolous and insulting." *Id*. at 3, 21 n.8, 22.

16. Similarly, EEOC sued a trade-show-and-convention company called Freeman for refusing to hire felons. In the course of that lawsuit, EEOC committed numerous discovery violations. Only after forcing Freeman to file a 222-page motion to compel did EEOC finally abandon its recalcitrance. Even then, however, the Commission did not abandon its abusive litigation tactics. EEOC retaliated by imposing overbroad discovery demands on Freeman, which the United States District Court of the District of Maryland eventually disallowed—but only after Freeman was forced to spend substantial time and money in a discovery dispute occasioned by EEOC's attempts to force the company to hire felons.

17. The soda company Pepsi Beverages avoided EEOC's abusive litigation tactics, but did so only by caving to the Commission's demands. EEOC accused Pepsi of creating an unlawful "disparate impact" by refusing

to hire approximately 300 individuals with criminal backgrounds. In January 2012, EEOC forced Pepsi to avoid that unintentional disparate impact by committing intentional racial discrimination and hiring those 300 convicted criminals.

### B.   The State and its Employees

18.   The State of Texas employs hundreds of thousands of people. For many state jobs, state law and longstanding hiring policies impose absolute bans on hiring convicted felons (or in some instances persons convicted of certain categories of felonies). These absolute exclusions do not allow the sort of "individualized assessments" that EEOC's Enforcement Guidance purports to require. *Cf.* Ex. A, at 18–20.

19.   For example, the Texas Department of Public Safety ("DPS") is a state agency. It employs hundreds of Texas State Troopers and other law enforcement officers throughout the State, including in this District. Under Texas law, "[a] person who has been convicted of a felony is disqualified to be an officer" for any law-enforcement agency anywhere in the State. TEX. OCC. CODE § 1701.312(a). And DPS refuses to hire anyone convicted of any felony or certain misdemeanors. *See* DPS, Employment/Career Opportunities, http://agency.governmentjobs.com/txdps/default.cfm ("Background investigations, including criminal history record checks, are conducted on all prospective employees. Felony convictions and certain misdemeanor convictions will be

cause for immediate rejection."); DPS, Disqualifiers, http://www.txdps.state.tx.us/trainingacademy/recruiting/disqualifiers.htm.

20.     The Texas Department of Aging and Disability Services ("DADS") is a state agency. It administers various programs and facilities for the benefit of elderly and disabled individuals throughout the State, including in this District. DADS "applies absolute criminal bars to employment." DADS, Bars to Employment with DADS, http://www.dads.state.tx.us/hiringbars/index.html. The "bars" imposed by DADS include a long and wide-ranging list of disqualifying felonies statutorily specified by the Texas Legislature and others specified by the agency. *See id.*

21.     The Texas General Land Office ("GLO") is a state agency. It administers public lands and oversees various veterans' affairs throughout the State, including in this District. "[T]o prudently manage its workforce," GLO imposes criminal-background checks on "all job applicants selected for hire and all volunteer workers, regardless of their positions." GLO, Legislative Appropriations Request FY 2014–2015, at 11–12 (Aug. 23, 2012), http://www.glo.texas.gov/GLO/_documents/administration/LAR-2014-2015.pdf. And to protect the brave veterans who live in GLO-administered Texas State Veterans Homes, the Texas Legislature has imposed absolute bans on employing certain convicted felons who otherwise might want to work in those facilities. *See* TEX. HEALTH & SAFETY CODE ch. 250.

9

22. The Texas Juvenile Justice Department ("JJD") is a state agency. It administers correctional programs and institutions for juveniles throughout the State, including in this District. JJD applies absolute bars to employment for any applicant convicted of or arrested for certain felonies, "[r]egardless of the nature of the position." JJD Personnel Policy and Procedure Manual, Background Checks, at d.2.B.ii, http://www.tjjd.texas.gov/policies/prs/prs05/prs0513.html. And it imposes even more sweeping absolute bars to employment for criminals who want to work in "correctional series positions." *Id.* at d.2.B.iii.

23. The Texas Lottery Commission ("TLC") is a state agency. It administers Texas's statewide lottery system throughout the State, including in this District. TLC imposes an absolute bar to hiring anyone convicted of any felony or certain other designated offenses within the last ten years.

24. The Parks and Wildlife Department ("PWD") is a state agency. It administers numerous parks and wildlife programs and employs game wardens throughout the State, including in this District. Under Texas law, the approximately 500 game wardens employed by PWD are "peace officers," and as such, they fall under the same absolute no-felons policy that applies to other law-enforcement officers throughout the State. *See* 31 TEX. ADMIN. CODE § 55.802(1); TEX. OCC. CODE §§ 1701.001(3)–(4), 1701.312(a); TEX. PARKS & WILDLIFE CODE § 11.019. PWD imposes an absolute ban on hiring any game warden who ever has been convicted of a felony or Class A

misdemeanor. PWD, Requirements for Game Warden, http://www.tpwd. state.tx.us/warden/career_opportunities/requirements.phtml. PWD also imposes absolute prohibitions on game-warden applicants who have been convicted of certain lesser offenses. *Id*.

25. In addition, the Texas Legislature prohibits school districts from hiring anyone convicted of certain felonies. *See* TEX. EDUC. CODE § 22.085. And many local school districts throughout the State maintain an absolute exclusion on hiring convicted felons to teach or coach their students. For example, the Austin Independent School District imposes an absolute ban on hiring anyone convicted of any felony at any point in the past. *See* Austin ISD, Board Policy Manual, Personnel-Employment Practices, http://pol.tasb. org/Policy/ Code/1146?filter=DC.

### C. Effect of the EEOC's Enforcement Guidance on the State and its Employees

26. The EEOC's Enforcement Guidance has a direct and immediate impact on the day-to-day business of the State, its agencies, and its political subdivisions. EEOC has propounded a substantive interpretation of Title VII that purports to preempt the State's sovereign power to enact and abide by state-law hiring practices. The State either must violate state and local laws that prohibit the "individualized assessments" that EEOC requires and consider convicted felons for hire as Troopers, jailers, and school teachers—or the State must ignore the EEOC's enforcement guidance and risk an EEOC enforcement action like the ones the Commission launched against

11

Peoplemark and Freeman. *See* Enforcement Guidance at 1 ("The national data provide[] a basis for the Commission to further investigate such Title VII disparate impact charges."); ¶¶ 15–16, *supra*.

27. If state agencies choose to comply with the EEOC's interpretation, they not only violate state law, but also must rewrite their hiring policies at taxpayer expense. And these state entities also must begin evaluating and hiring felons to serve in law enforcement, teach in local elementary schools, nurse veterans and the disabled, counsel juvenile detainees, and coach little league. This would expose the entire State—including, in particular, its most vulnerable citizens—to a class of individuals who have a proven track record of disobeying the law. And it could expose state entities to liability for employee misconduct. *See City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395 (5th Cir. 1996) ("Common sense recommends—and state law demands—that, in the interest of the safety of school children, school officials investigate the criminal histories of prospective school employees. The School Officials' total abdication of this responsibility constitutes a facially inadequate hiring process. . . . [T]he hiring inadequacies alleged here reveal a deliberate indifference to Doe's welfare."), *rev'd en banc*, 113 F.3d 1412 (5th Cir. 1997); *Kitzman-Kelley v. Warner*, 203 F.3d 454, 456 (7th Cir. 2000) (Illinois Department of Children and Family Services can be liable under 42 U.S.C. § 1983 where it "did nothing to investigate [an abusive caretaker's]

background"). As the President of the National Small Business Association recently stated, "State and federal courts will allow potentially devastating tort lawsuits against businesses that hire felons who commit crimes at the workplace or in customers' homes. Yet the EEOC is threatening to launch lawsuits if they do not hire those same felons."

28.   But adhering to state law also is a perilous and costly option. Noncompliance with EEOC's interpretation could trigger an EEOC investigation or challenge, exposing the State to class-like liability. Indeed, EEOC has publicly adopted a strategy of prosecuting high-profile cases against major employers to attract attention from the media. *See* EEOC, Performance and Accountability Report (2011) ("[T]he quantity of systemic lawsuits and their representation on the total docket is expected to continue to steadily increase."). And it has a proven track record of abusive litigation tactics. *See* ¶¶ 11–17, *supra*. An EEOC challenge of this nature would do lasting and unwarranted damage to the State's reputation as an equal-opportunity employer, undermining its efforts to recruit and retain employees of all races.

13

## IV.  CLAIMS FOR RELIEF

### COUNT ONE

**Declaratory Judgment And Injunction Under 28 U.S.C. §§ 2201–2202 That The State's No-Felons Policies Do Not Constitute "Unlawful Employment Practices"**

29.    The allegations in paragraphs 1–28 are reincorporated herein.

30.    Texas law and policy impose numerous categorical exclusions on the State's ability to hire convicted felons.  Those categorical exclusions prohibit the State, its agencies, and its officials from conducting "individualized assessments" of convicted felons' job applications.

31.    EEOC's Enforcement Guidance purports to interpret Title VII to preempt Texas's law and policy by requiring the "individualized assessments" that state law and policy do not allow.

32.    Sections 2201 and 2202 of title 28, United States Code, authorize this Court to "declare the rights and other legal relations of any interested party" in cases within its jurisdiction, as well as to issue "[f]urther necessary or proper relief" based on that declaratory judgment.  The State of Texas qualifies for declaratory and injunctive relief under 28 U.S.C. §§ 2201–2202 because EEOC's Enforcement Guidance purports to preempt state law and forces state entities and officials to choose between evaluating and hiring convicted felons in defiance of state law or risking investigations, challenges, and lawsuits from EEOC.

33.    This injury is more than sufficient for Article III standing and brings the case within the subject-matter jurisdiction of this Court.  *See, e.g.*,

14

*Illinois Dep't of Transp. v. Hinson*, 122 F.3d 370, 372 (7th Cir. 1997) (State has standing where it "complains that a federal regulation will preempt one of the state's laws"); *Alaska v. United States Dep't of Transp.*, 868 F.2d 441, 443 (D.C. Cir. 1989) (agreeing that the State has standing to seek declaratory and injunctive relief "because DOT claims that its rules preempt state consumer protection statutes, [and therefore] the States have suffered injury to their sovereign power to enforce state law"); *cf. Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 607–08 (1982) (stating, in the context of state standing in *parens patriae* actions, that States have an "interest in securing observance of the terms under which it participates in the federal system").

34. The State of Texas respectfully requests a declaration of its right to maintain and enforce its laws and policies that absolutely bar convicted felons (or certain categories of convicted felons) from serving as police officers, youth-correction officers, state-supported-living-center employees, GLO employees, lottery officials, game wardens, school teachers, and any other job the State and its Legislature deem appropriate. Such absolute bars do not constitute "unlawful employment practices" under 42 U.S.C. § 2000e-2(k)(1)(A).

35. The State also seeks a declaration and injunction that Ms. Berrien and her successors cannot enforce the interpretation of Title VII that appears in its Enforcement Guidance, nor can Ms. Berrien or any other EEOC official issue right-to-sue letters pursuant to that interpretation.

15

## COUNT TWO

**Declaratory Judgment Under 28 U.S.C. § 706 That EEOC's Enforcement Guidance Is Unlawful**

36.    The allegations in paragraphs 1–35 are reincorporated herein.

37.    EEOC's Enforcement Guidance constitutes "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court."  5 U.S.C. § 704.

38.    Section 702 of title 5, United States Code, authorizes any person "adversely affected or aggrieved by agency action" to seek judicial relief against that agency, and Section 706 instructs this Court to "hold unlawful and set aside" agency action "in excess of statutory jurisdiction, authority, or limitations," 5 U.S.C. § 706(2)(C).

39.    The State of Texas respectfully asks this Court to hold unlawful and set aside EEOC's Enforcement Guidance, on the ground that EEOC has exceeded its statutory authority.  *See, e.g.*, *American Fed'n of Gov't Emps., AFL-CIO, Local 3669 v. Shinseki,* 709 F.3d 29 (D.C. Cir. 2013); *Emily's List v. Federal Election Comm'n*, 581 F.3d 1 (D.C. Cir. 2009); *Financial Planning Ass'n v. SEC*, 482 F.3d 481 (D.C. Cir. 2007); *Aid Ass'n for Lutherans v. U.S. Postal Serv.*, 321 F.3d 1166 (D.C. Cir. 2003); *Michigan v. EPA*, 268 F.3d 1075 (D.C. Cir. 2001).  Congress withheld rulemaking authority from the EEOC, yet the agency has unlawfully circumvented those limits on its power by announcing a substantive interpretation of Title VII, backed by the credible threat of civil prosecution and the issuance of right-to-sue letters.

16

40. And even if EEOC had been given rulemaking authority by Congress, promulgation of the enforcement guidance constitutes "rule making" within the meaning of APA, 5 U.S.C. § 551(5), and would be required to comply with the notice-and-comment procedures of 5 U.S.C. § 553. EEOC did not comply with those procedures, and its unlawful Enforcement Guidance should be set aside under 5 U.S.C. § 706(2)(C).

### COUNT THREE

**Declaratory Judgment Under 28 U.S.C. §§ 2201–2202 That EEOC's Interpretation Of Title VII Cannot Abrogate State Sovereign Immunity**

41. The allegations in paragraphs 1–40 are reincorporated herein.

42. Texas is entitled to a declaratory judgment that disparate impact liability under Title VII represents an impermissible exercise of Congress's enforcement powers under the Fourteenth Amendment. *See Coleman v. Court of Appeals of Maryland*, 132 S. Ct. 1327, 1337 (2012) (opinion of Kennedy, J.); *id.* at 1338-39 (Scalia, J., concurring in the judgment); *Erickson v. Bd. of Governors*, 207 F.3d 945, 952 (7th Cir. 2000) (Easterbrook, J.). The Equal Protection Clause of the Fourteenth Amendment prohibits discrimination on account of race, but it does not forbid facially neutral State action with a disparate impact on race. *Washington v. Davis*, 426 U.S. 229 (1976). Because the disparate-impact theory set forth in EEOC's Enforcement Guidance goes far beyond the Fourteenth Amendment's limits on State power, it cannot provide a basis for state liability. *See Kimel*

17

*v. Florida Bd. of Regents*, 528 U.S. 62 (2000); *Board of Trustees of the Univ. of Alabama v. Garrett*, 531 U.S. 356 (2001).

43. Texas is further entitled to a declaration and injunction that EEOC cannot issue "right to sue" letters to persons seeking to sue state officials or agencies based on the interpretation of Title VII set forth in EEOC's Enforcement Guidance.

### V. DEMAND FOR JUDGMENT

Plaintiff respectfully requests the following relief from the Court:

A. A declaratory judgment that the State of Texas and its constituent agencies and its officials are entitled to maintain and enforce laws and policies that absolutely bar convicted felons, or a certain category of convicted felons, from government employment, and that the State need not conduct the "individualized assessments" that EEOC purports to require.

B. A declaratory judgment holding unlawful and setting aside EEOC's Enforcement Guidance.

C. A declaration and injunction that EEOC may not issue right-to-sue letters to persons seeking to sue the State of Texas or any of its constituent agencies or state officials based on the interpretation of Title VII that appears in the Enforcement Guidance.

    D.    All other relief to which the State of Texas may show itself to be entitled.

        Respectfully submitted.

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

/s/  Jonathan F. Mitchell
JONATHAN F. MITCHELL
Solicitor General

ANDREW S. OLDHAM
Deputy Solicitor General

ARTHUR C. D'ANDREA
RICHARD B. FARRER
DUSTIN M. HOWELL
Assistant Solicitors General

209 West 14th Street
P.O. Box 12548
Austin, Texas 70711-2548
(512) 936-1700


Dated:  November 4, 2013