IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 5:13-CV-00255-C |
| | ) | ECF |
| EQUAL EMPLOYMENT | ) | |
| OPPORTUNITY COMMISSION, *et al.*, | ) | |
| | ) | |
| Defendants | ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................... 1

BACKGROUND ........................................................................................................ 2

ARGUMENT .............................................................................................................. 6

    I.    The Court Lacks Jurisdiction Over Counts I and II Because the Guidance Lacks Legal Effect ............................................................................. 6

    II.    Plaintiff Lacks Standing to Bring This Suit ...................................................... 10

    III.    None of Plaintiff's Claims Is Ripe ................................................................... 13

        A.    Count I is Unripe Because It Requires the Court to Resolve Factual Issues that Could Not Be Resolved in This Case ........................................ 14

        B.    Count III is Unripe Because It Depends on Contingencies That May Not Occur and Withholding Review Will Not Cause Any Hardship ............ 18

CONCLUSION ........................................................................................................ 22

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Abbott Labs. v. Gardner*,
  387 U.S. 136 (1967)......................................................................................... 13

*Am. Tort Reform Ass'n v. Occupational Health & Safety Admin.*,
  738 F.3d 387 (D.C. Cir. 2013) ............................................................................ 9

*AT&T v. EEOC*,
  270 F.3d 973 (D.C. Cir. 2001) ................................................................... 7, 9, 10

*Bennett v. Spear*,
  520 U.S. 154 (1997).......................................................................................... 7

*Caddell v. United States*,
  2003 WL 1107200 (5th Cir. 2003) ..................................................................... 4

*Choice Inc. of Texas v. Greenstein*,
  691 F.3d 710 (5th Cir. 2012) ............................................................................ 21

*Clapper v. Amnesty Int'l*,
  133 S. Ct. 1138 (2013)............................................................................... 10, 12

*Ctr. for Auto Safety v. Nat'l Highway Transp. Safety. Admin.*,
  452 F.3d 798 (D.C. Cir. 2006) ........................................................................... 8

*Davis v. Federal Election Com'n*,
  554 U.S. 724 (2008)......................................................................................... 12

*El v. Southeastern Penn. Transp. Auth.*,
  479 F.3d 232 (3d Cir. 2007)............................................................................. 16

*Erickson v. Bd. of Governors of State Colleges and Univs. for Ne Ill. Univ.*,
  207 F.3d 945 (7th Cir. 2000) ...................................................................... 20, 21

*Fairbanks North Star Borough v. U.S. Army Corps. of Engineers*,
  543 F.3d 586 (9th Cir. 2008) ............................................................................. 8

*Fellner v. Tri-Union Seafoods, LLC*,
  539 F.3d 237 (3d Cir. 2008)............................................................................. 11

*Funk v. Stryker Corp.*,
  631 F.3d 777 (5th Cir. 2011) ............................................................................. 3

*Green v. Mo. Pac. R.R.*,
  549 F.2d 1158 (8th Cir. 1977) .................................................................... 16, 18

*Guess v. Bethlehem Steel Corp.*,
  913 F.2d 463 (7th Cir. 1990) ............................................................................. 9

*Hawk Aircargo, Inc. v. Chao*,
  418 F.3d 453 (5th Cir. 2005) ............................................................................. 3

*Heckler v. Chaney*,
  470 U.S. 821 (1985)......................................................................................... 10

*Hill v. Mississippi State Employment Service*,
918 F.2d 1233 (5th Cir. 1990) ............................................................. 15

*Howlett v. Rose*,
496 U.S. 356 (1990) ............................................................................ 20

*IBEW v. Miss. Power & Light Co.*,
442 F.3d 313 (5th Cir.2006) ................................................................ 17

*In re Union Pacific R.R. Employment Practices Litig.*,
479 F.3d 936 (8th Cir. 2007) ............................................................... 9

*Lopez v. City of Houston*,
617 F.3d 336 (5th Cir. 2010) ......................................................... 14, 21

*Lyng v. NW Indian Cemetery Protective Ass'n*,
485 U.S. 439 (1988) ............................................................................ 21

*McMenemy v. City of Rochester*,
241 F.3d 279 (2d Cir. 2001) ................................................................. 9

*Municipal Ass'n of South Carolina v. Service Ins. Co., Inc.*,
786 F. Supp. 2d 1031 (D.S.C. 2011) ................................................... 11

*N.A.A.C.P. v. North Hudson Regional Fire & Rescue*,
665 F.3d 464 (3d Cir. 2011) ............................................................... 17

*National Park Hospitality Ass'n v. Department of Interior*,
538 U.S. 803 (2003) ............................................................................ 21

*Nat'l Ass'n of Home Builders v. U.S. Army Corps of Engineers*,
417 F.3d 1272 (D.C. Cir. 2005) ............................................................ 7

*Nat'l Pork Producers Council v. EPA*,
635 F.3d 738 (5th Cir. 2011) ............................................................... 8

*Nat'l Treasury Employees Union v. United States*,
101 F.3d 1423 (D.C. Cir. 1996) .......................................................... 14

*Ohio Forestry Ass'n v. Sierra Club*,
523 U.S. 726 (1998) ............................................................................ 20

*Opulent Life Church v. City of Holly Springs, Miss.*,
697 F.3d 279 (5th Cir. 2012) ............................................................... 13

*Orix v. Credit Alliance, Inc.*,
212 F.3d 891 (5th Cir. 2000) ............................................................... 20

*Pacheco v. Mineta*,
448 F.3d 783 (5th Cir. 2006) ............................................................... 16

*Peoples Nat'l Bank v. Office of Comptroller of Currency of U.S.*,
362 F.3d 333 (5th Cir. 2004) ................................................................. 7

*Perez v. Region 20 Educ. Service Center*,
307 F.3d 318 (5th Cir. 2002) ............................................................... 20

*Pietras v. Board of Fire Com'rs of Farmingville Fire Dist.*,
   180 F.3d 468 (2d Cir. 1999) ........................................................................ 13

*Shell Offshore, Inc. v. Babbitt*,
   238 F.3d 622 (5th Cir. 2001) ......................................................................... 7

*Stapper v. Texas Dep't of Human Resources*,
   470 F. Supp. 242 (W.D. Tex. 1979) ............................................................ 13

*Steele v. Thiokol*,
   241 F.3d 1248 (10th Cir. 2001) ..................................................................... 9

*Texas Office of Public Utility Counsel v. F.C.C.*,
   183 F.3d 393 (5th Cir. 1999) ....................................................................... 14

*Texas v. United States*,
   497 F.3d 491 (5th Cir. 2007) ....................................................................... 20

*Texas v. United States*,
   523 U.S. 296 (1998) ................................................................. 13, 14, 17, 19

*Waldon v. Cincinnati Pub. Sch.*,
   941 F. Supp. 2d 884 (S.D. Ohio 2013) ................................................... 16, 18

*Wards Cove Packing Co., Inc. v. Atonio*,
   490 U.S. 642 (1989) ............................................................................. 15, 16, 17

*West Virginia v. United States*,
   479 U.S. 305 (1987) ........................................................................... 11, 19, 21

**Federal Statutes**

5 U.S.C. § 701 et seq., ...................................................................................... 1

5 U.S.C. § 704 ................................................................................................... 6

42 U.S.C. § 2000e et. seq. .............................................................................. 1

42 U.S.C. § 2000e-2 .......................................................................... 8, 16, 17

42 U.S.C. § 2000e-5 ...................................................................... 4, 5, 7, 10

42 U.S.C. § 2000e-7 ................................................................................. 4, 11

**State Statutes**

Texas Health and Safety Code § 365.016 .............................................. 17, 18

Texas Labor Code § 21.002(a) .................................................................... 20

Texas Labor Code § 21.122 ......................................................................... 20

Texas Labor Code § 21.254 ......................................................................... 20

Texas Occupations Code § 205.401(c) ...................................................... 16

Texas Occupations Code § 1701.32 .............................................................. 5

**Federal Rules**

Federal Rule of Civil Procedure 12(b)(1) ........................................ 1, 3, 6, 22

## INTRODUCTION

They say timing is everything.   And in this case, timing – or the lack of it – explains many of the threshold problems with the State of Texas' lawsuit against the Equal Employment Opportunity Commission (EEOC).   These threshold problems justify dismissal of plaintiff's suit under Federal Rule of Civil Procedure 12(b)(1).

Plaintiff's suit focuses on a challenge to EEOC enforcement guidance.   Compl., Nov. 4, 2013, Doc. No. 1; Appendix (App'x) at 1-55 (EEOC, Consideration of Arrest and Conviction Records in Employment Decisions Under Title VII (EEOC Guidance), No. 915.002 (April 25, 2012) (attached to Complaint as Ex. A)).   The EEOC Guidance, among other things, sets out the EEOC's views of the application of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.*, to employment practices that exclude applicants from consideration for employment based on their histories of criminal convictions.   Notably, the core of the EEOC's views on this issue has not changed for a quarter of a century.

Plaintiff uses a variety of practices, depending on the arm of the state and job, that exclude an individual from employment based on his or her felony-conviction history.   It has apparently used at least some of these practices for years.   Now, plaintiff seeks a declaratory judgment under the Administrative Procedure Act (APA), 5 U.S.C. §§ 701 *et seq.*, blessing its practices and scuttling the EEOC Guidance.   *See* Compl. ¶¶ 29-40.   More ambitiously, plaintiff seeks a declaration that Title VII is unconstitutional, at least to the extent it makes states susceptible to disparate-impact claims brought by individual litigants.   *Id.* ¶¶ 41-43

But as noted in the opening lines of this memorandum, the timing of plaintiff's claims is far from impeccable, and these timing issues – as well as other shortcomings in the complaint – justify dismissal of the complaint for lack of subject matter jurisdiction.   First, the Court lacks

jurisdiction to review the EEOC Guidance (Counts I and II) because the APA limits courts to reviewing final agency actions, and the EEOC has not taken a final agency action with respect to plaintiff.    The action challenged by plaintiff – *i.e.*, the issuance of the EEOC Guidance – does not constitute final agency action because it imposes no obligations on the State of Texas:    It lacks the force of law.    Second, plaintiff lacks standing because of its failure to identify an existing injury or an injury that it will imminently suffer as a result of the EEOC Guidance.    Plaintiff alleges that it has standing because the EEOC Guidance purports to preempt state law, but the Guidance does no such thing.    The claimed injury is illusory.    Finally, plaintiff's claims are not ripe.    There are several reasons for this, but they include the fact that resolution of plaintiff's request for a declaratory judgment categorically approving its various employment practices – many of which are not even identified in the complaint – raises factual issues that need to be, but would not be, resolved.

In sum, the Court should dismiss plaintiff's complaint.

## BACKGROUND

The EEOC issued the Guidance in 2012.    App'x at 001.    At the most general level, it states the EEOC's view that "[a]n employer's use of an individual's criminal history in making employment decisions may, in some instances, violate the prohibition against employment discrimination under Title VII . . . ."    App'x at 004.    More specifically, it explains that "[a]n employer's neutral policy (*e.g.*, excluding applicants from employment based on certain [past] criminal conduct) may disproportionately impact some individuals protected under Title VII, and may violate the law if not job related and consistent with business necessity (disparate-impact liability)."    *Id.*    The Guidance further explains that, during its investigation, when assessing whether a practice has a legally prohibited disparate impact, the EEOC (i) identifies the "particular

policy or practice" at issue, (ii) reviews statistical data on whether the practice has a disparate impact on a protected class, and, (iii) if necessary, assesses whether facts demonstrate that the practice is job-related and consistent with business necessity.   App'x at 012-015.

The principle from the Guidance challenged by plaintiff – *i.e.*, that facially neutral hiring practices that exclude applicants from employment based on past felony convictions may constitute disparate-impact discrimination, *id.* at 1 – is not new.   In its 2006 Compliance Manual Section on Race and Color Discrimination, the EEOC noted that "in addition to avoiding disparate treatment in rejecting persons based on conviction or arrest records, upon a showing of disparate impact, employers must also be able to justify such criteria as job related and consistent with business necessity."   App'x at 086 (EEOC, Compliance Manual, § 15-VI.B.2, April 19, 2006). Moreover, in 1987 the EEOC stated that "excluding individuals from employment on the basis of their conviction records has an adverse impact on Blacks and Hispanics in light of the statistics showing that they are convicted at a rate disproportionately greater than their representation in the population."[1]   App'x at 113 (EEOC, Policy Statement on the Issue of Conviction Records, February 4, 1987); *see also* App'x at 116-17 (EEOC, Policy Statement on the Use of Statistics in Charges Involving the Exclusion of Individuals with Conviction Records from Employment, July 29, 1987).[2]   Thus, the core principle challenged by plaintiff in this case can be traced back more than a quarter of a century.

---

[1] The EEOC recognizes that the national-level statistical disparities in conviction rates do not necessarily appear in local labor markets.   Accordingly, in the EEOC's view, employers may produce more specific data regarding whether a conviction-record hiring practice has a disparate impact on individuals in a protected class.   App'x at 13.

[2] The Court may consider the compliance manual and the policy statements without converting this motion to a motion for summary judgment because they are subject to judicial notice, *see Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011); *Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005), and, in addition, matters outside the pleadings may be considered when deciding a Rule 12(b)(1) motion without converting it to a motion for summary judgment, *Caddell*

The EEOC Guidance addresses states in their capacity as employers.   It explains that the EEOC issued this guidance "as part of [its] efforts to eliminate unlawful discrimination in employment screening . . . by entities covered by Title VII, including private employers as well as federal, state, and local governments."   App'x at 006.   It also invokes the statutory language addressing Title VII's interactions with state laws:   "State and local laws or regulations are preempted by Title VII if they purport to require or permit the doing of any act which would be an unlawful employment practice under Title VII."   App'x at 005 (internal quotation marks omitted); *see* 42 U.S.C. § 2000e-7 ("Nothing in this subchapter shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State or political subdivision of a State, other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice under this subchapter.").

Importantly, with respect to states, the EEOC plays a more limited role in implementing Title VII than it does with private employers:   The EEOC is prohibited by statute from bringing enforcement actions against states.   42 U.S.C. § 2000e-5(f)(1).   If a state employee or job applicant thinks s/he has been subjected to an unlawful employment practice, then s/he can file a charge with EEOC.   *Id.* § 2000e-5(b).   The EEOC will then conduct an investigation and if, after completing its investigation, it determines that "there is not reasonable cause to believe that the charge is true, it shall dismiss the charge and promptly notify the person claiming to be aggrieved and the [state] of its action."   *Id.*    The notice to the employee or applicant is typically referred to as a right-to-sue letter because, as a general matter, the employee or applicant can file a suit once s/he receives the letter, but not before.   *Id.* § 2000e-5(f)(1).   If, however, the EEOC concludes

*v. United States*, 2003 WL 1107200, *1 (5th Cir. 2003).

that there is reasonable cause to believe that a violation of Title VII has occurred, then it initiates conciliation. *Id.* § 2000e-5(b). This is essentially a process by which the EEOC tries to facilitate a settlement agreement between the employee/applicant and the state. *Id.* But if conciliation fails, the EEOC cannot bring an enforcement action against the state. *Id.* § 2000e-5(f)(1). Rather, the EEOC can only refer the matter to the Department of Justice for it to make its own decision regarding whether to bring an enforcement action or issue a right to sue letter. *Id.* Notably, notwithstanding the numerous paragraphs of plaintiff's complaint devoted to discussing EEOC enforcement actions, Compl. ¶¶ 11-17, plaintiff does not allege in its complaint that the Department of Justice has ever brought a case against a state premised on a disparate impact resulting from a felony-conviction hiring exclusion.

Plaintiff alleges that it employs thousands of people, and it claims that "[f]or many state jobs, state law and longstanding hiring policies impose absolute bans on hiring convicted felons (or in some instances persons convicted of certain categories of felonies)." Compl. ¶ 18. The practices apparently differ by agency. The Texas Juvenile Justice Department allegedly refuses to hire applicants convicted of any one of a number of listed felonies (and the list size varies by job). *Id.* ¶ 22. The Texas Lottery Commission supposedly refuses to hire anyone convicted of any felony (and apparently some misdemeanors) in the last ten years. *Id.* ¶ 23. And the Parks and Wildlife Department allegedly will not hire as a game warden anyone who has ever been convicted of a felony or Class A misdemeanor. *Id.* ¶ 24. At least some of these practices have existed for more than a decade. *See* Vernon's Texas Statutes and Codes Annotated, Occupations Code, § 1701.312, Credits.

Notwithstanding the years' long coexistence of the EEOC's understanding of Title VII and plaintiff's felony-exclusion hiring practices, plaintiff filed this declaratory judgment action in

November 2013.   The complaint contains three counts.   Count I seeks a declaration of plaintiff's "right to maintain and enforce its law and policies that absolutely bar convicted felons (or certain categories of convicted felons) from serving . . . [in] any [ ] job the State and its Legislature deem appropriate."   Compl. ¶ 34.   Count II requests that the Court hold unlawful and set aside the Guidance as an unauthorized substantive rule that was issued without notice and opportunity for comment.   *Id.* ¶¶ 39-40.   Finally, Count III requests a declaratory judgment that "disparate impact liability under Title VII represents an impermissible exercise of Congress's enforcement powers under the Fourteenth Amendment."   Compl. ¶42.

## ARGUMENT

The Court should dismiss plaintiff's complaint for lack of subject matter jurisdiction under Rule 12(b)(1).   Under the APA, the Court lacks jurisdiction over Counts I and II because plaintiff challenges non-final agency action.   In addition, plaintiff lacks standing to bring this suit because it has not identified an existing or imminent injury.   Finally, none of the claims are ripe:   Counts I and II, *e.g.*, turn on factual issues that would not be addressed in this case, and Count III asks the Court to decide a constitutional issue that may never arise.

## I.    The Court Lacks Jurisdiction Over Counts I and II Because the Guidance Lacks Legal Effect.

Plaintiff's complaint centers on several APA challenges to the EEOC Guidance.   *See* Compl. ¶¶ 29-40 (Counts I and II).   Plaintiff alleges that the EEOC Guidance constitutes a reviewable substantive rule, notwithstanding that it also asserts that "Congress withheld rulemaking authority from the EEOC."   Compl. ¶ 39.   The EEOC Guidance, however, lacks legal effect.   Thus, the Court lacks jurisdiction over plaintiff's APA claims.

The APA authorizes courts to review, with qualification and exceptions inapplicable here, "final agency action for which there is no other adequate remedy in Court."   5 U.S.C. § 704;

*Peoples Nat'l Bank v. Office of Comptroller of Currency of U.S.*, 362 F.3d 333, 336 (5th Cir. 2004)

(noting that jurisdiction under the APA depends on satisfying the terms of this provision).   The

Supreme Court has established a two-part test for determining whether agency action is final.

*Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).   First, the agency action must mark the

"consummation" of the agency's decision making progress; it cannot be tentative or interlocutory

in nature.   *Id.*   Second, the action must be one by which "rights or obligations have been

determined" or from which "legal consequences will flow."   *Id.* at 178.   A substantive rule – *i.e.*,

a rule that creates legal obligations not contained in a statute, *Shell Offshore, Inc. v. Babbitt*, 238

F.3d 622, 628 (5th Cir. 2001) – constitutes final agency action.   *Nat'l Ass'n of Home Builders v.*

*U.S. Army Corps of Engineers*, 417 F.3d 1272, 1286, (D.C. Cir. 2005).

      The EEOC Guidance is not final agency action under the APA because it does not

determine rights or obligations and no "legal consequences" flow from it.   The Guidance reflects

the EEOC's view of the law, *e.g.*, App'x at 004, and this view "has force only to the extent the

agency can persuade a court to the same conclusion."   *AT&T v. EEOC*, 270 F.3d 973, 976 (D.C.

Cir. 2001); *see Peoples Nat'l Bank*, 362 F.3d at 337 ("[A] non-final agency order is one that does

not of itself adversely affect complainant but only affects his rights adversely on the contingency

of future administrative action.") (internal quotation marks omitted from parenthetical).   The

EEOC cannot impose any administrative penalties against plaintiff, *see* 42 U.S.C. § 2000e-5(f)(1),

and plaintiff does not allege to the contrary.   Indeed, as explained earlier, the EEOC does not even

bring enforcement actions in court against states and local governments, the Department of Justice

(which is not a defendant) does, *id.* – a fact plaintiff oddly omitted from its complaint.   And if the

Department of Justice brought a successful enforcement action, plaintiff would *not* be liable for

failing to follow the EEOC Guidance; plaintiff would be liable only for violating Title VII.   *See*

*Nat'l Pork Producers Council v. EPA,* 635 F.3d 738, 756 (5th Cir. 2011) ("Agency actions that have no effect on a party's rights or obligations are not reviewable final actions."); *Fairbanks North Star Borough v. U.S. Army Corps. of Engineers*, 543 F.3d 586, 594 (9th Cir. 2008) (concluding that agency action was not final, in part, because "noncompliance" with the agency's determination would not result in additional liability); 42 U.S.C. § 2000e-2 (defining unlawful employment practices for which liability may be imposed, without reference to Guidance).

Plaintiff alleges that the EEOC Guidance has consequences because it creates uncertainty, in its view, about what hiring practices it should employ, *i.e.*, for example, regarding whether a state agency can automatically disqualify an individual from employment based on any felony conviction, no matter the circumstances, or whether it must perform a more careful analysis. Compl. ¶¶ 26-28.  But the creation of any uncertainty is a "practical effect" of the EEOC Guidance, not a legal consequence.  *Fairbanks North Star Borough*, 543 F.3d at 595; *Ctr. for Auto Safety v. Nat'l Highway Transp. Safety. Admin.*, 452 F.3d 798, 811 (D.C. Cir. 2006).   The Guidance does not alter the legal obligations imposed on plaintiff, which flow from Title VII itself, and practical effects do not make an action final under the *Bennett* test.  *Fairbanks North Star Borough*, 543 F.3d at 595; *Ctr. for Auto Safety*, 452 F.3d at 811.

Finally, plaintiff alleges that the EEOC lacks the authority to issue substantive rules implementing Title VII.   Compl. ¶ 39.   But this point actually undercuts plaintiff's position.   If the agency lacks the authority to issue substantive rules, the Guidance could not change plaintiff's legal obligations.   *See Ctr. for Auto Safety*, 452 F.3d at 810 (concluding that policy guidelines were not final agency action, in part, because the author did not have the authority to issue guidelines with binding effect).   Indeed, courts have routinely found that EEOC's interpretation of Title VII lacks the "force of law."   *See In re Union Pacific R.R. Employment Practices Litig.*,

479 F.3d 936, 943 (8th Cir. 2007) (holding that EEOC's interpretation of Title VII does not have the force of law); *McMenemy v. City of Rochester*, 241 F.3d 279, 284 (2d Cir. 2001) (holding that EEOC Compliance Manual interpreting Title VII lacks the force of law); *Steele v. Thiokol*, 241 F.3d 1248, 1255 n.4 (10th Cir. 2001) (same); *Guess v. Bethlehem Steel Corp.*, 913 F.2d 463, 464 (7th Cir. 1990) (noting that EEOC guidance is "merely advisory" and therefore does not have the force of law).[3]

The *AT&T* case cited earlier bears a fuller examination because it closely resembles this one.   The *AT&T* court held that the Pregnancy Discrimination Act of 1979 (Act) obligates an employer to give an employee who misses work due to pregnancy the same benefits that it gives to an employee who misses work for a different reason.   270 F.3d at 974.   The EEOC took the position that employers were obligated to provide equal benefits with respect to employees who missed work due to pregnancy prior to the passage of the Act, a position it memorialized in its Compliance Manual.   *Id.*   AT&T disagreed.   *Id.*   Two AT&T employees filed administrative charges with the EEOC about the company's policy.   *Id.*   The EEOC wrote a letter to AT&T stating that it should "conciliate" with the women – *i.e.*, try to reach an agreement with them – and that if it could not do so, the EEOC would refer the matter to its "legal department."   *Id.* at 974-75. Conciliation failed, and before the EEOC took any further action against the company, the company filed an action seeking a declaratory judgment that its policy comported with federal law. *Id.* at 975.   The Court concluded that the EEOC's action was not reviewable under the APA.   The agency had "express[ed] its view of what the law requires," and even though its "view [was]

---

[3] Because the EEOC's guidance merely interprets Title VII and does not possess the force of law, plaintiff's contention that the Guidance constitutes a "rulemaking" under the APA that required compliance with notice-and-comment procedures is without merit.   *See* Compl. ¶ 40; *Am. Tort Reform Ass'n v. Occupational Health & Safety Admin.*, 738 F.3d 387, 395-96 (D.C. Cir. 2013) (holding that an agency's interpretive rule was not subject to judicial review under the APA and was not subject to notice and comment requirements).

adverse to [AT&T]," that did not render its action final.  *Id.*   As in this case, the EEOC's view

would have force only to the extent it was adopted by a Court.  *Id.*   Furthermore, the Court

explained, the EEOC was not even obligated to sue AT&T, because it has discretion about how to

use its limited resources (*i.e.*, in accord with *Heckler v. Chaney*, 470 U.S. 821, 831 (1985),

agencies need not bring enforcement actions against every violator).  *AT&T*, 270 F.3d at 976.

The argument in this case that the EEOC's Guidance constitutes a final agency action under the

APA is even weaker than in *AT&T* because (i) the EEOC has not sent any letters to plaintiff

indicating that it will refer any specific complaints to its "legal department," and (ii) in any case, as

explained above, the EEOC does not make the determination about whether to bring enforcement

actions against states, the Department of Justice does, 42 U.S.C. § 2000e-5(f)(1).

        In short, the Guidance is not a final agency action, so the Court lacks jurisdiction to review

it, and Counts I and II should be dismissed.[4]

## II.     Plaintiff Lacks Standing to Bring This Suit.

        To establish standing to sue under Article III of the Constitution, plaintiff must allege that

it has suffered a concrete injury, or that such an injury is "imminent" or "certainly impending."

*See Clapper v. Amnesty Int'l* , 133 S. Ct. 1138, 1147 (2013).   In addition, to support standing, the

injury alleged must be traceable to the defendant's challenged conduct and able to be redressed by

---

[4]  As relief for the claim set out in Count I, plaintiff seeks an injunction barring the EEOC from
issuing right to sue letters related to administrative charges alleging that hiring decisions premised
on felony convictions amount to disparate-impact race discrimination.   If plaintiff were somehow
able to establish that the EEOC's interpretation of Title VII were incorrect, that would mean that
the EEOC would have to conclude that administrative complaints of the kind described establish
no cause of action.   And with respect to state employees, the EEOC issues right to sue letters
when it concludes that an administrative complaint describes something that does not establish a
cause of action.  42 U.S.C. § 2000e-5(f)(1).   Thus, plaintiff seeks an injunction prohibiting the
EEOC from doing what it would be required to do by statute (*i.e.*, issue a right to sue letter) if
plaintiff is right about the interpretative question.   This is an untenable position, and no such
injunction would be appropriate.

the relief sought.   *Id.*   Plaintiff has not alleged the existence of an injury adequate to support standing.

Plaintiff premises its standing to bring this case on the assertion that the "EEOC's Enforcement Guidance purports to preempt state law and forces state entities and officials to choose between evaluating and hiring convicted felons in defiance of state law or risking investigations, challenges, and lawsuits from EEOC."   Compl. ¶ 32.   But the Guidance does not purport to preempt state law and, therefore, cannot cause the injury that plaintiff alleges.   Rather, the Guidance provides that Title VII, by its own terms, preempts inconsistent state law: "State and local laws or regulations are *preempted by Title VII* if they 'purport to require or permit the doing of any act which would be an unlawful employment practice' under Title VII."   App'x at 005 (quoting 42 U.S.C. § 2000e-7) (emphasis added); *id.* at 27.   Nor does the Guidance actually preempt state law.   Only agency actions with the force of law can preempt state law.   *See Fellner v. Tri-Union Seafoods, LLC*, 539 F.3d 237, 245 (3d Cir. 2008); *Municipal Ass'n of South Carolina v. Service Ins. Co., Inc.*, 786 F. Supp. 2d 1031, 1047 (D.S.C. 2011) (reversed on other grounds). And as explained above, the Guidance is not final agency action precisely because it lacks the force of law.   Thus, plaintiff's purported injury is nonexistent:   There is no putative or actual preemption of state law by the EEOC Guidance and, accordingly, there is no "injury" caused by the Guidance.

Plaintiff lacks standing with respect to Count III for additional reasons.   Count III appears to challenge Title VII (rather than the Guidance), by alleging that Title VII violates the Fourteenth Amendment insofar as it imposes disparate-impact liability on states.   Compl. ¶ 42.   State sovereign immunity does not limit the ability of the federal government to sue the states, *West Virginia v. United States*, 479 U.S. 305, 311 n.4 (1987) (recognizing that states have no sovereign

immunity against federal government), nor in the circumstance of this case, does it limit the ability of individuals to bring suits in state court under Title VII, *see* n. 7 below.   Thus, this claim relates only to suits brought by individuals in federal court.

Plaintiff has not alleged any harm other than that the Guidance purports to preempt state law, and this allegation does not explain how plaintiff is injured by Title VII (as opposed to the guidance).   *See* Compl. ¶ 32 (contending that the asserted preemptive effect of Guidance is injury); *Clapper*, 133 S. Ct. at 1147 (explaining that a plaintiff must establish injury traceable to challenged act).   Plaintiff must establish standing for each claim it advances, *Davis v. Federal Election Com'n*, 554 U.S. 724, 734 (2008).   Thus, plaintiff lacks standing to press Count III for that reason as well.   Plaintiff may mean to suggest that it faces injury in the form of lawsuits premised on a disparate-impact theory in violation of its state sovereign immunity or the need to alter its conduct to avoid such lawsuits.   But the first alleged injury (*i.e.*, the potential for a lawsuit by an individual challenging a felony-exclusion under a disparate-impact theory) is speculative, rather than "certainly impending," as it needs to be to support standing, *Clapper*, 133 S. Ct. at 1147; *see* § III below, and, as a result, the second alleged injury (*i.e.*, the plaintiff's need to alter its hiring practices) is not traceable to defendant's conduct, *Clapper*, 133 S. Ct. at 1151.

Also, these supposed Count-III related injuries could not be redressed by the Court.   With respect to Count IIII, plaintiffs seeks an injunction prohibiting the EEOC from issuing right to sue letters for administrative charges based on the principle that a felony-conviction hiring exclusion has resulted in a disparate impact.   Compl. ¶ 43.   This injunction would not, however, prevent the Department of Justice (a nonparty) from issuing right to sue letters in cases referred to it, nor would it stop individuals to whom the EEOC would otherwise issue right to sue letters from bringing suit under a disparate-impact theory.   If the EEOC fails to issue a right to sue letter

within the time frame set out by the statute, an individual who filed an administrative charge may still file suit. *Pietras v. Board of Fire Com'rs of Farmingville Fire Dist.*, 180 F.3d 468, 474 (2d Cir. 1999); *Stapper v. Texas Dep't of Human Resources*, 470 F.Supp. 242, 246 (W.D. Tex. 1979). And nothing would preclude such an individual from premising his or her suit on the disparate-impact theory that plaintiff assails in this case. Thus, the relief sought would not redress the alleged injury.

## III.    None of Plaintiff's Claims Is Ripe.

Courts may not decide claims that are abstract or otherwise not yet fit to be decided. None of plaintiff's claims is ready to be decided given the lack of a final agency action, the existence of factual and potential constitutional questions, and the fact that withholding review will not impose a hardship on plaintiff.

The basic rationale of the ripeness doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967). The doctrine comprises constitutional and prudential elements. *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 286 (5th Cir. 2012). When deciding whether a claim is ripe, courts assess whether the issue to be decided is fit for judicial review and what, if any, is the hardship to the parties of withholding review. *Opulent Life Church*, 697 F.3d at 286. "A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required." *Id.* (internal quotations omitted). The court appropriately used the modifier "generally" in the previous sentence because even if the remaining questions are purely legal, "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *See Texas v. United States*, 523 U.S. 296, 301 (1998) (internal quotation

marks omitted).   The fitness-for-decision and harm elements generally must be balanced against each other.   *Lopez v. City of Houston*, 617 F.3d 336, 342 (5th Cir. 2010).   But "[e]ven where an issue presents purely legal questions, the plaintiff must show some hardship in order to establish ripeness."   *Id*.

With respect to challenges to agency actions, the Fifth Circuit has distilled the doctrine into a four-part test, and a plaintiff must satisfy all four elements of the test to demonstrate ripeness. *Texas Office of Public Utility Counsel v. F.C.C.*, 183 F.3d 393, 411 n.11 (5th Cir. 1999).   Under this test, a court considers:

> (1) whether the issues are purely legal; (2) whether the issues are based on a final agency action; (3) whether the controversy has a direct and immediate impact on the plaintiff; and (4) whether the litigation will expedite, rather than delay or impede, effective enforcement by the agency.

*Id.*   At bottom, the rationale for the ripeness doctrine is that "[i]f we do not decide it now, we may never need to."   *Nat'l Treasury Employees Union v. United States (NTEU)*, 101 F.3d 1423, 1431 (D.C. Cir. 1996). This rationale not only "protect[s] the expenditure of judicial resources, but it comports with [the courts] theoretical role as the governmental branch of last resort."   *Id.*

This memorandum has already established two ways in which the claims premised on the Guidance are not ripe, namely, they are not based on final agency action and they depend on contingent events that may never occur.   *Texas Office of Public Utility Counsel*, 183 F.3d at 411; *Texas*, 523 U.S. at 300.   This suffices to demonstrate the absence of jurisdiction.   But there is more.

A. Count I is Unripe Because It Requires the Court to Resolve Factual Issues that Could Not Be Resolved in This Case.

Count I seeks a blanket declaration that any prohibitions on the hiring of felons imposed by the state are, and always will be, lawful hiring practices, *i.e.*, that they cannot amount to prohibited

disparate-impact discrimination.   Compl. ¶ 34 (seeking a declaration that "laws and policies that absolutely bar convicted felons" from serving in "any job" the "State and its Legislature deem appropriate . . .   do not constitute 'unlawful employment practices' under [Title VI]").   But determining whether an employment practice is lawful requires the Court to answer various factual questions that plaintiff's abstract complaint does not present.

As a threshold matter, a blanket prohibition on hiring felons could not constitute disparate impact, of the kind discussed in the Guidance, unless the evidence demonstrates that the practice has a statistically significant differential effect (assuming the existence of a large enough sample size) on a protected class.   *See generally Hill v. Mississippi State Employment Service*, 918 F.2d 1233, 1238 (5th Cir. 1990).   Determining whether such a disparate impact exists involves a factual analysis of the relevant labor market.   *See Wards Cove Packing Co., Inc. v. Atonio*, 490 U.S. 642, 650-651, (1989) (abrogated by statute on other grounds); App'x at 013.   The reason is, for example, that in a specific labor market the percentage of Whites with a felony conviction may be the same as for African Americans and Latino.   The specific hiring practice is also relevant. Texas state agencies do not have uniform employment practices.   Some agencies automatically disqualify all felons, while others disqualify only individuals convicted of certain felonies.   *See* Compl. ¶¶ 22, 23.   One set of practices might not result in a disparate impact, while another set might.   The differences in practices are critical to an assessment of disparate-impact liability, and the Court does not even know which specific hiring practices are at issue, as plaintiff has sought a declaratory judgment covering all current hiring practices, only some of which are specified in the complaint, as well as any practices instituted by the state in the future.   Compl. ¶ 34.   Nor did plaintiff concede in its complaint that all of its current and potential future felony-conviction-based hiring practices have a disparate impact.   Thus, plaintiff seeks an abstract declaration regarding

the legality of its varied (and largely unspecified) hiring practices in advance of the establishment of a predicate fact, namely, that any of them have a disparate impact on a protected class.

Count I raises another set of factual questions – regarding the existence of a justification for hiring practices with a disparate impact – which also render it unripe for review.   If a hiring practice results in a disparate impact, that fact alone does not establish that the practice is unlawful. Such a hiring practice may be lawful if it is "job-related for the position in question and consistent with business necessity."   42 U.S.C. § 2000e–2(k)(1)(A)(I); *Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir. 2006).   But the question of whether a specific hiring practice is job-related and consistent with business necessity is a factual question.   *Wards Cove*, 490 U.S. at 660**.**   With respect to hiring practices that disqualify applicants based on their conviction records, courts have assessed their business necessity by considering the following kinds of facts:   (i) the nature and gravity of the offenses excluded, (ii) whether the practice takes account of the time that has passed since the conviction and/or completion of the sentence, and (iii) the type of job sought.   *Green v. Mo. Pac. R.R.*, 549 F.2d 1158, 1160 (8th Cir. 1977); *see also Waldon v. Cincinnati Pub. Sch.*, 941 F. Supp. 2d 884, 889-90 (S.D. Ohio 2013).   Put otherwise, as the Third Circuit concluded, an employer must demonstrate that its "criminal conviction policies . . . accurately distinguish between applicants that pose an unacceptable level of risk and those that do not."   *El v. Southeastern Penn. Transp. Auth.*, 479 F.3d 232, 244-45 (3d Cir. 2007).

These kinds of considerations make sense.   No one wants a child predator working at a school.   But there is no similarly strong justification for the Texas Lottery Commission refusing to hire as a janitor someone who was convicted years ago of unlicensed acupuncture, Texas Occupations Code § 205.401(c) (making unlicensed acupuncture felony), or refusing to consider, for a clerical position, someone convicted nine years ago of littering in a cave, Texas Health and

Safety Code § 365.016(b)(2) (establishing that the third conviction for littering in a cave is a felony).   Compl. ¶ 22 (noting that the Texas Lottery Commission "imposes an absolute bar to hiring anyone convicted of any felony or certain other designated offenses within the last ten years").   Yet the blanket, context-free declaratory judgment sought by plaintiff (Compl.¶ 34) would equate these and innumerable other divergent circumstances by ignoring the kinds of factual questions that legally, *see Wards Cove*, 490 U.S. at 660 – and logically – attend the decision of whether there is a business necessity for a hiring practice.[5]   *See Texas*, 523 U.S. at 301 ("As to fitness of the issues: Texas asks us to hold that under no circumstances can the imposition of these sanctions constitute a change affecting voting.   We do not have sufficient confidence in our powers of imagination to affirm such a negative. The operation of the statute is better grasped when viewed in light of a particular application.").

Notably, plaintiff does not seek a declaratory judgment regarding the lawfulness of any of its hiring bans premised on misdemeanor convictions:   The Parks and Wildlife Department, for example, refuses to hire individuals as game wardens if they have been convicted of certain misdemeanors.   Compl. ¶¶ 19 (noting that the Department of Public Safety "refuses to hire anyone convicted of . . . certain misdemeanors), 24 (explaining the same thing with respect to game wardens), 34 (seeking declaratory judgment only for felony-based exclusions); Prayer for Relief.   This choice raises a question:   If plaintiff concedes, at least implicitly, that the law requires a fact-specific inquiry for assessing the business necessity of a misdemeanor-based hiring

---

[5] If an employer demonstrates that a challenged hiring practice is job-related and consistent with business necessity, then the plaintiff has the opportunity to demonstrate that there are less discriminatory alternatives to the challenged practice.   42 U.S.C. § 2000e–2(k)(1)(A)(ii); *IBEW v. Miss. Power & Light Co.*, 442 F.3d 313, 318 (5th Cir.2006).   This matter too can present factual questions.   *N.A.A.C.P. v. North Hudson Regional Fire & Rescue*, 665 F.3d 464, 477 (3d Cir. 2011).

exclusion, why is not the same true of felony-based hiring exclusions?[6]   Of course, it is, as courts have held.   *Green*, 549 F.2d at 1160; *Waldon*, 941 F. Supp. 2d at 889-90.

With respect to Count I, then, the Court need not decide whether a hiring practice is lawful unless facts demonstrate the existence of a disparate impact, and even if they do, the Court cannot decide whether a practice is lawful without facts pertaining to job-relatedness and business necessity.   But the Court in this case would not have the facts related to disparate impact, job-relatedness, or business necessity needed to make a decision.   The declaratory judgment sought by plaintiff on Count I is untenable in this factual vacuum, and would constitute an improper advisory opinion.

B.   Count III is Unripe Because It Depends on Contingencies That May Not Occur and Withholding Review Will Not Cause Any Hardship.

Count III may suggest that plaintiff faces injury (i) in the form of the threat of a lawsuit premised on a disparate-impact theory, in violation of its state sovereign immunity, or (ii) the need to alter its conduct – and comply with Title VII (to the extent, if any, it is not doing so) – to avoid such a suit.   Compl. ¶42.   Plaintiff alleges that a state cannot be liable for discrimination under Title VII pursuant to a disparate-impact theory because state sovereign immunity can be overcome only by legislation enacted pursuant to the Fourteenth Amendment, and this amendment permits Congress to prohibit only disparate treatment discrimination.   *Id.*

---

[6]   The difference in conduct between felonies and misdemeanors is not infrequently one of degree, rather than kind.   For example, the second conviction for littering in a cave is a misdemeanor, while the third conviction for littering in a cave is a felony.   Texas Health and Safety Code § 365.016; s*ee also, e.g.*, Texas Alcohol and Beverage Code § 101.31 (establishing that the first and second convictions for crimes related to the transportation and sale of alcohol in a dry area misdemeanors, while subsequent offenses are felonies).   Apparently, many of plaintiff's agencies would consider the application of twice-convicted cave litterer, but reject the application of a three-time litterer out of hand.

If the EEOC has properly understood this claim, it is unripe because it rests on contingent events that may not come to pass.  *Texas*, 523 U.S. at 300.   Principles of state sovereign immunity cannot prevent the federal government from suing states, *West Virginia v. United States*, 479 U.S. 305, 311 n.4 (1987) (recognizing that states have no sovereign immunity against federal government), nor in the circumstance of this case, can they prevent individuals from suing in state court under a Title VII disparate-impact theory, *see* n. 7 below.   This allegation, then, pertains only to suits brought by individuals in federal court premised on a disparate-impact theory.   But even if principles of sovereign immunity prevented state-court suits by individuals under a Title VII disparate-impact theory, plaintiff could not demonstrate that this claim is ripe.

Numerous contingencies would have to come to pass for plaintiff to face such a suit: (i) plaintiff would have to exclude an individual from an employment opportunity based on a felony conviction; (ii) the individual would have to file an administrative charge with the EEOC; (iii) the EEOC would have to find that the claim lacked merit and issue a right to sue letter, or the Department of Justice, after receiving a referral from the EEOC, would have to decide not to bring an enforcement action and issue a right to sue letter; and; (iv) the individual would have to sue plaintiff on a disparate-impact theory.

Texas has had laws prohibiting hiring of felons since at least 1999, and the EEOC has had the same basic interpretation of Title VII, with respect to conviction records, for more than 25 years, App'x at 13.   Nonetheless, plaintiff's complaint does not allege that a single individual has sued Texas, under a Title VII disparate-impact theory, based on felony-conviction hiring exclusion, and the government is unaware of any reported case reflecting these circumstances. Years of history indicate, then, that the contingencies that plaintiff needs for the issue to arise might not come to pass and, consequently, that the issue is not ripe.   Even if plaintiff could

identify a few such cases in the annals of history, that fact would not establish ripeness.   For a claim premised on the threat of litigation to be ripe for review, the threat must be "specific and concrete."   *Orix v. Credit Alliance, Inc.* 212 F.3d 891, 897 (5th Cir. 2000).   Plaintiff has alleged no specific and concrete threat in this case.   Count III, if premised on a threat of litigation, is unripe.

Count III is unripe for another reason.   As noted earlier, when assessing ripeness, courts consider the hardship to the plaintiff of withholding review. "The Supreme Court has found hardship to inhere in legal harms, such as the harmful creation of legal rights or obligations; practical harms on the interests advanced by the party seeking relief; and the harm of being 'force[d] ... to modify [one's] behavior in order to avoid future adverse consequences.'" *Texas v. United States*, 497 F.3d 491, 499 (5th Cir. 2007) (quoting *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 734 (1998)).   But withholding review of Count III would not impose any hardship on plaintiff.   Regardless of the merits of Count III, plaintiff would be subject to disparate-impact liability under Title VII for its felony-conviction exclusion practices.   Why?   Because as noted before, prevailing on this claim would eliminate only disparate-impact liability with respect to suits brought by individuals in federal court.[7]   It would not prevent the United States from

---

[7] Plaintiff also would need to comply with Title VII because individuals could bring Title VII actions in state court under a disparate-impact theory.   As plaintiff has opened its courts to disparate-impact discrimination claims premised on state law, Tex. Lab. Code §§ 21.002(a) (defining the term "employer" to include state agencies), 21.122 (discussing burden of proof in disparate-impact cases), 21.254 (creating a cause of action for complainants), it cannot close them to similar federal claims.   *Erickson v. Board of Governors of State Colleges and Universities for Northeastern Illinois University*, 207 F.3d 945, 952 (7th Cir. 2000) (Easterbrook, J.); *see also Howlett v. Rose*, 496 U.S. 356, 367-75 (1990).   The Fifth Circuit has held that the Texas Labor Code, which also addresses disability-based discrimination, does not constitute a waiver of sovereign immunity with respect to Americans with Disability Act suits in state court.   *Perez v. Region 20 Educ. Service Center*, 307 F.3d 318, 332 (5th Cir. 2002).   But the Fifth Circuit did not address the argument raised in *Erickson*, namely, that the state cannot decline to hear federal analogs to state-law claims.   *Id.*   Thus, it is not precedential with respect to that argument.   And

enforcing Title VII under the theory challenged in this suit.    *West Virginia*, 479 U.S. at 311 n.4.

Plaintiff, then, would be obligated to conform its hiring practices to Title VII regardless of whether

it would prevail on this claim.    *Erickson*, 207 F.3d at 952.    Resolution of this claim could affect

the ability of individuals to file suit in federal court against the State of Texas, not the law

governing the state's conduct, and plaintiff could challenge the ability of an individual to bring a

disparate-impact suit in federal court at the time, if any, that such a suit is brought.    *See National

Park Hospitality Ass'n v. Department of Interior*, 538 U.S. 803, 810, (2003) (concluding that

withholding a decision about dispute resolution procedures before dispute had arisen would cause

no hardship); *see also Choice Inc. of Texas v. Greenstein,* 691 F.3d 710, 716 (5th Cir. 2012)

(concluding that withholding review imposed no hardship because plaintiff's conduct would be

unlawful regardless of whether plaintiff won or lost).    As noted earlier, the hardship element of

the ripeness inquiry must generally be balanced against the fitness element.    But "[e]ven where an

issue presents purely legal questions, the plaintiff must show some hardship in order to establish

ripeness."    *Lopez v. City of Houston*, 617 F.3d 336, 342 (5th Cir. 2010).    Thus, even if Count III

presents a purely legal claim, it is unripe because there is no hardship to withholding review.

　　　　Finally, concerns about deciding unripe cases are amplified in the context of claims that

raise constitutional issues because "[a] fundamental and longstanding principle of judicial restraint

requires that courts avoid reaching constitutional questions in advance of the necessity of deciding

them."    *Lyng v. NW Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988).    This principle

---

to finish the point, as individuals could bring actions in state court under Title VII, plaintiff's claim
relates only to an issue of venue – *i.e.*, whether individuals can bring claims in federal court, as
opposed to state court – and that issue can be addressed if and when an individual brings such a
claim.    In any case, given that sovereign immunity cannot prevent the Department of Justice from
bringing enforcement actions, plaintiff cannot show a hardship regardless of whether individuals
can sue plaintiff in state court under a Title VII disparate-impact theory.

underscores the need to subject Count III to a rigorous ripeness analysis, an analysis that

demonstrates that the claim is not ripe.

## **CONCLUSION**

Because the Court lacks subject matter jurisdiction to adjudicate plaintiff's claims in this

case, the Court should dismiss plaintiff's complaint under Rule 12(b)(1).


DATED this 27th Day of January, 2014.


Respectfully submitted,

STUART F. DELERY
Assistant Attorney General

SARAH R. SALDAÑA
United States Attorney

JOSHUA E. GARDNER
Assistant Director, Federal Programs
Branch

*s/ Justin M. Sandberg*
JUSTIN M. SANDBERG, IL Bar No.
6278377
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Mass. Ave. NW, Rm. 7302
Washington, D.C. 20001
Telephone:      (202) 514-5838
Facsimile:      (202) 616-8202
Justin.Sandberg@usdoj.gov
*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on January 27, 2014, a true and correct copy of the foregoing

was served by CM/ECF on:

> Jonathan F. Mitchell
> Andrew Stephen Oldham
> Arthur D'Andrea
> Office of the Texas Attorney General
> 209 West 14th Street
> P.O. Box 12548
> Austin, Texas 70711-2548

<u>s/ <i>Justin M. Sandberg</i></u>
JUSTIN M. SANDBERG
Trial Attorney
U.S. Department of Justice
