## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## LUBBOCK DIVISION

STATE OF TEXAS,

        *Plaintiff,*

vs.

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

JACQUELINE A. BERRIEN,
    in her official capacity as Chair of the Equal
    Employment Opportunity Commission,

    and

ERIC H. HOLDER,
    in his official capacity as Attorney General
    of the United States,

        *Defendants.*

Case No. 5:13-cv-00255-C

## PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

# TABLE OF CONTENTS

Table of Authorities.................................................................................................................ii

Introduction.........................................................................................................................1

Background...........................................................................................................................1

Summary of Argument.........................................................................................................3

Argument..............................................................................................................................4

    I.      The State Has Standing.........................................................................................4

          A.      The State's Injuries Are Concrete, Traceable, and Redressable.................4

          B.      EEOC's Counterarguments Are Meritless..............................................6

    II.     The State's Claims Are Ripe..............................................................................8

          A.      The State's Claims Are Presumptively Reviewable, And EEOC Does Not Attempt To Rebut That Presumption.............................................8

              1.      The State's claims are fit for review.........................................9

              2.      The balance of hardships tips decidedly in the State's favor.............11

          B.      EEOC's Counterarguments Lack Merit...................................................14

    III.    The Felon-Hiring Rule Constitutes Final Agency Action................................16

          A.      The Felon-Hiring Rule Is Reviewable Under Section 704........................17

          B.      EEOC's Counterarguments Lack Merit...................................................23

Conclusion..........................................................................................................................25

Certificate of Service

Exhibits

## TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Gardner,*
    387 U.S. 136 (1967) ...................................................................................8, 9, 13, 15

*Alaska v. United States Dep't of Transp.,*
    868 F.2d 441 (D.C. Cir. 1989)...........................................................................8

*Alfred L. Snapp & Son, Inc. v. Puerto Rico,*
    458 U.S. 592 (1982) ..........................................................................................8

*American Bus Ass'n v. United States,*
    627 F.2d 525 (D.C. Cir. 1980)................................................................... 18, 22

*Appalachian Power Co. v. EPA,*
    208 F.3d 1015 (D.C. Cir. 2000).............................................. 18, 19, 22, 23, 24

*AT&T v. EEOC,*
    270 F.3d 973 (D.C. Cir. 2001)..........................................................................24

*Atchison, Topeka & Santa Fe Ry. v. Pena,*
    44 F.3d 437 (7th Cir. 1994) ..............................................................................20

*Barrick Goldstrike Mines v. Browner,*
    215 F.3d 45 (D.C. Cir. 2000).................................................................19, 22, 23

*Bennett v. Spear,*
    520 U.S. 154 (1997) .........................................................................................17

*Better Gov't Ass'n v. Department of State,*
    780 F.2d 86 (D.C. Cir. 1986)...................................................................... 19, 23

*Board of Trs. Univ. of Ala. v. Garrett,*
    531 U.S. 356 (2001) .........................................................................................16

*Christopher v. SmithKline Beecham Corp.,*
    132 S. Ct. 2156 (2012) .....................................................................................10

*Ciba-Geigy Corp. v. EPA,*
    801 F.2d 430 (D.C. Cir. 1986)................................................................... 14, 24

*City of Boerne v. Flores,*
    521 U.S. 507 (1997) .........................................................................................16

*City of Dania Beach v. FAA,*
    485 F.3d 1181 (D.C. Cir. 2007).......................................................................24

*Clean Air Implementation Project v. EPA,*
    150 F.3d 1200 (D.C. Cir. 1998)...............................................................................13

*Cohen v. United States,*
    578 F.3d 1 (D.C. Cir. 2009) ................................................................ 17, 18, 20, 22

*Cohen v. United States,*
    650 F.3d 717 (D.C. Cir. 2011) (en banc) ...............................................................17

*CSI Aviation Servs. v. DOT,*
    637 F.3d 408 (D.C. Cir. 2011)...............................................................................24

*Eagle-Picher Indus., Inc. v. EPA,*
    759 F.2d 905 (D.C. Cir. 1985)..................................................................................9

*EEOC v. Peoplemark, Inc.,*
    732 F.3d 584 (6th Cir. 2013) ......................................................... 1, 2, 7, 11, 12, 15

*El v. SEPTA,*
    479 F.3d 232 (3d Cir. 2007)...............................................................................2, 14

*Federal Express Corp. v. Holowecki,*
    552 U.S. 389 (2008) ........................................................................................24, 25

*Illinois Dep't of Transp. v. Hinson,*
    122 F.3d 370 (7th Cir. 1997) ...................................................................................8

*Kimel v. Florida Bd. of Regents,*
    528 U.S. 62 (2000) .................................................................................................16

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ........................................................................................4, 5, 24

*Manufactured Housing Institute v. EPA,*
    467 F.3d 391 (4th Cir. 2006) ............................................................................20, 22

*McLouth Steel Prods. Corp. v. Thomas,*
    838 F.2d 1317 (D.C. Cir. 1988)..............................................................................23

*NRDC v. EPA,*
    643 F.3d 311 (D.C. Cir. 2011)....................................................................19, 20, 22

*Ohio Forestry Ass'n v. Sierra Club,*
    523 U.S. 726 (1998) ...........................................................................................9, 13

*Owner-Operator Indep. Drivers Ass'n v. Federal Motor Carrier Safety Admin.,*
    656 F.3d 580 (7th Cir. 2011) .......................................................... 6, 7, 9, 13, 15

*Reckitt Benckiser v. EPA,*
    613 F.3d 1131 (D.C. Cir. 2010)........................................................................13

*Roark & Hardee LP v. City of Austin,*
    522 F.3d 533 (5th Cir. 2008) ..........................................................................12

*Sabre, Inc. v. Department of Transp.,*
    429 F.3d 1113 (D.C. Cir. 2005)......................................................9, 11, 12, 14, 16

*Safe Extensions v. FAA,*
    509 F.3d 593 (D.C. Cir. 2007)........................................................................24

*Seminole Tribe of Florida v. Florida,*
    517 U.S. 44 (1996) ........................................................................................16

*Shaughnessy v. Pedreiro,*
    349 U.S. 48 (1955) ..........................................................................................9

*Shays v. FEC,*
    414 F.3d 76 (D.C. Cir. 2005)..........................................................................10

*Stilwell v. Office of Thrift Supervision,*
    569 F.3d 514 (D.C. Cir. 2009)........................................................................6, 7

*Student Loan Marketing Ass'n v. Riley,*
    104 F.3d 397 (D.C. Cir. 1997)........................................................................24

*Syncor Int'l Corp. v. Shalala,*
    127 F.3d 90 (D.C. Cir. 1997)........................................................................18, 22

*Teva Pharms. USA, Inc. v. Sebelius,*
    595 F.3d 1303 (D.C. Cir. 2010)......................................................................10

*Texas v. United States,*
    497 F.3d 491 (5th Cir. 2007) ..........................................................................13

*United States v. Mead Corp.,*
    533 U.S. 218 (2001) ......................................................................................23

*United States v. Texas,*
    143 U.S. 621 (1892) ......................................................................................16

*Whitman v. American Trucking Ass'ns,*
    531 U.S. 457 (2001) ........................................................................................9

*Wyeth v. Levine,*
    555 U.S. 555 (2009) ........................................................................................7

**Statutes**

42 U.S.C. § 2000e-2(k)...........................................................................................................7

5 U.S.C. § 704 ..............................................................................................4, 16, 17, 20

**Other Authorities**

Robert A. Anthony, *Interpretative Rules, Policy Statements, Guidances, Manuals, and the Like—Should
    Federal Agencies Use Them to Bind the Public?*, 41 DUKE L.J. 1311 (1992)...........................................23

Br. of the United States as Amicus Curiae,
    *University of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517 (2012), No. 12-484 .............................25

Br. for the United States as Amicus Curiae,
    *Vance v. Ball State*, 133 S. Ct. 2434 (2012), No. 11-556.............................................................. 24, 25

Notice 2006-50, 2006-25 I.R.B. 1141, 2006-1 C.B. 1141, 2006 WL 1452787 (June 19, 2006)............18

6 Charles Alan Wright, et al.,
    FED. PRAC. & PROC. CIV. § 1476 (3d ed. 2013 supp.) .......................................................................1

## INTRODUCTION

Defendants want to have their cake and eat it too.  On the one hand, they want to bully employers into hiring felons on the basis of an unlawful interpretation of Title VII that the Equal Employment Opportunity Commission ("EEOC" or "Commission") adopted in contravention of the Administrative Procedure Act ("APA").  If an employer refuses to fall in line, it faces abusive investigations, sanctionable litigation tactics, and allegations of discrimination under the EEOC's Felon-Hiring Rule[1] that the Sixth Circuit recently described as "*frivolous*" and "*groundless*."  *EEOC v. Peoplemark, Inc.*, 732 F.3d 584, 592 (6th Cir. 2013) (emphasis in original); *see also id.* at 595 (affirming sanctions against EEOC for its abusive enforcement of the Felon-Hiring Rule).

Of course, EEOC would like to retain the coercive effects of the Felon-Hiring Rule without risking another stinging rebuke on the merits.  So it has mustered the audacity to tell the State of Texas that the timing of this suit is "far from impeccable," and that the largest employer in the second-largest State in the Nation should be forced to wait until it too suffers the abusive and sanctionable conduct that EEOC has unleashed on other violators of the rule.  MTD at 1. Thankfully, fifty years of precedent under the APA and the ripeness doctrine foreclose the Commission's attempt to dodge judicial review of its administrative overreaching.  The motion to dismiss should be denied.

## BACKGROUND

EEOC promulgated the Felon-Hiring Rule on April 25, 2012.  *See* FAC Ex. A.  The 2012 rule represents EEOC's first attempt to formalize its felon-hiring policy in a standalone document. Before 2012, the Commission's view that Title VII somehow prohibits employers from refusing to

---

[1] *See* EEOC, Consideration of Arrest and Conviction Records in Employment Decisions Under Title VII of the Civil Rights Act of 1964, No. 915.002 (Apr. 25, 2012) ("Felon-Hiring Rule," attached as Exhibit A to the First Amended Complaint, "FAC").  The State construes EEOC's motion to dismiss, ECF No. 16 ("MTD"), to apply equally to the FAC.  *See* 6 CHARLES ALAN WRIGHT, ET AL., FED. PRAC. & PROC. CIV. § 1476 (3d ed. 2013 supp.).  The FAC and this opposition together constitute the State's response to that motion.

hire felons was relegated to the 605th section of the EEOC "Compliance Manual." *See El v. SEPTA*, 479 F.3d 232, 243 (3d Cir. 2007) (recounting that fact). And the courts routinely held that the "Compliance Manual" was "not . . . entitled to great deference." *Id.* at 244. That was so because the manual was "terse" and rested on nothing more than EEOC's administrative say-so, which it asserted "without explanation, analysis, or authority." *Id.* at 248.

So EEOC promulgated the Felon-Hiring Rule, which purports to afford the explanation and analysis that the Third Circuit found lacking. The rule announces that "[a] policy or practice requiring an automatic, across-the-board exclusion from all employment opportunities because of any criminal conduct is inconsistent with the [various factors enumerated in the rule] because it does not focus on the dangers of particular crimes and the risks in particular positions." FAC Ex. A at 16. Instead of "across-the-board exclusion[s]," the Felon-Hiring Rule holds that employers *must* afford felons "individualized assessments." *Id.* at 18–20. If an employer fails to do so, the rule binds EEOC's staff to find that the no-felon policy is an unlawful employment practice. *Id.* at 3. And the Commission expressly ruled that its interpretation of Title VII preempts any state law that requires employers to apply across-the-board exclusions for felons. *Id.* at 24.

The State of Texas employs hundreds of thousands of people, and many of them are employed by agencies (like the Texas Department of Public Safety, "DPS") that impose across-the-board no-felon policies pursuant to state law. *See* FAC ¶¶ 23–31. DPS's no-felon policy is materially identical to the one that the Federal Bureau of Investigation uses. *See* FAC ¶ 24; *id.* Ex. B; n.2, *infra*. But because DPS is a state law-enforcement agency rather than a federal one, it either must violate state law or risk "*frivolous*" and "*groundless*" allegations of racial discrimination under the Felon-Hiring Rule. *Peoplemark*, 732 F.3d at 592. And that risk is far from theoretical: EEOC already has filed a "charge of discrimination" against DPS for applying the across-the-board no-felon policy required by state law. *See* FAC ¶ 37 & Ex. C.

2

### SUMMARY OF ARGUMENT

EEOC cannot seem to make up its mind. It desperately wants to force employers to abandon their categorical no-felons policies, and it wants federal courts to afford deferential effect to the thoroughness of its "enforcement guidance." But when confronted with an APA suit by an employer that cannot be bullied into compliance, EEOC all of sudden wants this Court to believe that its Felon-Hiring Rule is just a bunch of precatory musings that cannot have more than a contingent effect on anyone. Whatever else might be said about the Commission's tactics, they do not sum to a valid jurisdictional objection.

I.    The State has standing for two reasons. First, Texas employs hundreds of thousands of people, and it receives thousands of job applications every year. In processing those job applications, the State's agencies routinely apply the no-felons policies required by state law and prohibited by the Felon-Hiring Rule. That conflict makes the State an "object" of the Commission's administrative action and easily satisfies the standing requirements of Article III. Any doubt about the concreteness of the State's injury is resolved by the fact that EEOC already has launched a "charge of discrimination" against DPS for categorically refusing to hire felons.

Second, the State has standing because EEOC cannot attempt to both change the State's hiring policies and nonetheless object to the State's standing to challenge that attempt. Both the D.C. Circuit and the Seventh Circuit have rejected EEOC's have-and-eat-its-cake strategy, and this Court should do so too.

II.    The State's claims are ripe. This is a facial challenge to EEOC's rule, and as such, it is quintessentially fit for review. The Commission's principal argument to the contrary is that further factual development is necessary to differentiate between the State's lawful no-felons policies (for example, those barring "a child predator [from] working at a school") and its unlawful ones. MTD at 16. But it is far too late to rehabilitate the Felon-Hiring Rule by suggesting that the EEOC

was willing to recognize *any* exceptions — even commonsense exceptions — to its expansive view of disparate impact. In fact, the Felon-Hiring Rule held that a preschool *cannot* impose Texas's across-the-board policy against hiring child predators. Factual development will do nothing to ease the conflict between EEOC's atextual interpretation of the law and Texas's refusal to follow it.

**III.**    Finally, the Felon-Hiring Rule is a "final agency action" made reviewable by 5 U.S.C. § 704. An unbroken line of cases dating back decades holds that "guidance" documents are reviewable to the extent they bind the agency's staff or force regulated entities to change their behavior. The Felon-Hiring Rule does both.

The Commission's sole counterargument is that the Felon-Hiring Rule is unreviewable because it is not a "binding" "legislative rule." In a decision that EEOC oddly neglects to mention, the D.C. Circuit repudiated that argument. And the Commission cites no decision from any court that ever has agreed with it. This Court should not be the first.

## ARGUMENT

### I.    THE STATE HAS STANDING

#### A.    The State's Injuries Are Concrete, Traceable, and Redressable

The State easily satisfies the constitutional minimum for standing to challenge EEOC's Felon-Hiring Rule. Article III requires only an injury, caused by the agency, which a court can redress. *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). And when the plaintiff is "an object of the [agency's] action," "there is ordinarily little question that the action . . . has caused him injury, and that a judgment preventing . . . the action will redress it." *Id.* at 561–62. Here, there is no doubt that the State of Texas is "an object of the [EEOC's] action." The State employs hundreds of thousands of people, *see* FAC ¶¶ 23–30, and as an employer, the State is squarely the "object" of the Felon-Hiring Rule, *see, e.g.,* FAC Ex. A at 8–20 (purporting to prohibit all employers from using categorical no-felons policies). In fact, EEOC singled out employers like the State of

4

Texas who categorically refuse to hire felons pursuant to state "laws and/or regulations that restrict or prohibit the employment of individuals with records of certain criminal conduct." *Id.* at 24. Because the State-qua-employer is an "object" of the EEOC's action, all three of the constitutional standing requirements are easily satisfied. *See Lujan*, 504 U.S. at 561–62.

Those injuries could not be more concrete and certain. *Cf.* MTD at 12 (arguing the State's injury is "speculative"). For example, the Texas Department of Public Safety categorically refuses to hire *anyone* convicted of *any* felony (and some misdemeanors). *See* FAC ¶ 24. And on November 1, 2013, EEOC sent a "charge of discrimination" to DPS for categorically refusing to hire a convicted felon named William R. Smith. *See id.* ¶ 37 & Ex. C.

Mr. Smith applied to work as a DPS "Customer Service Representative," a position that would have given him access to a statewide database containing identifying information for 26 million Texans (including their names, addresses, dates of birth, social security numbers, and copies of their birth certificates). FAC ¶ 37. In his job application, Mr. Smith disclosed a previous felony conviction for the unauthorized use of a motor vehicle. FAC Ex. C at 2. Consistent with state law and its policy judgment that convicted felons never should have access to sensitive information regarding every man, woman, and child in the State, DPS categorically refused to consider Mr. Smith's application and rejected it without using any of the "individualized" factors that EEOC's rule commands. FAC ¶ 37. And because DPS refused to accede to EEOC's unlawful interpretation of Title VII, the State is presently on the receiving end of a "charge of discrimination." *Id.* Moreover, EEOC authorized Mr. Smith to bring a private lawsuit against DPS. *See id.*; FAC Ex. D. That is more than sufficient to constitute a concrete "injury" that was caused by the unlawful Felon-Hiring Rule.

**B.    EEOC's Counterarguments Are Meritless**

**1.**    In all events, it does not matter whether EEOC, Defendant Holder, or a private individual is threatening to enforce the Commission's Felon-Hiring Rule. *Compare* MTD at 11–13 (arguing the opposite), *with Owner-Operator Indep. Drivers Ass'n v. Federal Motor Carrier Safety Admin.*, 656 F.3d 580, 58–86 (7th Cir. 2011) (considering and rejecting the same standing argument that Defendants raise here).    In *Owner-Operator*, truck drivers challenged a rule that regulated the number of hours they could operate their vehicles, and the agency argued that the plaintiffs' injury was "speculative" because they were not presently subject to an enforcement action. *Id.* at 586.    The court of appeals rejected the agency's standing objection because it was part of the federal agency's strategy to eat cake and have it too:

> The Agency's standing argument . . . ignores the very idea that it advances to justify adopting the [] rule in the first place: a punitive stick (it says) is necessary to increase compliance with [the agency's] regulations.    The [agency's] rule aims to alter truck drivers' behavior now to avoid a remedial directive in the future. . . .    In the end, it strikes us as odd that the Agency is arguing that it must have a strict rule *now* to get truck drivers to be more compliant with [the agency's] rules, but at the same time it is asserting that these rules are not meant to change anyone's immediate behavior enough to confer standing to challenge that regulation.

*Id.* at 586 (emphasis in original); *see also Stilwell v. Office of Thrift Supervision*, 569 F.3d 514, 518 (D.C. Cir. 2009) (finding it "more than a little ironic" that a federal agency "would suggest Petitioners lack standing and then, later in the same brief," label the petitioner a "prime example" of the "very problem the [r]ule was intended to address" (internal quotation marks omitted)).

So too here.    EEOC apparently thinks that Texas's categorical refusal to hire felons for certain jobs — like those allowing access to statewide databases containing sensitive personal information for all 26 million men, women, and children in the State — necessitated a rule to condemn the practice as "unlawful." *See* FAC Ex. A.    The Commission asserts an urgent "interest" in stopping the State from following state law insofar as it categorically bars felons from employment, *id.* at 6, 24, and the Commission wields "a punitive stick . . . to increase compliance

with" its Felon-Hiring Rule, *Owner-Operator*, 656 F.3d at 586; *see* FAC ¶¶ 17–22 (listing examples of EEOC's punitive enforcement tactics).  It is "more than a little ironic," *Stilwell*, 569 F.3d at 518, to claim that the State nonetheless incurs no injury from the EEOC's efforts to preempt Texas law and to change the hiring policies for the State's police officers, youth-correction officers, state-supported-living-center employees, General Land Office employees, lottery officials, game wardens, and school teachers.

**2.**      For at least three independent reasons, it is facile to suggest that Title VII, not EEOC's Felon-Hiring Rule, preempts Texas's no-felons policies.  *Cf.* MTD at 10–11.  First, Title VII says nothing about an employer's categorical refusal to hire felons.  To the extent that categorical refusal constitutes an unlawful employment practice, it is solely on account of EEOC's say-so in the Felon-Hiring Rule.  *Compare* FAC Ex. A at 9, 18–20 (purporting to prohibit categorical no-felon policies and requiring "individualized assessments" of all felons for all jobs), *with* 42 U.S.C. § 2000e-2(k) (discussing disparate impact without mentioning categorical no-felon policies or requiring "individualized assessments" of felons' job applications).

Second, Title VII says nothing about whether EEOC's staff should impose abusive and sanctionable litigations tactics — under the guise of an administrative "investigation" — when an employer categorically refuses to hire felons.   Again, that binding directive comes solely from the Felon-Hiring Rule and its enforcement by EEOC staff.  It is the Commission's effort to launch "*frivolous*" and "*groundless*" allegations against employers, *Peoplemark*, 732 F.3d at 592 — and its promise to bring similar suits in the future, *see* FAC ¶ 35 — that injures the State.

Third and finally, it is always true that Congress's statute — rather than the agency's interpretation of it — carries preemptive force.  *See, e.g.*, *Wyeth v. Levine*, 555 U.S. 555, 573 (2009) (rejecting "an overbroad view of an agency's power to pre-empt state law" because congressional intent to preempt is all that matters); MTD at 11 (asserting that obvious fact).  But that does not

mean that regulated entities lack standing when agencies nonetheless purport to promulgate rules that preempt state law. *See, e.g., Illinois Dep't of Transp. v. Hinson*, 122 F.3d 370, 372 (7th Cir. 1997) (State has standing where it "complains that a federal regulation will preempt one of the state's laws"); *Alaska v. United States Dep't of Transp.*, 868 F.2d 441, 443 (D.C. Cir. 1989) (agreeing that the State has standing to seek declaratory and injunctive relief "because DOT claims that its rules preempt state consumer protection statutes, [and therefore] the States have suffered injury to their sovereign power to enforce state law"); *cf. Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 607–08 (1982) (stating, in the context of state standing in *parens patriae* actions, that States have an "interest in securing observance of the terms under which it participates in the federal system"). The bottom line is that the federal agency has arrogated to itself the power to divine a Felon-Hiring Rule that has no basis in the text of Title VII, and that federal agency has directed the State to disregard duly enacted state laws and conform its behavior to the federal rule. *See* FAC Ex. A at 24. That is more than sufficient to create an "injury" that confers standing.

## II.    THE STATE'S CLAIMS ARE RIPE

### A.    The State's Claims Are Presumptively Reviewable, And EEOC Does Not Attempt To Rebut That Presumption

EEOC's ripeness objections also are easily dismissed.  For at least fifty years, the Supreme Court has held that it is the agency's burden to prove that a statute precludes pre-enforcement review of its rule:

> The first question we consider is whether Congress . . . intended to forbid pre-enforcement review of this sort of regulation promulgated by the [agency].  The question is phrased in terms of 'prohibition' rather than 'authorization' because a survey of our cases shows that judicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress.

*Abbott Labs. v. Gardner*, 387 U.S. 136, 139–40 (1967).  The Court emphasized that the agency's burden is particularly heavy because the availability of pre-enforcement review "ha[s] been

reinforced by the enactment of the Administrative Procedure Act, which embodies the basic presumption of judicial review." *Id.* at 140. The Court further held that the APA "manifests a congressional intention that [its judicial-review provisions] cover a broad spectrum of administrative actions," and that the APA's "'generous review provisions' must be given a 'hospitable' interpretation." *Id.* at 140–41 (quoting *Shaughnessy v. Pedreiro*, 349 U.S. 48, 51 (1955)).

Where as here Congress did nothing to prohibit the State from seeking pre-enforcement review of the Felon-Hiring Rule, the ripeness inquiry all but disappears, and pre-enforcement review is "the norm." *See, e.g.*, *Owner-Operator*, 656 F.3d at 586 ("In the decades since *Abbott Laboratories*, pre-enforcement review of final rules has become the norm."). To create an exception to that norm, EEOC must prove that the issues somehow are not fit for judicial review and that the balance of hardships somehow tips in EEOC's favor. *Abbott Labs.*, 387 U.S. at 149; *Sabre, Inc. v. Department of Transp.*, 429 F.3d 1113, 1119–20 (D.C. Cir. 2005); *Owner-Operator*, 656 F.3d at 586–87. The Commission cannot meet that standard.

### 1. *The State's claims are fit for review*

**a.** First, the State's claims are fit for review because they are purely legal, facial challenges to the Felon-Hiring Rule. The fitness-for-review question turns on whether the case "would benefit from further factual development" and "whether judicial intervention would inappropriately interfere with further administrative action." *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 733 (1998); *see also Whitman v. American Trucking Ass'ns*, 531 U.S. 457, 479–80 (2001). These considerations protect "the agency's interest in crystallizing its policy before that policy is subjected to judicial review and the court's interests in avoiding unnecessary adjudication and in deciding issues in a concrete setting." *Eagle-Picher Indus., Inc. v. EPA*, 759 F.2d 905, 915 (D.C. Cir. 1985).

Here, Texas is *not* seeking a declaration that its no-felon policies "are, and always will be, lawful hiring practices" because they never create statistical disparities in "the relevant labor market."

9

MTD at 14–15.  Rather, the State is seeking a declaration that no-felon policies never can create unlawful disparate impacts because (a) they always are justified by business necessity and job-relatedness (Count I); (b) Congress specifically disclaimed EEOC's authority to promulgate a contrary rule (Count II); and (c) the private-party disparate-impact suits contemplated by EEOC's Felon-Hiring Rule are unconstitutional (Count III).  None of those claims "require[] the Court to answer various factual questions."  MTD at 15.

To the contrary, there are only two facts that matter.  First, state law and policy require many Texas employers to impose categorical bans against convicted felons who apply for jobs.  *See* FAC ¶¶ 23–31.  And second, the Defendants believe that the State's policies are unlawful because they never allow the State to make "individualized" and race-conscious assessments of job applicants that EEOC somehow thinks Title VII requires.  *See* FAC Ex. A at 18–20.  Thus, the case poses a conflict of two mutually incompatible interpretations of Title VII.  As the D.C. Circuit held in the same situation:

> [T]he substantive issues [plaintiff] raises are undoubtedly 'purely legal' in the relevant sense.  They turn on questions of statutory construction, and the interpretations chosen by the [agency] and proposed by [plaintiff] both constitute bright-line rules, impervious, so far as appears, to factual variation.  This in itself largely answers the question whether delay might afford additional 'concreteness'; it would not.

*Teva Pharms. USA, Inc. v. Sebelius*, 595 F.3d 1303, 1308–09 (D.C. Cir. 2010) (internal citation and alteration omitted); *see also, e.g.*, *Shays v. FEC*, 414 F.3d 76, 95 (D.C. Cir. 2005).

**b.**    It is too late for the EEOC's lawyers to manufacture the need for further factual development by asserting nuances that the Commission itself rejected in the Felon-Hiring Rule.  *See Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2166–67 (2012) (rejecting the agency's interpretation of its own rule as "nothing more than a convenient litigating position," and a "*post hoc* rationalization advanced by an agency seeking to defend past agency action against attack" (internal quotation marks and alteration omitted)).  For example, the Commission's motion to dismiss asserts

10

(at 16) that "[n]o one wants a child predator working at a school" — presumably in an effort to seem reasonable and offer one (if only one) safe harbor for Texas's categorical no-felon policies. But EEOC's Felon-Hiring Rule says the exact opposite.

The rule offers the hypothetical example of "Elijah," an African American man who wants to bring a disparate-impact suit against a preschool for refusing to hire him on account of his felony conviction for "indecent exposure two years ago." FAC Ex. A at 24. Even on those facts, the Felon-Hiring Rule says that the preschool *cannot* impose a categorical ban against hiring convicted sex offenders like Elijah. *Id.* at 18–20. To the contrary, EEOC would "conduct[] an investigation" — thus raising the specter of the Commission's frivolous and sanctionable enforcement tactics, *see Peoplemark*, 732 F.3d at 592 — and force the preschool to carry its burden to prove "the exclusion is job related for the position in question and consistent with business necessity because it addresses serious safety risks of employment in a position involving regular contact with children." FAC Ex. A at 24. And if the preschool cannot carry its burden to show that (a) Elijah would have "regular contact" with the children and that (b) Elijah's indecent-exposure conviction is sufficiently recent to be probative of his riskiness as a child predator, EEOC staff would be bound by the Felon-Hiring Rule to find an unlawful employment practice. *See id.* at 15, 17, 24. While EEOC's lawyers now appear to recognize the commonsense proposition that "[n]o one" would want Elijah to work in the preschool under any set of circumstances, MTD at 16, the Felon-Hiring Rule says otherwise.

### 2.    *The balance of hardships tips decidedly in the State's favor*

**a.**    EEOC has pointed to no institutional interest in delaying resolution of this case. "[T]he court has — in accordance with the [APA's] presumption of reviewability — repeatedly held that absent institutional interests favoring the postponement of review, a petitioner need not show that delay would impose individual hardship to show ripeness." *Sabre*, 429 F.3d at 1120. In *Sabre*, the Department of Transportation asserted jurisdiction over certain "ticket agents," and it stated that

11

it would take "appropriate actions" in the future to enforce the law against unlawful "ticket agents." *Id.* at 1117. Sabre sought pre-enforcement review, and the department objected on ripeness grounds because it was unclear whether Sabre was covered by the rule, and even it if was, what "appropriate actions" the department might want to take. *Id.* at 1119. The D.C. Circuit rejected the ripeness objection because "[t]he Department has failed to offer plausible reasons why it has an institutional interest in postponing review." *Id.* at 1120. While Sabre had no obligation to show "hardship," it nonetheless could do so: in particular, Sabre claimed that "a high probability of adverse government action" against it as a "ticket agent" would force Sabre to abandon "marketing plans, which it could otherwise implement presumably at considerable profit." *Id.* at 1118–20.

This is an *a fortiori* case. There is no dispute whether the State of Texas is regulated by the Felon-Hiring Rule. *Cf. Sabre*, 429 F.3d at 1118 (noting whole dispute was whether Sabre fell within the ambit of department's "ticket agent" rule). There is no dispute whether the State of Texas is in violation of the Felon-Hiring Rule. *Cf. id.* at 1117 (noting department's view that Sabre remained "free to operate its business as it wishes"). Plus, there is no dispute that the State of Texas stands to lose much more than Sabre did, and that the State's "hardship" is thus much higher. While Sabre faced only the potential for "appropriate actions" from a department that threatened an unspecified portion of the company's profit margins, *id.*, the State faces the promise of investigations by an EEOC with a proven track record of "*frivolous*" and "*groundless*" enforcement tactics, *Peoplemark*, 732 F.3d at 592; the reputational harm associated with allegations of racial discrimination; and unconstitutional damages actions by individuals like William R. Smith, which infringe Texas's sovereign immunity.

**b.**    Moreover, the Felon-Hiring Rule places the State and its constituent agencies on the horns of a dilemma, which is more than sufficient to obviate any ripeness concerns. For example, in *Roark & Hardee LP v. City of Austin*, 522 F.3d 533 (5th Cir. 2008), the Fifth Circuit held that the

challenged ordinance was ripe for judicial review because it forced owners and operators of public places to choose between complying with an allegedly invalid law or to risk a $2000 fine. *See also Abbott Labs.*, 387 U.S. at 152 ("These regulations purport to give an authoritative interpretation of a statutory provision that has a direct effect on the day-to-day business of all prescription drug companies; its promulgation puts petitioners in a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate."); *Ohio Forestry*, 523 U.S. at 734 ("hardship" can arise from purely legal harms or the harm of being "force[d] . . . to modify [one's] behavior in order to avoid future adverse consequences"); *Texas v. United States*, 497 F.3d 491, 499 (5th Cir. 2007) ("If Texas cannot challenge the Procedures in this lawsuit, the State is forced to choose one of two undesirable options: participate in an allegedly invalid process that eliminates a procedural safeguard promised by Congress, or eschew the process with the hope of invalidating it in the future, which risks the approval of gaming procedures in which the state had no input."); *Reckitt Benckiser v. EPA*, 613 F.3d 1131, 1136–41 (D.C. Cir. 2010) (holding ripe agency's letter asserting authority to bring future enforcement proceedings because it creates "compliance 'dilemma'" for the company).

The dilemma caused by the Felon-Hiring Rule is even starker because EEOC is trying to do much more than levy a $2,000 fine. The whole point of its Felon-Hiring Rule is to coerce the State into abandoning the hiring policies adopted by the Texas Legislature by threatening frivolous allegations of discrimination and abusive enforcement actions in "high-profile" cases. FAC ¶ 35; *see Owner-Operator*, 656 F.3d at 586–87 (finding ripeness where whole point of rule is to force regulated entities to change their behaviors); *Clean Air Implementation Project v. EPA*, 150 F.3d 1200, 1205 (D.C. Cir. 1998) (finding ripeness where agency action forces petitioners to "change their behavior or risk costly sanctions"). That effort to modify the State's behavior independently suffices to make the case ripe.

13

**c.**    Against all of that, EEOC can point to no "institutional interest" in delaying resolution of this case. *Sabre*, 429 F.3d at 1120.  An agency plausibly can invoke the ripeness doctrine if its rule is tentative or preliminary:  "the [ripeness] doctrine enables agencies to deliberate and craft policy free of judicial interference until administrative action has a direct and immediate impact.  Judicial intervention into agency decisionmaking at an earlier stage denies the agency an opportunity to correct its own mistakes and to apply its expertise." *Ciba-Geigy Corp. v. EPA*, 801 F.2d 430, 434 (D.C. Cir. 1986).  But those concerns are inapposite here.  EEOC admits that it already has deliberated and (by a formal 4-1 vote) formalized its policy choice in the Felon-Hiring Rule.  And far from "correct[ing] its own mistakes," EEOC has doubled down on the rule after the Third Circuit dismissed the Commission's interpretation of Title VII as "terse" and "provid[ing] nothing of substance." *El*, 479 F.3d at 248.  Thus, there is no evidence that EEOC will recognize the error of its ways and rescind the Felon-Hiring Rule without this Court's intervention.

**B.    EEOC's Counterarguments Lack Merit**

EEOC offers three counterarguments, each of which is easily dismissed.

**1.**    First, EEOC shrugs off the pre-enforcement hardships that the Felon-Hiring Rule imposes on the State of Texas.  Don't worry, it says, because it is possible that the State's no-felons policies do not "ha[ve] a statistically significant differential effect . . . on a protected class."  MTD at 15.  And even if the policies create a disparate impact based on race, EEOC says that it is possible that its staff could conduct "a fact-specific inquiry" for job-relatedness and business necessity and determine, in its administrative grace, that it can bless Texas's policies anyway. *Id.* at 17.

Talk about cold comfort.  What EEOC cannot bring itself to acknowledge is that the answers to its "fact-specific inquir[ies]" are knowable only after the Commission brings the full weight of its enforcement apparatus down on employers' shoulders.  That is why the Commission refuses now to approve *any* of the State's categorical no-felons policies — *even* for jobs like State

Troopers.[2]  And that means employers like Texas have to decide whether to keep their no-felon policies and risk EEOC enforcement actions — replete with "*frivolous*" and "*groundless*" allegations of racial discrimination, *Peoplemark*, 732 F.3d at 592 — or instead to jettison the policies and save themselves from bruising run-ins with the Commission and its staff.  Staring down the barrel of the Commission's Felon-Hiring Rule, many employers would choose the latter.  But either way, EEOC cannot put employers to that choice while also claiming that the dispute is not ripe.

**2.**    Next, EEOC argues that Count III is unripe because "[n]umerous contingencies would have to come to pass for [the State] to face" a private-damages suit from a felon who alleges that Texas's categorical no-felons policies violate the Felon-Hiring Rule.  MTD at 19.  Again, that perversion of the ripeness doctrine runs against 50 years of Supreme Court precedent:

> [A]s *Abbott Laboratories* itself demonstrated, hardship need not take the form of an actual enforcement action; the threat of enforcement is sufficient because the law is in force the moment it becomes effective and a person made to live in the shadow of a law that she believes to be invalid should not be compelled to wait and see if a remedial action is coming.

*Owner-Operator*, 656 F.3d at 586 (citing *Abbott Labs.*, 387 U.S. at 150–54).  And in all events, as noted above, the State faces a "concrete threat" of litigation from William R. Smith.  MTD at 20; *see supra* p.5; FAC ¶ 37 & Exs. C–D.

**3.**    Finally, EEOC argues that Count III is unripe because, even without damages actions by individuals like William R. Smith, the State of Texas could be sued under the Felon-Hiring Rule by others (like the EEOC itself).  MTD at 20–21.  That proves far too much because

---

[2] That refusal is particularly noteworthy because EEOC has no problem with *federal* law-enforcement agencies that apply categorical no-felons policies.  For example, the FBI says that "conviction of a felony" "*will automatically disqualify*" applicants for all jobs with the Bureau.  FAC Ex. B at 1 (emphasis added).  That means that any felony — of any degree of seriousness, of any age, and of any degree of job-relatedness — "will automatically disqualify" the applicant from the most menial job in an agency with 36,000 employees.  And the Felon-Hiring Rule says that is ok.  *See* FAC Ex. A at 20–23.  But somehow, the same rule says that the State of Texas cannot impose the FBI's hiring policy on the men and women charged with carrying firearms and serving as peace officers on the front line of the State's public-safety battlefield.  *See* MTD at 16–17 (arguing that the State cannot impose categorical no-hiring policies against felons convicted of "unlicensed acupuncture" and "littering in a cave," even though the FBI presumably can).

the exact same objection would render unripe *every* comparable violation of the Eleventh Amendment. For example, in *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996), the Court held that the Eleventh Amendment barred private damages actions against the State of Florida under the Indian Gaming Regulatory Act. The Court went out of its way to recognize that "[t]he Federal Government can bring suit in federal court against a State" under the Act, *id.* at 71 n.14 (citing *United States v. Texas*, 143 U.S. 621, 644–45 (1892)) — and that fact did nothing to render unripe the State's objections to the *private party's* suit under the same statute. The federal government likewise can sue the States to enforce the Religious Freedom Restoration Act, the Age Discrimination in Employment Act, and the Americans with Disabilities Act. But again, that did nothing to render unripe the State's objections to *private parties'* suits under all three statutes, nor did it prevent the Court from holding that those suits were unconstitutional. *See City of Boerne v. Flores*, 521 U.S. 507 (1997) (RFRA); *Kimel v. Florida Bd. of Regents*, 528 U.S. 62 (2000) (ADEA); *Board of Trs. Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001) (title I of the ADA); *accord Sabre*, 429 F.3d at 1121 (finding irrelevant fact that Sabre had independent obligation not to commit deceptive trade practices). If EEOC's ripeness objection was correct, all of those landmark Eleventh Amendment decisions would be wrong.

## III. THE FELON-HIRING RULE CONSTITUTES FINAL AGENCY ACTION

Finally, the Felon-Hiring Rule constitutes "final agency action" reviewable under 5 U.S.C. § 704 ("Section 704"). EEOC does not dispute that the rule is an "agency action," which it took through a formal 4-1 vote. *See* FAC ¶ 10. And it does not dispute that the rule is "final" in every conceivable meaning of the word; the Felon-Hiring Rule undisputedly represents the culmination of the Commission's decisionmaking process and hence the EEOC's "final" (if misguided) pronouncement on the issue. Instead, the Commission appears to think that the Felon-Hiring Rule does not constitute "final agency action" because "no 'legal consequences' flow from it." MTD at 7.

16

Again, the Commission wants to have its cake and eat it too. Employers like Peoplemark — that have been on the receiving end of EEOC's sanctionable conduct and frivolous allegations of racial discrimination under the Felon-Hiring Rule — obviously would disagree that "no 'legal consequences' flow[ed]" from EEOC's deeply flawed interpretation of Title VII. And the Commission routinely goes into federal court and demands "deference" for its interpretation of Title VII; just last Term for example, EEOC *twice* urged the Supreme Court of the United States to afford legal effect to guidance documents that were materially identical to the Felon-Hiring Rule. But when it comes to defending a facial challenge to its actions, EEOC all of a sudden thinks its work isn't worth the paper it was printed on. Its gamesmanship runs contrary to decades' worth of precedent under the APA and should be rejected.

## A.    The Felon-Hiring Rule Is Reviewable Under Section 704

The Supreme Court has held that agency actions are "final" and hence reviewable under Section 704 where they mark the "consummation" of the agency's decisionmaking progress, and "legal consequences will flow" from what the agency did. *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). The Commission does not contest that its Felon-Hiring Rule marks the "consummation" of its rulemaking process, *see* MTD at 7; accordingly, its Section 704 objection boils down to whether the rule generates "legal consequences." It does.

**1.**    The courts long have held that agency "guidance" documents like the Felon-Hiring Rule constitute final and reviewable agency actions under Section 704. For example, in *Cohen v. United States*, 578 F.3d 1 (D.C. Cir. 2009), the court held that an IRS "guidance" document entitled "Notice 2006-50" constituted final agency action.[3] That document "announce[d]" the IRS's interpretation of the Tax Code and "provide[d] related guidance to taxpayers and collectors."

---

[3] The D.C. Circuit subsequently granted rehearing en banc on other grounds and affirmed the panel's decision. *See* 650 F.3d 717 (D.C. Cir. 2011) (en banc); *see also id.* at 735 (noting that the en banc court saw no need to reconsider the panel's analysis under Section 704).

Notice 2006-50, 2006-25 I.R.B. 1141, 2006-1 C.B. 1141, 2006 WL 1452787 (June 19, 2006). That "guidance" included instructions on how taxpayers could seek certain refunds, it established a "safe harbor" for refunds, and it created administrative procedures for aggrieved taxpayers. *See id.* Critically, legal consequences flowed from the IRS's "guidance" insofar as it used "mandatory words like 'will' instead of permissive words like 'may'" to describe how the agency's staff would process refund claims. *Cohen*, 578 F.3d at 7; *see also Syncor Int'l Corp. v. Shalala*, 127 F.3d 90, 94 (D.C. Cir. 1997) ("The primary distinction between a substantive rule — really any rule — and a general statement of policy . . . turns on whether an agency intends to bind itself to a particular legal position."); *American Bus Ass'n v. United States*, 627 F.2d 525, 532 (D.C. Cir. 1980) (similar). Like the EEOC here, the IRS tried to insulate its rule from judicial review by backing away from it and disclaiming it as nothing more than worthless words; but the D.C. Circuit held "[t]hat's just mean" because it "places taxpayers in a virtual house of mirrors" where they can't figure out which of the agency's instructions to heed. *Cohen*, 578 F.3d at 9.

Likewise, the court held that an agency's "guidance" document constituted final agency action in *Appalachian Power Co. v. EPA*, 208 F.3d 1015 (D.C. Cir. 2000). There the agency used its guidance to announce a "multi-factor, case-by-case analysis" that EPA's staff would apply to determine the adequacy of States' air-quality monitoring standards. *Id.* at 1022. The court found irrelevant that answers to EPA's "case-by-case analysis" turned on facts that were unknowable *ex ante. Id.* at 1022–23. All that mattered, the court held, is that the agency directed States to search their laws and policies, to find standards that conflicted with EPA's analysis of the Clean Air Act, and to replace them in accordance with the "guidance" document. *Id.* at 1023. The court also found irrelevant the fact that EPA included the following disclaimer at the end of its document: "'The policies set forth in this paper are intended solely as guidance, do not represent final Agency action, and cannot be relied upon to create any rights enforceable by any party.'" *Id.* (quoting

guidance document).  Even that disclaimer did nothing to render the guidance non-final under

Section 704 because legal consequences nonetheless flowed from it:

> Insofar as the "policies" mentioned in the disclaimer consist of requiring State
> permitting authorities to search for deficiencies in existing monitoring regulations
> and replace them through terms and conditions of a permit, "rights" may not be
> created but "obligations" certainly are — obligations on the part of the State
> regulators and those they regulate.  At any rate, the entire Guidance, from beginning
> to end — except the [disclaimer] paragraph — reads like a ukase.  It commands, it
> requires, it orders, it dictates.  Through the Guidance, EPA has given the States their
> "marching orders" and EPA expects the States to fall in line.

*Id.*

The court of appeals yet again held that an administrative guidance document constituted

final and reviewable agency action in *Barrick Goldstrike Mines v. Browner*, 215 F.3d 45 (D.C. Cir. 2000).

There the agency's guidance interpreted an environmental statute to allow metal-mining companies

to release a *de minimis* level of toxic chemicals without triggering various statutory reporting

requirements.  If Barrick and other mines failed to conform to the statutory interpretation

announced in the guidance, the agency could bring enforcement actions against them.  *Id.* at 47–48.

EPA tried to avoid Barrick's facial challenge to the guidance by walking away from it as non-

binding, but the D.C. Circuit sternly rebuked that about-face:  "That the issuance of a guideline or

guidance may constitute final agency action has been settled in this circuit for many years."  *Id.* at 48

(citing, *inter alia*, *Better Gov't Ass'n v. Department of State*, 780 F.2d 86 (D.C. Cir. 1986)); *see also Better*

*Gov't*, 780 F.2d at 93 (rejecting proposition that agency can escape judicial review under Section 704

by labeling its rule an "informal" guidance document).  And the court concluded that Section 704's

final-agency-action requirement was satisfied because the guidance bound the agency's staff in its

application of the *de minimis* exception to Barrick's chemicals.  215 F.3d at 48 ("Here there is no

doubt that EPA will refuse to apply the *de minimis* exception to Barrick's waste rock and that its

refusal to do so has legal consequences — namely, that Barrick is bound to keep track of its

movement of waste rock and report the movements as releases of toxic substances."); *see also NRDC*

*v. EPA*, 643 F.3d 311, 319–20 (D.C. Cir. 2011) ("guidance" document constitutes final agency action reviewable under Section 704 insofar as it restrains administrative staff's discretion).

And, at the risk of belaboring the point, the regional circuits uniformly have interpreted Section 704 likewise to extend to "guidance" documents like the Felon-Hiring Rule.  For example, in *Manufactured Housing Institute v. EPA*, 467 F.3d 391 (4th Cir. 2006), the court of appeals held that a "policy" "memorandum" was reviewable as final agency action based on the agency's threatened enforcement of it.  The policy memorandum enunciated a list of factors that States should use to determine, on a "case-by-case" basis, whether a particular housing complex is "large" and thus excludable from a general ban on selling water to tenants.  *Id.* at 397.  Following a familiar pattern, the agency tried to walk away from the policy in court, shrugging off its guidance as "just a suggestion" that carries no binding effect and that "leaves decisions to the States on a case-by-case basis." *Id.*  The court rejected the agency's backpedalling out of hand because "EPA's threats levied against at least two States regarding their [water] oversight programs prove that States are not free to treat this EPA policy as a mere suggestion." *Id.*  Given those threats — and the home-builders' "fear of subjecting themselves to EPA regulations" — the court found it "self-evident" that the guidance document "gives rise to legal rights and consequences." *Id.* at 398; *see also Atchison, Topeka & Santa Fe Ry. v. Pena*, 44 F.3d 437, 441 (7th Cir. 1994) (holding that a letter from the agency's chief counsel constituted final agency action because it "made absolutely clear that [agency staff] would enforce the Act in accordance with its new interpretation, thereby compelling the railroads to alter their operations to comply with the [agency's] directive or face stiff penalties for noncompliance").

2.      Compared to *Cohen*, *Syncor*, *American Bus*, *Appalachian Power*, *Barrick*, *NRDC*, *Manufactured Housing*, and *Atchison*, this is an easy case.  The Felon-Hiring Rule includes page after page of the unconditional and "mandatory" language that so often is "decisive" of the Section 704 issue.  *Cohen*, 578 F.3d at 7; *see, e.g.*, FAC ¶ 13; FAC Ex. A at 8 ("EEOC would find reasonable cause

20

to believe that discrimination occurred."); *id.* at 10 (EEOC "will" "investigate" "criminal record exclusions"); *id.* ("The Commission will assess relevant evidence when making a determination of disparate impact, including [various specific factors]."); *id.* ("An employer's evidence of a racially balanced workforce will not be enough to disprove disparate impact."); *id.* ("[I]n determining disparate impact, the Commission will assess the probative value of an employer's applicant data."); *id.* ("[T]he Commission will closely consider whether an employer has a reputation in the community for excluding individuals with criminal records."); *id.* ("The Commission will determine the persuasiveness of such evidence on a case-by-case basis."); *id.* at 12 ("[A]n exclusion based on an arrest, in itself, is not job related and consistent with business necessity."); *id.* ("[E]mployers [may] not [] rely on arrest records" as "proof of criminal conduct."); *id.* ("[A]n arrest record standing alone may not be used to deny an employment opportunity."); *id.* ("EEOC would find reasonable cause to believe that his employer violated Title VII."); *id.* at 14 ("To establish that a criminal conduct exclusion that has a disparate impact is job related and consistent with business necessity under Title VII, the employer needs to show that the policy operates to effectively link specific criminal conduct, and its dangers, with the risks inherent in the duties of a particular position."); *id.* ("Such a screen would need to be narrowly tailored to identify criminal conduct with a demonstrably tight nexus to the position in question."); *id.* at 15 ("Absent a validation study that meets the Uniform Guidelines' standards, the [specifically enumerated] factors provide the starting point for analyzing how specific criminal conduct may be linked to particular positions."); *id.* ("Careful consideration of the nature and gravity of the offense or conduct is the first step in determining whether a specific crime may be relevant to concerns about risks in a particular position."); *id.* ("Whether the duration of an exclusion will be sufficiently tailored to satisfy the business necessity standard will depend on the particular facts and circumstances of each case."); *id.* at 16 ("[I]t is important to identify the particular job(s) subject to the exclusion."); *id.* at 17 ("EEOC concludes that there is reasonable

21

cause to believe that the [employer's] policy" violates the Felon-Hiring Rule.); *id.* at 20 ("EEOC finds reasonable cause to believe that Title VII was violated."); *id.* at 21 ("EEOC finds that the policy is" unlawful.).  And the EEOC went out of its way to condemn categorical no-felons policies like Texas's in mandatory terms:  "A policy or practice requiring an automatic, across-the-board exclusion from all employment opportunities because of any criminal conduct is inconsistent with the [enumerated] factors because it does not focus on the dangers of particular crimes and the risks in particular positions."  *Id.* at 16; *see also id.* ("EEOC would find reasonable cause to believe that the blanket exclusion was not job related and consistent with business necessity.").  And an entire section of the Felon-Hiring Rule prohibits Texas from disqualifying felons under *state* law, even when the exact same hiring policy would be lawful if imposed under *federal* law.  *See id.* at 24; FAC ¶ 14; *supra* n.2.  In short, "the entire Guidance, from beginning to end . . .[,] reads like a ukase.  It commands, it requires, it orders, it dictates."  *Appalachian Power*, 208 F.3d at 1023.

But the legal consequences that flow from the Felon-Hiring Rule do not end there.  The Commission expressly intended the rule to bind "EEOC staff who are investigating discrimination charges involving the use of criminal records in employment decisions."  FAC Ex. A at 3; *see Cohen*, 578 F.3d at 7 (agency's intent to bind staff makes rule reviewable under Section 704); *Barrick*, 215 F.3d at 48; *Appalachian Power*, 208 F.3d at 1023 (same); *NRDC*, 643 F.3d at 319–20 (same); *Syncor*, 127 F.3d at 94 (same); *American Bus*, 627 F.2d at 532 (similar).  Moreover, EEOC's rule has direct legal consequences — that bind both the Commission's staff and the Nation's employers — because it creates two safe harbors.  *See* Ex. A at 2; 14; *Cohen*, 578 F.3d at 7 (finding safe harbors probative of finality of agency action).  The fact that the Felon-Hiring Rule directs employers to apply a list of enumerated factors, which EEOC will review on a "case-by-case basis," FAC Ex. A at 10, further supports reviewability of the Commission's final agency action, *Appalachian Power*, 208 F.3d at 1022–23; *Manufactured Housing*, 467 F.3d at 397.  Finally, EEOC could not avoid the finality of the Felon-

Hiring Rule even if it had included a boilerplate disclaimer or an inaccurate label for its action, *see Appalachian Power*, 208 F.3d at 1023; *Barrick*, 215 F.3d at 48; *Better Government*, 780 F.2d at 93; but the fact that the rule does not attempt that feint makes it even easier than the cases above.

### B.    EEOC's Counterarguments Lack Merit

Against all of that, EEOC offers a single, solitary counterargument:  it says the Felon-Hiring Rule is not "final" because it is not "binding."  To be clear, the Commission does not contest that its rule is "binding" in the practical sense — that is, that the rule binds EEOC's staff and the Nation's employers.  *See* Part III.A, *supra*.  Rather, EEOC contends that the Felon-Hiring Rule is not "binding" in the sense that it does not carry the "force of law."  MTD at 6–10.  But the D.C. Circuit expressly has rejected the argument that Section 704 is limited to agency actions that carry the force of law — a fact that the Commission oddly but conveniently neglects to mention.

In *Appalachian Power*, the agency made the exact same argument under Section 704 that EEOC makes here.  *See* 208 F.3d at 1020.  It argued that its guidance document was not a "binding" "legislative rule" because it had not gone through notice-and-comment rulemaking, *cf. United States v. Mead Corp.*, 533 U.S. 218, 229–31 (2001), and that Section 704 withholds judicial review from any agency action that does not qualify as a "legislative rule."  That argument has no basis in the text of Section 704, and the D.C. Circuit rejected it in emphatic terms:

> [W]e have . . . recognized that an agency's other pronouncements can, as a practical matter, have a binding effect.  If an agency acts as if a document issued at headquarters is controlling in the field, if it treats the document in the same manner as it treats a legislative rule, if it bases enforcement actions on the policies or interpretations formulated in the document, if it leads private parties or State permitting authorities to believe that it will declare permits invalid unless they comply with the terms of the document, then the agency's document is for all practical purposes "binding."

*Appalachian Power*, 208 F.3d at 1021 (citing *McLouth Steel Prods. Corp. v. Thomas*, 838 F.2d 1317, 1321 (D.C. Cir. 1988); Robert A. Anthony, *Interpretative Rules, Policy Statements, Guidances, Manuals, and the Like—Should Federal Agencies Use Them to Bind the Public?*, 41 DUKE L.J. 1311, 1328–29 (1992)).

23

For the same reason, *AT&T v. EEOC*, 270 F.3d 973 (D.C. Cir. 2001), does nothing to help EEOC here. In that case, AT&T *conceded* that it could point to no specific action (like the Felon-Hiring Rule) that EEOC had taken. *Id.* at 975 (noting that AT&T instead relied on the Commission's "entire course of . . . actions with respect to the Company's service credit policy"); *cf. Lujan*, 504 U.S. at 568 (parties cannot bring "generalized" and "programmatic" challenges to government action). Much less could AT&T point to anything that EEOC had done that bound its staff's discretion; anything that "shed light upon the Commission's intentions" to enforce its views against AT&T; or anything that forced employers to change their policies. *Id.* at 975–76. In fact, the court relied on *Appalachian Power* for the proposition that a guidance document does constitute final and reviewable agency action under Section 704 where it "inflicts injury or forces a party to change its behavior." *Id.* at 976 (citing *Appalachian Power*, 208 F.3d at 1022). The court simply held that AT&T failed to plead such injuries[4] — a holding that is both unremarkable and unhelpful for EEOC given that it does not dispute that its Felon-Hiring Rule *does* force employers to change their behaviors and *does* bind the Commission's staff "for all practical purposes." *Appalachian Power*, 208 F.3d at 1021.

Finally, there is a good reason that EEOC is unwilling to dispute in this Court that the Felon-Hiring Rule is binding for all practical purposes. That's because it routinely goes into other courts and urges deference for its guidance documents, and it can succeed in that endeavor only if it can show that its staff has taken a "consistent position" in its "enforcement actions" under the guidance document at issue. Br. for the United States as Amicus Curiae at 28, *Vance v. Ball State*, 133 S. Ct. 2434 (2012), No. 11-556 ("EEOC's *Vance* Br.," attached as Ex. A); *see Federal Express Corp. v.*

---

[4] EEOC is wrong to the extent it implies that *AT&T* can be read to hold that all "letters of determination" are not final agency actions. *See* MTD at 9. The D.C. Circuit repeatedly has held the opposite. *See, e.g., CSI Aviation Servs. v. DOT*, 637 F.3d 408 (D.C. Cir. 2011); *City of Dania Beach v. FAA*, 485 F.3d 1181 (D.C. Cir. 2007); *Safe Extensions v. FAA*, 509 F.3d 593 (D.C. Cir. 2007); *Student Loan Marketing Ass'n v. Riley*, 104 F.3d 397 (D.C. Cir. 1997); *Ciba-Geigy*, 801 F.2d at 435–37. And in all events, that implication is irrelevant here because the Felon-Hiring Rule bears no resemblance to the interim letter at issue in *AT&T*.

*Holowecki*, 552 U.S. 389, 399 (2008) (affording some deference to a guidance document that had "been binding on EEOC staff for at least five years"). In fact, just last Term, EEOC *twice* urged the Supreme Court to afford legal effect to positions that the Commission took in its "guidance" documents, and both times, EEOC emphasized that its guidance documents "consistently" bind its staff and their enforcement decisions. *See* EEOC's *Vance* Br. at 26–29; Br. of the United States as Amicus Curiae at 28–30, *University of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517 (2012), No. 12-484 ("EEOC's *Nassar* Br.," attached as Ex. B).

The fact that EEOC wants to retain the ability to tell other courts in other contexts that its guidance deserves deference and legal effect makes it all the more untenable for the Commission to tell this Court the opposite. The Commission is not the first agency to eats its cake while attempting to keep it. But as *Cohen*, *Syncor*, *American Bus*, *Appalachian Power*, *Barrick*, *NRDC*, *Manufactured Housing*, and *Atchison* all make clear, the courts reject that strategy every time an agency is bold enough to try it. This Court should do the same.

## CONCLUSION

Defendants' motion to dismiss should be denied.

Respectfully submitted.

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

JONATHAN F. MITCHELL
Solicitor General

 /s/  Andrew S. Oldham
ANDREW S. OLDHAM
Deputy Solicitor General

ARTHUR C. D'ANDREA
RICHARD B. FARRER
DUSTIN M. HOWELL
Assistant Solicitors General

209 West 14th Street
P.O. Box 12548
Austin, Texas 70711-2548
(512) 936-1700

Dated:  March 18, 2014

## CERTIFICATE OF SERVICE

I hereby certify that, on March 18, 2014, a true and correct copy of the foregoing was served by CM/ECF on:

Justin M. Sandberg, Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Mass. Ave. NW, Rm. 7302
Washington, D.C. 20001
Justin.Sandberg@usdoj.gov


/s/ Andrew S. Oldham
Andrew S. Oldham

**EXHIBITS**

**Tab**

Br. for the United States as Amicus Curiae,
   *Vance v. Ball State*, 133 S. Ct. 2434 (2012), No. 11-556 ..................................................................... A

Br. of the United States as Amicus Curiae,
   *University of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517 (2012), No. 12-484 ................................ B