# EXHIBIT B

American Bar Association
www.supremecourtpreview.org

No. 12-484

# In the Supreme Court of the United States

UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL
CENTER, PETITIONER

*v.*

NAIEL NASSAR

*ON WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT*

**BRIEF FOR THE UNITED STATES AS AMICUS CURIAE
SUPPORTING RESPONDENT**

P. DAVID LOPEZ
*General Counsel*
CAROLYN L. WHEELER
*Acting Associate General
Counsel*
GAIL S. COLEMAN
*Attorney*
*Equal Employment
Opportunity Commission
Washington, D.C. 20507*

DONALD B. VERRILLI, JR.
*Solicitor General
Counsel of Record*
THOMAS E. PEREZ
*Assistant Attorney General*
SRI SRINIVASAN
*Deputy Solicitor General*
MELISSA ARBUS SHERRY
*Assistant to the Solicitor
General*
DENNIS J. DIMSEY
TOVAH R. CALDERON
*Attorneys*

*Department of Justice
Washington, D.C. 20530-0001
SupremeCtBriefs@usdoj.gov
(202) 514-2217*

## QUESTION PRESENTED

Whether Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.*, authorizes a mixed-motive standard for retaliation claims.

(I)

## TABLE OF CONTENTS

Page

Interest of the United States .......................................................1
Statutory provisions involved .....................................................2
Statement..........................................................................................2
Summary of argument ..................................................................7
Argument:
    The 1991 amendments authorize a mixed-motive
    standard for Title VII retaliation claims.............................10
        A. Title VII's "motivating factor" provision applies
           directly to retaliation claims.........................................11
        B. Applying the "motivating factor" provision to
           retaliation claims best effectuates congressional
           intent............................................................................24
        C. The EEOC's longstanding interpretation is
           reasonable and entitled to deference .........................28
        D. Because the 1991 amendments authorize a
           mixed-motive standard for Title VII retaliation
           claims, *Gross* does not control....................................30
Conclusion........................................................................................33
Appendix — Statutory provisions .............................................1a

## TABLE OF AUTHORITIES

Cases:

    *Bibbs* v. *Block*, 778 F.2d 1318 (8th Cir. 1985) ......................25
    *Borgo* v. *Goldin*, 204 F.3d 251 (D.C. Cir. 2000) ...................22
    *Burlington N. & Santa Fe Ry. Co.* v. *White*,
        548 U.S. 53 (2006) ........................................7, 27, 32
    *Carter* v. *Luminant Power Servs. Co.*, No. 12-10642,
        2013 WL 1337365 (Apr. 3, 2013) .................................23, 24
    *CBOCS W., Inc.* v. *Humphries*, 553 U.S. 442
        (2008) .........................................8, 14, 16, 20, 24, 26
    *Crawford* v. *Metropolitan Gov't of Nashville &
        Davidson Cnty.*, 555 U.S. 271 (2009) ...............................27

(III)

IV

Cases—Continued:                                          Page

*Cruz-Packer* v. *Chertoff*, 612 F. Supp. 2d 67 (D.D.C.
   2009) ................................................................18

*Desert Palace, Inc.* v. *Costa*, 539 U.S. 90 (2003)............23, 25

*EEOC* v. *General Lines, Inc.*, 865 F.2d 1555
   (10th Cir. 1989)................................................26

*Federal Express Corp.* v. *Holowecki*, 552 U.S. 389
   (2008) ..........................................................29, 30

*Gomez-Perez* v. *Potter*, 553 U.S. 474
   (2008) .........................................8, 13, 14, 16, 21

*Gross* v. *FBL Fin. Servs., Inc.*, 557 U.S. 167
   (2009) ........................................................*passim*

*Jackson* v. *Birmingham Bd. of Educ.*, 544 U.S. 167
   (2005) ...................................8, 12, 13, 14, 15, 21

*Johnson* v. *Legal Servs. of Ark., Inc.*, 813 F.2d 893
   (8th Cir. 1987)................................................26

*Kasten* v. *Saint-Gobain Performance Plastics Corp.*,
   131 S. Ct. 1325 (2011) ...................................9, 30

*Kubicko* v. *Ogden Logistics Servs.*, 181 F.3d 544
   (4th Cir. 1999)................................................23

*Landgraf* v. *USI Film Prods.*, 511 U.S. 244
   (1994) .....................................................3, 20, 27

*Lindh* v. *Murphy*, 521 U.S. 320 (1997) ...............................21

*McNutt* v. *Board of Trs. of the Univ. of Ill.*, 141 F.3d
   706 (7th Cir. 1998)..........................................23, 26

*Mount Healthy City Sch. Dist. Bd. of Educ.* v. *Doyle*,
   429 U.S. 274 (1977) .............................................31

*NLRB* v. *Transportation Mgmt. Corp.*, 462 U.S. 393
   (1983) .........................................................31

*Patterson* v. *McLean Credit Union*, 491 U.S. 164
   (1989) .........................................................19

*Porter* v. *Natsios*, 414 F.3d 13 (D.C. Cir. 2005)...................22

V

Cases—Continued:                                                    Page

*Powerex Corp.* v. *Reliant Energy Servs., Inc.,*
551 U.S. 224 (2007) ................................................................32

*Price Waterhouse* v. *Hopkins,* 490 U.S. 228 (1989) ..........2, 9

*Robinson* v. *Shell Oil Co.,* 519 U.S. 337 (1997) ..............22, 30

*Ross* v. *Communications Satellite Corp.,* 759 F.2d
355 (4th Cir. 1985)................................................................26

*Smith* v. *Xerox Corp.,* 602 F.3d 320 (5th Cir. 2010) ..........6, 7

*Sullivan* v. *Little Hunting Park, Inc.,* 396 U.S. 229
(1969) ................................................................................8, 12

*Thompson* v. *North Am. Stainless, LP,* 131 S. Ct.
863 (2011) ..................................................................7, 29, 30

*Williams* v. *Boorstin,* 663 F.2d 109 (D.C. Cir. 1980),
cert. denied, 451 U.S. 985 (1981)........................................26

*Woodson* v. *Scott Paper Co.,* 109 F.3d 913
(3d Cir.), cert. denied, 522 U.S. 914 (1997).................23, 26

*Zanders* v. *National R.R. Passenger Corp.,*
898 F.2d 1127 (6th Cir. 1990) ............................................26

Statutes:

Age Discrimination in Employment Act of 1967,
29 U.S.C. 621 *et seq.* ....................................................4, 10, 13

29 U.S.C. 623(a)(1) ............................................................4

29 U.S.C. 633a(a) ..............................................................13

Civil Rights Act of 1964, Pub. L. No. 88-352,
78 Stat. 241:

§ 706(g), 78 Stat. 261 ......................................................20

Title VII, 42 U.S.C. 2000e *et seq.* ....................................12

42 U.S.C. 2000e-2................................................8, 18, 19

42 U.S.C. 2000e-2(a)......................................................2

42 U.S.C. 2000e-2(a)(1) ................................................15

42 U.S.C. 2000e-2(a)(2) ................................................15

VI

Statutes—Continued:                                                          Page

42 U.S.C. 2000e-2(a)-(d)................................................14
42 U.S.C. 2000e-2(b)......................................................15
42 U.S.C. 2000e-2(b)-(d) ...............................................2
42 U.S.C. 2000e-2(c)(1) .................................................15
42 U.S.C. 2000e-2(c)(2) .................................................15
42 U.S.C. 2000e-2(d).....................................................15
42 U.S.C. 2000e-2(g)......................................................18
42 U.S.C. 2000e-2(m) ..........................................*passim*
42 U.S.C. 2000e-2(n)(1)..................................................17
42 U.S.C. 2000e-2(n)(1)(A) ...................................17, 18
42 U.S.C. 2000e-3...................................................17, 19
42 U.S.C. 2000e-3(a) ...........................................*passim*
42 U.S.C. 2000e-5(a)................................................1, 22
42 U.S.C. 2000e-5(b)-(d) .............................................22
42 U.S.C. 2000e-5(f)......................................................22
42 U.S.C. 2000e-5(f)(1)..................................................1
42 U.S.C. 2000e-5(g)......................................................21
42 U.S.C. 2000e-5(g)(1).................................................22
42 U.S.C. 2000e-5(g)(2)(A) ..........................................20
42 U.S.C. 2000e-5(g)(2)(B) ............................9, 11, 21
42 U.S.C. 2000e-5(i)-(k)..................................................22
42 U.S.C. 2000e-16 (2006 & Supp. V 2011).................1
Civil Rights Act of 1991, Pub. L. No. 102-166,
105 Stat. 1071 ............................................................3
§ 2, 105 Stat. 1071......................................................27
§ 101, 105 Stat. 1071-1072 ..................................19
§ 102(a), 105 Stat. 1072 ........................................19
§ 102(a)(2), 105 Stat. 1072 .................................19
§ 107, 105 Stat. 1075...............................................24
§ 107(a), 105 Stat. 1075 (42 U.S.C. 2000e-2(m)) ........3, 11

VII

Statutes—Continued:                                    Page

§ 107(b), 105 Stat. 1075 (42 U.S.C.
2000e-5(g)(2)(B))........................................................4

§ 108, 105 Stat. 1076........................................................17

Education Amendments of 1972, 20 U.S.C. 1681
*et seq.* ........................................................12

38 U.S.C. 4311 ........................................................22

42 U.S.C. 1981 ........................................................16

42 U.S.C. 1981a ........................................................8, 19

42 U.S.C. 1981a(b)(3)(D)........................................................6

42 U.S.C. 1982 ........................................................12, 14

Miscellaneous:

2 *EEOC Compliance Manual* (May 20, 1998),
http://www.eeoc.gov/policy/docs/retal.pdf....................28, 29

*Effect of Desert Palace, Inc. v. Costa, 539 U.S. 90
(2003), on Revised Enforcement Guidance on Re-
cent Developments in Disparate Treatment Theory
(July 14, 1992)* (as amended Jan. 16, 2009),
http://www.eeoc.gov/policy/docs/disparat.html ................29

*Enforcement Guidance on Recent Developments in
Disparate Treatment Theory* (July 14, 1992), 1992
WL 1364355........................................................28

H.R. Rep. No. 40, 102d Cong., 1st Sess. (1991):
Pt. 1 ........................................................20, 25, 26
Pt. 2 ........................................................20, 24, 27

# In the Supreme Court of the United States

---

No. 12-484

UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL
CENTER, PETITIONER

*v.*

NAIEL NASSAR

---

*ON WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT*

---

**BRIEF FOR THE UNITED STATES AS AMICUS CURIAE
SUPPORTING RESPONDENT**

---

**INTEREST OF THE UNITED STATES**

This case presents the question whether Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.*, authorizes a mixed-motive standard for retaliation claims. The Attorney General enforces Title VII against public employers, 42 U.S.C. 2000e-5(f)(1), and the Equal Employment Opportunity Commission enforces Title VII against private employers, 42 U.S.C. 2000e-5(a) and (f)(1). In addition, Title VII applies to the United States in its capacity as the Nation's largest employer. 42 U.S.C. 2000e-16 (2006 & Supp. V 2011). The United States, as the principal enforcer of the federal civil rights laws and the Nation's largest employer, has a substantial interest in the proper interpretation of Title VII.

(1)

2

## STATUTORY PROVISIONS INVOLVED

Pertinent statutory provisions are set forth in an appendix to this brief. App., *infra*, 1a-31a.

## STATEMENT

1. Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.*, makes it an "unlawful employment practice" to discriminate against any individual "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. 2000e-2(a); see also 42 U.S.C. 2000e-2(b)-(d) (prohibition for employment agencies, labor organizations, and training programs). Title VII also makes it an "unlawful employment practice" to discriminate against any individual "because" the individual has complained about, opposed, or participated in a proceeding about, prohibited discrimination. 42 U.S.C. 2000e-3(a). This latter form of discrimination is often referred to as "retaliation," although Title VII does not use that term.

In *Price Waterhouse* v. *Hopkins*, 490 U.S. 228 (1989), a Title VII gender discrimination case, this Court held that the words "because of" in Section 2000e-2(a) encompass "mixed-motive" claims, *i.e.*, claims challenging an employment decision motivated by both legitimate and illegitimate factors. See *id.* at 240-242 (plurality opinion); *id.* at 258-260 (White, J., concurring in the judgment); cf. *id.* at 262-269 (O'Connor, J., concurring in the judgment) (focusing on burden of persuasion). The plurality held that a Title VII plaintiff need only show that a prohibited factor (*e.g.*, an employee's gender) played a "motivating" part in the employment decision. *Id.* at 244. The plurality also held, however, that an employer will not be held liable if it proves, by a preponderance of the evidence, that it would have made the same decision regardless of the illegitimate motive. See

3

*id.* at 244-245, 252-255. Justices White and O'Connor, separately concurring in the judgment, held that the illegitimate motive must play a "substantial" part in the employment decision to satisfy a plaintiff's burden of proof. *Id.* at 259 (White, J., concurring in the judgment); *id.* at 262, 265 (O'Connor, J., concurring in the judgment). And Justice O'Connor would have required the plaintiff to present "direct evidence" of the illegitimate factor before shifting the burden to the employer to show that it would have made the same decision regardless of that factor. *Id.* at 276.

Two years later, Congress enacted the Civil Rights Act of 1991 (1991 Act), Pub. L. No. 102-166, 105 Stat. 1071. "[I]n large part," the 1991 Act was "a response to a series of decisions of this Court," and Section 107 in particular was a direct "respon[se]" to this Court's decision in *Price Waterhouse*. *Landgraf* v. *USI Film Prods.*, 511 U.S. 244, 250-251 (1994). Section 107 codified one aspect of *Price Waterhouse* by providing a mixed-motive standard: "Except as otherwise provided in this title, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 1991 Act § 107(a), 105 Stat. 1075 (42 U.S.C. 2000e-2(m)). Section 107, however, abrogated a separate aspect of *Price Waterhouse* by declining to codify a complete defense to liability if the employer demonstrates that it would have taken the same action in the absence of the impermissible motive. Under the 1991 amendments, such a defense does not absolve an employer of liability, but instead restricts the remedies a court may order: declaratory relief, injunctive relief, attorney's fees and costs, but not

4

damages, reinstatement, or back pay. § 107(b), 105 Stat. 1075 (42 U.S.C. 2000e-5(g)(2)(B)).

In 2009, this Court decided *Gross* v. *FBL Financial Services, Inc.*, 557 U.S. 167. *Gross* held that the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. 621 *et seq.*, which prohibits discrimination "because of" age, 29 U.S.C. 623(a)(1), does not encompass a mixed-motive standard. 557 U.S. at 173. Unlike under Title VII, therefore, proof that age played some motivating role in the employer's adverse employment decision does not suffice to establish liability. Rather, a plaintiff alleging discrimination under the ADEA must prove "that age was the 'but-for' cause of the employer's adverse decision." *Id.* at 176. The Court distinguished the ADEA from Title VII on the ground that, in 1991, Congress amended Title VII to expressly include "motivating factor" language, but did not similarly amend the ADEA. See *id.* at 174. Those amendments, the Court concluded, make Title VII "materially different [from the ADEA] with respect to the relevant burden of persuasion." *Id.* at 173.

2. Respondent is a doctor of Middle Eastern descent who was previously employed by petitioner as a member of the medical school faculty. Pet. App. 2. In that capacity, respondent also served as a clinician at petitioner's affiliated hospital. *Ibid.* In June 2004, petitioner hired Dr. Beth Levine to oversee the HIV/AIDS clinic where respondent worked. *Id.* at 2-3. Respondent felt harassed by Dr. Levine, who heavily scrutinized his productivity and billing practices and made derogatory comments about "Middle Easterners." *Id.* at 3 (stating that "Middle Easterners are lazy," and that they "hired another one," referring to the hospital's hiring of another doctor of Middle Eastern descent). To avoid further

5

harassment, respondent began looking for a way to continue working at the hospital's clinic without being subject to Dr. Levine's supervision. *Id.* at 4.

Respondent eventually secured an offer to work directly for the hospital as a staff physician, beginning on July 10, 2006. Pet. App. 5. After receiving that offer, respondent sent a resignation letter to Dr. Gregory Fitz, the chair of internal medicine and Dr. Levine's immediate supervisor, resigning from the university. *Id.* at 4, 5. Respondent explained that his resignation was a result of Dr. Levine's "continuing harassment and discrimination," which "stems from [her] religious, racial and cultural bias against Arabs and Muslims that has resulted in a hostile work environment." *Id.* at 5. Dr. Fitz opposed the hospital's hiring of respondent, which prompted the hospital to withdraw its initial offer. *Id.* at 5-6.

3. Respondent filed a charge with the Equal Employment Opportunity Commission (EEOC), which found "credible[] testimonial evidence" that petitioner had retaliated against respondent for making allegations of discrimination against Dr. Levine. Resp. Br. 8 (quoting Pl. Trial Ex. 78). Respondent thereafter filed suit in the Northern District of Texas claiming, *inter alia*, that petitioner retaliated against him in violation of Title VII, 42 U.S.C. 2000e-3(a).[1]

A bifurcated jury trial followed. Pet. App. 6. In response to the retaliation claim, petitioner presented evidence that Dr. Fitz opposed the hospital's hiring of respondent because of a longstanding affiliation agreement between petitioner and the hospital that required the hospital to fill its physician posts with university

---

[1] Respondent also sued for constructive discharge, and the jury so found, but that judgment was vacated on appeal and is not at issue here. See Pet. App. 6, 8-10, 15.

6

faculty. *Id.* at 4-5. At the liability phase, the jury was instructed that respondent "does not have to prove that retaliation was [petitioner's] only motive, but he must prove that [petitioner] acted at least in part to retaliate." *Id.* at 47.[2] The jury found petitioner liable for retaliation. *Id.* at 48.

During the liability phase, the jury was not instructed as to petitioner's "affirmative defense"—*i.e.*, that it would have taken the same action regardless of the impermissible motive. Instead, during the subsequent remedial phase, the district court explained that the jury may not award damages "for those actions which [petitioner] proves by a preponderance of the evidence that it would have taken even if it had not considered [respondent's] protected activity." Pet. App. 42-43. Finding that petitioner failed to make the requisite showing, the jury awarded respondent $438,167.66 in back pay and $3,187,500 in compensatory damages. *Id.* at 43-44. The district court denied petitioner's motions for judgment as a matter of law and for a new trial, but reduced the compensatory damages award to $300,000 pursuant to a statutory cap. *Id.* at 7, 24-25; see 42 U.S.C. 1981a(b)(3)(D).

4. The court of appeals affirmed in relevant part. Pet. App. 10-12, 15. On appeal, petitioner argued that the district court erred in instructing the jury based on a theory of mixed-motive retaliation. See Pet. C.A. Br. 42-44. Petitioner conceded that its argument was foreclosed by the court's previous decision in *Smith* v. *Xerox Corp.*, 602 F.3d 320 (5th Cir. 2010), and the court of appeals so held. See Pet. App. 12 n.16. In *Smith*, the

---

[2] The parties dispute whether petitioner timely objected to the jury instructions. See Pet. 23-25; Br. in Opp. 8-11; Pet. Cert. Reply Br. 1-4; Resp. Br. 14-15; see also Pet. App. 61-67.

Fifth Circuit had adhered to its prior precedent and held that the "burden shifting scheme" set forth in *Price Waterhouse*, which provided employers an affirmative defense to liability in mixed-motive cases, continued to apply to Title VII retaliation claims, notwithstanding this Court's decision in *Gross*.  602 F.3d at 328-330. Even though the jury instructions here departed from *Price Waterhouse* in that respect (*i.e.*, by providing a defense to damages, not liability), neither the parties nor the court suggested that the district court's instructions were inconsistent with *Smith*.

5. The court of appeals denied rehearing en banc, with six judges voting in favor of rehearing.  Pet. App. 59-67.

### SUMMARY OF ARGUMENT

Title VII's "motivating factor" provision (42 U.S.C. 2000e-2(m)), which establishes an employer's liability as long as a prohibited factor plays a motivating role in the challenged decision, applies not only to Title VII substantive discrimination claims but also to Title VII retaliation claims.[3]  For that reason, this Court's decision in *Gross* v. *FBL Financial Services, Inc.*, 557 U.S. 167 (2009), has no bearing on this case.

A. Section 2000e-2(m)'s "motivating factor" standard applies directly to retaliation claims under Title VII. The statute prohibits the consideration of race, color, religion, sex, or national origin in "any employment practice." 42 U.S.C. 2000e-2(m).  Retaliation is express-

---

[3] This brief refers to discrimination claims under Section 2000e-2(a)-(d) as "substantive discrimination" claims, and to discrimination claims under Section 2000e-3(a) as "retaliation" claims, consistent with this Court's decision in *Burlington N. & Santa Fe Ry. Co.* v. *White*, 548 U.S. 53, 61-67 (2006).  See also *Thompson* v. *North Am. Stainless, LP*, 131 S. Ct. 863, 868 (2011).

8

ly designated an "unlawful employment practice," 42 U.S.C. 2000e-3(a), and it follows from a consistent line of this Court's decisions that retaliation for complaining about discrimination based on race, color, religion, sex, or national origin is itself discrimination motivated (at least in part) by those protected characteristics. See *Gomez-Perez* v. *Potter*, 553 U.S. 474, 479-491 (2008); *CBOCS W., Inc.* v. *Humphries*, 553 U.S. 442, 446-457 (2008); *Jackson* v. *Birmingham Bd. of Educ.*, 544 U.S. 167, 173-184 (2005); *Sullivan* v. *Little Hunting Park, Inc.*, 396 U.S. 229, 237 (1969). Congress could have chosen to limit the mixed-motive standard to substantive discrimination claims by, for example, directly amending the substantive antidiscrimination provisions in Section 2000e-2(a)-(d), rather than enacting a new provision that applies to "any employment practice." Congress also could have limited Section 2000e-2(m) to claims based on the race, color, religion, sex, or national origin of the plaintiff. But Congress did neither. By its plain terms, Section 2000e-2(m) fully applies to Title VII retaliation claims.

Petitioner's arguments to the contrary are without merit. This Court's decisions refute the suggestion that Congress must explicitly refer to "retaliation" in a discrimination statute in order for the statute to encompass retaliation claims. And Section 2000e-2 is not "Title VII's discrimination provision" (Pet. Br. 5). Other subsections in Section 2000e-2 extend beyond the substantive antidiscrimination provisions codified therein and, like (m), apply directly to retaliation claims.

The negative inference petitioner seeks to draw from Congress's express reference to the antiretaliation provision in two other provisions is also unwarranted. The first (42 U.S.C. 1981a) is codified in a different statute

9

and the statutory history and context refute any such negative inference; and the second (42 U.S.C. 2000e-5(g)(2)(B)) was enacted more than 25 years before Section 2000e-2(m), and five years before this Court in *Sullivan* recognized that discrimination based on a protected characteristic encompasses retaliation for complaining about discrimination based on that characteristic. In any event, other Title VII provisions do not expressly mention the antiretaliation provision, yet plainly apply to retaliation claims.

B. The government's interpretation best effectuates Congress's intent to restore and expand protections against intentional employment discrimination. The 1991 amendments sought to restore the rule that prevailed in some lower courts before this Court's decision in *Price Waterhouse* v. *Hopkins*, 490 U.S. 228 (1989). That rule applied equally to substantive discrimination and retaliation claims and, whatever the rule, courts generally applied the same causation standard to each. Petitioner would instead attribute to Congress a desire to adopt a new legal regime applying a different causation standard depending on the type of intentional discrimination alleged under Title VII. Nothing in the statute's text or legislative history supports that approach.

C. The government's interpretation is further supported by the longstanding and consistent position of the EEOC. Shortly after the 1991 amendments, the EEOC issued guidance announcing that it would apply the "motivating factor" standard to Title VII retaliation claims, and it has adhered to that position ever since. The EEOC's views are reasonable and entitled to deference. See *Kasten* v. *Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325, 1335-1336 (2011).

10

D. Because Section 2000e-2(m)'s mixed-motive standard applies directly to Title VII retaliation claims, this Court's decision in *Gross* does not control. Petitioner and its amici argue that *Gross*'s "but for" causation standard is more practical and better policy, but that argument should be directed at Congress, not this Court. In any event, many of petitioner's policy concerns are equally applicable to substantive discrimination claims (to which the mixed-motive standard indisputably applies), and resolving this case in petitioner's favor thus would not achieve the clarity and uniformity it seeks. Petitioner contends that retaliation claims are different, but this Court has broadly construed Title VII's antiretaliation provision in the face of similar arguments raised in previous cases.

## ARGUMENT

### THE 1991 AMENDMENTS AUTHORIZE A MIXED-MOTIVE STANDARD FOR TITLE VII RETALIATION CLAIMS

In *Gross* v. *FBL Financial Services, Inc.*, 557 U.S. 167 (2009), this Court held that the ADEA does not authorize a mixed-motive standard for age discrimination claims, *i.e.*, proof that age played some motivating role in the employer's adverse employment decision does not, by itself, suffice to establish liability. Petitioner argues (Br. 21-24) that *Gross* dictates the unavailability of a mixed-motive standard for Title VII retaliation claims because, "just as in *Gross*, Congress did not extend its motivating-factor amendments in the 1991 [Act]" to Title VII's antiretaliation provision. Petitioner's premise is incorrect.

The "motivating factor" provision (42 U.S.C. 2000e-2(m)) applies directly to Title VII retaliation claims. That reading is confirmed by the statutory text, structure, context, and purpose, by this Court's repeated and

11

recent reaffirmation that retaliation *is* discrimination based on "race, color, religion, sex, or national origin," and by the EEOC's longstanding interpretation. Properly understood, Section 2000e-2(m) applies to Title VII retaliation claims and establishes an employer's liability as long as retaliation played a motivating role in the challenged decision, regardless of whether other factors also played a role. *Gross* therefore has no bearing on this case.

### A. Title VII's "Motivating Factor" Provision Applies Directly To Retaliation Claims

1. The 1991 amendments added a "motivating factor" provision to Title VII. By its terms, an "unlawful employment practice" is established whenever a "complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 1991 Act § 107(a), 105 Stat. 1075 (42 U.S.C. 2000e-2(m)). That standard applies to Title VII retaliation claims.[4]

As an initial matter, Section 2000e-2(m)'s mixed-motive standard broadly applies to "any employment practice." 42 U.S.C. 2000e-2(m). Retaliation is expressly designated an "unlawful employment practice" under Title VII. See 42 U.S.C. 2000e-3(a) (defining an "unlawful employment practice"); 42 U.S.C. 2000e-3 (entitled "[o]ther unlawful employment practices"). Because "*any* employment practice" by definition includes the

---

[4] The accompanying remedial provision applies whenever "an individual proves a violation under section 2000e-2(m)." 42 U.S.C. 2000e-5(g)(2)(B). Accordingly, if Section 2000e-2(m) applies to Title VII retaliation claims, so too does Section 2000e-5(g)(2)(B)'s remedial framework.

12

"unlawful employment practice[s]" prohibited by Section 2000e-3(a), a retaliation claim necessarily fits within the category of actions encompassed by Section 2000e-2(m).

Section 2000e-2(m) provides for liability when the challenged employment practice is motivated in part by "race, color, religion, sex, or national origin." 42 U.S.C. 2000e-2(m). A Title VII retaliation claim naturally fits within that language as well. That is the teaching of a consistent line of this Court's decisions. See *Gomez-Perez* v. *Potter*, 553 U.S. 474, 479-491 (2008) (retaliation for opposing age discrimination constitutes discrimination "based on age" under the ADEA's federal-sector provision); *CBOCS W., Inc.* v. *Humphries*, 553 U.S. 442, 446-457 (2008) (retaliation for opposing race discrimination constitutes discrimination based on race under 42 U.S.C. 1981); *Jackson* v. *Birmingham Bd. of Educ.*, 544 U.S. 167, 173-184 (2005) (retaliation for opposing sex discrimination constitutes discrimination "on the basis of sex" under Title IX of the Education Amendments of 1972, 20 U.S.C. 1681 *et seq.*); *Sullivan* v. *Little Hunting Park, Inc.*, 396 U.S. 229, 237 (1969) (retaliation for opposing race discrimination constitutes discrimination based on race under 42 U.S.C. 1982).

In *Jackson*, for example, this Court held that Title IX, which prohibits sex discrimination in federally funded education programs, also prohibits retaliation, even though the "statute makes no mention of retaliation." See 544 U.S. at 173-176 (citation omitted). The Court explained that "retaliation is discrimination 'on the basis of sex' because it is an intentional response to the nature of the complaint: an allegation of sex discrimination." *Id.* at 174. Accordingly, the Court concluded that "when a funding recipient retaliates against a person *because* he complains of sex discrimination, this constitutes in-

13

tentional 'discrimination' 'on the basis of sex,' in viola-
tion of Title IX." *Ibid.* In short, "retaliation in response
to a complaint about sex discrimination *is* 'discrimina-
tion' 'on the basis of sex.'" *Id.* at 179 n.3 (emphasis
added).

Similarly, in *Gomez-Perez*, this Court held that the
federal-sector provision of the ADEA, 29 U.S.C. 633a(a),
prohibits retaliation, even though that provision likewise
makes no mention of retaliation. See 553 U.S. at 479-
481. As the Court explained, "the statutory phrase
'discrimination based on age' includes retaliation based
on the filing of an age discrimination complaint." *Id.* at
479; see *id.* at 488 ("[R]etaliation for complaining about
age discrimination is 'discrimination based on age.'").
The Court followed its reasoning in *Jackson* even
though the ADEA (unlike Title IX) contains an express
right of action, *id.* at 482-483, and even though the
ADEA's private-sector provision separately prohibits
both substantive discrimination and retaliation, *id.* at
486-488.

In both cases, the Court grounded its decision in the
text of the relevant statute. See *Gomez-Perez*, 553 U.S.
at 484 ("*Jackson* did not hold that Title IX prohibits
retaliation because the Court concluded as a policy mat-
ter that such claims are important. Instead, the holding
in *Jackson* was based on an interpretation of the 'text of
Title IX.'") (quoting *Jackson*, 544 U.S. at 173, 178).
Indeed, the Court found the statutes clear enough to
satisfy the "notice" requirements of the Spending
Clause, *Jackson*, 544 U.S. at 183, and to provide the
clear statement necessary to waive federal sovereign
immunity, *Gomez-Perez*, 553 U.S. at 491. Both decisions
also relied on this Court's 1969 decision in *Sullivan*,
which recognized a claim for retaliation under 42 U.S.C.

14

1982, a statute guaranteeing property rights for all citizens equal to those "enjoyed by white citizens." See *Gomez-Perez*, 553 U.S. at 479-481, 484-485, 488, 490 n.6; *id.* at 493 n.1 (Roberts, C.J., dissenting); *Jackson*, 544 U.S. at 176-177; see also *CBOCS*, 553 U.S. at 446-457.

This Court's decisions thus firmly establish that retaliation for complaining about race discrimination *is* "discrimination based on race" (*Sullivan*, *CBOCS*)[5]; that retaliation for complaining about sex discrimination *is* "discrimination on the basis of sex" (*Jackson*); and that retaliation for complaining about age discrimination *is* "discrimination based on age" (*Gomez-Perez*). An employer who retaliates against an employee for complaining about discrimination based on race (or color, religion, sex, or national origin) thus *is* discriminating based on that protected characteristic. *A fortiori*, "race" (or "color," "religion," "sex," or "national origin") *is* a "motivating factor" within the meaning of Section 2000e-2(m).

2. Congress could have chosen to limit Section 2000e-2(m)'s "motivating factor" standard to substantive discrimination claims in a number of ways. For example, rather than enacting a new provision, Congress could have directly amended the substantive antidiscrimination provisions in Section 2000e-2(a)-(d). Those provisions, like Section 2000e-3(a)'s bar against retaliation, prohibit discrimination "because of" an impermissible factor. See 42 U.S.C. 2000e-2(a)-(d) ("because of"); 42

---

[5]  See *Gomez-Perez*, 553 U.S. at 479 ("While [Section] 1982 does not use the phrase 'discrimination based on race,' that is its plain meaning."); *CBOCS*, 553 U.S. at 459 (Thomas, J., dissenting) (While Section 1981(a) "does not use the modern statutory formulation prohibiting 'discrimination on the basis of race,' * * * that is the clear import of its terms.").

15

U.S.C. 2000e-3(a) ("because"). Yet Congress left each of those provisions untouched and instead codified the mixed-motive standard as an entirely new subsection that applies to "any employment practice." 42 U.S.C. 2000e-2(m).

Congress also could have limited Section 2000e-2(m) to claims involving *the complaining party's* race, color, religion, sex, or national origin. Instead, Section 2000e-2(m) applies whenever "the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice." 42 U.S.C. 2000e-2(m). That language encompasses retaliation because it makes clear that Section 2000e-2(m) applies regardless of the complaining party's membership in a protected class. In contrast, Title VII's substantive antidiscrimination provisions proscribe discrimination because of "such individual's" or "his" race, color, religion, sex, or national origin. See 42 U.S.C. 2000e-2(a)(1) ("such individual's"); 42 U.S.C. 2000e-2(a)(2) ("such individual's"); 42 U.S.C. 2000e-2(b) ("his"); 42 U.S.C. 2000e-2(c)(1) ("his"); 42 U.S.C. 2000e-2(c)(2) ("such individual's"); 42 U.S.C. 2000e-2(d) ("his"). If Congress had intended the "motivating factor" provision to apply to substantive discrimination claims alone, it could have simply tracked the language of those provisions. That Section 2000e-2(m) is *not* defined in terms of the complaining party's membership in a protected class reinforces the conclusion that it applies equally to retaliation claims. See *Jackson*, 544 U.S. at 179 (finding omission of the modifier "*such individual's*" significant in holding that Title IX protects a male coach from retaliation for complaining about sex discrimination against a female basketball team).

16

3. Petitioner nevertheless contends (Br. 17-20) that Section 2000e-2(m) does not apply to Title VII retaliation claims for three primary reasons. None withstands scrutiny.

a. Petitioner first argues (Br. 17) that the prohibited motivating factors are "race, color, religion, sex, or national origin," 42 U.S.C. 2000e-2(m)—not "retaliation." That observation is of little consequence under this Court's decisions. Petitioner fails to address, let alone distinguish, *Gomez-Perez, CBOCS, Jackson,* or *Sullivan.* As discussed above, the Court has repeatedly (and recently) held that retaliation for complaining about discrimination based on a protected characteristic *is* discrimination based on that protected characteristic. See pp. 12-14, *supra.* Under those decisions, any employer who retaliates against an employee because he complained about national origin discrimination (as the jury found in this case) has engaged in discrimination motivated (at least in part) by "national origin."

The fact that Section 2000e-2(m) contains no express mention of "retaliation" hardly gives rise to any inference that Congress intended to exclude retaliation claims from the provision's scope. The antiretaliation provision itself, 42 U.S.C. 2000e-3(a), does not use the word "retaliation." And the 1991 amendments came many years after this Court's decision in *Sullivan.* Given *Sullivan,* "there was no need for Congress to include explicit language about retaliation." *CBOCS,* 553 U.S. at 453-454 (concluding that the failure to include "the word 'retaliation'" when amending 42 U.S.C. 1981 in the 1991 Act was understandable in light of *Sullivan*); accord *Gomez-Perez,* 553 U.S. at 485, 488; *Jackson,* 544 U.S. at 176.

17

b. Petitioner also relies (Br. 17) on the placement of the "motivating factor" provision within Section 2000e-2 (which contains the substantive antidiscrimination provisions), and not within Section 2000e-3 (which contains the antiretaliation provision). As an initial matter, petitioner mistakenly characterizes "Section 2000e-2" as "Title VII's discrimination provision" (Br. 5, 17), and its reasoning proceeds from that erroneous premise. In fact, only certain subsections of Section 2000e-2 are appropriately characterized as "Title VII's discrimination provision[s]," most notably Section 2000e-2(a). And, as discussed above (pp. 14-15, *supra*), Congress did not directly amend those provisions.

More fundamentally, Congress has never treated the provisions within Section 2000e-2 as confined to substantive discrimination, to the exclusion of retaliation. For instance, Subsection (n), like Subsection (m), was added as part of the 1991 Act. See § 108, 105 Stat. 1076. Subsection (n) limits the opportunities to collaterally attack employment practices implemented as part of a litigated or consent judgment resolving "a claim of employment discrimination under the Constitution or Federal civil rights laws." 42 U.S.C. 2000e-2(n)(1)(A). On its face, that provision applies beyond the substantive antidiscrimination provisions in Section 2000e-2; indeed, it applies beyond Title VII. If an employee sues for retaliatory discharge under Section 2000e-3(a), and the court orders reinstatement, any person adversely affected by that judgment (*e.g.*, an employee who loses his seniority as a result) would generally be barred from collaterally attacking the judgment if he was given notice and an opportunity to be heard. 42 U.S.C. 2000e-2(n)(1). That Congress placed the consent-judgment

18

provision in 42 U.S.C. 2000e-2, and not in 42 U.S.C. 2000e-3, is of no moment: the text controls.

The national-security exemption, 42 U.S.C. 2000e-2(g), likewise demonstrates that petitioner's understanding of Section 2000e-2 is incorrect. That exemption provides that "it shall not be an unlawful employment practice for an employer * * * to discharge any individual from any position" if the individual has failed to fulfill any requirement imposed in the interest of national security. *Ibid.* That exemption plainly applies to a Title VII retaliatory discharge claim because retaliation is also an "unlawful employment practice." See pp. 11-12, *supra*; cf. *Cruz-Packer* v. *Chertoff*, 612 F. Supp. 2d 67, 69, 70-71 (D.D.C. 2009) (dismissing substantive discrimination and retaliation claims brought under Title VII's federal-sector provision based on 42 U.S.C. 2000e-2(g)). Again, the mere placement in Section 2000e-2 says nothing about the subsection's application to retaliation claims brought under Section 2000e-3(a).

Viewed in context, the fact that Congress codified the "motivating factor" provision as part of Section 2000e-2 has little probative force. Had Congress codified the retaliation provision within Section 2000e-2, for instance as 42 U.S.C. 2000e-2(z), instead of as 42 U.S.C. 2000e-3(a), the analysis would remain the same, and Section 2000e-2(m)'s "motivating factor" standard would apply in either event.

c. Petitioner briefly cites (Br. 23) two other provisions in which Congress expressly referenced Title VII's antiretaliation provision and suggests that its failure to do so in Section 2000e-2(m) evidences an intent to exclude such claims. That is incorrect.

19

i. Contrary to petitioner's characterization (Br. 23), Congress did not "amend[] Title VII's retaliation provisions in 1991." The only purported amendment petitioner identifies is Section 102(a) of the 1991 Act, which authorizes the recovery of compensatory and punitive damages. § 102(a), 105 Stat. 1072. Section 102, however, did not amend Title VII directly. Instead, Congress created a new statutory provision codified at 42 U.S.C. 1981a. And that provision applies to other discrimination laws in addition to Title VII. See 1991 Act § 102(a)(2), 105 Stat. 1072. In that distinct context, Congress specified that compensatory and punitive damages are available in cases of "unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) prohibited under section 703, 704, or 717 of the Act [42 U.S.C. 2000e-2, 2000e-3, 2000e-16]." *Id.* § 102(a), 105 Stat. 1072.

As the text of that provision indicates, Congress, by listing the specific forms of "unlawful intentional discrimination" for which damages would be available, sought to distinguish between those unlawful practices, on the one hand, and a practice made unlawful because of its disparate impact, on the other hand. There is thus no basis for inferring from Section 1981a that, in any provision in which Congress fails to specifically refer to retaliation, Congress intends to exclude retaliation claims from the provision's scope.

Any such negative inference is fully rebutted when one considers the 1991 amendments to Section 1981a's neighboring provision, 42 U.S.C. 1981. In response to this Court's decision in *Patterson* v. *McLean Credit Union*, 491 U.S. 164 (1989), Congress amended Section 1981 to make clear that its protections applied even after contract formation. 1991 Act § 101, 105 Stat. 1071-

20

1072; see *Landgraf*, 511 U.S. at 251. Even though the text makes no mention of "retaliation," Congress plainly intended the amended provision to apply to all forms of intentional employment discrimination, including "retaliation." See, *e.g.*, H.R. Rep. No. 40, 102d Cong., 1st Sess. Pt. 1, at 92 & n.92 (1991) (*House Report Pt. 1*); H.R. Rep. No. 40, 102d Cong., 1st Sess. Pt. 2, at 37 (1991) (*House Report Pt. 2*). In *CBOCS*, this Court so held. 553 U.S. at 450-451, 452-454, 457. If Congress's specific reference to the Title VII antiretaliation provision in Section 1981a meant that any provision that fails to contain such a reference necessarily excludes retaliation, this Court would have reached the opposite result in *CBOCS*. Section 1981a therefore is of no assistance to petitioner.

ii. Petitioner also cites (Br. 23) Section 2000e-5(g)(2)(A), which precludes courts from ordering certain relief, such as reinstatement, when the employee was discharged for reasons "other than discrimination on account of race, color, religion, sex, or national origin or in violation of section 2000e-3(a) of this title." 42 U.S.C. 2000e-5(g)(2)(A). It is true that, under the government's reading, Congress could have omitted the final phrase "or in violation of section 2000e-3(a) of this title," because retaliation for complaining about discrimination based on race, color, religion, sex, or national origin is itself discrimination based on those same protected characteristics. But the negative inference petitioner seeks to draw is unwarranted for several reasons.

First, the substance of that provision was enacted as part of the Civil Rights Act of 1964—more than 25 years before Section 2000e-2(m). Civil Rights Act of 1964, Pub. L. No. 88-352, § 706(g), 78 Stat. 261. "'[N]egative implications raised by disparate provisions are strong-

21

est' in those instances in which the relevant statutory provisions were 'considered simultaneously when the language raising the implication was inserted.'" *Gomez-Perez*, 553 U.S. at 486 (quoting *Lindh* v. *Murphy*, 521 U.S. 320, 330 (1997)) (brackets in original). Here, the two provisions were not "enacted together." *Ibid.*[6]

Second, the government's interpretation relies in substantial part on decisions of this Court that postdate the 1964 enactment, including the 1969 *Sullivan* decision. This Court has assumed that Congress was aware of *Sullivan* when enacting subsequent statutes. See *Gomez-Perez*, 553 U.S. at 485, 488, 490 n.6 (noting that the ADEA's federal-sector provision was enacted "five years after the decision in *Sullivan*" and that "Congress was presumably familiar with *Sullivan*"); *Jackson*, 544 U.S. at 176 (noting that Title IX was enacted three years after *Sullivan* and that it is "realistic to presume that Congress was thoroughly familiar with" that decision) (citation omitted). The same cannot be said of a statutory provision enacted five years beforehand.

In any event, there are a number of provisions in Title VII that plainly apply to retaliation claims even though they contain no express reference to Section 2000e-3(a). As noted above, several subsections of Section 2000e-2 fall into that category. See pp. 17-18, *supra*. But there are other provisions as well. Many of the

---

[6]  The 1991 amendments reorganized Section 2000e-5(g) to create separate paragraphs and subparagraphs.  § 107(b), 105 Stat. 1075. Although Congress retained the language of the original 1964 Act in the newly designated Subparagraph (A), it did not use that language as a model for the mixed-motive remedial provision in Subparagraph (B).  Unlike Subparagraph (A), Section 2000e-5(g)(2)(B) references neither "discrimination on account of race, color, religion, sex, or national origin," nor a "violation of section 2000e-3(a)."  It simply cross-references Section 2000e-2(m).

22

enforcement provisions, for example, indisputably apply to all "unlawful employment practices," including retaliation. See 42 U.S.C. 2000e-5(b)-(d), (f), (g)(1); see also 42 U.S.C. 2000e-5(i)-(k) (applying to all actions brought "under this section" or "subchapter"). Yet the anti-retaliation provision is separately enumerated in only one of those provisions: Section 2000e-5(g)(2)(A). Cf. 42 U.S.C. 2000e-5(a) (referring generally to "section 2000e-3"). Accordingly, the most that can be said is that Congress sometimes refers expressly to the antiretaliation provision, and sometimes does not. Cf. *Robinson* v. *Shell Oil Co.*, 519 U.S. 337, 341-342 (1997) ("[T]hat other statutes have been more specific [in referring specifically to "former employees"] proves only that Congress *can* use the unqualified term 'employees' to refer only to current employees, not that it did so in this particular statute.").[7]

4. As petitioner notes (Br. 18), several courts of appeals have held that Section 2000e-2(m)'s "motivating factor" standard does not apply to retaliation claims.[8] Every one of the decisions cited by petitioner, however, predated this Court's decisions in *Jackson, CBOCS*, and *Gomez-Perez*. And not a single one cites *Sullivan*, on

---

[7] The same reasoning applies with more force to 38 U.S.C. 4311 (cited at Pet. Br. 19), a different discrimination statute adopted at a different time by a different Congress. See *CBOCS*, 553 U.S. at 454 (rejecting argument that Congress's failure to mention the "word 'retaliation'" in amending 42 U.S.C. 1981 was intended to exclude retaliation because "Congress has included explicit antiretaliation language in other civil rights statutes").

[8] Contrary to petitioner's suggestion (Br. 18), the D.C. Circuit has not decided that issue. See *Porter* v. *Natsios*, 414 F.3d 13, 19 (2005). The case petitioner cites involved only "pre-1991 claims of retaliation under Title VII." *Borgo* v. *Goldin*, 204 F.3d 251, 255 n.6 (D.C. Cir. 2000).

23

which this Court relied in each of those decisions. The court of appeals' decisions cited by petitioner simply assume that "race, color, religion, sex, or national origin" cannot be a "motivating factor" in a retaliation case, and that Congress has to expressly mention "retaliation." See, *e.g.*, *Kubicko* v. *Ogden Logistics Servs.*, 181 F.3d 544, 552 n.7 (4th Cir. 1999); *McNutt* v. *Board of Trs. of the Univ. of Ill.*, 141 F.3d 706, 707-709 (7th Cir. 1998); *Woodson* v. *Scott Paper Co.*, 109 F.3d 913, 933 (3d Cir.), cert. denied, 522 U.S. 914 (1997). Those assumptions do not survive this Court's intervening decisions for the reasons explained, and the other arguments advanced in support of limiting Section 2000e-2(m) to substantive discrimination claims are unpersuasive for the reasons set forth above. Cf. *Gross*, 557 U.S. at 183-184 & n.5 (Stevens, J., dissenting) (noting majority's rejection of widespread agreement among circuit courts); *Desert Palace, Inc.* v. *Costa*, 539 U.S. 90, 95 (2003) (rejecting near-unanimous agreement among courts of appeals).

The Fifth Circuit, in a decision issued after petitioner's opening brief in this case, recently concluded that Section 2000e-2(m) does not encompass retaliation claims, although the court considered it a "close question." *Carter* v. *Luminant Power Servs. Co.*, No. 12-10642, 2013 WL 1337365, at *3 (Apr. 3, 2013). Unlike the earlier court of appeals' decisions, the Fifth Circuit addressed this Court's decisions in *Gomez-Perez*, *CBOCS*, *Jackson*, and *Sullivan*. And the court recognized the "force" of arguing that "race" is a "motivating factor" whenever an employer retaliates against an individual for complaining about race discrimination. *Id.* at *2. The court nevertheless concluded that such reasoning should not be applied to Title VII. *Id.* at *2-*3.

24

As explained, however, this Court's decisions cannot be so easily distinguished.[9]

### B. Applying The "Motivating Factor" Provision To Retaliation Claims Best Effectuates Congressional Intent

The 1991 amendments were intended to "restore and strengthen" protections against intentional employment discrimination. *House Report Pt. 2*, at 1. Applying the "motivating factor" provision to Title VII retaliation claims best effectuates that intent. Conversely, the statute's history provides no support for petitioner's theory that Congress intended to apply a mixed-motive standard to all intentional discrimination claims under Title VII *except* retaliation claims.

1. In amending Title VII to add the "motivating factor" provision, Congress expressed that it was "clarifying," "reaffirming," and "restor[ing]" Congress's original intent in enacting the Civil Rights Act of 1964. 1991 Act § 107, 105 Stat. 1075 ("clarifying"); *House Report*

_____

[9]  The Fifth Circuit's asserted distinctions between Title VII and *Gomez-Perez* do not withstand scrutiny. The court noted that the ADEA's federal-sector provision was enacted "only five years" after *Sullivan*, whereas the 1991 amendments were adopted seventeen years later. *Carter*, 2013 WL 1337365, at *3. That *CBOCS* (decided the same day as *Gomez-Perez*) relied heavily on *Sullivan* to interpret the same 1991 amendments, 553 U.S. at 446-457, strongly suggests that Congress did not simply forget about *Sullivan*. The court also noted that, unlike here, *Gomez-Perez* did not involve a situation in which "private employers are already subjected to an 'antidiscrimination' and an 'antiretaliation' prohibition, and Congress adds a provision that does not mention retaliation." *Carter*, 2013 WL 1337365, at *3. In fact, the circumstances in *Gomez-Perez* were analogous: private employers were already subject to a substantive antidiscrimination provision and an antiretaliation provision, and Congress added a federal-sector provision that did not mention retaliation. 553 U.S. at 486.

25

Pt. 2, at 2 ("reaffirming"); *House Report Pt. 1*, at 47 ("restor[ing]").[10]  According to the House Reports, the amendments were designed to "restore the rule applied" by certain courts of appeals (and the EEOC) before *Price Waterhouse*:  "that any discrimination that is actually shown to play a role in a contested employment decision may be the subject of liability." *House Report Pt. 2*, at 18; see *id.* at 17-18 & n.31 (citing court of appeals' decisions); *House Report Pt. 1*, at 46 & n.41, 48 (citing court of appeals' decisions and EEOC decisions).

The "rule" Congress sought to "restore" was not limited to substantive discrimination claims; it applied equally to retaliation claims.  The House Reports, for example, relied heavily on *Bibbs* v. *Block*, 778 F.2d 1318, 1321-1324 (8th Cir. 1985) (en banc).  See *House Report Pt. 1*, at 46 n.41, 48; *House Report Pt. 2*, at 18 n.31. The "rule" announced in that case, which Congress "en-

---

[10] Petitioner suggests that if Congress had intended to clarify its original intent to allow a mixed-motive standard, Section 2000e-2(m) would have been unnecessary. Br. 19 (citing *Gross*, 557 U.S. at 178 n.5).  But Congress's decision to codify that portion of *Price Water-house* is unsurprising given the fractured nature of that decision; the uncertainty over the appropriate standard (*i.e.*, whether plaintiffs had to demonstrate a "motivating" or "substantial" factor, and whether the two standards were qualitatively different); and the confusion over the "direct evidence" requirement (*i.e.*, whether "direct evidence" was required to shift the burden of proof and, if so, what qualified as "direct evidence").  By codifying a mixed-motive standard in Section 2000e-2(m), Congress resolved much of that uncertainty. To prove a violation under Section 2000e-2(m), a plaintiff must demonstrate that the impermissible consideration was a "motivating" factor, 42 U.S.C. 2000e-2(m); that showing can be satisfied with any evidence (not just "direct evidence"), *Desert Palace*, 539 U.S. at 98-101; and, unlike under *Price Waterhouse*, proof that an employer would have made the same decision regardless of the impermissible motive is no defense to liability.

26

dorse[d]" and "restore[d]," *House Report Pt. 1*, at 48, had been applied to retaliation claims. See *Johnson* v. *Legal Servs. of Ark., Inc.*, 813 F.2d 893, 899-900 (8th Cir. 1987); *EEOC* v. *General Lines, Inc.*, 865 F.2d 1555, 1560 (10th Cir. 1989). Indeed, at that time, courts generally applied the same causation standard (however defined) to retaliation claims under Section 2000e-3(a), as they did to discrimination claims under Section 2000e-2(a). See, *e.g.*, *Woodson*, 109 F.3d at 934; *Zanders* v. *National R.R. Passenger Corp.*, 898 F.2d 1127, 1135 (6th Cir. 1990); *Ross* v. *Communications Satellite Corp.*, 759 F.2d 355, 364-366 (4th Cir. 1985); *Williams* v. *Boorstin*, 663 F.2d 109, 116-117 (D.C. Cir. 1980), cert. denied, 451 U.S. 985 (1981).

Contrary to its stated intent to "restore" and "reaffirm," petitioner would attribute to Congress the opposite intent: to create a new legal regime that carves out an exception for "retaliation," varying the causation standard depending on the type of intentional discrimination at issue. The legislative history strongly suggests that Congress did not intend such a stark departure from the status quo. See *McNutt*, 141 F.3d at 708-709 (acknowledging that it could identify "no logical reason why Congress would have changed the mixed-motive standard for one class of unlawful employment practices while allowing *Price Waterhouse* to operate in another"); cf. *CBOCS*, 553 U.S. at 450, 454 (giving effect to Congress's intent to "restore" an interpretation that prevailed before this Court's decision in *Patterson*).

2. Applying Section 2000e-2(m)'s "motivating factor" standard to Title VII retaliation claims also better effectuates Congress's general intent in adopting the 1991 amendments. Congress sought to provide "additional protections against unlawful discrimination in employ-

27

ment" and "additional remedies * * * to deter unlawful harassment and intentional discrimination in the workplace." 1991 Act § 2, 105 Stat. 1071. The 1991 amendments were designed to "restore and strengthen," not constrict, the protections available to victims of intentional employment discrimination. *House Report Pt. 2*, at 1; see *Landgraf*, 511 U.S. at 250. And the "motivating factor" provision was intended to prohibit "*all*" forms of "invidious consideration of sex, race, color, religion, or national origin in employment decisions." *House Report Pt. 2*, at 17.

To be sure, Congress may have primarily focused on substantive discrimination claims of the sort at issue in *Price Waterhouse*. But that is not indicative of an intent to provide victims of retaliation with lesser protection. To the contrary, this Court has recognized that broad protection against retaliation is critical to securing the primary objective of guaranteeing "a workplace where individuals are not discriminated against because of their racial, ethnic, religious, or gender-based status." *Burlington N. & Santa Fe Ry. Co.* v. *White*, 548 U.S. 53, 63 (2006) (*Burlington Northern*). "Title VII depends for its enforcement upon the cooperation of employees who are willing to file complaints and act as witnesses," *id.* at 67, and "fear of retaliation is the leading reason why people stay silent," *Crawford* v. *Metropolitan Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 279 (2009) (brackets and citations omitted). Construing Section 2000e-2(m)'s "motivating factor" provision narrowly to exclude retaliation claims "threaten[s] to undermine Title VII's twin objectives of deterring employers from discriminatory conduct and redressing the injuries suffered by victims of discrimination." *House Report Pt. 2*, at 17.

28

### C. The EEOC's Longstanding Interpretation Is Reasonable And Entitled To Deference

The EEOC has consistently taken the view that Section 2000e-2(m)'s "motivating factor" standard applies directly to Title VII retaliation claims. That longstanding and consistent interpretation is reasonable and entitled to deference.

Shortly after the 1991 amendments, the EEOC issued enforcement guidance advising that "it will find liability and pursue injunctive relief whenever retaliation plays any role in an employment decision." *Enforcement Guidance on Recent Developments in Disparate Treatment Theory* (July 14, 1992), 1992 WL 1364355, at *6 n.14 (*Enforcement Guidance*). The guidance explained that "[t]he Commission has a unique interest in protecting the integrity of its investigative process, and if retaliation were to go unremedied, it would have a chilling effect upon the willingness of individuals to speak out against employment discrimination." *Ibid.* Accordingly, the EEOC announced that it "will find cause when retaliation is a motivating factor in an employment decision, and evidence showing that the employer would have taken the same action even absent its retaliatory motive would pertain only to whether the charging party is eligible for individual relief." *Ibid.*[11]

The EEOC's compliance manual advances the same position. 2 *EEOC Compliance Manual* § 8-II(E)(1) (May   20,   1998),   http://www.eeoc.gov/policy/docs/

---

[11] The enforcement guidance acknowledged that Section 107 of the 1991 Act did not specifically mention "retaliation," but still found no reason to deviate from the EEOC's "long-standing rule." *Enforcement Guidance*, at *6 n.14. As described in the text, the EEOC subsequently elaborated on its reasoning, making clear that it understood Section 2000e-2(m) to apply directly to retaliation claims.

29

retal.pdf ("If there is credible * * * evidence that retaliation was a motive for the challenged action, 'cause' should be found.  Evidence as to any legitimate motive for the challenged action would be relevant only to relief, not to liability.").[12]  The compliance manual explains that "Section 107 applies to retaliation," and disagrees with the courts of appeals to have held otherwise.  *Id.* § 8-II(E)(1) n.45 (citing cases); *ibid.* ("The basis for finding 'cause' whenever there is credible * * * evidence of a retaliatory motive is Section 107 of the [1991 Act].").  The Commission further explains that its interpretation is consistent with the courts' "long held" view "that the evidentiary framework for proving employment discrimination based on race, sex, or other protected class status also applies to claims of discrimination based on retaliation." *Ibid.*  And, it continues, a contrary interpretation "that permits proven retaliation to go unpunished" would "undermine[] the purpose of the anti-retaliation provisions of maintaining unfettered access to the statutory remedial mechanism." *Ibid.*

The EEOC's longstanding and consistent interpretation of the statute provides additional support for the conclusion that the "motivating factor" provision encompasses Title VII retaliation claims.  "[T]he agency's policy statements, embodied in its compliance manual and internal directives * * * reflect 'a body of experience and informed judgment.'" *Federal Express Corp.*

---

[12] As originally worded, the compliance manual referred to credible "direct" evidence of a retaliatory motive. § 8-II(E)(1). The EEOC no longer requires "direct" evidence following this Court's decision in *Desert Palace. See Effect of Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003), on Revised Enforcement Guidance on Recent Developments in Disparate Treatment Theory (July 14, 1992)* (as amended Jan. 16, 2009), http://www.eeoc.gov/policy/docs/disparat.html.

30

v. *Holowecki*, 552 U.S. 389, 399 (2008) (citations omitted). As such, they warrant a measure of respect and deference. See *Kasten* v. *Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325, 1335-1336 (2011) (giving weight to EEOC's consistent position set forth in compliance manual); *Federal Express*, 552 U.S. at 399 (deferring to EEOC guidance that had "been binding on EEOC staff for at least five years"); *Robinson*, 519 U.S. at 345-346 (EEOC's positions "carry persuasive force given their coherence and their consistency with a primary purpose of antiretaliation provisions"); see also *Thompson* v. *North Am. Stainless, LP*, 131 S. Ct. 863, 870-871 (2011) (Ginsburg, J., concurring) (deferring to EEOC's "longstanding views" as expressed in compliance manual).

### D. Because The 1991 Amendments Authorize A Mixed-Motive Standard For Title VII Retaliation Claims, *Gross* Does Not Control

This Court's decision in *Gross* rested in large part on the ground that Congress added a "motivating factor" provision to Title VII, but not to the ADEA. See 557 U.S. at 174-175. Because Congress *did* add a "motivating factor" provision to Title VII, and because that provision applies directly to the Title VII retaliation claim at issue here, *Gross* has no bearing on this case.

Petitioner and its amici, however, contend that the "but for" standard adopted in *Gross* is more practical and represents better policy. Those arguments cannot overcome the statutory text, structure, or purpose. Nor can they override the EEOC's longstanding position that Title VII authorizes a mixed-motive standard for retaliation claims. In any event, they fail on their own terms.

31

1. Many of the arguments advanced by petitioner and its amici suffer from the same flaw: they apply equally to Title VII substantive discrimination claims to which the mixed-motive standard indisputably applies. Petitioner argues, for example, that the mixed-motive standard is "difficult to apply." Br. 25 (quoting *Gross*, 557 U.S. at 179); see *id.* at 26-28. Petitioner contends that mixed motives are "easy to allege" and "difficult for defendants to disprove," precluding summary judgment and prompting the settlement of "meritless" cases. *Id.* at 31-32. And petitioner emphasizes the need for a uniform standard. Pet. Br. 28-30.

Deciding this case in petitioner's favor would not resolve any of those concerns. A mixed-motive standard would still apply to other claims, and the uniformity petitioner envisions is illusory. Regardless of the outcome here, a standard other than *Gross*'s "but for" cause would continue to apply to substantive discrimination claims under Title VII (42 U.S.C. 2000e-2(m)), to other federal statutes where the causation standard is express (see Pet. Br. 19; Equal Employment Advisory Council Amicus Br. 13-15), in contexts where the expert agency has issued an authoritative interpretation adopting a burden-shifting standard (see *NLRB* v. *Transportation Mgmt. Corp.*, 462 U.S. 393, 401-403 (1983); *Gross*, 557 U.S. at 179 n.6), and to constitutional claims (see *Mount Healthy City Sch. Dist. Bd. of Educ.* v. *Doyle*, 429 U.S. 274, 285-287 (1977); *Gross*, 557 U.S. at 179 n.6).[13]

Creating a new, divergent standard for a subset of Title VII intentional discrimination claims would only exacerbate the purported confusion. Under petitioner's

---

[13] For this reason and others, the Court should decline petitioner's invitation to consider whether *Gross* should be applied to other statutes not before the Court.

32

theory, juries in cases alleging both substantive discrimination and retaliation under Title VII would confront two different causation standards. Cf. Pet. Br. 29 n.1. The objectives identified by petitioner would be better served by applying the same causation standard to claims arising under the *same* statute. To the extent petitioner and its amici disagree with the policy decisions reflected in the 1991 amendments to Title VII, their concerns should be directed at Congress, not this Court. See *Powerex Corp.* v. *Reliant Energy Servs., Inc.*, 551 U.S. 224, 237-238 (2007).

2. Petitioner, however, contends (Br. 33-35) that its stated concerns are "especially acute in the retaliation context" because retaliation is even easier to allege and more difficult to disprove than substantive discrimination. In petitioner's view, employees will strategically complain of discrimination, however meritless, in order to shield themselves from an adverse employment action. Employers, in turn, will be deterred from making necessary employment decisions for fear of being accused of retaliation.

That same argument was made, unsuccessfully, in several recent Title VII retaliation cases. Faced with similar expressed concerns, the Court broadly construed the antiretaliation provision to extend to third parties (*Thompson*), to employees that do not speak out on their own initiative (*Crawford*), and to circumstances beyond employer- or workplace-related retaliatory acts (*Burlington Northern*).[14] Indeed, to the extent the Court has deemed it appropriate to subject retaliation claims to differential treatment, it has interpreted the antiretal-

---

[14] See Resp. Br. at 24-27, *Thompson, supra*; Pet. Br. at 29-31, 47 n.16 & Reply Br. at 8-10, *Burlington Northern, supra*; cf. Resp. Br. at 33-34, *Crawford, supra*.

33

iation provision to provide *more* protection than the substantive antidiscrimination provisions. See *Burlington Northern*, 548 U.S. at 61-67 (Section 2000e-3(a) is not limited to the materially adverse employment actions required by Section 2000e-2(a).). Petitioner's arguments thus provide no basis for construing Section 2000e-2(m) to exclude retaliation claims from its terms.

## CONCLUSION

The judgment of the court of appeals should be affirmed.

Respectfully submitted.

|  |  |
|---|---|
| | DONALD B. VERRILLI, JR.<br>*Solicitor General*<br>THOMAS E. PEREZ<br>*Assistant Attorney General* |
| P. DAVID LOPEZ<br>*General Counsel*<br>CAROLYN L. WHEELER<br>*Acting Associate General<br>Counsel*<br>GAIL S. COLEMAN<br>*Attorney*<br>*Equal Employment<br>Opportunity Commission* | SRI SRINIVASAN<br>*Deputy Solicitor General*<br>MELISSA ARBUS SHERRY<br>*Assistant to the Solicitor<br>General*<br>DENNIS J. DIMSEY<br>TOVAH R. CALDERON<br>*Attorneys* |

APRIL 2013