IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 5:13-CV-00255-C |
| | ) | ECF |
| EQUAL EMPLOYMENT | ) | |
| OPPORTUNITY COMMISSION, *et al.,* | ) | |
| | ) | |
| Defendants | ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

**TABLE OF CONTENTS**

**PAGE**

INTRODUCTION ......................................................................................................................1

BACKGROUND ......................................................................................................................4

ARGUMENT ..........................................................................................................................7

I.      The Court Lacks Jurisdiction to Review the Guidance Because It
        Is Not Final Agency Action.........................................................................................7

II.     Plaintiff Lacks Standing to Bring This Suit ...............................................................13

III.    None of Plaintiff's Claims Is Ripe ............................................................................17

        A.  Counts I and II Are Unripe Because the Issues Plaintiff Seeks
            To Raise Are Not Purely Legal.....................................................................18

        B.  Count III Is Unripe Because There Would Be No Hardship To
            Withholding Review ......................................................................................22

CONCLUSION.....................................................................................................................23

# TABLE OF AUTHORITIES

**CASES**                                                                                          **PAGE(S)**

*AT&T v. EEOC,*
    270 F.3d 973 (D.C. Cir. 2001) ................................................................................9, 13

*Abbott Labs. v. Gardner,*
    387 U.S. 136 (1967) .................................................................................................17

*Appalachian Power Co. v. E.P.A.,*
    208 F.3d 1015 (D.C. Cir. 2000) .............................................................................9, 11

*Barrick Goldstrike Mines v. Browner,*
    215 F.3d 45 (D.C. Cir. 2000) ....................................................................................11

*Bennett v. Spear,*
    520 U.S. 154 (1997) ...................................................................................................7

*Board of Trs. Univ. of Ala. v. Garrett,*
    531 U.S. 356 (2001) .................................................................................................23

*Caddell v. United States,*
    2003 WL 1107200 (5th Cir. 2003) ...........................................................................4

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,*
    467 U.S. 837 (1984) ...................................................................................................8

*Choice Inc. of Texas v. Greenstein,*
    691 F.3d 710 (5th Cir. 2012) ...................................................................................22

*City of Boerne v. Flores,*
    521 U.S. 507 (1997) .................................................................................................23

*Clapper v. Amnesty Int'l,*
    133 S. Ct. 1138 (2013) ........................................................................................13, 17

*Clouser v. Espy,*
    42 F.3d 1522 (9th Cir. 1994) ...................................................................................10

*Cohen v. United States,*
    578 F.3d 1 (D.C. Cir. 2009) .....................................................................................11

*Ctr. for Auto Safety v. Nat'l Highway Transp. Safety. Admin.,*
    452 F.3d 798 (D.C. Cir. 2006) ...........................................................................11. 12

*Dish Network, L.L.C. v. FCC,*
    2014 WL 323660 (D.C. Cir. Jan. 22, 2014) ............................................................13

*Dow v. EPA,*
    832 F.2d 319 (5th Cir. 1987)................................................................9, 10

*EEOC v. Peoplemark, Inc.,*
    732 F.3d 584 (6th Cir. 2013)................................................3, 15, 16, 18

*In re: Employment Discrimination Litigation Against the State of Alabama,*
    198 F.3d 1305 (11th Cir. 1999).....................................................4

*Erickson v. Board of Governors of State Colleges and Universities for*
    *Northeastern Illinois University,* 207 F.3d 945 (7th Cir. 2000).....................22

*FTC v. Standard Oil Co.,*
    449 U.S. 232 (1980)...........................................................10

*Funk v. Stryker Corp.,*
    631 F.3d 777 (5th Cir. 2011)....................................................4

*Gen. Elec. Co. v. EPA,*
    290 F.3d 377 (D.C.Cir.2002) ...................................................12

*Green v. Mo. Pac. R.R.,*
    549 F.2d 1158 (8th Cir. 1977)............................................<u>passim</u>

*Griggs v. Duke Power Co.,*
    401 U.S. 424 (1971)...........................................................14

*Hawk Aircargo, Inc. v. Chao,*
    418 F.3d 453 (5th Cir. 2005)....................................................4

*Heart of Atlanta Motel v. United States,*
    379 U.S. 241 (1964)...........................................................22

*IBEW v. Miss. Power & Light Co.,*
    442 F.3d 313 (5th Cir.2006)...................................................19

*Kimel v. Florida Bd. of Regents,*
    528 U.S. 62 (2000)...........................................................23

*Lopez v. City of Houston,*
    617 F.3d 336 (5th Cir. 2010)...............................................17, 22

*Lujan v. Defenders of Wildlife,*
    554 U.S. 555 (1992)...........................................................10

*Lyng v. NW Indian Cemetery Protective Ass'n,*
    485 U.S. 439 (1988)...........................................................23

*N.A.A.C.P. v. North Hudson Regional Fire & Rescue,*
    665 F.3d 464, 477 (3d Cir. 2011) ................................................................................19

*Nat'l Pork Producers Council v. EPA,*
    635 F.3d 738 (5th Cir. 2011) ........................................................................................9

*National Park Hospitality Ass'n v. Department of Interior,*
    538 U.S. 803 (2003) ......................................................................................................23

*Nelson v. Univ. of Texas at Dallas,*
    535 F.3d 318 (5th Cir. 2008) ........................................................................................22

*Newsome v. EEOC ,*
    301 F.3d 227 (5th Cir. 2002) ................................................................................. 10, 13

*Opulent Life Church v. City of Holly Springs,*
    697 F.3d 279 (5th Cir. 2012) ........................................................................................17

*Pacheco v. Mineta,*
    448 F.3d 783, 787 (5th Cir. 2006) ...............................................................................19

*Peoples Nat'l Bank v. Office of Comptroller of Currency of U.S.,*
    362 F.3d 333 (5th Cir. 2004) ..........................................................................................7

*Pietras v. Board of Fire Com'rs of Farmingville Fire Dist.,*
    180 F.3d 468 (2d Cir. 1999) .........................................................................................14

*Reed v. Reno,*
    146 F.3d 392 (6th Cir. 1998) ........................................................................................10

*Richmond v. Chater,*
    94 F.3d 263 (7th Cir. 1996) ............................................................................................3

*Sample v. Miles,*
    239 Fed. Appx. 14, 2007 WL 486770 (5th Cir. 2007) ................................................7

*Scott v. City of Anniston,*
    597 F.2d 897 (5th Cir. 1979) ..........................................................................................4

*Seminole Tribe of Florida v. Florida,*
    517 U.S. 44 (1996) ........................................................................................................23

*Skidmore v. Swift & Co.,*
    323 U.S. 134 (1944) ........................................................................................... 8, 13, 14

*Stapper v. Texas Dep't of Human Resources,*
    470 F. Supp. 242 (W.D. Tex. 1979) ............................................................................14

*Texas Office of Public Utility Counsel v. F.C.C.,*
    183 F.3d 393 (5th Cir. 1999) ..................................................................................7, 17

*United States v. Houston,*
    26 F. Cas. 379 (C.C.D.C. 1832) (No. 15,398) ...............................................19

*United States v. Mead Corp.,*
    533 U.S. 218 (2001) .........................................................................................13

*Waldon v. Cincinnati Pub. Sch.,*
    941 F. Supp. 2d 884 (S.D. Ohio 2013) .....................................................3, 18

*Wards Cove Packing Co., Inc. v. Atonio,*
    490 U.S. 642 (1989) .........................................................................................19

*West Virginia v. United States,*
    479 U.S. 305 (1987) .........................................................................................22

## STATUTES

5 U.S.C. § 702 *et seq.* ............................................................................................7
5 U.S.C. § 704 ........................................................................................................7
42 U.S.C. § 2000e *et. seq.* ...............................................................................*passim*

## RULES AND REGULATIONS

29 C.F.R. § 1601.28(a)(1), (a)(2) .........................................................................5
40 C.F.R. § 61.65(a) ...............................................................................................9

## FEDERAL RULE OF CIVIL PROCEDURE

Rule 12(b)(1) ..........................................................................................................4

## MISCELLANEOUS

Vernon's Texas Statutes and Codes Annotated, Labor Code § 21.122 .................22

Vernon's Texas Statutes and Codes Annotated, Occupations Code, § 1701.312 ................3, 6

## INTRODUCTION

The State of Texas's First Amended Complaint challenges both the legality of a guidance document issued by the Equal Employment Opportunity Commission (EEOC) and the constitutionality of Title VII of the Civil Rights Act of 1964.     First Amended Compl. (FAC), Dckt. No. 24, March 18, 2014; Appendix (App'x) at 1-55 (EEOC, Consideration of Arrest and Conviction Records in Employment Decisions Under Title VII (Guidance), No. 915.002 (April 25, 2012)) (attached to the FAC as Exhibit A); 42 U.S.C. § 2000e *et. seq.*.   The Guidance explains how the EEOC thinks about practices that create barriers to employment based on criminal history (and arrest records, but that aspect of the Guidance is irrelevant in this case), in light of Title VII's prohibitions on employment practices that (i) result in a disparate impact on the basis of race or national origin (among other things) and (ii) are not job related and consistent with business necessity.   The State contends that the Guidance incorrectly interprets Title VII and runs afoul of the Administrative Procedure Act, and it asserts that Title VII violates the Constitution insofar as it imposes liability on states for discrimination claims brought by individuals under a disparate-impact theory.   FAC ¶¶ 38-53.

These claims should be dismissed because the State cannot establish three essential jurisdictional requirements.

*First*, Texas cannot demonstrate the existence of a final agency action.     The Guidance is just that – guidance.   In a nutshell, it reflects the EEOC's view – unremarkable in light of Title VII's prohibition on disparate-impact discrimination – that "an employer's use of an individual's criminal history in making employment decisions may, in some instances, violate the prohibition against employment discrimination under Title VII."   App'x at 4.   But the Guidance does not have any legal consequences.   The EEOC cannot fine or otherwise punish employers for practices that diverge, from its perspective, from the requirements of Title VII.   And the EEOC could *never* bring an enforcement action against the State to vindicate its viewpoint:   Title VII authorizes the Department

of Justice – not the EEOC – to bring enforcement actions against state governments.    In any event, in an enforcement action against a state, a court would enforce Title VII, not the Guidance.

*Second*, the State cannot demonstrate that it has standing to press the claims alleged in the amended complaint.  The reason is a familiar one:  the Guidance lacks legal consequences.  The State may disagree with the EEOC's interpretation of the law, but that does not imbue the interpretation with any legal consequences.

*Third*, none of the State's claims is ripe for review.   The Guidance does not adopt a bright-line rule that conflicts with the exclusionary policies championed by Texas (*i.e.*, policies that exclude an individual from certain employment opportunities based on a felony conviction).   Instead, consistent with case law interpreting Title VII, the Guidance endorses a fact-based approach to assessing such employment practices.   And given the Guidance's fact-based focus, the State cannot demonstrate the existence of a ripe conflict – academic though it would be, given the Guidance's lack of legal consequences – between its policies and the Guidance's views on them.   The preceding discussion addresses the ripeness of Counts I and II.   But Count III is unripe too, because the State would not be harmed by the Court withholding review.   The State's only possible Eleventh Amendment interest is in avoiding Title VII claims for damages brought by individuals, and it can fully vindicate this interest if and when an individual brings such a claim.

This is the second motion to dismiss filed by the EEOC and the first by the Department of Justice, which Texas added as a defendant in the amended complaint.  The EEOC's first motion to dismiss prompted the State to amend its complaint and file an opposition brief, Plaintiff's Opposition to Motion to Dismiss, Dckt. No. 25 (Opp.).  The original complaint, which the opposition brief defends, has been superseded.  Nonetheless, the opposition brief provides a useful – and colorful – guide to the State's positions.   It also frames the issues in a manner that warrants correction.   In the opposition brief, the State upbraids the EEOC for having the "audacity" to assert that the timing of

the suit is "'far from impeccable,'" painting the EEOC's filing as an effort to "have [its] cake and eat it too" by allowing the agency to continue to "bully employers into hiring felons" with "abusive" conduct, while avoiding "another stinging rebuke on the merits." Opp. at 1. And it calls the Guidance the "Felon-Hiring Rule" too. *Id.*

It will probably come as no surprise to learn that the EEOC disagrees with the State's portrayal of things. Challenging the jurisdictional bona fides of the State's complaint was – and is – no audacious act. It was and is an act of obligation. *E.g.*, *Richmond v. Chater*, 94 F.3d 263, 267 (7th Cir. 1996) ("[L]awyers violate their duty as officers of the court when they agree to suppress their doubts about the court's jurisdiction."). And without subjecting the Court to litigation over the propriety of the EEOC's conduct in another case – the "abus[e]" rhetoric stems from one case, *EEOC v. Peoplemark, Inc.*, 732 F.3d 584 (6th Cir. 2013) – it suffices to say that the government of the State of Texas, "the largest employer in the second-largest State in the Nation," has not been bullied: The EEOC has embraced the same basic view of the law with respect to criminal-record exclusions for 25 years, App'x at 113 (EEOC, Policy Statement on the Issue of Conviction Records, February 4, 1987); App'x at 116-17 (EEOC, Policy Statement on the Use of Statistics in Charges Involving the Exclusion of Individuals with Conviction Records from Employment, July 29, 1987), and Texas has for many years used at least some of the hiring practices that it now preemptively seeks to vindicate, *see* Vernon's Texas Statutes and Codes Annotated, Occupations Code, § 1701.312, Credits. Nor is the EEOC hiding from the merits. The EEOC has not been issued a single "stinging rebuke" on the merits, so it does not fear that another is in the offing. To the contrary, courts have adopted the EEOC's view that depriving individuals of employment opportunities on the basis of their criminal histories can constitute disparate-impact race discrimination. *E.g., Green v. Mo. Pac. R.R.*, 549 F.2d 1158, 1160 (8th Cir. 1977); *Waldon v. Cincinnati Pub. Sch.*, 941 F. Supp. 2d 884, 889-90 (S.D. Ohio 2013). And as to the merits of the Eleventh Amendment claim, courts of appeals – including the Fifth Circuit – have

rejected the very challenge raised by Texas.  *E.g.*, *Scott v. City of Anniston*, 597 F.2d 897, 899-900 (5th Cir. 1979); *In re: Employment Discrimination Litigation Against the State of Alabama*, 198 F.3d 1305, 1318-24 (11th Cir. 1999).  Finally, as to the not-so-subtle appellation bestowed upon the Guidance by the State, it requires no response beyond this:  The Guidance is not a "Felon-Hiring Rule." *See* Guidance.

Important though the preceding few paragraphs regarding framing are, they should not shift the focus away from the fact that the State's amended complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.

## BACKGROUND

The EEOC issued the Guidance in 2012.  App'x at 1.  It explains that "[a]n employer's neutral policy (*e.g.*, excluding applicants from employment based on certain [past] criminal conduct) may disproportionately impact some individuals protected under Title VII, and may violate the law if not job related and consistent with business necessity (disparate-impact liability)." *Id.*  The Guidance further explains that, during its investigation, when assessing whether a practice has a legally prohibited disparate impact, the EEOC conducts a fact-based inquiry.  It (i) identifies the "particular policy or practice" at issue, (ii) reviews statistical data on whether the practice has a disparate impact on a protected class, and, (iii) if necessary, assesses whether facts demonstrate that the practice is job-related and consistent with business necessity.  App'x at 12-15.  The EEOC's basic view that exclusionary policies can result in a disparate impact is not new:  The agency has espoused it for a quarter of a century.  *See* App'x at 113-117.[1]

---

[1] The Court may consider the policy statements cited here – and the Compliance Manual cited later, App'x at 56-112 (EEOC, Compliance Manual, § 15, April 19, 2006) – without converting this motion to a motion for summary judgment because they are subject to judicial notice, *see Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011); *Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005), and, in addition, matters outside the pleadings may be considered when deciding a Rule 12(b)(1) motion without triggering an obligation to convert it into a motion for summary judgment, *Caddell v. United States*, 2003 WL 1107200, *1 (5th Cir. February 17, 2003).

The EEOC Guidance addresses states in their capacity as employers "as part of [its] efforts to eliminate unlawful discrimination in employment screening . . . by entities covered by Title VII, including private employers as well as federal, state, and local governments." App'x at 6. It also invokes Title VII's preemption provision, noting that "State and local laws or regulations are preempted *by Title VII* if they purport to require or permit the doing of any act which would be an unlawful employment practice under Title VII." App'x at 5 (internal quotation marks omitted) (emphasis added); *see* 42 U.S.C. § 2000e-7.

Importantly, with respect to states, the EEOC plays a more limited role in implementing Title VII than it does with private employers: The EEOC is prohibited by statute from bringing enforcement actions against states under Title VII. 42 U.S.C. § 2000e-5(f)(1). If a state employee or job applicant thinks s/he has been subjected to an unlawful employment practice, then s/he can file a charge with EEOC. *Id.* § 2000e-5(b). The EEOC will then conduct an investigation and if, after completing its investigation, it determines that "there is not reasonable cause to believe that the charge is true, it shall dismiss the charge and promptly notify the person claiming to be aggrieved and the [state] of its action." *Id.* The notice to the employee or applicant is typically referred to as a right-to-sue letter[2] because, as a general matter, the employee or applicant can file a suit once s/he receives the letter, but not before. *Id.* § 2000e-5(f)(1). If, however, the EEOC concludes that there is reasonable cause to believe that a violation of Title VII has occurred, then it initiates conciliation. *Id.* § 2000e-5(b). This is essentially a process by which the EEOC tries to facilitate a settlement agreement with the state. *Id.* But if conciliation fails, the EEOC cannot bring an enforcement action against the state. *Id.* § 2000e-5(f)(1). Title VII requires that the EEOC refer the matter to the Department of Justice for it to make its own decision regarding whether to bring an enforcement

---

[2] An individual can also request that the EEOC issue a right to sue letter before it completes its investigation. 29 C.F.R. § 1601.28(a)(1), (a)(2), (d)(2).

action or issue a right to sue letter.  *Id.*  Notably, notwithstanding the numerous paragraphs of the complaint devoted to EEOC enforcement actions, FAC ¶¶ 17-22, Texas does not allege that the Department of Justice has ever brought a case against a state premised on a disparate impact resulting from a felony-conviction hiring exclusion.

Texas alleges that it employs thousands of people, and it claims that "[f]or many state jobs, state law and longstanding hiring policies impose absolute bans on hiring convicted felons (or in some instances persons convicted of certain categories of felonies)."  FAC ¶ 23.  The practices apparently differ by agency.  For example, the Texas Juvenile Justice Department allegedly refuses to hire applicants convicted of one of a number of listed felonies (and the list size varies by job), *id.* ¶ 27, while the Texas Lottery Commission supposedly refuses to hire anyone convicted of any felony (and apparently some misdemeanors) in the last ten years, *id.* ¶ 28.  At least some of these practices have existed for more than a decade.  *See* V.T.C.A., Occupations Code, § 1701.312, Credits.

Notwithstanding the years' long coexistence of the EEOC's understanding of Title VII and plaintiff's felony-exclusion hiring practices, plaintiff filed this declaratory judgment action.  The amended complaint contains three counts.  Count I seeks a declaration of plaintiff's "right to maintain and enforce its law and policies that absolutely bar convicted felons (or certain categories of convicted felons) from serving . . . [in] any [ ] job the State and its Legislature deem appropriate."  FAC ¶ 43.  Count I further seeks to enjoin EEOC and the Department of Justice from "enforcing the interpretation of Title VII that appears in" the Guidance and from issuing right-to-sue letters.  FAC ¶ 44.  Count II requests that the Court hold unlawful and set aside the Guidance as (1) a substantive rule that was issued without notice and opportunity for comment, (2) outside the EEOC's statutory authority, and (3) "an unreasonable interpretation of Title VII."  FAC ¶¶ 48-50.  Finally, Count III requests a declaratory judgment that "disparate impact liability under Title VII represents an impermissible exercise of Congress's enforcement powers under the Fourteenth Amendment" and

therefore cannot be a basis for state liability.    FAC ¶ 52.    Count III also requests that the court enjoin

the EEOC and DOJ from issuing right-to-sue letters that would allow individuals to sue state officials

or agencies.    FAC ¶ 53.

## ARGUMENT

**I.    The Court Lacks Jurisdiction to Review the Guidance Because It Is Not Final Agency Action.**

Counts I and II of the amended complaint challenge the Guidance.    *See* FAC ¶¶ 38-50.    The

Court has jurisdiction to entertain these challenges only if the Guidance constitutes final agency action

under the APA.[3]    5 U.S.C. § 704; *Peoples Nat'l Bank v. Office of Comptroller of Currency of U.S.*, 362 F.3d

333, 336 (5th Cir. 2004).    The Supreme Court has established a two-part test for determining whether

agency action is final.    *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).    First, the agency action must

mark the "consummation" of the agency's decision making process; it cannot be tentative or

interlocutory in nature.    *Id.*    Second, the action must be one by which "rights or obligations have

been determined" or from which "legal consequences will flow."    *Id.* at 178.

The EEOC Guidance is not final agency action under the APA.    No obligations arise as a

result of the Guidance.    Contrary to the State's representation, Opp. at 2, the Guidance does not

contain language directing employers to perform an individualized assessment of every applicant:

"Title VII thus does not necessarily require individualized assessment in all circumstances."    App'x at

17.    Nor, contrary to the State's representation, does the Guidance contain language directing

employers to scrap policies that bar individuals with felony convictions (or certain categories of felony

---

[3] The first count does not cite the APA.    FAC ¶¶ 38-40.    But it appears to present an APA cause of action, insofar as it challenges the legality of an agency action (*i.e.*, the issuance of the Guidance).    *See* 5 U.S.C. § 702 *et seq.*    In any case, review of the Guidance depends on it being a final agency action for at least two reasons:    (1) Agency action is not ripe for review unless it is final, *Texas Office of Public Utility Counsel v. F.C.C.*, 183 F.3d 393, 411 n.11 (5th Cir. 1999), and (2) the APA waiver of sovereign immunity applies only if the Guidance constitutes final agency action, *Sample v. Miles*, 239 Fed. Appx. 14, 19, 2007 WL 486770, *2 (5th Cir. 2007).

convictions) from serving in certain positions. According to the State, "the EEOC went out of its way to condemn categorical no-felons policies like Texas's in mandatory terms." Opp. at 22. For this proposition, the State quotes the following language from the Guidance: "A policy or practice requiring an automatic, across-the-board exclusion from *all employment opportunities* because of *any criminal conduct* is inconsistent with the [enumerated] factors because it does not focus on the dangers of particular crimes and the risks in particular positions," App'x at 19 (emphasis added). Opp at 22. The State's assertion does not follow from the language of Guidance. The Guidance refers to exclusionary policies that rule out "all employment opportunities" based on "any criminal conduct," while the policies referenced by the state exclude employees from certain (not all) positions, or because of certain (not just any) criminal conduct.

But even if there were salient directive language in the Guidance, the Guidance would not create any legal obligations. The relevant legal obligation is the state's obligation not to discriminate on the basis of, among other things, race or national origin in employment matters. This obligation arises out of Title VII, however, not the Guidance. 42 U.S.C. § 2000e-2 (defining unlawful employment practices without reference to Guidance). That is, the Guidance does not create new non-discrimination obligations. Rather, it reflects the EEOC's long-standing, non-binding understanding of the existing obligations imposed by Title VII: "An employer's use of an individual's criminal history in making employment decisions may, in some instances, violate the prohibition against employment discrimination under Title VII of the Civil Rights Act of 1964, as amended."[4] *See, e.g.*, App'x at 4. So, if a Court were to ultimately determine that one of the State's exclusionary policies

---

[4] The EEOC's understanding of the meaning of Title VII would not bind a court in an enforcement action because the Guidance is *not* entitled to *Chevron* deference, under which the Court would be obligated to defer to any reasonable interpretation offered by the agency (if Congress had not spoken to the issue). *See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843-44 (1984). Rather, as discussed below, the EEOC's interpretation would be entitled to *Skidmore* deference. *See Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).

amounted to impermissible race discrimination, the basis for that ruling would be Title VII, not the Guidance.   The Fifth Circuit has deemed agency action non-final in similar circumstances.   *Nat'l Pork Producers Council v. EPA,* 635 F.3d 738, 756 (5th Cir. 2011) (holding that the EPA's interpretation of an environmental statute to cover a certain type of discharge as a pollutant did not amount to final agency action because it was the statute that prohibited the discharge of pollutants); *Dow v. EPA*, 832 F.2d 319, 323 (5th Cir. 1987) (concluding that a letter did not constitute final agency action because, while Dow may be penalized for certain practices that the EPA disagreed with in the letter, the "legal source for these orders [imposing penalties] . . . will be 40 C.F.R. § 61.65(a), and not any later EPA interpretation of that regulation.").   And in a case akin to this one, the D.C. Circuit concluded that the EEOC's expression of its views of what the law requires, in its compliance manual (which resembles the Guidance[5]), did not constitute final agency action because the view would have "force only to the extent the agency can persuade a court to the same conclusion."   *AT&T v. EEOC*, 270 F.3d 973, 976 (D.C. Cir. 2001); *id.* at 975.[6]

Similarly, no legal consequences flow from the Guidance.   The Guidance does not conclude that all felony-based exclusionary policies violate Title VII, as noted earlier.   App'x at 19.   But even if one thought that it did, no legal consequence would follow from that.   Upon receipt of a charge of race discrimination based on an exclusionary policy, the EEOC would open an investigation (as it

---

[5] *Compare* App'x at 56-112 (Compliance Manual) *with* App'x at 1-55 (Guidance).

[6] Plaintiff argues that the *AT&T* case is distinguishable because that case held simply that the plaintiff had failed to plead the existence of the sort of legal consequences that establish final agency action, but that the State here has pleaded such consequences.   Opp. at 24.   This is not an argument; it is a conclusion.   And it is an untenable one, because the *AT&T* court rejected the position advocated by the State in this case.   In *AT&T*, the company said that the EEOC's adoption of a legal position through the compliance manual and the issuance of letters harmed it, just as the guidance document had harmed the plaintiff in *Appalachian Power Co. v. E.P.A.*, 208 F.3d 1015, 1022 (D.C. Cir. 2000).   The State takes the same basic view here.   *See* FAC ¶ 46.   But the court in *AT&T* rejected that argument because the Compliance Manual and the letters did not bind the EEOC to take any action that had legal consequences.   *AT&T*, 270 F.3d at 976.   The same logic applies here, as explained throughout this section

would with any charge).  An administrative investigation is not a "legal consequence."  *See FTC v. Standard Oil*, 449 U.S. 232, 242 (1980) (stating that the burden of administrative proceedings is "different in kind and legal effect from the burdens attending what heretofore has been considered to be final agency action").  Following the investigation, the EEOC would either refer the matter to the Department of Justice for further investigation and a potential civil enforcement action (because, as mentioned earlier, the EEOC cannot bring enforcement actions against states), or issue a right to sue letter on the ground that the EEOC had not found reasonable cause to believe that a violation of Title VII had occurred, *id.* § 2000e-5(b).  Consider first referral.  Even if the EEOC had reached the conclusion that all felony-based exclusions are illegal, the Department of Justice would not be bound by that conclusion; one agency's administrative dictates do not ordinarily bind another agency, *cf. Lujan v. Defenders of Wildlife*, 554 U.S. 555, 569-70, 570 n.4 (1992), *see Clouser v. Espy*, 42 F.3d 1522, 1535 (9th Cir. 1994); *Reed v. Reno*, 146 F.3d 392, 397 (6th Cir. 1998), and plaintiff does not allege otherwise, *see* FAC.  Thus, any decision to file suit would not be a result of the Guidance, but of the Department of Justice's own views of the requirements of Title VII as applied to the facts of a particular case.[7]  And if the EEOC were to issue a right to sue letter instead of referring the matter to the Department of Justice, that act too would lack legal consequence under Fifth Circuit precedent.  *See Newsome v. EEOC,* 301 F.3d 227, 232 (5th Cir. 2002) (holding that the issuance of a right to sue letter was not final agency action).

　　　Texas's own theory of the case provides additional support for the conclusion that the Guidance does not create any obligations or legal consequences.  Texas alleges that the EEOC lacks the authority to issue substantive rules implementing Title VII.  FAC ¶ 48.  But if the agency lacks the authority to issue substantive rules, then the Guidance could not change plaintiff's legal obligations

---

[7] In any case, the filing of a complaint likely does not constitute a final agency action in the Fifth Circuit.  *See Dow*, 832 F.3d at 325.

or generate legal consequences.   *See Ctr. for Auto Safety*, 452 F.3d at 810.

Plaintiff insists that the Guidance constitutes final agency action, and its opposition to the EEOC's first motion to dismiss provides a roadmap of its likely arguments.   It is not a roadmap for success.   The State initially leans heavily on three D.C. Circuit cases to support its argument:   *Cohen v. United States,* 578 F.3d 1 (D.C. Cir. 2009) (vacated on other grounds); *Appalachian Power Co. v. EPA,* 208 F.3d 1015 (D.C. Cir. 2000); and *Barrick Goldstrike Mines v. Browner,* 215 F.3d 45 (D.C. Cir. 2000).   Opp. at 17-20.   They stand for the unremarkable proposition that documents labeled as informal guidance by agencies are sometimes deemed by the courts to be final agency action.   Opp. at 17.   There is no doubt about that; the defendants do not contend that an agency's label is conclusive.   But of course the devil is in the details, and the important "detail" in those cases is that the action at issue – unlike the Guidance – created rights or obligations, or had legal consequences.   *Cohen,* 578 F.3d at 8-9 (stating that the agency document at issue created rights and obligations regarding the collection, payment, and refund of taxes), *Appalachian Power,* 208 F.3d at 1022-23 (concluding that guidance constituted final agency action because, among other things, it would be used to review and set conditions in permits); *Barrick Goldstrike Mines,* 215 F.3d at 48 (holding that the agency action had "legal consequences" because it obligated plaintiff to track "its movement of waste rock and report the movements as releases of toxic substances").

The State suggests that the Guidance has legal consequences because it "force[s] employers to change their behaviors."   Opp. at 24.   But the Guidance does not "force" employers to change their behaviors.   Indeed, this case highlights that fact.   The EEOC's interpretation and Texas' laws have co-existed for decades, and the State has failed to allege any change in its behavior as a result of the EEOC's interpretation.   Moreover, there is no legal consequence for an employer failing to adopt the view of the law espoused by the EEOC in the Guidance, as explained above.   At its core, the State's argument is that some other parties have chosen to voluntarily comply with Guidance to avoid

possible enforcement action.   But even if true, that does not establish that the Guidance has *legal* consequences:   Voluntary compliance is a practical effect, which is not a basis for deeming an agency action final.   *Ctr. for Auto Safety v. Nat'l Highway Transp. Safety. Admin.*, 452 F.3d 798, 811 (D.C. Cir. 2006).   Moreover, as voluntary compliance is, by definition, voluntary, it is not legally speaking a consequence of the Guidance.

The State also maintains that "mandatory language" in the Guidance demonstrates that it is final agency action.   Opp. at 20 (internal quotation mark omitted).   But, as mentioned earlier, there is no "mandatory language" addressing the employment policies of interest to the state – exclusionary policies that permanently deprive individuals convicted of certain felonies of the opportunity to compete for certain categories of jobs.   Moreover, the effect of mandatory language must be considered in the context of an agency's authority, and the presence of any mandatory language in the Guidance cannot establish that it imposes obligations or has legal consequences because none of the EEOC's options for responding to a charge of discrimination under Title VII (investigation, referral to the Department of Justice, and the issuance of a right to sue letter) has legal effect.

Finally, the State argues in shotgun-like fashion that the Guidance is final agency action because it binds agency employees, creates safe harbors, and lists factors that the agency will consider on a case-by-case basis.   Opp. at 22.   None of these arguments has merit.   The two basic faults with the State's mandatory language argument sink the agency employee argument as well:   (1) the Guidance does not obligate agency employees to conclude that Texas's policies are unlawful because it does *not* reach the conclusion that all felony-based exclusions are illegal; and in any case, (2) the employee's actions cannot impose legal obligations on, or create legal consequences for, the State. The safe-harbor argument is similarly unavailing.   Courts consider the creation of safe harbors to be evidence of final agency action.   *Gen. Elec. Co. v. EPA*, 290 F.3d 377, 383 (D.C.Cir.2002).   But the Guidance cannot create a safe harbor because it merely expresses the agency's non-binding

understanding of Title VII; a court will ultimately determine the scope of the statute's anti-discrimination provision. *See Newsome*, 301 F.3d at 227; *AT&T*, 270 F.3d at 975. In any event, the alleged safe harbors are no such things because they are framed in equivocal language. The Guidance lists two practices that the Commissioners "believe will consistently" satisfy the requirements of Title VII. App'x at 17. This is no guarantee against liability should there be a lawsuit. And the State's argument regarding the listing of factors also fails. The state's brief neglects to mention what the list of factors is used for. Opp. at 22. The list is used to determine whether a practice is one that the Commissioners "believe will consistently" satisfy Title VII. App'x at 17. Something that does not satisfy that list, then, is not necessarily an employment practice that the EEOC considers to be inappropriate under Title VII – just as conduct that falls outside of a safe harbor is not necessarily unlawful. In any case, there is no escaping the fact that a Court will determine the scope of Title VII and will not be bound by the Guidance when doing so.[8]

## II.     Plaintiff Lacks Standing to Bring This Suit.

To establish standing to sue under Article III, a plaintiff must allege that it has suffered a concrete injury, or that such an injury is "imminent" or "certainly impending." *See Clapper v. Amnesty Int'l*, 133 S. Ct. 1138, 1147 (2013). In addition, to support standing the injury alleged must be traceable to the defendant's challenged conduct and able to be redressed by the relief sought. *Id.* The EEOC's expression of its view in the Guidance about what Title VII means inflicts no such

---

[8] At the end of its brief, the State suggests that the Guidance is a final agency action because the EEOC may one day ask a court to defer to it, just as it has asked the Supreme Court to defer to other guidance documents. Opp. at 24-25 (citing briefs filed by the EEOC in the Supreme Court). This argument is a nonstarter. In the Supreme Court briefs cited by the State, the EEOC sought *Skidmore* deference. Under *Skidmore* deference, courts afford agency interpretations respect proportional to their persuasiveness. *United States v. Mead Corp.*, 533 U.S. 218, 235 (2001). An agency document, like the Guidance, that expresses a legal view "'that has force only to the extent that the agency can persuade a court to the same conclusion'" (*i.e.*, that receives *Skidmore* deference) lacks legal consequences and so is not a final agency action. *Dish Network, L.L.C. v. FCC*, 2014 WL 323660, at *1 (D.C. Cir. Jan. 22, 2014) (quoting *AT&T*, 270 F.3d at 976).

tangible harm on Texas.  And eradicating any trace of the Guidance would redress no Article III injury.

Texas is not injured by the *Guidance*.  No one can be found to "violate" the Guidance or be injured by it, for it has no effect as law.  No one is "directed" to do or not do anything by the Guidance.  *See* Op. at 6.  It is instead Title VII that does prohibit – and has prohibited, from the time it was signed into law fifty years ago by a President from Texas -- employment practices that have a disparate impact on protected classes and are not shown to be job related.  *Griggs v. Duke Power Co.*, 401 U.S. 424 (1971).  The Guidance, to be sure, says some of what the EEOC thinks about what Title VII means and will be entitled to deference that, under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), will depend on the power of its reasoning to persuade.  But even briefs and law review articles have considerable power to persuade.  It is ultimately Title VII, not views offered in the Guidance, that controls, that prohibits, that directs.

Texas nevertheless argues that the EEOC's statement of its views somehow causes injury in fact that, say, a law review article might not because the EEOC, unlike a law review writer, is a "bully" that can throw the "full weight of its enforcement apparatus" at any hapless employer who dares to "refuse to fall in line," using "sanctionable," *frivolous*," and *"groundless*" litigation tactics.[9]  Opp. at 1, 3, 14.

Of course, the EEOC's "enforcement apparatus" does not include the authority to bring

---

[9] Texas even seems to argue that the EEOC or the Department of Justice issuing a right-to-sue letter causes an injury, and it argues that this kind of supposed injury can be redressed by having the Court order defendants not to issue such letters.  FAC ¶¶ 44, 53.  In fact, ordering the EEOC and the Department of Justice to stop issuing right to sue letters (including when dismissing charges against Texas) would not redress any such injury.  If the agencies were enjoined from issuing a right to sue letters within the time frame set out by the statute, the individuals who filed the administrative charge could still file suit.  *Pietras v. Board of Fire Com'rs of Farmingville Fire Dist.*, 180 F.3d 468, 474 (2d Cir. 1999); *Stapper v. Texas Dep't of Human Resources*, 470 F. Supp. 242, 246 (W.D. Tex. 1979).  And nothing would preclude such an individual from premising his or her suit on the disparate- impact theory that plaintiff assails in this case.  Thus, the relief sought would not redress the alleged injury.

enforcement actions against states.   42 U.S.C. § 2000e-5(f)(1).   And in the fifty years during which Title VII has proscribed use of employment practices with a disparate impact that are not sufficiently job related, Texas cites no instance in which the EEOC has ever "bullied" *Texas* over its hiring or non-hiring of applicants with criminal records.   Instead, in support of its barrage of sanctionable-conduct rhetoric, plaintiff cites over and over and over again litigation against *someone else* described in *EEOC v. Peoplemark, Inc.*, 732 F.3d 584 (6th Cir. 2013), a panel opinion issued over a strong dissent.   Even assuming for present purposes that the panel majority's comments about the EEOC in that case were justified,[10] Texas draws the wrong conclusions.

First, the conduct the panel majority thought sanctionable occurred in 2009 and 2010, a time before the Guidance even existed.   *See* 732 F.3d at 587-89.   If *Peoplemark* showed the problem, the Guidance that did not then exist couldn't have been the cause (even if one believes, as Texas apparently does, that the issuance of the Guidance marked a meaningful change in the EEOC's approach), and removing it couldn't be the solution, *i.e.*, could not provide the kind of redress required for Article III standing.   Although Texas does not claim to have been sued in the first fifty years of Title VII over hiring or not hiring persons with criminal records, whatever fear it harbors that such a suit might be filed at some point in the next fifty years would continue to exist with or without the Guidance.[11]

---

[10] With any litigant who appears in court as often as the EEOC it is easy to dredge up some case in which that litigant has been sharply criticized by a judge.   Heaving such a criticism as a by-blow aside into a different case puts the frequent litigant in a no-win situation, as it can dispute the merits of the criticism only by embroiling the Court in satellite relitigation over what happened in that prior case.   Accordingly, without implying that the EEOC agrees with *Peoplemark*, at this stage of this case this motion does not seek to relitigate *Peoplemark*.

[11] Texas now claims that the "risk" of enforcement is no longer "theoretical," because the "EEOC already has filed 'a charge of discrimination'" against a Texas agency for, in plaintiff's view, applying a policy against hiring felons that plaintiff's memorandum represents is required by state law.   Opp. at 2, 15.   That is a misreading of what happened.   The *EEOC* did not "file" a charge of discrimination against Texas.   As Texas's own exhibit C plainly indicates – in the document title no less – the EEOC

Second, what Texas contends can never be justified, an EEOC challenge to a blanket policy never to hire a former felon, was not found by the panel majority to be sanctionable or even wrong: *Peoplemark* said that the EEOC *did* "have a basis" for challenging a blanket policy not to hire felons for the occupations at issue in that case.    732 F.3d at 591.    Instead, the EEOC's mistake, according to the *Peoplemark* majority, was that the employer's attorney told the EEOC that the employer had a blanket policy of not hiring felons and it took the EEOC too long to plough through a couple hundred thousand pages of discovery documents to realize that the employer's attorney had not understood his own client's practice.    *See id.* at 587-92.

Finally, Texas's argument that the Guidance injures it in a way that creates standing is even more far-fetched with respect to Count III than it is with regard to Counts I and II.    In Count III, Texas appears eager to challenge the constitutionality any kind of disparate-impact litigation, whether the across-the-board policy in question is not hiring former criminals to be pre-school teachers, not hiring clerks who can't do fifty push-ups, or not hiring janitors who can't read Japanese.    Texas argues that any such liability would violate its sovereign immunity.    The Guidance does not focus on or address that issue or indeed focus on whatever, if any, special rules may apply to States qua States as employers.    It instead addresses, with respect to all employers subject to Title VII, one particular type of practice (which could be disparate treatment or disparate impact or neither, depending on the facts) without revisiting more general principles of Title VII, such as the general principle that disparate impact is covered or, a specific issue such as whether States are subject to disparate impact at all.    The

---

merely sent Texas a "notice" that someone else, an Austin resident, had filed a "charge of discrimination" against a state agency.  That is no more the EEOC "launch[ing]" a charge against Texas, Opp. at 3, than it is the Clerk of this Court who is suing every defendant served with a summons over the Clerk's signature.  And despite plaintiff's supposed fears that the Guidance puts the EEOC on an autopilot course that will inevitably have EEOC challenging the plaintiff's hiring practices, the EEOC in fact told both the Austin resident and Texas that the EEOC was "*unable* to conclude that the information obtained establishes violations of the statutes." FAC Ex. D (emphasis supplied).

Guidance provides no standing for Texas to raise the sovereign immunity question, which is not addressed by the Guidance.[12]

## III.    None of Plaintiff's Claims Is Ripe.

Courts may not decide claims that are abstract or otherwise not yet fit to be decided.   None of plaintiff's claims is ready to be decided given the lack of a final agency action, the existence of factual and potential constitutional questions, and the fact that withholding review will not impose a hardship on plaintiff.

The basic rationale of the ripeness doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967).   The doctrine comprises constitutional and prudential elements. *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 286 (5th Cir. 2012).

When deciding whether a claim is ripe, courts assess whether the issue to be decided is fit for judicial review and what, if any, is the hardship to the parties of withholding review.   *Opulent Life Church*, 697 F.3d at 286.   A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required.   *Id.*   The fitness-for-decision and harm elements generally must be balanced against each other.   *Lopez v. City of Houston*, 617 F.3d 336, 342 (5th Cir. 2010).   But "[e]ven where an issue presents purely legal questions, the plaintiff must show some hardship in order to establish ripeness."   *Id.* (internal citation omitted).

With respect to challenges to agency actions, the Fifth Circuit has distilled the doctrine into a

---

[12] When Texas amended its complaint, it added U.S. Attorney General Eric Holder in his official capacity – *i.e.*, the Department of Justice – as a defendant.   *See* FAC ¶ 5.   But Texas does not identify an action taken by the Department that has caused it injury or imminently will cause it injury.   The Department did not issue the Guidance and is not bound by it (which, even if the opposite were true, would not establish an injury), and the State does not allege that the Department has brought an enforcement action against it under a disparate-impact theory based on its felony-related exclusionary policies.   Nor has Texas alleged that an enforcement action is "certainly impending."   *Clapper*, 133 S. Ct. at 1147.   Thus, the State lacks standing to sue the Department.

four-part test, and a plaintiff must satisfy all four elements of the test to demonstrate ripeness. *Texas Office of Public Utility Counsel v. F.C.C.*, 183 F.3d 393, 411 n.11 (5th Cir. 1999). Under this test, a court considers:

> (1) whether the issues are purely legal; (2) whether the issues are based on a final agency action; (3) whether the controversy has a direct and immediate impact on the plaintiff; and (4) whether the litigation will expedite, rather than delay or impede, effective enforcement by the agency.

*Id.* This memorandum has already established that the claims premised on the Guidance are not ripe, because they are not based on final agency action. This suffices to demonstrate the absence of jurisdiction as to those claims. But there is more: Texas's claims are also unripe because, with respect to Counts I and II, they present factual questions that cannot be resolved in this litigation, and as to Count III, the controversy does not have a direct and immediate impact on the State.

A. Counts I and II Are Unripe Because the Issues Plaintiff Seeks To Raise Are Not Purely Legal.

With no apparent awareness of the irony of its position, Texas attempts to goad the EEOC and this Court into repeating the action criticized in *Peoplemark*. As in *Peoplemark*, the attorney for the employer is representing that the employer has across-the-board policies not to hire former criminals, *see* FAC ¶¶ 24-31. And, notwithstanding its reliance on *Peoplemark*, Texas urges that the Court make an abstract, context-free decision whether such policies, if they exist, would be always legal or never legal. The better practice, as the Guidance, Title VII cases and even (or especially) *Peoplemark* teach, is to consider the actual facts and circumstances in which hiring occurs. *See, e.g., Green*, 549 F.2d at 1160; *Waldon*, 941 F. Supp. 2d at 889-90.

As a threshold matter there's a point so obvious that it can easily be overlooked: A blanket prohibition on hiring former felons cannot constitute disparate impact discrimination unless it in fact has a disparate impact. Determining whether such a disparate impact exists involves a factual analysis of the relevant labor market. *See Wards Cove Packing Co., Inc. v. Atonio*, 490 U.S. 642, 650-651 (1989)

(abrogated by statute on other grounds). The specific hiring practice is also relevant. Texas state agencies do not have uniform employment practices. Some agencies, according to Texas's attorneys at least, automatically disqualify all felons, while others disqualify only individuals convicted of certain felonies.[13] *See* FAC ¶¶ 23-31. One set of practices might not result in a disparate impact, while another set might. Nor does plaintiff concede that all of its current and potential future felony-conviction-based hiring practices in fact have a disparate impact.

And even where a practice does have a disparate impact, the Guidance recognizes that the facts and circumstances matter and, therefore, that there can be no always-legal or never-legal answer. The fact that a practice causes a disparate impact is only the beginning of the inquiry into whether it violates Title VII. The inquiry also requires consideration of whether the practice is job related for the particular job at issue and consistent with business necessity. 42 U.S.C. § 2000e–2(k)(1)(A)(I); *Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir. 2006). In the context of criminal histories, among the facts and contexts the courts (and the EEOC) say should be considered when considering job-relatedness and connection to business necessity are: (i) the nature and gravity of the offenses excluded, (ii) whether the practice takes account of the time that has passed since the conviction and/or completion of the sentence, and (iii) the type of job sought.[14] *Green v. Mo. Pac. R.R.*, 549 F.2d 1158, 1160 (8th Cir. 1977); App'x at 17-25.

---

[13] And some practices would even preclude Sam Houston from getting a job. For example, if Sam Houston himself were to apply today for a job as game warden, Texas would apparently refuse to consider his application. *Compare* FAC ¶ 29 ("absolute ban on hiring any game warden who has ever been convicted of a felony or class A misdemeanor") *with United States v. Houston*, 26 F. Cas. 379 (C.C.D.C. 1832) (No. 15,398) (such a conviction).

[14] Under Title VII, if an employer demonstrates that a challenged hiring practice is job-related and consistent with business necessity, then a plaintiff has the opportunity to demonstrate that there are less discriminatory alternatives to the challenged practice. 42 U.S.C. § 2000e–2(k)(1)(A)(ii); *IBEW v. Miss. Power & Light Co.*, 442 F.3d 313, 318 (5th Cir.2006). This matter too can present factual questions. *N.A.A.C.P. v. North Hudson Regional Fire & Rescue*, 665 F.3d 464, 477 (3d Cir. 2011).

Texas argues that the Guidance is a fact-insensitive "ukase," Opp. at 22, because it is full of "unconditional," and "'mandatory'" language, *id.* at 20.   And indeed Texas highlights that the Guidance frequently uses the verb "will" to describe what Commission staff will do.   Opp. at 21.   But what comes after "will" matters.   Even the examples that Texas cherry picks show that what the EEOC "will" do is "assess relevant evidence"; "determine the persuasiveness of such evidence on a case-by-case basis"; give "careful consideration of the nature and gravity of the offense or conduct"; use certain "factors" as "the starting point" for analysis; and recognize that whether an exclusion is lawful "will depend on the particular facts and circumstances of each case."   Opp. at 21, *quoting* Guidance at 10, 15, 16.   None of this is the language of a facts-don't-matter "ukase" that presents a purely legal issue ripe for up-or-down judicial review.

To be sure, Texas also cites a few passages from the Guidance that do seem more categorical, Opp. at 21-22, but all but one of those examples deal with exclusions based on arrest records rather than convictions.   Texas's final example ignores context and ends up misreading the Guidance. Texas quotes the first, but not the second, of the following two sentences from page 16 of the Guidance:

> A policy or practice requiring an automatic across-the-board exclusion from *all employment opportunities* because of *any criminal conduct* is inconsistent with the *Green* factors because it does not focus on the dangers of particularized crimes and the risks in particular positions. As the court recognized in *Green*, "[w]e cannot conceive of any business necessity that would automatically place every individual convicted of any offence, except a minor traffic offense, in the permanent ranks of the unemployed."

Opp. at 22. (Footnote omitted; emphasis added).   Texas misreads this passage as viewing any across-the-board criminal-conduct exclusion for each job position in the economy as always being inconsistent with Title VII.   In fact, as the terms we emphasized and as the sentence Texas omitted make clear, the passage asserts only that across-the-board exclusion from *all* employment opportunities for *any* criminal conduct, including misdemeanors, would be inconsistent with Title VII.

Not even Texas (as far as we know) contends otherwise. Unless Texas were to take such an extreme position that *any* criminal conviction carries an abandon-hope-of-rehabilitation lifetime bar from *any* employment for *any* position, it follows that even Texas would acknowledge that, for *some* jobs, a categorical refusal to hire persons with criminal convictions in even their distant past would be contrary to Title VII.

The EEOC's Guidance likewise contends that a refusal to consider applicants with criminal convictions would be appropriate for *some* jobs in some circumstances, but not others. An example comes straight from the Guidance. According to the EEOC, even if an employer (or State, like Texas) imposed criminal-records restrictions on the hiring of preschool teachers, that policy would be lawful, even it if had a disparate impact, "because [that policy] addresses serious safety risks of employment in a position involving regular contact with children." App'x at 27. Texas's argument that the EEOC would view such a policy as invalid, Opp. at 11, misreads what the Guidance expressly says.

Texas argues that there is a ripe issue for review because the Guidance says that an employer "*must*" always "afford felons 'individualized assessments," and Texas' practices do not allow for individualized assessment. Opp. at 2, citing Guidance at 18-20 (emphasis original). In fact, the Guidance says the opposite: "Title VII thus does *not* necessarily require individualized assessment in all circumstances," App'x at 21 (emphasis supplied), *i.e.*, in the EEOC's view, Title VII does in some circumstances (depending on, *e.g.*, the nature of the job) permit categorical criminal records screens that do not provide an individualized assessment of particular applicant's circumstances.

To be sure, that both the EEOC and (as far as we can tell) Texas view criminal-history related employment screens as sometimes legal, sometimes not, does not imply that they will always agree on which particular instances fall on which side of the line. But since, as the Guidance explains, that line-drawing exercise will turn on the particular facts and circumstances of the case, the Guidance

presents no purely legal question ripe for review.

  B. <u>Count III Is Unripe Because There Would Be No Hardship To Withholding Review</u>.

  Plaintiff alleges in Count III that a state cannot be liable for discrimination under Title VII pursuant to a disparate-impact theory because state sovereign immunity can be overcome only by legislation enacted pursuant to the Fourteenth Amendment, and this amendment permits Congress to prohibit only disparate-treatment discrimination. FAC ¶ 52.

  This claim is unripe. To establish that a claim is ripe for review, Texas must show that the disputed matter has a direct and immediate impact on it, *i.e.*, that there is some hardship to withholding review. *Lopez v. City of Houston*, 617 F.3d 336, 342 (5th Cir. 2010). This is true even if a claim presents a purely legal question. *Id.* But withholding review of Count III would not impose any hardship on plaintiff. Regardless of the merits of Count III, plaintiff would be subject to disparate-impact liability under Title VII for its felony-conviction exclusion practices because prevailing on this claim would eliminate only disparate-impact liability with respect to suits brought by individuals in federal court for damages. It would not prevent the United States from enforcing Title VII, because Title VII is valid Commerce Clause legislation, *see Heart of Atlanta Motel v. United States*, 379 U.S. 241 (1964), and state sovereign immunity does not operate against the federal government, *West Virginia v. United States*, 479 U.S. 305, 311 n.4 (1987). Nor would it prevent individuals from bringing federal court suits for injunctive relief under the *Ex Parte Young* exception to Eleventh Amendment immunity.[15] *See Nelson v. Univ. of Texas at Dallas*, 535 F.3d 318, 321-22 (5th Cir. 2008). Plaintiff, then, would be obligated to conform its hiring practices to Title VII regardless of whether it would prevail on this claim. *See Erickson v. Board of Governors of State Colleges and Universities for Northeastern Illinois University*, 207 F.3d 945, 952 (7th Cir. 2000). In short, resolution of this claim would not affect the law governing the State's

---

[15] And, to the extent Texas's exclusionary practices are based on agency policy rather than state law, Texas could be sued by individuals in state court under a state-law disparate-impact theory. *See* V.T.C.A., Labor Code § 21.122.

conduct, and the State could challenge the ability of an individual to bring a disparate-impact suit in federal court for damages at the time, if any, that such a suit is brought.  *See Nat'l Park Hospitality Ass'n v. Department of Interior*, 538 U.S. 803, 810 (2003) (concluding that withholding a decision about dispute resolution procedures before dispute had arisen would cause no hardship); *see also Choice Inc. of Texas v. Greenstein,* 691 F.3d 710, 716 (5th Cir. 2012) (concluding that withholding review imposed no hardship because plaintiff's conduct would be unlawful regardless of whether plaintiff won or lost).

In its opposition brief, plaintiff argues that this ripeness argument "proves far too much" because if it were true the Supreme Court's "landmark Eleventh Amendment decisions [from the last 20 years] would be wrong."  Opp. at 15-16.   Not so.   All of the cases cited by the state – *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996); *City of Boerne v. Flores*, 521 U.S. 507(1997); *Kimel v. Florida Bd. of Regents*, 528 U.S. 62 (2000); and *Board of Trs. Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001) – involved claims by individuals against states that raised sovereign immunity concerns; none involved solely a declaratory judgment action by a state against the federal government.   Thus, the claims in these "landmark" cases are ripe under the terms of defendants' argument, which does nothing more than apply basic ripeness principles to the State's claim.

Notably, concerns about deciding unripe cases are amplified in the context of claims that raise constitutional issues because "[a] fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them." *Lyng v. NW Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988).   This principle underscores the need to subject Count III to a rigorous ripeness analysis, an analysis that demonstrates that the claim is not ripe.

## CONCLUSION

For the reasons discussed above, the Court should dismiss plaintiff's amended complaint for lack of subject matter jurisdiction.

DATED this 4th Day of April, 2014.

Respectfully submitted,

STUART F. DELERY
Assistant Attorney General

SARAH R. SALDAÑA
United States Attorney

JOSHUA E. GARDNER
Assistant Director, Federal Programs
Branch

*s/ Justin M. Sandberg*
BRIAN G. KENNEDY (D.C. Bar No.
228726)
Senior Trial Counsel
JUSTIN M. SANDBERG, IL Bar No.
6278377
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Mass. Ave. NW, Rm. 7302
Washington, D.C. 20001
Telephone:     (202) 514-5838
Facsimile:     (202) 616-8202
Justin.Sandberg@usdoj.gov
*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on April 4, 2014, a true and correct copy of the foregoing was served by

CM/ECF on:

> Jonathan F. Mitchell
> Andrew Stephen Oldham
> Arthur D'Andrea
> Office of the Texas Attorney General
> 209 West 14th Street
> P.O. Box 12548
> Austin, Texas 70711-2548

s/ <u>*Justin M. Sandberg*</u>
JUSTIN M. SANDBERG
Trial Attorney
U.S. Department of Justice
