IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| STATE OF TEXAS,<br><br>　　　　*Plaintiff,*<br><br>vs.<br><br>EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>JACQUELINE A. BERRIEN,<br>　　in her official capacity as Chair of the Equal<br>　　Employment Opportunity Commission,<br><br>And<br><br>ERIC H. HOLDER,<br>　　in his official capacity as Attorney General<br>　　of the United States,<br><br>　　　　*Defendants.* | Case No. 5:13-cv-00255-C |

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
FIRST AMENDED COMPLAINT**

**TABLE OF CONTENTS**

Table of Authorities ............................................................................................................................ ii

Introduction .......................................................................................................................................... 1

Argument ............................................................................................................................................... 2

      I.    The Felon-Hiring Rule Constitutes Final Agency Action ...................................... 2

      II.   The State Has Standing .................................................................................................. 5

      III.  The State's Claims Are Ripe ......................................................................................... 8

Conclusion ........................................................................................................................................... 11

Certificate of Service ......................................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Gardner*,
  387 U.S. 136 (1967) .................................................................................................................3

*Board of Education of New York City School District v. Gulino*,
  554 U.S. 917 (2008) .................................................................................................................4

*Center for Auto Safety v. NHTSA*,
  452 F.3d 798 (D.C. Cir. 2006) .................................................................................................2

*Cf. Allina Health Services v. Sebelius*,
  --- F.3d ---, 2014 WL 1284834 (D.C. Cir. Apr. 1, 2014) ........................................................7

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
  467 U.S. 837 (1984) ............................................................................................................2, 3

*EEOC v. Peoplemark, Inc.*,
  732 F.3d 584 (6th Cir. 2013) ........................................................................................... 1, 8, 9

*FCC v. Fox Television Stations, Inc.*,
  556 U.S. 502 (2009) .................................................................................................................7

*Foxworth v. Pennsylvania State Police*,
  228 F. App'x 151 (3d Cir. 2007) ...........................................................................................10

*General Electric Co. v. Gilbert*,
  429 U.S. 125 (1976) .................................................................................................................4

*Japan Whaling Ass'n v. American Cetacean Soc'y*,
  478 U.S. 221 (1986) .................................................................................................................3

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ............................................................................................................ 5, 6

*New Hampshire v. Maine*,
  532 U.S. 742 (2001) .................................................................................................................4

*Owner-Operator Indep. Drivers Ass'n v. Federal Motor Carrier Safety Admin.*,
  656 F.3d 580 (7th Cir. 2011) ...................................................................................................6

*Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*,
  324 F.3d 726 (D.C. Cir. 2003) .................................................................................................2

*Sackett v. EPA*,
  132 S. Ct. 1367 (2012) .............................................................................................................3

*Societe de Conditionnement v. Hunter Engineering Co., Inc.*,
    655 F.2d 938 (9th Cir. 1981) ...................................................................................................11

*Stilwell v. Office of Thrift Supervision*,
    569 F.3d 514 (D.C. Cir. 2009) ..................................................................................................6

*Trudeau v. FTC*,
    456 F.3d 178 (D.C. Cir. 2006) ..................................................................................................2

*United States v. Mead Corp.*,
    533 U.S. 218 (2001) ..................................................................................................................3

*Waldon v. Cincinnati Public Schools*,
    No. 1:12-cv-677 (S.D. Ohio) ...................................................................................................10

*Whitman v. American Trucking Associations*,
    531 U.S. 457 (2001) ..........................................................................................................2, 3, 5

**Statutes**

5 U.S.C. § 704 ...............................................................................................................................2, 3, 5

42 U.S.C. § 2000e-12(a) .......................................................................................................................4

OHIO REV. CODE § 3319.391 .............................................................................................................10

**Regulations**

EEOC, Consideration of Arrest and Conviction Records in Employment Decisions
    Under Title VII of the Civil Rights Act of 1964,
       No. 915.002 (Apr. 25, 2012) ................................................................................ 1, 2, 3, 5, 6, 8, 9

**Other Authorities**

Br. of United States as Amicus Curiae, *Board of Education of New York City School District v. Gulino*,
    554 U.S. 917 (2008), No. 07-270 ................................................................................... 4, 5, 9, 11

EEOC, Questions and Answers About the EEOC's Enforcement Guidance on the
    Consideration of Arrest and Conviction Records in Employment Decisions
       Under Title VII, http://www.eeoc.gov/laws/guidance/qa_arrest_conviction.cfm ............ 6, 7

Robert A. Anthony, *Interpretative Rules, Policy Statements, Guidances, Manuals, and the Like—
    Should Federal Agencies Use Them to Bind the Public?*, 41 DUKE L.J. 1311 (1992) ..............................3

**INTRODUCTION**

In the Felon-Hiring Rule, the Equal Employment Opportunity Commission ("EEOC" or "Commission") directed employers to violate facially neutral state laws that prohibit employment of felons and instead to make race-conscious efforts to avoid "disparate impacts."[1]  In courts across the country, public and private employers have been forced to defend themselves against allegations of racism because they defied EEOC's mandate and instead followed state law.  And through its administrative investigations and enforcement actions, EEOC has foisted "*frivolous*" and "*groundless*" suits on victims of the Felon-Hiring Rule.  *EEOC v. Peoplemark, Inc.*, 732 F.3d 584, 592 (6th Cir. 2013) (emphasis in original); *see also id.* at 595 (affirming sanctions against EEOC for its abusive enforcement of the Felon-Hiring Rule).

Now that it is the one on defense, however, the EEOC cannot run away fast enough from its Rule.  Defendants argue that the Felon-Hiring Rule is not worth the paper it's printed on — even though it urges other courts to defer to it.  *See* Ex. A.  Defendants say that Title VII (rather than the Felon-Hiring Rule) preempts state law — even though the Department of Justice previously argued the opposite.  *See* Ex. B.  Defendants also say that the Felon-Hiring Rule is nothing new — even though EEOC's own webpage says that the 2012 Rule is the Commission's first attempt to preempt state law.  *See* Ex. C.  Defendants imply that they have not and will not authorize disparate-impact suits against governmental employers — even though they issued a probable-cause determination against the Cincinnati Public School System for following no-felon laws like those in Texas.  *See* Ex. D.  And Defendants ask this Court to stay its hand until the parties' roles are reversed, the EEOC is on offense, and the damage from its "*frivolous*" and "*groundless*" allegations already has been done.  *Peoplemark*, 732 F.3d at 592.

---

[1] *See* EEOC, Consideration of Arrest and Conviction Records in Employment Decisions Under Title VII of the Civil Rights Act of 1964, No. 915.002, at 24 (Apr. 25, 2012) ("Felon-Hiring Rule," attached as Exhibit A to the First Amended Compl. ("FAC"), ECF No. 24 (Mar. 18, 2014)).

The Administrative Procedure Act ("APA") prevents Defendants' tactics. The State of Texas already has addressed most of Defendants' counterarguments; rather than repeat itself, the State incorporates its prior opposition by reference. Defendants offer a handful of new arguments, however, which warrant this brief response.

## ARGUMENT

### I.   THE FELON-HIRING RULE CONSTITUTES FINAL AGENCY ACTION

**A.**   Defendants' first "jurisdictional"[2] challenge is the easiest to dispatch because the Felon-Hiring Rule constitutes "final agency action" reviewable under 5 U.S.C. § 704 ("Section 704"). As explained in the State's original opposition, EEOC never has contested that the Felon-Hiring Rule is "final" within the meaning of Section 704. *See* Ex. A at 16–17; MTD[3] at 7 (tacitly conceding finality). Rather, the Commission's only argument is that the Rule is not "final *agency action*," 5 U.S.C. § 704 (emphasis added), because the only reviewable "agency action[s]" are "substantive rules" that "bind a court" in the sense that they are subject to deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843–44 (1984). MTD at 7–13 & n.4; *see also id.* at 13 n.8 ("An agency document, like the [Felon-Hiring Rule], that expresses a legal view . . . that receives [only] *Skidmore* deference[] lacks legal consequences and so is not a final agency action.").

The EEOC is wrong. In *Whitman v. American Trucking Associations*, 531 U.S. 457 (2001), the Supreme Court unanimously rejected DOJ's efforts to limit the kinds of "agency actions" that are subject to judicial review under Section 704:

> We have little trouble concluding that this ["policy" document] constitutes final agency action subject to review under § [704]. The bite in the phrase "final action" . . . is not in the word "action," *which is meant to cover comprehensively every manner in which*

---

[2] Defendants are wrong to characterize Section 704 as jurisdictional. *See*, *e.g.*, *Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731 (D.C. Cir. 2003) (When "judicial review is sought under the APA . . . the requirement of final agency action is not jurisdictional."); *Center for Auto Safety v. NHTSA*, 452 F.3d 798, 805 (D.C. Cir. 2006) (same); *Trudeau v. FTC*, 456 F.3d 178, 184 (D.C. Cir. 2006) (same).

[3] Unless otherwise indicated, "MTD" refers to Defendants' motion to dismiss the FAC.

2

>  *an agency may exercise its power.*  It is rather in the word "final," which requires that the action under review mark the consummation of the agency's decisionmaking process.

*Id.* at 478 (emphasis added; citation and internal quotation marks omitted); *accord Abbott Labs. v. Gardner*, 387 U.S. 136, 140–41 (1967) ("The legislative material elucidating that seminal act [*viz.*, the APA] manifests a congressional intention that it cover a broad spectrum of administrative actions, and this Court has echoed that theme by noting that the Administrative Procedure Act's generous review provisions must be given a hospitable interpretation." (footnote, citation, and internal quotation marks omitted)).  That is the exact opposite of holding, as EEOC would have it, that Section 704 makes reviewable only that small subset of agency actions that qualify for *Chevron* deference.  Indeed, if EEOC's view were the law, the Court in *United States v. Mead Corp.* would have determined that the Customs Service's letter rulings did not warrant *Chevron* deference and then dismissed for lack of jurisdiction because the letters were not "final agency actions" in the first place.  533 U.S. 218, 226–27, 230–31 (2001); *see also*, *e.g.*, *Sackett v. EPA*, 132 S. Ct. 1367 (2012) (finding an informal adjudication constituted "final agency action" without reference to *Chevron*, *Skidmore*, or any other deference doctrine); Robert A. Anthony, *Interpretative Rules, Policy Statements, Guidances, Manuals, and the Like—Should Federal Agencies Use Them to Bind the Public?*, 41 Duke L.J. 1311 (1992) (collecting scores of examples of final and reviewable "agency actions" that do not warrant *Chevron* deference).  Defendants cite no case from any court in the history of the Nation that ever has adopted their *Chevron*-only conception of Section 704, and this Court should not be the first.

      **B.**    Moreover, for as long as Section 704 has existed, plaintiffs have been presumptively entitled to challenge the lawfulness of federal agency action, and it is the federal agency's burden to prove by "clear and convincing evidence of legislative intention" that Congress intended to override that presumption.  *Japan Whaling Ass'n v. American Cetacean Soc'y*, 478 U.S. 221, 230 n.4 (1986); *accord Abbott Labs.*, 387 U.S. at 140–41 (collecting cases); Ex. A at 8–9.  But the only source of legislative

3

intention that Defendants can find is a provision of Title VII that expressly prohibits *the Commission* from adopting substantive rules. *See* 42 U.S.C. § 2000e-12(a) (EEOC only may issue "procedural regulations"); *General Electric Co. v. Gilbert*, 429 U.S. 125, 140–46 (1976) (same). It is circular to claim, as Defendants do (MTD at 10–11), that the Felon-Hiring Rule is not a substantive rule because Congress prohibited EEOC from promulgating substantive rules. The whole point of this lawsuit is that EEOC has violated clear statutory commands from Congress (including Section 2000e-12(a)) and promulgated an unlawful substantive rule; EEOC cannot credibly claim that the very command it violated somehow forever shelters its unlawful conduct from judicial review.

      **C.**      Finally, Defendants have doubled down on their argument that the State's "relevant legal obligation . . . arises out of Title VII," not the final agency action EEOC took in the Felon-Hiring Rule. MTD at 8. But in 2008, DOJ told the Supreme Court the opposite; it argued that an employer "is *not* liable under Title VII for complying with a facially neutral state licensing regime that limits the universe of potential employees to those who have complied with the State's requirement." Br. of United States as Amicus Curiae 9, *Board of Education of New York City School District v. Gulino*, 554 U.S. 917 (2008) (mem.), No. 07-270 (emphasis added) ("*Gulino* Amicus," attached as Ex. B). In that case, a class of African-American and Latino educators brought a disparate-impact challenge against a facially neutral state law that prohibited public schools from employing teachers that failed certain licensing exams. Echoing almost verbatim the State's arguments in this case, DOJ argued in *Gulino* that compliance with a facially neutral state employment law — there, a prohibition on unlicensed teachers; here, a prohibition on convicted felons — *always* satisfies "business necessity." *Id.* at 9–10. Having convinced the Court not to grant certiorari in *Gulino* on the ground that Title VII does not vitiate facially neutral hiring qualifications required by state law, DOJ cannot credibly claim that Title VII vitiates facially neutral hiring qualifications required by state law. *See New Hampshire v. Maine*, 532 U.S. 742, 749–55 (2001).

The requirements of *Title VII* do not change based on presidential elections and whether EEOC is playing offense or defense. Of course, Defendants can change *their interpretation* of the statute — as they did when EEOC finally and formally adopted the Felon-Hiring Rule. *Compare Gulino* Amicus (Ex. B) at 8–15 (arguing that facially neutral state-law hiring requirements do not violate Title VII), *with* Felon-Hiring Rule (FAC Ex. A) at 24 (arguing the exact opposite). But after doing so, Defendants cannot deny that the Felon-Hiring Rule is carrying their water; nor can they deny that their administrative efforts to preempt state law constitute "agency action" within the meaning of Section 704, "which is meant to cover comprehensively every manner in which an agency may exercise its power." *American Trucking*, 531 U.S. at 478.

## II. THE STATE HAS STANDING

In a misguided attempt to make the best of a bad situation, Defendants observe that only two courts have found that EEOC used "*frivolous*" and "*groundless*" allegations to enforce the Felon-Hiring Rule. *See* Ex. A at 1–2, 7, 11–12, 15 (discussing sanctions awarded by district court and affirmed by Sixth Circuit in *Peoplemark*); MTD at 14–16 (same). Defendants argue that, because EEOC committed its sanctionable conduct "against *someone else*," MTD at 15, Texas won't be injured by the Rule until it gets its own, personalized dose of "*frivolous*" and "*groundless*" abuse in the future.

Again, that's wrong. The State already has incurred three separate injuries, each of which is independently sufficient to create Article III standing.

**A.** When the plaintiff is "an object of the [agency's] action," "there is ordinarily little question that the action . . . has caused him injury, and that a judgment preventing . . . the action will redress it." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561–62 (1992). The State of Texas is "an object of the [EEOC's] action." The State employs hundreds of thousands of people, *see* FAC ¶¶ 23–30, and as an employer, the State is squarely the "object" of the Felon-Hiring Rule, *see, e.g.*, FAC Ex. A at 8–20 (purporting to prohibit all employers from using categorical no-felons policies).

5

Moreover, the State is "seeking to enforce a procedural requirement" — namely, EEOC's compliance with the APA's notice-and-comment provisions — "the disregard of which could impair a separate concrete interest of theirs" — namely, the State's interest in following the no-felon policies mandated by state law. *Lujan*, 504 U.S. at 572. Indeed, because the APA's notice-and-comment provisions give the State "a procedural right to protect [its] concrete interests," it "can assert that right without meeting all the normal standards for redressability and immediacy." *Id.* at 572 n.7. Defendants say nothing about the State's standing under *Lujan*.

  **B.**  The State previously explained that the standing inquiry does not turn on the imminence of future federal enforcement actions under the Felon-Hiring Rule. *See* Ex. A at 6–7. That is so because the State is injured *now*:

> The Agency's standing argument . . . ignores the very idea that it advances to justify adopting the [] rule in the first place: a punitive stick (it says) is necessary to increase compliance with [the agency's] regulations. The [agency's] rule aims to alter truck drivers' behavior now to avoid a remedial directive in the future. . . . In the end, it strikes us as odd that the Agency is arguing that it must have a strict rule *now* to get truck drivers to be more compliant with [the agency's] rules, but at the same time it is asserting that these rules are not meant to change anyone's immediate behavior enough to confer standing to challenge that regulation.

*Owner-Operator Indep. Drivers Ass'n v. Federal Motor Carrier Safety Admin.*, 656 F.3d 580, 586 (7th Cir. 2011); *see also Stilwell v. Office of Thrift Supervision*, 569 F.3d 514, 518 (D.C. Cir. 2009) (finding it "more than a little ironic" that a federal agency "would suggest Petitioners lack standing and then, later in the same brief," label the petitioner a "prime example" of the "very problem the [r]ule was intended to address" (internal quotation marks omitted)). Defendants cannot muster a single word (or even a citation to *Owner-Operator* or *Stilwell*) in response.

  **C.**  In all events, the State is injured whenever a federal agency purports to preempt state law. *See* Ex. A at 7–8 (collecting cases). And *EEOC's own website* gives the lie to its effort to blame Title VII, rather than the Felon-Hiring Rule, for preempting Texas's no-felons policies. *Compare* EEOC, Questions and Answers About the EEOC's Enforcement Guidance on the Consideration

of Arrest and Conviction Records in Employment Decisions Under Title VII, http://www.eeoc.gov/laws/guidance/qa_arrest_conviction.cfm (attached as Ex. C), *with* MTD at 5.  While EEOC now claims that it "has embraced the same basic view of the law with respect to criminal-record exclusions for 25 years," *id.* at 3, EEOC's own website advises the public that the Felon-Hiring Rule represents the first time since Title VII's enactment that the Commission ever has purported to preempt States' facially neutral no-felons policies:

> **How does the [Felon-Hiring Rule] differ from the EEOC's earlier policy statements?**
> 
> \*   \*   \*
> 
> The [Felon-Hiring Rule] says that state and local laws or regulations are preempted by Title VII if they [cause an unlawful disparate impact].

Ex. C at 2.  Indeed, the reader of Defendants' 117-page appendix will search in vain for any previous attempt by EEOC to preempt state law, and Defendants point to none.

EEOC's effort to run away from its own website is consistent with its desire to tell the Nation's employers one thing and to tell this Court the exact opposite.  But that's not how the APA works.  If an agency wants to change its position, it must "display awareness that it *is* changing position" and "show that there are good reasons for the new policy."  *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).  The Commission cannot rewrite history, deny the novelty of the Felon-Hiring Rule's purportedly preemptive effect, and then claim that no one has standing to challenge the about-face.  *Cf. Allina Health Services v. Sebelius*, --- F.3d ---, 2014 WL 1284834, at *4 (D.C. Cir. Apr. 1, 2014) ("[A]gencies may not pull a surprise switcheroo on regulated entities." (internal quotation marks omitted)).[4]

---

[4] Defendants cannot credibly claim that the State does not have standing to sue the Attorney General of the United States.  *See* MTD at 17 n.12.  The State added the Attorney General as a party to the FAC because EEOC wanted to pass the buck for bringing enforcement actions against state employers.  *See* First MTD, ECF No. 16, at 5 (Jan. 27, 2014).  Standing doctrine does not license the Attorney General to pass it back.

7

### III. THE STATE'S CLAIMS ARE RIPE

**A.** Defendants save the weakest of their arguments for last. Defendants now claim for the first time that their Rule does *not* require "individualized assessments" for all job applicants. MTD at 21 (citing Felon-Hiring Rule at 14). Again, that's wrong. The Felon-Hiring Rule says that an employer may be able to show job-relatedness and business necessity if it can prove — after an EEOC investigation and to the EEOC's satisfaction — two things:

> The employer develops a targeted screen considering at least the nature of the crime, the time elapsed, and the nature of the job (the three factors identified by the court in *Green v. Missouri Pacific Railroad*, 549 F.2d 1158 (8th Cir. 1977)). *The employer's policy then provides an opportunity for an individualized assessment for those people identified by the screen, to determine if the policy as applied is job related and consistent with business necessity.*

FAC Ex. A at 2 (emphasis added); *accord id.* at 14. Then, exhibiting the sort of double talk that already has become Defendants' theme in this litigation, EEOC's very next sentence asserts: "Although Title VII does not require individualized assessment in all circumstances, the use of a screen that does not include individualized assessment is more likely to violate Title VII." *Id.* at 2; *accord id.* at 14.

To the extent those contradictory commands make any sense, they appear to say that some employer on some set of unarticulated hypothetical facts might be able to convince unidentified EEOC investigators to exercise their administrative grace and bless an employer's no-felons policy even though it does not include individualized assessments. That's hollow solace both because it does not save an employer from facing an abusive EEOC investigation and fending off "*frivolous*" and "*groundless*" allegations of racism, *Peoplemark*, 732 F.3d at 592, and because the Felon-Hiring Rule does not offer a single example of an employer that can avoid a disparate-impact investigation using a blanket no-felons policy like the ones pleaded in the FAC. To the contrary, the Felon-Hiring Rule provides that a governmental employer ("County Y") is subject to an EEOC investigation and a finding of disparate-impact liability based on nothing more than its decision to follow state law and

8

"reject[] Chris's application as soon as it learns that he has a felony conviction." FAC Ex. A at 24. The Texas Department of Public Safety ("DPS") likewise follows state law and automatically rejects applications from convicted felons like "Chris," FAC ¶ 37; it is far too late for EEOC to rewrite its Rule and pretend that both "County Y" and DPS get off scot-free.

   **B.** As ironic as it is for EEOC to defend the Felon-Hiring Rule by abandoning it, none of its machinations bear on ripeness. This case presents a purely legal question: Whether the State of Texas can continue to follow its facially neutral blanket no-felons policies (as DOJ previously argued in *Gulino*), or whether the State must abandon those facially neutral policies (as EEOC purports to require for the first time on page 24 of the Felon-Hiring Rule). In *Gulino*, DOJ agreed that the question is purely legal and that it has a simple answer: an employer "is not liable under Title VII for complying with a facially neutral state licensing regime that limits the universe of potential employees to those who have complied with the State's requirement." Ex. B at 9. Defendants now want to switch horses and demand answers to lots of factual questions, *see* MTD at 18–21, but the whole point of this suit is that none of those questions matter. Texas has the right to categorically bar all felons from employment by the Department of Public Safety — and EEOC has no right to use "*frivolous*" and "*groundless*" allegations of racism to justify abusive investigations and to demand that DPS carry its burden to prove job-relatedness and business necessity according to EEOC's view of the relevant "facts and circumstances." MTD at 20; *Peoplemark*, 732 F.3d at 592.

   And there can be no doubt about the hardship that would be imposed on the State by delaying review. DPS already has received one charge of discrimination under the Felon-Hiring Rule — from a convicted felon named William R. Smith who wanted a job involving access to sensitive personal information for all 26 million Texans. *See* FAC Ex. C. If EEOC were as committed to walking away from its Felon-Hiring Rule as its papers in this Court suggest, it would have dismissed Mr. Smith's charge for failure to state a claim. *See* FAC Ex. D at 1 (allowing EEOC

to find that "[t]he facts alleged in the charge fail to sate a claim under any of the statutes enforced by EEOC."). But that's not what EEOC did. Rather, it was "unable to conclude that the information obtained establishes violations of the statutes," and it emphasized that "[t]his does not certify that [DPS] is in compliance with the statutes." *Id.* So it gave Mr. Smith the right to sue DPS on his own.

And notwithstanding Defendants' assurances to this Court, they have, in fact, issued probable-cause findings against governmental employers who follow no-felons policies required by state law. *Cf.* MTD at 6. In 2007, the State of Ohio passed a facially neutral statute that is materially identical to the ones referenced in the FAC; it prohibited schools from hiring or employing convicted felons. *See* OHIO REV. CODE § 3319.391. Consistent with state law, the Cincinnati Public Schools ("CPS") fired everyone (regardless of race) who had a disqualifying felony conviction. As a reward for its faithful implementation of Ohio's facially neutral law, CPS received the following condemnation from EEOC: "The Commission finds that the evidence substantiates that the Charging Party was discriminated against because of his race as alleged and that Blacks as a class were discriminated against." Ex. D at 1. The EEOC referred the charges to DOJ, *see id.* at 3–4, and almost five years later, CPS *still* is defending itself against allegations that it discriminated against "Blacks as a class" — all because it followed a facially neutral state law that disqualified felons in the exact same way that Texas law does. *See Waldon v. Cincinnati Public Schools*, No. 1:12-cv-677 (S.D. Ohio). It is remarkable that Defendants presumably know about *Waldon* and nonetheless urge this Court to dismiss on the theory that cases like *Waldon* don't exist.[5]

---

[5] *See also, e.g., Foxworth v. Pennsylvania State Police*, 228 F. App'x 151 (3d Cir. 2007). It is impossible for anyone other than DOJ or EEOC to know how many other cases like *Foxworth* and *Waldon* exist within Defendants' administrative files, and the Court apparently cannot count on Defendants to identify them. The State thinks the answer to that question is irrelevant; but to the extent the Court disagrees and thinks that the ripeness turns on the contents of Defendants' administrative files, the State reserves it right to seek jurisdictional discovery.

10

\*   \*   \*

Each of EEOC's objections is premised on the misconception that the Felon-Hiring Rule is reviewable only when the Commission says it is. The whole point of the APA, like that of the Declaratory Judgment Act, is "to relieve potential defendants from the Damoclean threat of impending litigation which a harassing adversary might brandish, while initiating suit at his leisure or never." *Societe de Conditionnement v. Hunter Engineering Co., Inc.*, 655 F.2d 938, 943 (9th Cir. 1981). And having arrogated to itself the power to preempt States' facially neutral no-felons policies, EEOC should not be allowed to dodge judicial review by comparing its Damoclean sword to a "law review article." MTD at 14. The Nation's employers are entitled to know whether they can follow state law (as DOJ previously argued in *Gulino*, *see* Ex. B at 8–15) or whether they instead have to follow EEOC's law-review-article-cum-rule. Either way, there is no doubt that the State's challenge to EEOC's final agency action is ripe, and that the State has standing to bring it.

## CONCLUSION

Defendants' motion to dismiss should be denied.

    Respectfully submitted.

    GREG ABBOTT
    Attorney General of Texas

    DANIEL T. HODGE
    First Assistant Attorney General

    JONATHAN F. MITCHELL
    Solicitor General

    _/s/  Andrew S. Oldham_
    ANDREW S. OLDHAM
    Deputy Solicitor General

    ARTHUR C. D'ANDREA
    RICHARD B. FARRER
    DUSTIN M. HOWELL
    Assistant Solicitors General

    209 West 14th Street
    P.O. Box 12548
    Austin, Texas 70711-2548
    (512) 936-1700

    Dated:  April 18, 2014

## CERTIFICATE OF SERVICE

      I hereby certify that, on April 18, 2014, a true and correct copy of the foregoing was served by CM/ECF on:

Justin M. Sandberg, Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Mass. Ave. NW, Rm. 7302
Washington, D.C. 20001
Justin.Sandberg@usdoj.gov


                                            /s/ Andrew S. Oldham
                                            Andrew S. Oldham