# EXHIBIT B

FILED
MAY 23 2008
OFFICE OF THE CLERK
SUPREME COURT, U.S.

No. 07-270

# In the Supreme Court of the United States

BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK, PETITIONER

*v.*

ELSA GULINO, ET AL.

*ON PETITION FOR A WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT*

## BRIEF FOR THE UNITED STATES AS AMICUS CURIAE

PAUL D. CLEMENT
*Solicitor General*
*Counsel of Record*

GRACE CHUNG BECKER
*Acting Assistant Attorney General*

GREGORY G. KATSAS
*Acting Assistant Attorney General*

GREGORY G. GARRE
*Deputy Solicitor General*

DARYL JOSEFFER
*Assistant to the Solicitor General*

DENNIS J. DIMSEY
MARLEIGH D. DOVER
MELISSA PATTERSON
*Attorneys*

*Department of Justice*
*Washington, D.C. 20530-0001*
*(202) 514-2217*

Blank Page

## QUESTION PRESENTED

Whether an employer's compliance with a facially neutral state licensing requirement for teachers that allegedly has a disparate impact on members of a protected class may subject it to liability under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.*

Blank Page

## TABLE OF CONTENTS

Page

Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
A. Title VII does not prohibit employers from complying with facially neutral state licensing requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
B. The petition for a writ of certiorari should be denied . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## TABLE OF AUTHORITIES

Cases:

*Albemarle Paper Co.* v. *Moody*, 422 U.S. 405 (1975) . . . . . . 2
*Association of Mexican-Am. Educators* v. *California*, 231 F.3d 572 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . 16
*Boston Chapter, N.A.A.C.P., Inc.* v. *Beecher*, 504 F.2d 1017 (1st Cir. 1974), cert. denied, 421 U.S. 910 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
*California Fed. Sav. & Loan Ass'n* v. *Guerra*, 479 U.S. 272 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
*Camacho* v. *Puerto Rico Ports Auth.*, 369 F.3d 570 (1st Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
*Connecticut* v. *Teal*, 457 U.S. 440 (1982) . . . . . . . . . . . . . . . 15
*Department of Transp.* v. *Public Citizen*, 541 U.S. 752 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
*Fields* v. *Hallsville Indep. Sch. Dist.*, 906 F.2d 1017 (5th Cir. 1990), cert. denied, 498 U.S. 1026 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17
*George* v. *New Jersey Bd. of Veterinary Med. Exam'rs*, 794 F.2d 113 (3d Cir. 1986) . . . . . . . . . . . . . . . 16
*Goodyear Atomic Corp.* v. *Miller*, 486 U.S. 174 (1988) . . . 10

Cases—Continued: Page

*Gregory* v. *Ashcroft*, 501 U.S. 452 (1991) . . . . . . . . . . . . . . . . 8
*Griggs* v. *Duke Power Co.*, 401 U.S. 424 (1971) . . . . . . . . . . 2
*Haddock* v. *Board of Dental Exam'rs*, 777 F.2d 462 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
*Holmes* v. *Securities Investor Prot. Corp.*, 503 U.S. 258 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
*Johnson* v. *Zerbst*, 304 U.S. 458 (1938) . . . . . . . . . . . . . . . . . 17
*Personnel Adm'r* v. *Feeney*, 442 U.S. 256 (1979) . . . . . . . . 11
*Smith* v. *City of Jackson*, 544 U.S. 228 (2005) . . . . . . . . . . . 2
*Tyler* v. *Vickery*, 517 F.2d 1089 (5th Cir. 1975), cert. denied, 426 U.S. 940 (1976) . . . . . . . . . . . . . . . . . . . . . . 16
*United States* v. *Bass*, 404 U.S. 336, 349 (1971) . . . . . . . . . . 8
*United States* v. *Olano*, 507 U.S. 725 (1993) . . . . . . . . . . . . 17
*United States* v. *Williams*, 504 U.S. 36 (1992) . . . . . . . . . . 17
*VMI* v. *United States*, 508 U.S. 946 (1993) . . . . . . . . . . . . . 18
*Washington* v. *Davis*, 426 U.S. 229 (1976) . . . . . . . . . . . 8, 11
*Woodward* v. *Virginia Bd. of Bar Exam'rs*, 598 F.2d 1345 (4th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Constitution and statutes:

U.S. Const. Art. VI, Cl. 2 (Supremacy Clause) . . . . . . . . . 15
Civil Rights Act of 1964, 42 U.S.C. 2000a *et seq.*:
Tit. VII, 42 U.S.C. 2000e *et seq.* . . . . . . . . . . . . . . *passim*
42 U.S.C. 2000e(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
42 U.S.C. 2000e(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
42 U.S.C. 2000e(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
42 U.S.C. 2000e-2(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
42 U.S.C. 2000e-2(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . 1

Statutes—Continued: Page

42 U.S.C. 2000e-2(a)(2) ........................ 2, 10
42 U.S.C. 2000e-2(k)(1)(A)(i) .................. 2, 12
42 U.S.C. 2000e-2(k)(1)(A)(ii) ................. 2, 10
42 U.S.C. 2000e-6(a) ........................... 15
42 U.S.C. 2000e-7 ....................... 3, 13, 14
Tit. IX, 42 U.S.C. 2000h *et seq.*:
42 U.S.C. 2000h-4 ....................... 3, 14, 15
42 U.S.C. 1983 .................................. 8, 13
N.Y. Educ. Law § 1604.8 (McKinney 2007) ............. 3

Miscellaneous:

H. R. Rep. No. 644, 101st Cong., 2d Sess. Pt. 2 (1990) ... 13

**Blank Page**

# In the Supreme Court of the United States

No. 07-270

BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK, PETITIONER

*v.*

ELSA GULINO, ET AL.

*ON PETITION FOR A WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT*

**BRIEF FOR THE UNITED STATES AS AMICUS CURIAE**

This brief is submitted in response to this Court's order inviting the Solicitor General to express the views of the United States. In the view of the United States, the petition for a writ of certiorari should be denied.

**STATEMENT**

1. Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.*, prohibits an "employer" from intentionally discriminating "against any individual with respect to his compensation, terms, conditions or privileges of employment because of such individual's race, color, religion, sex or national origin." 42 U.S.C. 2000e-2(a)(1). Under Title VII, it is also unlawful for an employer "to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individ-

ual's race, color, religion, sex, or national origin." 42 U.S.C. 2000e-2(a)(2). This Court has construed the latter provision to prohibit not only intentional discrimination, but also some facially neutral practices that have an unintentional disparate impact on members of a protected class. *E.g.*, *Smith* v. *City of Jackson*, 544 U.S. 228, 234-235 (2005); *Griggs* v. *Duke Power Co.*, 401 U.S. 424 (1971).

In 1991, Congress amended Title VII to specify that "[a]n unlawful employment practice based on disparate impact is established under [Title VII] only if * * * a complaining party demonstrates that a respondent uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin and the respondent fails to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity." 42 U.S.C. 2000e-2(k)(1)(A)(i). If the employer demonstrates that the practice is job related and consistent with business necessity, the plaintiff may still prevail by showing that an alternative employment practice would serve the employer's legitimate interest without causing a disparate impact, and that the employer "refuses to adopt such alternative employment practice." 42 U.S.C. 2000e-2(k)(1)(A)(ii); see also *Albemarle Paper Co.* v. *Moody*, 422 U.S. 405, 425 (1975).

Title VII defines an "employer" to be "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks * * * and any agent of such a person." 42 U.S.C. 2000e(b). An "employee," in turn, is "an individual employed by an employer," 42 U.S.C. 2000e(f), and "[t]he term 'person' includes one or more individuals, governments, governmental agencies, [or] political subdivisions," 42 U.S.C. 2000e(a).

Title VII does not "exempt or relieve any person from any liability, duty, penalty, or punishment provided by any

present or future law of any State or political subdivision of a State, other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice under" Title VII. 42 U.S.C. 2000e-7. A separate provision specifies that the entire Civil Rights Act of 1964, including Title VII, should not be "construed as invalidating any provision of State law unless such provision is inconsistent with any of the purposes of this Act, or any provision thereof." 42 U.S.C. 2000h-4.

2. Under New York law, petitioner Board of Education of the City School District of the City of New York "employ[s] * * * as many legally qualified teachers as the schools of the district require." N.Y. Educ. Law § 1604.8 (McKinney 2007). Until 1991, petitioner generally had discretion to establish minimum standards for its teachers. Pet. App. 8a. In 1991, however, the state legislature—exercising its state constitutional authority over the maintenance of public schools, *id.* at 4a—required that teachers in all New York public schools, though not private schools, be licensed under uniform statewide standards. *Id.* at 11a-12a. At that time, the New York State Education Department (SED) used a test called the National Teachers Examination Core Battery (NTE). *Id.* at 3a, 9a, 12a. Beginning in 1993, SED replaced that test with a set of tests including the Liberal Arts and Sciences Test (LAST). *Id.* at 3a, 12a. Petitioner played no role in the development or administration of the LAST or in the move from the NTE to the LAST. See Pet. App. 3a, 12a-13a; Pet. 6-7.

SED continued to permit petitioner to employ persons who had not passed the LAST as full-time substitute (as opposed to permanent) teachers. Pet. 5; Br. in Opp. 4-5; see Pet. App. 81a. Substitutes could work the same hours as permanent teachers, but were paid less. *Ibid.*

3. In 1996, respondents filed this suit against both petitioner and SED on behalf of a class of African-American

and Latino educators who, among other things, did not pass either the NTE or the LAST. Pet. App. 58a. They alleged that the tests had a disparate impact on African-American and Latino teachers in violation of Title VII. *Ibid.*

SED argued that it was not liable as an "employer" because only petitioner, and not SED, employed respondents. The district court held, however, that "an entity that is not a direct employer of a Title VII plaintiff nevertheless may be liable if it interferes with or 'significantly affects access of . . . [plaintiffs] to employment opportunities.'" *Gulino* v. *Board of Educ. of the City Sch. Dist.*, 236 F. Supp. 2d 314, 332 (S.D.N.Y. 2002), modified, No. 96 Civ. 8414, 2002 WL 31887733 (S.D.N.Y. Dec. 26, 2002) (citation omitted). The court then found "evidence that the State has sufficient control over the operation of local schools to bring it within Title VII's definition of an employer." *Id.* at 333.

The district court also rejected petitioner's argument that it could not be held liable because it "was merely following the mandates of state law." 236 F. Supp. 2d at 333. In the court's view, "the decision to de-certify those teachers who had applied for or received City licenses before 1991 because they did not pass the NTE or the LAST was the Board's," not the State's. *Id.* at 334. The court also held that, even if petitioner "had been acting only under state pressure, that would not suffice to shield it from liability under Title VII," because "Title VII preempts any state laws in conflict with it." *Id.* at 334, 335.

Following a lengthy trial, the district court found that neither the NTE nor the LAST had an impermissible disparate impact under Title VII. Pet. App. 57a-122a. The court determined that respondents had established a prima facie case of discrimination because the NTE and the LAST had a statistically significant adverse effect on African-American and Latino teachers. *Id.* at 79a-82a. The court also found, however, that the NTE and the LAST were job

related and consistent with business necessity, *id.* at 118a-121a, and that respondents "failed to offer a cost effective, practical alternative to the tests used by defendants in certifying teachers," *id.* at 121a.

4. Respondents appealed the dismissal of their claims concerning the LAST, which was first used in 1993 pursuant to the 1991 law requiring all permanent public-school teachers to be licensed under statewide standards. See Pet. App. 11a-12a. Respondents did not, however, challenge the dismissal of their claims concerning the NTE (which was the predecessor of the LAST). *Id.* at 12a n.7. The court of appeals vacated the district court's judgment and remanded for further proceedings. *Id.* at 3a.

The court of appeals first determined that SED cannot be held liable under Title VII for any disparate impact created by its tests. Pet. App. 17a-38a. Looking to the common law of agency, the court held that SED "is plainly not [respondents'] employer for the purposes of Title VII liability" because respondents "fail to meet the threshold showing that SED hired and compensated them," and in any event SED "does not exercise the workaday supervision necessary to an employment relationship." *Id.* at 36a, 37a. Because SED is not respondent's employer, the court found, Title VII provides no cause of action against SED.

In contrast, the court of appeals held that petitioner—which undeniably meets the definition of employer—could be held liable under Title VII if the LAST had a disparate impact. Pet. App. 39a-41a. The court explained that, while petitioner had "argued in the district court that it should not be held liable for an employment practice required by state law," the district court had rejected that contention, and petitioner "does not appear to challenge this finding of the district court." *Id.* at 39a. The court of appeals briefly "note[d]," however, that "the dis-

trict court was correct in holding that the mandates of state law are no defense to Title VII liability." *Ibid.*

As to the argument that petitioner had advanced on appeal, the court of appeals stated that, "[o]n appeal, [petitioner] appears to change its tack. Instead of arguing lack of discretion, [petitioner] asserts that Title VII does not apply because [petitioner's] use of certification tests for licensing 'is a capacity separate and distinct from that of employer under Title VII.'" Pet. App. 39a (citation omitted). After expressing uncertainty as to whether petitioner had raised that contention in the district court, *id.* at 40a n.22, the court of appeals rejected it on the ground that petitioner is "not merely a licensing agency," but instead "acts as [respondents'] 'employer' in the word's ordinary meaning." *Id.* at 40a, 41a. The court "acknowledge[d] the difficult situation that" its holding "creates for" petitioner—by requiring it to defend the results of a test that it did not design and does not administer—but concluded that "Title VII requires this result." *Id.* at 41a.

As to whether the LAST has an impermissible disparate impact under Title VII, the court of appeals concluded that the district court had applied the wrong legal standard and made factual errors. Pet. App. 42a-56a. Accordingly, the court vacated and remanded for further proceedings. *Id.* at 56a. In so doing, the court noted that it did not reach respondents' contention that petitioner had misused the LAST by, among other things, demoting teachers from permanent to substitute status and then paying them less. See *id.* at 16a n.9; Br. in Opp. 4-5. Instead, the court explained that, "[i]f appropriate, the district court may need to address this argument on remand." Pet. App. 16a n.9.

## DISCUSSION

The court of appeals held that petitioner is an employer as opposed to a licensor, and that petitioner's compliance

with a facially neutral public education state licensing requirement can give rise to Title VII disparate-impact liability. Pet. App. 39a-41a. The court of appeals was correct on the first of those points and wrong on the second. Petitioner, however, abandoned the latter argument in the court of appeals. Although the court of appeals nevertheless passed on the issue, its discussion of that issue was limited to two conclusory sentences. *Id.* at 39a. The decision of the court of appeals does not conflict with any decisions of this Court or another court of appeals. And this case provides a poor vehicle for considering the question presented at this time, in part because the case is in an interlocutory posture and the lower courts have not yet resolved respondents' contention that petitioner misused the LAST in ways *not* required by state law. Accordingly, the petition for a writ of certiorari should be denied.

### A. Title VII Does Not Prohibit Employers From Complying With Facially Neutral State Licensing Requirements

Because petitioner is an employer, not a state licensing agency, it is subject to Title VII's prohibitions. Title VII does not, however, prohibit petitioner from complying with the state licensing requirement at issue.

1. Petitioner primarily argues (Pet. 11) that "licensing activity conducted *outside of an employment context* does not give rise to a cause of action under Title VII" (emphasis added). That is correct as a general matter. Title VII prohibits an "employer" from engaging in specified "unlawful employment practice[s]." 42 U.S.C. 2000e-2(a). Title VII thereby restricts employers' employment practices. As the lower courts have recognized, Title VII does not restrict a sovereign's exercise of its traditional police powers, including the promulgating and enforcement of licensing requirements, in a non-employment capacity. See, *e.g.*, *Camacho* v. *Puerto Rico Ports Auth.*, 369 F.3d 570, 578 (1st Cir. 2004)

(noting "long line of cases" holding that licensing authorities are not subject to Title VII); Pet. 12-13.

That result draws support from this Court's cases suggesting that an intent to rework the federal-state balance should not be lightly inferred. See, *e.g.*, *United States* v. *Bass*, 404 U.S. 336, 349 (1971); see also Pet. App. 28a. As the court of appeals recognized, "New York acts pursuant to its traditional police powers in performing a core state function—regulating the quality of public school teachers." *Id.* at 29a. The States have traditionally licensed or certified professionals in numerous fields, including education, law, and medicine. See SED Br. 12-13.

The Constitution, of course, constrains the exercise of that traditional police power by prohibiting intentional discrimination on the basis of race (and 42 U.S.C. 1983 furnishes a cause of action to address such discrimination), but, as this Court has held, the Constitution does not proscribe disparate impacts. *Washington* v. *Davis*, 426 U.S. 229, 241-242 (1976). Indeed, this Court in *Davis* relied in part on concerns about how such liability would affect state "licensing statutes" and other traditional state functions. *Id.* at 248. Because nothing in Title VII manifests a clear intent to impose further restrictions on the States' exercise of their sovereign police power to license professionals including public school teachers, Title VII should not be read to intrude on such matters of core state authority. See *Bass*, 404 U.S. at 349; cf. *Gregory* v. *Ashcroft*, 501 U.S. 452, 460-461 (1991) (holding that Congress's intent "to alter the usual constitutional balance between the States and the Federal Government" must be "unmistakably clear in the language of the statute") (citation omitted).

2. But while the inapplicability of Title VII to a State acting as a licensor, rather than an employer, supports the dismissal of the State from the action, it is not sufficient to protect *petitioner* from liability. Petitioner did not devise

and does not administer the LAST and, therefore, is not a licensing body. See Pet. App. 3a, 12a-13a; Pet. i, 13, 14. Instead, petitioner is an employer that must comply with a state law that requires it to hire and retain as full-time permanent teachers only persons who are certified by the State. See p. 3, *supra*. Petitioner thus acts *only* as respondents' employer, not as a licensing body. Nonetheless, petitioner is not liable under Title VII for complying with a facially neutral state licensing regime that limits the universe of potential employees to those who have complied with the State's requirement. Several considerations support that result.[1]

a. First, any other conclusion would effectively result in the same reworking of the federal-state balance as a regime making the States liable directly for their facially neutral licensing schemes. As discussed above, States are not forbidden by the Constitution from enacting or enforcing licensing requirements that have unintentional disparate impacts, and Title VII does not intrude on that traditional state authority. See pp. 7-8, *supra*. That state authority would be vitiated if employers could be held liable under

[1] Respondents argue (Br. in Opp. 5-6, 15) that the LAST is not a licensing test because it applies only to public-school teachers, and because a former state employee testified to that effect at trial. The court of appeals properly rejected respondents' contention and found that "New York's decision to regulate public and private school teachers differently is reflective of the State's differing obligations with respect to public and private education." Pet. App. 38a-39a n.21. In any event, for purposes of assessing *petitioner's* liability under Title VII, the key point is that the State precludes petitioner from employing permanent teachers who have not passed the LAST. Whether a state law is labeled a "licensing" test, as opposed to some analogous exercise of the State's traditional police powers, is not necessarily dispositive. And to the extent that there is uncertainty as to whether the LAST qualifies as a licensing test, that uncertainty cuts against plenary review.

Title VII for complying with facially neutral state licensing laws, because the threat of such liability would frustrate compliance with such state laws.

Second, holding employers liable for the consequences of a state law that narrows the universe of prospective employees would conflict with basic notions of fairness and causation. It is a general principle of law that, "where [a defendant] has no ability to prevent a certain effect due to its limited [legal] authority over the relevant actions, the [defendant] cannot be considered a relevant 'cause' of the effect," and thus is not ordinarily liable. *Department of Transp.* v. *Public Citizen*, 541 U.S. 752, 770 (2004). Congress legislated against the backdrop of that practice when it enacted Title VII. Cf. *Goodyear Atomic Corp.* v. *Miller*, 486 U.S. 174, 184-185 (1988). And there is no evidence that Congress intended to depart from that principle in Title VII, with the indirect consequence of interfering with a State's ability to operate facially neutral licensing exams.[2]

Third, such a result is reinforced by the business-necessity defense. That defense provides an employer with a defense to a disparate impact claim if it shows that the challenged business practice is job related and consistent with business necessity. 42 U.S.C. 2000e-2(k)(1)(A)(ii). If the mandatory state licensing requirement is taken as a given, then that defense would be satisfied as a matter of course, because compliance with a valid facially neutral state mandate is a business necessity to which there is no reasonable

---

[2] This requirement of causation could also be read into the prohibitions that give rise to disparate-impact liability. Cf. *Holmes* v. *Securities Investor Prot. Corp.*, 503 U.S. 258, 265-266 (1992) (reading proximate causation into civil RICO action). For example, the basic liability provisions from which disparate-impact liability have been derived address an employer's effort "to limit, segregate, or classify his employees or applicants," 42 U.S.C. 2000e-2(a)(2), but it is the State's mandate, not the employer, that limits the pool of qualified applicants.

alternative. If, instead, the defense requires an inquiry into whether the test itself is justified, then the employer—who is not the one who came up with the test—would be placed in an untenable position.

An employer will seldom be in a position to determine whether a state-mandated licensing test has an impermissible disparate impact, or whether the other criteria for disparate-impact liability, such as business necessity, are satisfied. An employer that did not design or administer a state-mandated licensing test, and therefore was not privy to the data and testing methodologies underlying that test, would not realistically be in a position to know whether the test had an impermissible disparate impact under the validation methodology adopted by the court of appeals, much less to defend the test in court. Indeed, the court of appeals itself recognized the "difficulty of test validation" under its five-part inquiry. Pet. App. 45a, 48a.[3]

Fourth, under the court of appeals' holding, employers could therefore face great legal uncertainty. An employer that decided to comply with a state licensing requirement could be liable for back pay and other monetary relief under Title VII if the courts later determined that the state law created an impermissible disparate impact; but if the employer chose not to comply with the state licensing requirement, it could be liable under state law, unless the courts later agreed that the state law had an impermissible impact.

The resulting uncertainty could jeopardize not only the employer, but also the State's interest in enforcing its li-

---

[3] This case does not present the hypothetical situation where "a classification that is ostensibly neutral * * * is an obvious pretext for discrimination." *Personnel Adm'r* v. *Feeney*, 442 U.S. 256, 272 (1979); see *Davis*, 426 U.S. at 241-242. There is no argument that the LAST is such a classification.

censing requirements. States have a vital interest in regulating numerous professions for a variety of reasons, including the health and safety of medical patients and others. States also have a vital interest in regulating their professionals, including public school teachers. That traditional police power would be ill-served by the court of appeals' decision, as some employers might choose not to follow important licensing requirements, and thereby prompt state enforcement actions, with the public health and safety potentially suffering during the ensuing litigation.

Similar results could occur in any number of regulated professions. Under the rationale adopted by the court of appeals' decision in this case, law firms and government legal offices could be subjected to Title VII litigation alleging that bar examinations created disparate results. Health care providers could likewise be subjected to litigation alleging disparate impact liability on the basis of medical, dental, or veterinary licensing requirements. And so on. The potentially sweeping implications of holding employers liable under Title VII for any disparate impact stemming from a state-created and administered licensing regime is another indication that Congress did not intend that result, because there is no evidence in the text or history of Title VII that Congress intended such effects.

Fifth, even attempting to try such a case would pose serious practical problems. Defendants bear the burden of proof on the business-necessity defense, 42 U.S.C. 2000e-2(k)(1)(A)(i), but an employer would be ill equipped to shoulder that burden with respect to a state-mandated licensing test for the reasons discussed above.[4] As a practi-

[4] Congress imposed the burden on employers to establish the business-necessity defense in large part because it contemplated that the employer would have been responsible for designing or selecting the practice at issue, and thus would be in a position to shoulder the burden

cal matter, an employer would need the State's aid to defend such a test. A State might feel compelled to intervene to defend its own licensing test, but a State would not be required to come to the employer's defense and it might just as well choose to resist discovery into the process for designing and administering a test to protect itself against a direct damages action under Section 1983. That further underscores the extent to which imposing Title VII liability in this context would be an improper end-run around state authority and would punish employers without regard to their own culpability. See SED Br. 9-10, 13. Even the court of appeals "acknowledge[d] the difficult situation that" its holding "creates for" petitioner. Pet. App. 41a.[5]

3. The court of appeals based its contrary conclusion on Section 2000e-7, which states that Title VII does not "exempt or relieve any person from any liability, duty, penalty,

---

of proof in defending that practice. See H.R. Rep. No. 644, 101st Cong., 2d Sess. Pt. 2, at 14 (1990) (stating that the employer should bear the burden of proof because it "has control over the employment process, selects the practices used to make an employment decision, and is more likely to be aware of the relative costs and benefits of the practices used and of the alternative practices that were not used in making the employment decision(s)"). There is no evidence that Congress contemplated requiring an employer to bear the burden in defending a licensing test that it did not design and does not administer.

[5] The foregoing considerations lead to the conclusion that the court of appeals erred in holding that petitioner may be held liable under Title VII for complying with the mandatory state licensing test at issue. It may be possible, however, to reach that conclusion in different ways, for example, with greater or lesser emphasis on causation principles or the business-necessity defense. Any tentativeness on that score is largely a product of the manner in which this case was litigated below. Because petitioner abandoned this argument on appeal, the question was not fully aired below. See p. 17, *infra*. The fact that this issue was not fully briefed or considered below provides an independent basis for denying certiorari.

or punishment provided by any present or future law of any State or political subdivision of a State, other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice under" Title VII. 42 U.S.C. 2000e-7; see Pet. App. 39a. That provision, however, does not expose to liability an employer who gives effect to a state licensing requirement.

Section 2000e-7 addresses a fundamentally different question from that posed in this case—namely, it addresses when a person can be held *liable* under *state* law, and it limits the circumstances in which Title VII provides a defense. It does not address the very different question whether a person can be held liable under *Title VII* for compliance with a state law. Section 2000e-7 therefore has little or nothing to do with the question presented here. Cf. *California Fed. Sav. & Loan Ass'n* v. *Guerra*, 479 U.S. 272, 280-282 (1987) (holding that Title VII did not exempt employer from liability under state anti-discrimination law). In any event, as already noted, facially neutral state licensing requirements such as the one at issue are not displaced by Title VII, because there is no indication, much less a clear statement, that Congress intended Title VII to intrude on such core state prerogatives as licensing regimes. See pp. 7-8, *supra*.[6]

Nor does respondents' reliance (Br. in Opp. 11) on Section 2000h-4 alter that conclusion. That section, which governs the Civil Rights Act of 1964 generally, including Title VII, states that the Act should not be "construed as invalidating any provision of State law unless such provision is

---

[6] This case does not require the Court to determine the outer reaches of Title VII's preemptive scope. It is settled, however, that federal law preempts state laws that facially discriminate on the basis of an employee's membership in a protected class, including, for example, a facially discriminatory licensing law.

inconsistent with any of the purposes of this Act, or any provision thereof." 42 U.S.C. 2000h-4. It is not immediately obvious what role that section plays other than to reinforce the preemptive force of the Supremacy Clause and presumably to make clear that the Act does not preempt the entire field of anti-discrimination laws. Section 2000h-4 is inapplicable because, as discussed above, the state law at issue here—a licensing requirement for public school teachers—is not inconsistent with Title VII.[7]

**B. The Petition For A Writ Of Certiorari Should Be Denied**

Although the court of appeals erred in concluding that petitioner may be held liable under Title VII for any disparate impact created by the LAST, this Court's review of the question presented is neither warranted nor proper at this time.

1. The court of appeals' decision does not conflict with any decisions of this Court or another court of appeals. Petitioner asserts (Pet. 12-13) a conflict with cases holding that state licensing agencies were not liable under Title VII

---

[7] Because petitioner does not challenge the dismissal of SED as a defendant, this case does not concern Title VII's application to a State's own employment practices. Title VII's prohibitions against intentional discrimination and disparate impacts govern a State's employment practices concerning its own employees. See *Connecticut* v. *Teal*, 457 U.S. 440, 449 (1982). As discussed, however, Title VII does not regulate the States' exercise of their traditional sovereign powers where, as here, their own employees are not concerned. Nor does this case concern the applicability of Title VII to civil service exams or other employee selection or ranking devices for federal, state, or local government employers. For example, to the extent that the unit of government that imposes the test is also the employer, Title VII would apply. Moreover, an action by the Attorney General for injunctive relief would lie even if the government that imposes the test is not the employer. See 42 U.S.C. 2000e-6(a); *Boston Chapter, NAACP, Inc.* v. *Beecher*, 504 F.2d 1017 (1st Cir. 1974) (written test for fire fighters), cert. denied, 421 U.S. 910 (1975).

for alleged discriminatory effects of the professional licensing exams they administered. In all but one of those cases, however, the defendants were not the plaintiffs' employers, but instead acted solely as licensing agencies. See *George* v. *New Jersey Bd. of Veterinary Med. Exam'rs*, 794 F.2d 113, 114 (3d Cir. 1986) (veterinary exam); *Haddock* v. *Board of Dental Exam'rs*, 777 F.2d 462, 463 (9th Cir. 1985) (dental exam); *Woodard* v. *Virginia Bd. of Bar Exam'rs*, 598 F.2d 1345, 1346 (4th Cir. 1979) (bar exam); *Tyler* v. *Vickery*, 517 F.2d 1089, 1096 (5th Cir. 1975) (bar exam), cert. denied, 426 U.S. 940 (1976). As discussed above, that is not the case here, where the only remaining defendant is the employer, not the licensing entity (*i.e.*, SED). See Pet. App. 40a, 41a.[8]

In the remaining case relied on by petitioner (Pet. 12-13), *Fields* v. *Hallsville Indep. Sch. Dist.*, 906 F.2d 1017 (5th Cir. 1990), cert. denied, 498 U.S. 1026 (1991), the plaintiffs sued both the state licensing agency and the local school district. *Id.* at 1018. The only claims against the

---

[8] In *Association of Mexican-American Educators* v. *California*, 231 F.3d 572 (9th Cir. 2000) (en banc) (*AMAE*), the plaintiffs likewise sued only the State and the State's credentialing agency, not the local school districts that (like petitioner) directly employed teachers. *Id.* at 577, 580. The Ninth Circuit held that the State could be held liable under Title VII because "the State of California is in a theoretical *and* practical position to 'interfere' with the employment decisions of school districts." *Id.* at 582. In holding that the State of New York (*i.e.*, SED) was not a proper party to this Title VII action, the court of appeals questioned the "interference" theory of coverage applied by the Ninth Circuit, see Pet. App. 25a-30a, but ultimately concluded that, "even if this Circuit were to follow the legal framework of *AMAE*, the factual differences between the cases preclude reliance on that decision," *id.* at 30a-31a. In particular, the court of appeals explained that "[t]he relationship between the State of New York and individual local school districts is very different than the state/local relationship outlined by the Ninth Circuit in *AMAE*." *Id.* at 30a.

school district, however, related to plaintiffs' alleged applications for jobs that did *not* require state certification, and the court upheld the dismissal of those claims on the fact-bound ground that the plaintiffs had not actually applied for such jobs. See *id.* at 1021-1022. Thus, *Fields* did not implicate the question presented here.

2. Moreover, on appeal petitioner appears to have abandoned the argument that an employer's compliance with state licensing requirements does not violate Title VII. As the court of appeals explained, petitioner advanced that contention in the district court. Pet. App. 39a. In the court of appeals, however, petitioner "appear[ed] to change its tack," and "[i]nstead of arguing lack of discretion," petitioner argued that it did not act as an employer in using the licensing tests. *Ibid.* As explained above, the latter argument—the only one that petitioner advanced in the court of appeals—is not persuasive. See pp. 8-9, *supra.*

The court of appeals nonetheless passed upon the question whether compliance with state law can give rise to Title VII liability, Pet. App. 39a, and this Court's "traditional rule" is that it may consider a contention that was either pressed or passed upon below. *United States* v. *Williams*, 504 U.S. 36, 41 (1992). For two reasons, however, this case is not an appropriate occasion in which to invoke such authority. First, petitioner did not merely fail to raise the argument in the lower courts. Instead, petitioner appears to have abandoned the contention by advancing it in the district court and then choosing not to renew it in the court of appeals. Cf. *United States* v. *Olano*, 507 U.S. 725, 733 (1993) (distinguishing between the failure to assert a right in a timely fashion and the "intentional * * * abandonment of a known right") (quoting *Johnson* v. *Zerbst*, 304 U.S. 458, 464 (1938)). Second, although the court of appeals did address the point, its discussion was conclusory and limited to two sentences. Pet. App. 39a.

3. In the circumstances, the interlocutory posture of the case also cuts against plenary review at this time. See *VMI* v. *United States*, 508 U.S. 946 (1993) (opinion of Scalia, J., respecting the denial of the petition for a writ of certiorari). The court of appeals remanded for further proceedings on the business-necessity question. See Pet. App. 56a. In doing so, the court declined to reach respondents' contention that petitioner had misused the LAST, and the court stated instead that, "[i]f appropriate, the district court may need to address this argument on remand." *Id.* at 16a n.9. That observation underscores the interlocutory posture of this case.

The question whether employers are liable for the disparate impacts of facially neutral state licensing requirements is the type of threshold issue this Court sometimes considers in an interlocutory posture. But here, a favorable answer to that question would not absolve petitioner of Title VII liability or resolve the case. Rather, that threshold question is related to the question whether petitioner misused the test by imposing adverse consequences on respondents that were *not* required by state law—a question that the court of appeals left for remand. See Pet. App. 16a n.9. The fact that petitioner is required by state law to give effect to a state licensing requirement such as the LAST would not provide any defense to petitioner's own misuse of the test. If respondents prevailed on the latter question, the broader question concerning an employer's compliance with *mandatory* state licensing requirements might not be squarely presented in this case. For that reason as well, this Court's plenary review is not warranted at this juncture.

## CONCLUSION

The petition for a writ of certiorari should be denied.

Respectfully submitted.

PAUL D. CLEMENT
*Solicitor General*

GRACE CHUNG BECKER
*Acting Assistant Attorney General*

GREGORY G. KATSAS
*Acting Assistant Attorney General*

GREGORY G. GARRE
*Deputy Solicitor General*

DARYL JOSEFFER
*Assistant to the Solicitor General*

DENNIS J. DIMSEY
MARLEIGH D. DOVER
MELISSA PATTERSON
*Attorneys*

MAY 2008

Blank Page