# EXHIBIT C

4/9/14     Questions and Answers About the EEOC's Enforcement Guidance on the Consideration of Arrest and Conviction Records in Employment Decisions Under Tit…

Case 5:13-cv-00255-C     Document 32-4     Filed 04/18/14     Page 2 of 4     PageID 808



*U.S. Equal Employment Opportunity Commission*

# Questions and Answers About the EEOC's Enforcement Guidance on the Consideration of Arrest and Conviction Records in Employment Decisions Under Title VII

On April 25, 2012, the U.S. Equal Employment Opportunity Commission (EEOC or Commission) issued its [Enforcement Guidance on the Consideration of Arrest and Conviction Records in Employment Decisions Under Title VII of the Civil Rights Act of 1964](), as amended, 42 U.S.C. § 2000e. The Guidance consolidates and supersedes the Commission's 1987 and 1990 policy statements on this issue as well as the discussion on this issue in Section VI.B.2 of the Race & Color Discrimination Compliance Manual Chapter. It is designed to be a resource for employers, employment agencies, and unions covered by Title VII; for applicants and employees; and for EEOC enforcement staff.

*1. How is Title VII relevant to the use of criminal history information?*

There are two ways in which an employer's use of criminal history information may violate Title VII. First, Title VII prohibits employers from treating job applicants with the same criminal records differently because of their race, color, religion, sex, or national origin ("disparate treatment discrimination").

Second, even where employers apply criminal record exclusions uniformly, the exclusions may still operate to disproportionately and unjustifiably exclude people of a particular race or national origin ("disparate impact discrimination"). If the employer does not show that such an exclusion is "job related and consistent with business necessity" for the position in question, the exclusion is unlawful under Title VII.

*2. Does Title VII prohibit employers from obtaining criminal background reports about job applicants or employees?*

No. Title VII does not regulate the acquisition of criminal history information. However, another federal law, the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. (FCRA), does establish several procedures for employers to follow when they obtain criminal history information from third-party consumer reporting agencies. In addition, some state laws provide protections to individuals related to criminal history inquiries by employers.

*3. Is it a new idea to apply Title VII to the use of criminal history information?*

No. The Commission has investigated and decided Title VII charges from individuals challenging the discriminatory use of criminal history information since at least 1969,[1] and several federal courts have analyzed Title VII as applied to criminal record exclusions over the past thirty years. Moreover, the EEOC issued three policy statements on this issue in 1987 and 1990, and also referenced it in its 2006 Race and Color Discrimination Compliance Manual Chapter. Finally, in 2008, the Commission's E-RACE (Eradicating Racism and Colorism from Employment) Initiative identified criminal record exclusions as one of the employment barriers that are linked to race and color discrimination in the workplace. Thus, applying Title VII analysis to the use of criminal history information in employment decisions is well-established.

*4. Why did the EEOC decide to update its policy statements on this issue?*

In the twenty years since the Commission issued its three policy statements, the Civil Rights Act of 1991 codified Title VII disparate impact analysis, and technology made criminal history information much more accessible to employers.

The Commission also began to re-evaluate its three policy statements after the Third Circuit Court of Appeals noted in its 2007 *El v. Southeastern Pennsylvania Transportation Authority*[2] decision that the Commission should provide in-depth legal analysis and updated research on this issue. Since then, the Commission has examined social science and criminological research, court decisions, and information about various state and federal laws, among other information, to further assess the impact of using criminal records in employment decisions.

4/9/14    Questions and Answers About the EEOC's Enforcement Guidance on the Consideration of Arrest and Conviction Records in Employment Decisions Under Tit…

Case 5:13-cv-00255-C   Document 32-4   Filed 04/18/14   Page 3 of 4   PageID 809

### 5. Did the Commission receive input from its stakeholders on this topic?

Yes. The Commission held public meetings in November 2008 and July 2011 on the use of criminal history information in employment decisions at which witnesses representing employers, individuals with criminal records, and other federal agencies testified. The Commission received and reviewed approximately 300 public comments that responded to topics discussed during the July 2011 meeting. Prominent organizational commenters included the NAACP, the U.S. Chamber of Commerce, the Society for Human Resources Management, the Leadership Conference on Civil and Human Rights, the American Insurance Association, the Retail Industry Leaders Association, the Public Defender Service for the District of Columbia, the National Association of Professional Background Screeners, and the D.C. Prisoners' Project.

### 6. Is the Commission changing its fundamental positions on Title VII and criminal record exclusions with this Enforcement Guidance?

No. The Commission will continue its longstanding policy approach in this area:

- The fact of an arrest does not establish that criminal conduct has occurred. Arrest records are not probative of criminal conduct, as stated in the Commission's 1990 policy statement on Arrest Records. However, an employer may act based on evidence of conduct that disqualifies an individual for a particular position.
- Convictions are considered reliable evidence that the underlying criminal conduct occurred, as noted in the Commission's 1987 policy statement on Conviction Records.
- National data supports a finding that criminal record exclusions have a disparate impact based on race and national origin. The national data provides a basis for the Commission to investigate Title VII disparate impact charges challenging criminal record exclusions.
- A policy or practice that excludes everyone with a criminal record from employment will not be job related and consistent with business necessity and therefore will violate Title VII, unless it is required by federal law.

### 7. How does the Enforcement Guidance differ from the EEOC's earlier policy statements?

The Enforcement Guidance provides more in-depth analysis compared to the 1987 and 1990 policy documents in several respects.

- The Enforcement Guidance discusses disparate treatment analysis in more detail, and gives examples of situations where applicants with the same qualifications and criminal records are treated differently because of their race or national origin in violation of Title VII.
- The Enforcement Guidance explains the legal origin of disparate impact analysis, starting with the 1971 Supreme Court decision in Griggs v. Duke Power Company, 401 U.S. 424 (1971), continuing to subsequent Supreme Court decisions, the Civil Rights Act of 1991 (codifying disparate impact), and the Eighth and Third Circuit Court of Appeals' decisions applying disparate impact analysis to criminal record exclusions.
- The Enforcement Guidance explains how the EEOC analyzes the "job related and consistent with business necessity" standard for criminal record exclusions, and provides hypothetical examples interpreting the standard.
  - There are two circumstances in which the Commission believes employers may consistently meet the "job related and consistent with business necessity" defense:
    - The employer validates the criminal conduct exclusion for the position in question in light of the Uniform Guidelines on Employee Selection Procedures (if there is data or analysis about criminal conduct as related to subsequent work performance or behaviors); or
    - The employer develops a targeted screen considering at least the nature of the crime, the time elapsed, and the nature of the job (the three factors identified by the court in Green v. Missouri Pacific Railroad, 549 F.2d 1158 (8th Cir. 1977)). The employer's policy then provides an opportunity for an individualized assessment for those people identified by the screen, to determine if the policy as applied is job related and consistent with business necessity. (Although Title VII does not require individualized assessment in all circumstances, the use of a screen that does not include individualized assessment is more likely to violate Title VII.).
- The Enforcement Guidance states that federal laws and regulations that restrict or prohibit employing individuals with certain criminal records provide a defense to a Title VII claim.
- The Enforcement Guidance says that state and local laws or regulations are preempted by Title VII if they "purport[] to require or permit the doing of any act which would be an unlawful employment practice" under Title VII. 42 U.S.C. § 2000e-7.
- The Enforcement Guidance provides best practices for employers to consider when making employment decisions based on criminal records.

[1] See, e.g., EEOC Decision No. 70-43 (1969) (concluding that an employee's discharge due to the falsification of

Case 5:13-cv-00255-C   Document 32-4   Filed 04/18/14   Page 4 of 4   PageID 810

his arrest record in his employment application did not violate Title VII); EEOC Decision No. 72-1497 (1972) (challenging a criminal record exclusion policy based on "serious crimes"); EEOC Decision No. 74-89 (1974) (challenging a policy where a felony conviction was considered an adverse factor that would lead to disqualification); EEOC Decision No. 78-03 (1977) (challenging an exclusion policy based on felony or misdemeanor convictions involving moral turpitude or the use of drugs); EEOC Decision No. 78-35 (1978) (concluding that an employee's discharge was reasonable given his pattern of criminal behavior and the severity and recentness of his criminal conduct).

[2] 479 F.3d 232 (3d Cir. 2007).