# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| STATE OF TEXAS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 5:13-CV-00255-C |
| ) | ECF |
| EQUAL EMPLOYMENT ) | |
| OPPORTUNITY COMMISSION, *et al.*, ) | |
| ) | |
| Defendants ) | |

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**

# INTRODUCTION

Texas has failed to establish that the Court has jurisdiction over its First Amended Complaint. Three defects prove fatal. First, the EEOC's Guidance does not constitute final agency action under the Administrative Procedure Act (APA).[1] Second, Texas lacks standing because it cannot establish that it has been harmed by the Guidance. Third, Texas's claims are unripe.

None of this should come as surprise. The Guidance is, after all, just guidance – notwithstanding Texas's inaccurate name for it (*i.e.*, the "Felon-Hiring Rule"). As guidance, it does not affect Texas's obligations or carry any legal consequences. To wit: the Guidance does not reach a conclusion about the propriety of the kind of employment policies that lie at the heart of the amended complaint; it does not bind the Department of Justice, which enforces Title VII against states; it does not bind courts, which will assess Texas's employment policies under Title VII, rather than the Guidance; and it does not otherwise have legal consequences. The absence of legal obligations and consequences not only dooms Texas's claim that the Guidance constitutes final agency action, but it also prevents Texas from establishing that the Guidance causes a concrete injury on which it can base standing.

Texas's First Amended Complaint fares no more favorably under the ripeness doctrine. Not only are the first two counts of the amended complaint unripe because the Guidance does not constitute final agency action, but they are also unripe because they turn on factual issues that will not be resolved in this litigation. The Guidance does not reach conclusions about the exclusionary policies championed by Texas, but instead calls for a fact-sensitive review, so there is no sharp conflict between allegedly contradictory policies that is suitable for judicial review. And Texas's constitutional challenge to Title VII also is unripe, as withholding review will visit no harm on

---

[1] EEOC, Enforcement Guidance on the Consideration of Arrest and Conviction Records in Employment Decisions Under Title VII (Guidance), No. 915.002 (April 25, 2012) (included in the App'x to Motion to Dismiss First Amended Complaint (MTD FAC) at 1-55).

Texas. At all events, Texas abandoned Count III by failing to respond to defendants' arguments in support of their motion to dismiss. In short, for the reasons stated above and in defendants' opening brief, the Court should dismiss this case under Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction.

## ARGUMENT

### I. The Guidance Does Not Constitute Final Agency Action.

Not all agency action is reviewable under the APA – only final agency action is subject to review. 5 U.S.C. § 704. The Supreme Court in *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997), established a two-part test for determining whether agency action is final under the APA. According to part two of the test, in order to be final, an action must be one by which "rights or obligations have been determined" or from which "legal consequences will flow." *Id.* at 178. The opening brief counts the ways in which the Guidance does not satisfy this test, MTD FAC at 7-13, so there is no need to repeat them verbatim. It suffices to say by way of illustration that the Guidance contains no directive language regarding felony-based exclusions, does not bind courts or the Department of Justice, creates no safe harbors, was issued by an agency that lacks the authority to issue legislative rules under Title VII, and otherwise creates no legal consequences. *Id.* at 7-13. (The Guidance is simply a guide for the EEOC's staff.) Final agency action being absent, jurisdiction over Counts I and II of the FAC is also absent. *Peoples Nat'l Bank v. Office of Comptroller of Currency of U.S.*, 362 F.3d 333, 336 (5th Cir. 2004); *American Airlines, Inc. v. Herman*, 176 F.3d 283, 287 (5th Cir.1999).

Texas insists not only that the Guidance constitutes final agency action, but also – relying solely on D.C. Circuit precedent – that the absence of final agency action should be classified as a merits defect, rather than a jurisdictional one. Plaintiffs' Opp. to MTD FAC ("Second Opp."), Dckt. No. 32, at 2 & n.2. The classification argument is easily dispatched. In the Fifth Circuit, the

lack of a final agency action counts as a jurisdictional flaw: "If there is no final agency action, a federal court lacks subject matter jurisdiction." *Peoples Nat'l Bank,* 362 F.3d at 336.[2]

Texas's argument that the Guidance is final agency action fares no better. It is an argument in three parts.

First, the State summarizes the defendants' position as follows: "[T]he Commission's only argument is that the Rule is not final agency action . . . because the only reviewable agency action[s] are substantive rules that bind a court in the sense that they are subject to deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843–44 (1984)." Second Opp. at 2 (quotation marks omitted). It then proceeds to refute that argument. *Id.* at 2-3. The details of the refutation are irrelevant, however, because defendants did *not* argue that *Chevron* deference is the *sine qua non* of final agency action; Texas simply knocks down a straw man. Defendants' argument is, in fact, that the Guidance is not final agency action because it does not satisfy the *Bennett* test provided for by the Supreme Court to determine what constitutes final agency action. MTD FAC at 7-13. The fact that the Guidance does not deserve *Chevron* deference is one reason why it does not constitute a final agency action, but it is not the only reason, and defendants have not argued otherwise. *Id.* at 7-13.

Second, Texas maintains that plaintiffs are "presumptively entitled to challenge the lawfulness of federal agency action and it is the federal agency's burden to prove by 'clear and convincing evidence of legislative intention' that Congress intended to override that presumption." Second Opp. at 3 (quoting *Japan Whaling Ass'n v. American Cetacean Soc'y*, 478 U.S. 221, 230 n.4 (1986)). Texas asserts that defendants have not met this burden. Second Opp. at 4. No further recitation of Texas's argument is necessary because it fails at the premise. *Japan Whaling* does not

---

[2] Defendants cited *Peoples National Bank* for this proposition in their opening motion, Motion to Dismiss, Dckt. No. 16, at 7, and Texas's failure to acknowledge this binding precedent is puzzling.

hold that plaintiffs are presumptively entitled to challenge the lawfulness of federal agency action. *Japan Whaling Ass'n*, 478 U.S. at 230 n.4. Rather, it holds that, as a presumptive matter, a right of action to challenge final federal agency action exists under the APA. *Id*. *Japan Whaling* also recognizes, however, that plaintiffs must demonstrate the existence of a final agency action to "avail themselves of the right of action created by the APA." *Id*. This Texas cannot do. In other words, defendants argue that Texas cannot satisfy the requirements of the APA, not that the APA has been displaced by another enactment.

Third and finally, Texas contends that defendants' position in this case is inconsistent with a position taken by the United States in an amicus brief recommending against review in *Board of Education of New York City School District v. Gulino*, 554 U.S. 917 (2008) (mem.), No. 07-270, and it implies that, under the doctrine of judicial estoppel, defendants cannot deviate from this earlier position. Second Opp. at 4-5. This contention is misplaced. The petition for a writ of certiorari in *Gulino* raised the question of whether a local school board could be held liable for disparate impact discrimination under Title VII when it complied with a facially neutral state licensing requirement for teachers. *See* Br. of United States as Amicus Curiae (*Gulino* Br.) at I (attached as Exhibit B to Second Opp.). Texas reads the *Gulino* brief to say that "compliance with a facially neutral state employment law — there, a prohibition on unlicensed teachers; here, a prohibition on convicted felons — *always* satisfies 'business necessity.'" Second Opp. at 4 (emphasis in the original). Texas misreads the brief. In fact, the United States did not take a position on the merits question that would be relevant in this case, *i.e.*, Title VII's application to a State's employment practices. This is so for a simple reason: *Gulino* did "not concern Title VII's application to a State's own employment practices." *Gulino* Br. at 15 n.7. Moreover, the United States did note in *Gulino* that while "Title VII does not regulate the States' exercise of their traditional sovereign powers where . . . their own employees are not concerned" – the State in *Gulino* was acting as a licensor, not an employer – the

law's "prohibitions against intentional discrimination and disparate impacts govern a State's employment practices concerning its own employees." *Id.*

But more fundamentally, while defendants' position in this motion is that there is no final agency action, MTD FAC at 8-9, the *Gulino* brief does not address that APA issue. Indeed, the *Gulino* brief does not even mention the APA, because that is not what that case or brief was about. Instead, the brief speaks to the proper interpretation of Title VII (and, of course, whether Supreme Court review is appropriate). *Gulino* Brief at 6-18. In this case, however, the Court need not interpret Title VII because there is no final agency action upon which to ground jurisdiction. Finally, Texas's suggestion that judicial estoppel bars any of defendants' arguments is unfounded. Not only must the later argument be inconsistent with the earlier one for the doctrine to apply (and, as explained above, it is not inconsistent here), but the court also must have adopted the first argument in the earlier proceeding. *Arthur J. Gallagher & Co. v. Babcock*, 703 F.3d 284, 292 n.18 (5th Cir. 2012). Texas cannot possibly establish that the Supreme Court adopted the United States' argument in *Gulino* because the Court denied the petition for a writ of certiorari without explanation.[3] *Gulino*, 554 U.S. at 917.

## II.   Texas Lacks Standing to Challenge the Guidance.

Plaintiff's standing depends on showing that *Texas* is injured by the *Guidance*. Plaintiff falters at both ends of that enquiry.

Our brief emphasized that there is no present concrete case or controversy between defendants and Texas and that Texas relied instead on disputes involving "*someone else.*" MTD FAC

---

[3] At the close of the section of its brief concerning final agency action, Texas argues that defendants cannot deny that the Guidance constitutes "agency action" because that term is meant to "cover comprehensively every manner in which an agency may exercise its power." Second Opp. at 5 (quoting *Whitman v. American Trucking Associations*, 531 U.S. 457, 478 (2001)). This argument conflates "final agency action" and "agency action," which are distinct concepts under the APA. *Compare* 5 U.S.C. § 551(13) and 5 U.S.C. § 704. Indeed, the very paragraph from *American Trucking* quoted by Texas recognizes the distinction. *American Trucking Associations*, 531 U.S. at 478.

at 15 (emphasis in the original). Relying principally on *Waldon v. Cincinnati Public Schools*, No. 1:12-cv-677 (S.D. Ohio), Texas's response is to double down on exclaiming that there are in fact live controversies involving someone else.[4] Second Opp. at 10. That such cases and controversies do not involve Texas make clear their irrelevance to Texas's standing. But Texas goes on, with misleading phrasing, to imply that it is the Department of Justice that is prosecuting *Waldon* ("The EEOC referred the charges to DOJ, *see id.* at 3-4, and almost five years later, CPS is *still* defending itself. . . . " Second Opp.at 10 (emphasis original)). In fact, *Waldon* was brought by the employees who were fired from their jobs. And then Texas writes that it is "remarkable that defendants presumably know about *Waldon* and nonetheless urge this Court to dismiss on the theory that cases like *Waldon* do not exist." *Id.* There is no need merely to "presume[e]" that defendants know about *Waldon*: Far from pretending that "cases like *Waldon* do not exist," defendants' brief cited *Waldon* itself - twice. MTD FAC at 3, 18.

The actual ripe case or controversy in *Waldon* (and other "cases like *Waldon*") is over whether the employer violated *Title VII*, not over whether it violated the EEOC's Enforcement Guidance. Plaintiff's own Exhibit D shows that the EEOC's administrative consideration of the issues in *Waldon* occurred in 2009, more than two years *before* the issuance of the Guidance that Texas contends caused the injury.

Texas's own Exhibit C undercuts its arguments just as badly. According to Texas, the "*EEOC's own website* gives the lie to its effort to blame [*sic*] Title VII, rather than the Felon-Hiring Rule [*sic*], for pre-empting Texas's [alleged] no-felon policies." Second Opp. at 6 (emphasis in the original). Contending that the Guidance went well beyond earlier EEOC policy statements (such as the ones that actually did precede *Waldon*), Texas quotes a heading of that EEOC website that asks

---

[4] Texas addresses *Waldon* in the ripeness section of its brief, Second Opp. at 10, but the argument it makes – *i.e.*, that the Guidance causes harm because it leads to employers being sued – is sensibly addressed as a matter of standing.

"How does the [Enforcement Guidance] differ from the EEOC's earlier policy statements?" *Id.* at 7. Texas then uses ellipsis to omit the website's statement that the listed "differ[ences]" reflect "more in-depth analysis" rather than stark departures from existing understandings. Ex. C to Second Opp. at 3. And then Texas quotes one item from the EEOC website's list of points that the Guidance more fully explains: "[The Enforcement Guidance] says that state and local laws or regulations are preempted by Title VII if they 'purport[ ] to require or permit the doing of any act which would be an unlawful practice' under Title VII. 42 U.S.C. § 2000e-7."[5] *Id.* This passage does not "give the lie[ ]" to the EEOC's position that *Title VII* can preempt state laws that conflict with Title VII and does not at all support Texas's claim that it is instead the Guidance itself that "purport[s] to" preempt. Second Opp. at 6. The website says what the Guidance itself and defendants' brief also say: *Title VII* preempts state laws that conflict with Title VII. U.S. CONST. art. VI, cl. 2 (Supremacy Clause); *see also* Pl's Ex. B at 15.

By relying on *Owner-Operator Independent Drivers Association v. Federal Motor Carrier Safety Admin*, 656 F.3d 580, 586 (7th Cir. 2011), Second Opp. at 6, plaintiff misses the very point touched on in the previous paragraph: The Guidance lacks legal consequences. There, the parties had standing to challenge the rule because they could be punished for violating *the rule itself*. *See* 49 U.S.C. § 31135(a) ("Each employer and employee shall comply with regulations on commercial motor vehicle safety prescribed by the Secretary of Transportation. . . ."). By contrast, Title VII does not impose liability for failure to follow the EEOC's regulations, much less its guidance. Likewise, Texas's argument that it has standing because it is seeking to enforce a procedural requirement, Pl's Opp. at 5-6 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)), is unavailing. *Lujan* recognizes that the immediacy

---

[5] Texas alters its quotation of the website by substituting "[cause an unlawful disparate impact]" for the EEOC's quotation of, and citation to, Title VII. Not only is the alteration material to the point Texas is trying to conceal – that the EEOC's view is that it is Title VII, rather than the Guidance, that preempts – the bracketed substitution is also inaccurately incomplete (neither the Guidance nor the preemptive effect of Title VII is limited to disparate impact).

and redressability elements of the standing inquiry are relaxed in the context of procedural injuries. *Id.* at 573 n.7. But the requirement that the alleged injury be traceable to the challenged conduct remains unchanged in the context of procedural injuries, *see id.*; *Summers v. Earth Island Institute*, 555 U.S. 488, 497 (2009), and Texas has not alleged the existence of any injury that is traceable to the Guidance.

### III. None of Texas's Claims Is Ripe For Review.

Plaintiff fares no better when it attempts to show that the issues raised by EEOC's Guidance are purely legal ones that are ripe for judicial review. Facts matter under the Enforcement Guidance, both with respect to conducting the individual assessments that the EEOC recommends as a best practice and with respect to determining those situations in which an individual assessment may be required by Title VII. App'x to MTD FAC at 21 (Enforcement Guidance at 18, explaining that "Title VII thus does not necessarily require individualized assessments in all circumstances"). Texas's response is that, under *its* view of the law, facts would not matter and the expense and uncertainty of considering cases on their facts could be avoided. Pl's Opp. at 8-9. But the question here is not whether Texas's policies are ripe for review, but whether the EEOC's are. As explained in the Guidance, facts do matter under the EEOC's view. Indeed, the Guidance provides no less than twelve different express hypothetical examples and numerous more implicit ones, each with different facts that matter. *See* Pl's Opp. at 8-9 (suggesting Texas's different approach to Example 12). The Guidance therefore does not present a purely legal issue that is ripe for a court to decide.

Judicial review thus must await a real case or controversy with actual facts about a non-hypothetical offense (what was the offense? how long ago was it?), a non-hypothetical applicant (has she rehabilitated herself? what are the other facts relevant to her suitability?), and a specific non-hypothetical job (in what particular respects, and to what degree, would the requirements of the job be affected by this applicant's criminal record?). Although Texas proposes to decide such cases in

the hypothetical abstract with a one-rule-fits-all approach, the Enforcement Guidance Texas challenges does not adopt such an approach. Texas's challenge to that Guidance presents no ripe case or controversy.

Similarly, Texas' challenge in Count III to the constitutionality of Title VII (to the extent that it permits individuals to seek damages under a disparate-impact theory) is unripe because withholding review would not inflict any hardship on the State: Resolution of this claim would not affect the law governing the State's conduct (because it is otherwise subject to disparate-impact liability), and the State could challenge the ability of an individual to bring a disparate-impact suit in federal court for damages at the time, if any, that such a suit is brought. MTD FAC at 22-23. Not only is the claim unripe, but it has been abandoned by Texas. Texas, in its brief, does not try to counter the no-hardship argument. Its silence is conclusive. *E.g., Black v. North Panola School Dist.,* 461 F.3d 584, 588 (5th Cir. 2006) (deeming an undefended claim abandoned); *Scales v. Slater,* 181 F.3d 703, 708 n. 5 (5th Cir. 1999) (same).[6]

## CONCLUSION

For the reasons stated above and in the opening brief, the Court should dismiss this case under Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction.

---

[6] Texas does address the alleged hardship to withholding review of the Guidance, Second Opp. at 9-10, but it does not explain what hardship flows from withholding review of its constitutional challenge to Title VII. And Texas's effort to incorporate by reference the entire 25-page brief it filed in opposition to the EEOC's motion to dismiss its original complaint, Second Opp. at 2, which at least attempted to address hardship, does not alter the abandonment analysis: The wholesale incorporation (by reference) of one brief into another is improper and so of no effect. *See Allgood v. R.J. Reynolds Tobacco Co.*, 80 F.3d 168, 172 (5th Cir. 1996); *Bobsee Corp. v. United States*, 411 F.2d 231, 234 n. 2 (5th Cir. 1969). In any case, the ripeness argument contained in Texas's original brief – *i.e.*, that the Supreme Court has entertained Eleventh Amendment cases in similar circumstances to these – runs aground on the fact that all of the cases cited involved an individual with a claim for damages against a state, as defendants explained in their memorandum in support of the motion to dismiss the amended complaint.

DATED this 2nd Day of May, 2014.

Respectfully submitted,

STUART F. DELERY
Assistant Attorney General

SARAH R. SALDAÑA
United States Attorney

JOSHUA E. GARDNER
Assistant Director, Federal Programs Branch

*s/ Justin M. Sandberg*
BRIAN G. KENNEDY (D.C. Bar No. 228726)
Senior Trial Counsel
JUSTIN M. SANDBERG, IL Bar No. 6278377
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Mass. Ave. NW, Rm. 7302
Washington, D.C. 20001
Telephone:    (202) 514-5838
Facsimile:    (202) 616-8202
Justin.Sandberg@usdoj.gov
*Counsel for Defendants*