# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### LUBBOCK DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 5:13-CV-00255-C |
| | ) | ECF |
| EQUAL EMPLOYMENT | ) | |
| OPPORTUNITY COMMISSION, *et al.*, | ) | |
| | ) | |
| Defendants | ) | |

## SUPPLEMENTAL BRIEF IN SUPPORT OF DISMISSAL

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................... 1

BACKGROUND ........................................................................................... 3

ARGUMENT ................................................................................................ 6

    I.     The Guidance Is Not A Final Agency Action. ............................. 6

    II.    Texas Lacks Standing to Challenge the Guidance ..................... 12

    III.   Texas's Challenge to the Guidance is Not Ripe for Review. ...... 15

CONCLUSION ............................................................................................ 17

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Appalachian Power Co. v. EPA,*
    208 F.3d 1015 (D.C. Cir. 2000) ........................................................ 10, 11

*AT&T v. EEOC,*
    270 F.3d 973 (D.C. Cir. 2001) ......................................................... 10, 11

*Bennett v. Spear,*
    520 U.S. 154 (1997) ........................................................................... 6

*Edelman v. Lynchburg Coll.,*
    535 U.S. 106 (2002) ................................................................... 9, 12, 13

*Fellner v. Tri-Union Seafoods, L.L.C.,*
    539 F.3d 237 (3d Cir. 2008) ............................................................... 13

*Heckler v. Chaney,*
    470 U.S. 821 (1985) .......................................................................... 11

*Los Angeles Haven Hospice, Inc. v. Sebelius,*
    638 F.3d 644 (9th Cir. 2011) ............................................................. 13

*Louisiana v. United States Army Corps of Engineers,*
    2016 WL 4446067 (5th Cir. Aug. 23, 2016) ....................................... 12

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ...................................................................... 13, 14

*Monk v. Huston,*
    340 F.3d 279 (5th Cir. 2003) ............................................................. 15

*Municipal Ass'n v. Service Ins. Co.,*
    786 F. Supp. 2d 1031 (D.S.C. 2011) .................................................. 14

*Peoples Nat'l Bank v. Office of the Comptroller of the Currency of the U.S.,*
    362 F.3d 333 (5th Cir. 2004) ............................................................... 6

*Summers v. Earth Island Inst.,*
    129 S. Ct. 1142 (2009) ....................................................................... 13

*Tex. Office of Pub. Util. Counsel v. FCC,*
    183 F.3d 393 (5th Cir. 1999) ............................................................. 15

*Texas v. EEOC,*
    827 F.3d 372 (5th Cir. 2016) .......................................................passim

*Texas v. EEOC,*
    2016 WL 5349249 (5th Cir. Sept. 23, 2016) ..................................... 1, 5

*United States Army Corps of Eng'rs v. Hawkes Co.,*
    136 S. Ct. 1807 (2016) ................................................................passim

*United States v. Fresno Unified Sch. Dist.*,
   592 F.2d 1088 (9th Cir. 1979) ................................................................ 9

*United States v. City of Miami*,
   664 F.2d 435 (5th Cir. 1981) ................................................................ 9

**STATUTES**

5 U.S.C. § 551 ................................................................................................ 1

5 U.S.C. § 704 ................................................................................................ 6

42 U.S.C. § 2000e-2 ................................................................................ 13, 14

42 U.S.C. § 2000e-5 .......................................................................... 4, 9, 10, 11

42 U.S.C. § 2000e-6 ........................................................................................ 4

**OTHER AUTHORITIES**

Pub. L. No. 98-532 (1984) ............................................................................ 4, 9

Reorganization Plan 1 of 1978,
   43 Fed. Reg. 19,807 (1978) .................................................................... 4, 9

## INTRODUCTION

The Court previously dismissed this case – a challenge by the State of Texas, under the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*, to a guidance document ("Guidance")[1] issued by the Equal Employment Opportunity Commission ("EEOC") regarding the use of criminal history information in employment decisions. *See* Order, ECF Dckt. No. 36. It should do so again and for the same reasons: the Guidance is not final agency action under the APA; Texas lacks standing to challenge the Guidance; and the State's claims are not ripe. *Id.* at 6-8. In other words, now – as before – jurisdiction is lacking. *See* Memo. in Support of Mtn. to Dismiss First Amended Compl., ECF Dckt. No. 30; Reply Br. in Support of Mtn. to Dismiss, ECF Dckt. No. 33-1.[2]

The case is back after a remand from the Fifth Circuit. The court of appeals initially reversed this Court's decision. *Texas v. EEOC*, 827 F.3d 372 (5th Cir. 2016). Less than two months later, however, the Fifth Circuit granted the EEOC's petition for rehearing and vacated its opinion. *Texas v. EEOC*, 2016 WL 5349249, at *1 (5th Cir. Sept. 23, 2016). It remanded to enable this Court to address what effect, if any, *United States Army Corps of Eng'rs v. Hawkes Co.*, 136 S. Ct. 1807 (2016), should have on the disposition of this suit. In *Hawkes*, the Supreme Court addressed final agency action under the APA, finding it present in an agency's

---

[1] EEOC, Consideration of Arrest and Conviction Records in Employment Decisions Under Title VII, No. 915.002 (April 25, 2012) (attached at pp. 1-55 of the Appendix ["App'x"]).

[2] The defendants hereby renew their motion to dismiss and incorporate the arguments made in their previous briefs in support of dismissal.

refusal to grant a request for a five-year safe harbor from government-initiated enforcement actions under the Clean Water Act with respect to a specific parcel of property.  136 S. Ct. at 1815.

*Hawkes* does not undercut this Court's previous opinion.  This Court offered three bases for its decision that jurisdiction was lacking, and all remain valid. <u>First</u>, the Court held that the Guidance does not constitute final agency action under the APA.  Order at 6-8.  *Hawkes* does not undermine this holding because the Guidance does not establish any safe harbors and, even if it did, the mere creation of safe harbors would not have legal consequences for Texas.  Unlike *Hawkes*, this case does not involve the denial of a specific request for the application of a binding safe harbor with respect to a specific parcel of property.  Nor does *Hawkes* otherwise demonstrate that the Guidance binds the EEOC to take a final agency action. <u>Second</u>, the Court concluded that Texas lacked standing to press these claims. Order at 6-8.  That remains as true today as it was before the issuance of the *Hawkes* opinion:  The Guidance is not binding, so it does not cause any harm to Texas.  And even if it were binding, the Court could not provide redress because Title VII imposes the disparate impact liability about which the State complains. <u>Third</u>, the Court decided that the case is not ripe.  Order at 6-8.  *Hawkes* leaves this conclusion undisturbed as well.  Because the Guidance is not final agency action, it is not ripe for review.  But even if it were final agency action, Texas's claims would be unripe because they would be better resolved in a concrete factual contexts.

Accordingly, for the above stated reasons and those offered in the Defendants'
prior briefs, dismissal for lack of jurisdiction is appropriate.

## BACKGROUND

The EEOC issued the Guidance in 2012.  App'x at 1.  It explains that "[a]n
employer's neutral policy (*e.g.*, excluding applicants from employment based on
certain [past] criminal conduct) may disproportionately impact some individuals
protected under Title VII, and may violate the law if not job related and consistent
with business necessity (disparate-impact liability)."  *Id.* at 4.  The Guidance also
sets out "[t]wo circumstances in which the Commission believes employers will
consistently meet the 'job related and consistent with business necessity' defense."[3]
*Id.* at 2.  The EEOC's basic view that exclusionary policies can result in a disparate
impact is not new:  The agency has espoused it for a quarter of a century.  *See id.* at
113-117.

The EEOC Guidance addresses states in their capacity as employers "as part
of [its] efforts to eliminate unlawful discrimination in employment screening . . . by
entities covered by Title VII, including private employers as well as federal, state,
and local governments."  App'x at 6.  Importantly, with respect to states, the EEOC

---

[3] Those two circumstances are when 1) "[t]he employer validates the criminal
conduct exclusion for the position in question in light of the Uniform Guidelines on
Employee Selection Procedures," and 2) "[t]he employer develops a targeted screen
considering at least the nature of the crime, the time elapsed, and the nature of the
job" and offers "an opportunity for an individualized assessment for those people
identified by the screen, to determine if the policy as applied is job related and
consistent with business necessity."  App'x at 5.

plays a more limited role in implementing Title VII than it does with private employers: The EEOC is prohibited by statute from bringing enforcement actions against states under Title VII. 42 U.S.C. § 2000e-5(f)(1). If a state employee or job applicant thinks s/he has been subjected to an unlawful employment practice, then s/he can file a charge with EEOC. *Id.* § 2000e-5(b). If the EEOC concludes that there is reasonable cause to believe that a violation of Title VII has occurred, then it will try to facilitate a settlement agreement with the state through a process called conciliation, as required by statute. *Id.* § 2000e-5(b). But if that fails, the EEOC cannot bring an enforcement action against the state. *Id.* § 2000e-5(f)(1). Title VII requires that the EEOC refer the matter to the Department of Justice for it to make its own decision regarding whether to bring an enforcement action or issue a right to sue letter. *Id.* (Department of Justice "may" file suit). And even without an EEOC referral, the Department of Justice can file a lawsuit challenging pattern and practice discrimination. 42 U.S.C. § 2000e-6(a); Reorganization Plan 1 of 1978, 43 Fed. Reg. 19807, 19808 (1978) (ratified by Congress in Pub. L. 98-532 (1984)).

Texas has not alleged or argued that the Department of Justice has *ever* brought a case against Texas – or, indeed, against any state – premised on a disparate impact resulting from a felony-conviction hiring exclusion. Nonetheless, it filed this suit challenging the Guidance. The First Amended Complaint presents APA claims challenging the Guidance procedurally and substantively (with respect to disparate impact liability), First Amend. Compl. ¶¶ 38-50; the last count of the complaint, which was a constitutional broadside against disparate impact liability

for states, has been abandoned, *see* Reply Br., ECF Dckt. No. 33, at 9; Brief for Appellees, *Texas v. EEOC*, 2015 WL 470520, at 2 n.1.

This Court dismissed the suit for lack of jurisdiction, concluding that the Guidance did not constitute final agency action, that Texas's claims were not ripe, and that the State lacked standing. Order at 6-8. A since-vacated divided panel of the Court of Appeals reversed. *Texas*, 827 F.3d at 376. The panel majority concluded that the Guidance was a final agency action because it created a safe harbor and bound agency employees. *Id.* at 382-87. In assessing the finality of the Guidance, the panel opinion relied heavily on *Hawkes*, a Supreme Court decision issued after this Court granted the motion to dismiss. *Id.* at 382-84. The opinion also concluded that the State's claims were ripe. *Id.* at 388 n.9. Finally, the panel determined that Texas had standing to sue because the Guidance created a mandatory regime governing employment. *Id.* at 378-80. Judge Higginbotham dissented as to all three jurisdictional issues (*i.e.*, final agency action, ripeness, and standing), agreeing with this Court that jurisdiction is lacking. *Id.* at 388-96.

The EEOC sought rehearing. The Court of Appeals granted the EEOC's petition for rehearing, vacating its opinion and remanding the case to this Court to permit it to address the impact of *Hawkes* on this case: "[W]e leave it to the district court in the first instance to reconsider this case, and its opinion, in its entirety and to address the implications of *Hawkes* for this case." *Texas*, 2016 WL 5349249, at *1. This Court subsequently invited "briefing on the issues that *Hawkes* may implicate" in this case. Order, ECF Dckt. No. 43.

## ARGUMENT

## I.    **The Guidance Is Not A Final Agency Action.**

The Court lacks jurisdiction over this suit because the issuance of the Guidance does not constitute a "final agency action" under the APA.  *See, e.g.*, Order at 7-8; Memo. in Support of Mtn. to Dismiss at 7-13; 5 U.S.C. § 704 (setting out final agency action requirement); *Peoples Nat'l Bank v. Office of the Comptroller of the Currency of the United States*, 362 F.3d 333, 336 (5th Cir. 2004) (holding that final agency action is a prerequisite for jurisdiction).  Although *Hawkes* addresses the meaning of the term "final agency action," nothing in *Hawkes* supports plaintiff's argument that that the Guidance issued by the EEOC is a final agency action.

*Bennett v. Spear,* 520 U.S. 154 (1997), furnishes the canonical definition of the term "final agency action."  *Bennett* holds that an agency action is final only if it (1) "marks the consummation of the agency's decisionmaking process" and (2) is "one by which "rights or obligations have been determined or from which legal consequences will flow."  *Id.* at 177-78.

*Hawkes* centers on the second part of the definition – whether an action determines rights or obligations or imposes legal consequences.  In *Hawkes*, a landowner sought a determination from the Army Corps of Engineers ("Corps") regarding whether a specific and defined parcel of property contained "waters of the United States" and, therefore, was subject to restrictions of the Clean Water Act. 132 S. Ct. 1812-13.  The Corps determined that the property at issue did, in fact, contain "waters of the United States."  *Id.* at 1813.  If the Corps had determined

that no "waters of the United States" were present, then that determination would have been binding for five years on the Corps and the Environmental Protection Agency, which shares the authority with the Corps for enforcing the Clean Water Act. *Id.* at 1812. In essence, a no-waters decision would have "creat[ed] a five-year safe harbor" from government-initiated civil enforcement proceedings under the Clean Water Act with respect to the specific parcel subject to the determination. *Id.* As the Court emphasized, a no-waters determination "binds the two agencies authorized to bring civil enforcement proceedings," thereby creating a safe harbor for the property owner by "both narrow[ing] the field of potential plaintiffs and limit[ing] the potential liability a landowner faces[.]" *Id.* at 1813-14. But, as noted, the Corps found that waters were present, and the Supreme Court concluded that this decision constituted a final agency action with respect to that parcel because it carried a legal consequence: it "depriv[ed] [the landowner] of a five year safe harbor from liability." *Id.* at 1815.

In this case, Texas has argued that *Hawkes* establishes that the Guidance constitutes final agency action because the Guidance provides two safe harbors from potential liability. App'x 118-19. This argument is incorrect. Texas is referring to the portion of the Guidance that sets out "[t]wo circumstances in which the Commission *believes* employers will *consistently* meet the 'job related and consistent with business necessity' defense." App'x at 5 (emphasis added). But "[t]his mushy language cannot fairly be read as a promise to do anything." *Texas*, 827 F.3d at 395 (Higginbotham, dissenting). It is simply a prediction – and a significantly caveated

one at that – about how the EEOC might view a situation if it were to investigate. This is no guarantee of safety.

Moreover, this case meaningfully differs from *Hawkes* because while *Hawkes* involved a particular matter with specific parties that resulted in definite consequences for the landowner, this case involves an agency guidance intended for a wide audience that creates no consequences for Texas or any other employer. Texas, unlike the landowner in Hawkes, has not sought the benefit of a safe harbor with respect to a specific action (peat mining in *Hawkes*) in a specific context (the property at issue in Hawkes), only to have its request denied. Rather, Texas's argument is that the mere creation of "safe harbors" in two passages of the Guidance itself renders the entirety of the Guidance final agency action.

Denying the landowner's request for the application of the safe harbor in *Hawkes* had a real legal consequence – it "definitive[ly]" established that the landowner was not shielded from government initiated Clean Water Act enforcement actions with respect to the property subject to the determination. *Hawkes*, 136 S. Ct. 1814. The Supreme Court did not hold that the mere existence of safe harbors constituted final agency action. Yet that is in essence what Texas argues here. Even if the EEOC established safe harbors in the Guidance – which it did not – the mere *creation* of safe harbors would not fix Texas's rights or obligations or result in legal consequences. *See Texas*, 827 F.3d at 395 (Higginbotham, dissenting). The articulation of these alleged "safe harbors" simply constitutes part of the EEOC's non-binding statement about what Title VII means.

*Edelman v. Lynchburg Coll.*, 535 U.S. 106, 113, (2002) (holding that the EEOC lacks the authority to enact substantive rules).

Importantly, the EEOC cannot provide Texas with a safe harbor against a government-initiated Title VII lawsuit challenging the State's hiring "patterns and practices" because the EEOC cannot enforce Title VII against states; only the Department of Justice can. 42 U.S.C. § 2000e-5(f)(1). And the Department of Justice can bring a pattern-and-practice lawsuit regarding Texas's hiring policies regardless of whether the EEOC refers a case to it or not. Any question about the Department of Justice's authority to do so was settled by Reorganization Plan Number 1 of 1978, which provides that "[a]ny function of the [EEOC] concerning the initiation of litigation with respect to State or local government . . . under Section 707 of Title VII [i.e., the section addressing pattern and practice discrimination] . . . and all necessary functions related thereto . . . are hereby transferred to the Attorney General." 43 Fed. Reg. 19807, 19808 (1978) (ratified by Congress in Pub. L. 98-532 (1984)); *see also, e.g., United States v. Fresno Unified Sch. Dist.*, 592 F.2d 1088, 1090 (9th Cir. 1979) (holding that "the Attorney General may initiate a pattern or practice suit without a referral from the EEOC"); *United States v. City of Miami,* 664 F.2d 435, 437 (5th Cir. 1981) (concurrence) (concluding the Department

of Justice has authority to bring a pattern and practice suit).[4]  In short, the EEOC

cannot shield Texas from a government initiated pattern-and-practice suit.[5]

A review of *Appalachian Power Co. v. E.P.A.*, 208 F.3d 1015, 1022 (D.C. Cir.

In addition to arguing that the supposed safe harbors render the Guidance

final agency action, Texas has argued that the Guidance is final agency action

because it binds the EEOC's employees.  *Texas*, 827 F.3d at 380.  *Hawkes* does

nothing to bolster this flawed argument.  That the Guidance binds agency

employees, in certain respects, does not establish that it binds employees in a

manner that affects Texas's rights or obligations or results in legal consequences.

*AT&T Co. v. E.E.O.C.*, 270 F.3d 973, 975 (D.C. Cir. 2001) (drawing this distinction).

A review of *Appalachian Power Co. v. E.P.A.*, 208 F.3d 1015, 1022 (D.C. Cir.

2000), a case relied on by Texas in the Fifth Circuit, is instructive.  *See* Appellant's

Br., *Texas v. EEOC*, 2014 WL 6735232 at 49-50.  In that case, the EPA issued

guidance, and the D.C. Circuit concluded that that the guidance constituted final

agency action because it bound EPA employees.  208 F.3d at 1022.  But,

significantly, the EPA's guidance bound the agency employees to take actions with

---

[4] EEOC referral is a prerequisite to the Department of Justice initiating a claim on behalf of an individual.  See 42 U.S.C. §§ 2000e-5(f)(1), 2000e-6.  But the individual can sue if the Department does not, 42 U.S.C. § 2000e-5(f)(1), and the kind of enforcement action most pertinent to Texas's claims (which seek a declaration validating hiring policies and practices, First Amended Compl. at 18, § V, para. A.) – a pattern and practice suit – can be initiated by the Department of Justice without a referral, as noted above.

[5] *Hawkes* is further distinguishable because even assuming arguendo that is could create a safe harbor, the Guidance would not limit the potential liability of a state employer.  An individual suing a Texas agency can seek the same relief as the Attorney General in addition to attorney's fees, which are not available in actions filed by the Attorney General.  See 42 U.S.C. § 2000e-5(k).

(adverse) legal consequences. *Id.* (concluding that the Guidance is final agency action because it is the culmination of the agency's decisionmaking which it "plans to follow in reviewing State-issued permits, a position it will insist State and local authorities comply with in setting the terms and conditions of permits issued to petitioners, [and] a position EPA officials in the field are bound to apply").

The Guidance does not bind EEOC employees to take an action of legal consequence with respect to the issues Texas raises. As explained above, it does not establish a safe harbor, so it does not bind an employee to approve or deny a request for shelter under a safe harbor provision. Nor does the Guidance bind the government to bring an enforcement action. Again, under Title VII, only the Department of Justice can file an enforcement action against a state on behalf of the federal government, and Title VII states that the Department "may" file a civil action when the EEOC refers a case to it, not that it must. 42 USC § 2000e-5(f)(1). But even if the EEOC could file civil enforcement actions against states, the Guidance would not constitute final agency action because it does not bind the EEOC to do so. *See AT&T Co.*, 270 F.3d at 975-76 (concluding that the EEOC's Compliance Manual did not constitute a final agency action because it did not obligate the EEOC to "sue AT&T"). Whether to bring an enforcement action is a presumptively discretionary decision that depends on the agency's resources and priorities, *Heckler v. Chaney*, 470 U.S. 821, 831–32, (1985), and nothing in the Guidance would strip the agency of that discretion, App'x at 6 (noting only that the Guidance is for the use of staff "investigating" discrimination charges). *Hawkes*

does not change this analysis – it does not alter the definition of final agency action, the division of responsibility for enforcing Title VII against states, or the text of the Guidance.[6]

## II.    Texas Lacks Standing to Challenge the Guidance.

*Hawkes* also "implicates" standing. The arguments for standing advanced by Texas, and adopted by the Fifth Circuit in its now vacated opinion, depend on the regulatory effect of the Guidance. As explained above, *Hawkes* does not buoy plaintiff's arguments regarding the impact of the Guidance. Thus, the Guidance does not inflict "concrete" harm that would support standing – and Texas lacks constitutional standing to bring this action. *See* Memo. in Support of Mtn. to Dismiss at 13-17; Reply Br. in Support of Mtn. to Dismiss at 5-8.

---

[6] Indeed, in *Louisiana v. United States Army Corps of Engineers*, the Fifth Circuit held that an Army Corps of Engineers' transmittal of a "Final Authorization Report" to Congress was not final agency action and distinguished *Hawkes* and the now-vacated majority opinion's findings regarding the Guidance in this case because the transmission of the report did not "expose parties to civil or criminal liability for non-compliance with the agency's view of the law or offer a shelter from liability if the agency complies." 2016 WL 4446067 at *7 (5th Cir. Aug. 23, 2016). The Guidance similarly imposes no such legal consequences. In *Louisiana*, the court contrasted the non-final transmittal of the report with the subsequent entry by the parties into a Memorandum of Agreement that it determined was final because it could be a source of civil liability: "[H]ad Louisiana broken the terms of this agreement, the [Army] Corps [of Engineers] could have sued the State to enforce its terms." *Id.* at 7. Defendants do not dispute that the creation of legal binding documents – *i.e.*, documents that can be a source of liability in a civil action – can constitute final agency action. The Guidance, to the contrary, would never be a source of liability for the sort of employment discrimination it discusses, *see Edelman*, 535 U.S. at 113 (holding that the EEOC lacks the authority to enact substantive rules); Title VII would be the source of any such liability.

As a threshold matter, Texas invokes the presumption that if a plaintiff is the object of an agency regulation, then there is "ordinarily little question" that standing exists. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992). But that presumption is premised on the agency action being mandatory, *i.e.*, requiring or forbidding certain conduct. *Lujan*, 504 U.S. at 561-62 (basing presumption on government "regulation"); *Los Angeles Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 655 (9th Cir. 2011) (same). On the other hand, where a challenged agency action neither requires nor forbids any action on the part of the plaintiffs, "standing is not precluded, but is ordinarily 'substantially more difficult' to establish." *Summers v. Earth Island Inst.*, 129 S. Ct. 1142, 1149 (2009); *Los Angeles Haven Hospice*, 638 F.3d at 655 (same). The Guidance does not require or forbid any action on the part of Texas – Title VII does, 42 U.S.C. § 2000e-2 (defining unlawful employment practices). *See* Memo. in Support of Mtn. to Dismiss at 7-13. The EEOC lacks the authority to enact substantive rules under Title VII binding any third party, including Texas. *Edelman*, 535 U.S. at 113. Accordingly, there is no presumption in favor of Texas's standing.

Texas contends that it has standing to sue because the "the Guidance imposes a mandatory scheme for employers regarding hiring policies" and because the Guidance preempts state laws. *Texas*, 827 F.3d at 378. These assertions are false: The EEOC lacks the authority under Title VII to enact substantive rules, *Edelman*, 535 U.S. at 113, so the Guidance is not binding and cannot preempt state law, *see Fellner v. Tri-Union Seafoods, LLC*, 539 F.3d 237, 245 (3d Cir. 2008) (only

Supplemental Brief - Page 13

agency actions with the force of law can preempt state law); *Municipal Ass'n of*

*South Carolina v. Service Ins. Co., Inc.*, 786 F. Supp. 2d 1031, 1047 (D.S.C. 2011).

In other words, the Guidance does not harm Texas – and the State lacks standing.

*Hawkes* does not change that.  As explained earlier, it does not alter the conclusion

that the Guidance does not fix Texas's rights and responsibilities and lacks legal

consequences.  But even if the Court were to assume that the Guidance is

mandatory for purposes of assessing jurisdiction, jurisdiction would be lacking.

Eliminating the Guidance would not "remedy" Texas's supposed injury because

Title VII mandates non-discrimination in hiring (and creates disparate impact

liability for race discrimination), 42 U.S.C. § 2000e-2, and it would not fall away

even if the Guidance were struck down. *Lujan*, 504 U.S. at 560-61 (an injury must

be redressable for plaintiff to have standing).[7]

---

[7] The Fifth Circuit furnished an alternative rationale in support of Texas having standing, namely, that the "Guidance . . . force[s] Texas to undergo an analysis, agency by agency, regarding whether the certainty of EEOC investigations stemming from the Enforcement Guidance's standards overrides the State's interest in not hiring felons for certain jobs."  *Texas*, 827 F.3d at 379.  This argument would be unpersuasive even if Texas had made such an allegation: the Guidance does not "force" Texas to do anything because it lacks binding effect, and in any case, EEOC investigations would "stem[ ]" from Title VII's requirements, not the Guidance.  But Texas does not allege in the first place that it has been forced to undergo such an analysis "agency by agency."  Indeed, if anything, it is the EEOC's Guidance that stresses the importance that variations in job positions and employers may have, and any requirement that this Court now slog through a long series of agency-by-agency hypotheticals is a strong reason for concluding that there is no final agency action here that is ripe for review.  Texas does not allege that it is forced to do an agency-by-agency analysis – the Guidance was issued four years ago, and Texas has not alleged that it has done such an analysis for even a single agency – but that it is "force[d]" to choose across the board between following state laws, regulations, or policy manuals –whatever they may variously provide – or risking a potential suit. First Am. Compl. ¶ 41.  Perhaps analyzing its agencies' wide variety of policies to

**III.    Texas's Challenge to the Guidance is Not Ripe for Review.**

*Hawkes* does not ripen Texas's unripe claims.  In its now vacated opinion, the Fifth Circuit held that the conclusion that Texas's challenge was ripe followed "naturally" from the fact that the Guidance constitutes final agency action.  827 F.3d at 388 n.9.  But – and this should be familiar by now – the Guidance does not constitute final agency action, even considering *Hawkes*.  And as the Fifth Circuit has held that if an agency action is not final then it is not ripe for review, Texas's claims are unripe.  *Texas Office of Pub. Util Counsel v. FCC*, 183 F.3d 393, 410 n. 11 (5th Cir. 1999).

Even if the Guidance were final agency action, Texas's claims would not be fit for review.  The question presented by Texas's claims do not involve pure questions of law, but would be better resolved in a concrete factual setting.  *Monk v. Huston*, 340 F.3d 279, 282 (5th Cir. 2003) ("[A] case is not ripe if further factual development is required.").  Facts and context matter in analyzing whether an employer's use of criminal history records in making a particular employment decision might violate Title VII.  Indeed, the EEOC explains in the Guidance that, when presented with a claim, it (i) identifies the "particular policy or practice" at issue, (ii) reviews statistical data on whether the practice has a disparate impact on a protected class, and, (iii) if necessary, assesses whether facts demonstrate that the practice is job-related and consistent with business necessity.  App'x at 12-15.  As Judge

---

see whether they make sense should be on the Texas menu, but the Amended Complaint gives no indication that it is.

Higginbotham wrote, "[t]hat the issues here would be significantly aided by further factual development is an understatement. Texas has raised an abstract challenge that is unmoored from a specific criminal record exclusion, or even a class of criminal record exclusions."[8]  *Texas*, 827 F.3d at 392.

The abstract inquiry Texas seeks to resolve is a far cry indeed from *Hawkes*. *Hawkes* presented a developed factual scenario, about a specific 530-acre tract that included wetlands that respondent thought might contain high quality peat. 136 S. Ct. at 1812. The Corps of Engineers, considering the situation of that particular parcel, concluded that it had a significant nexus to a named body of water, the Red River of the North.  *Id.* at 1813.

The Guidance does not provide a similar context for review. And Texas's amended complaint wanders around discussions of dozens of different state laws or regulations or even mere practices – which substantially differ between and among themselves – applicable to probably hundreds of different kinds of positions, none of which is directly at issue in any concrete setting.  Instead of being asked the equivalent of whether a specific 530 acre parcel is connected to the Red River of the North, Texas would have this Court pontificate at large over the discrimination law equivalent of what factors ought to be considered as a general matter in deciding

---

[8] Texas has argued that its claims are ripe because it raises a facial challenge to the Guidance.  Appellant's Br., 2014 WL 6735232, at 31**.**  But the Guidance covers not only disparate impact, but disparate treatment provisions, App'x at 9-11, that are not challenged by Texas, *see, e.g.,* First Am. Compl. ¶¶ 14, 31. Thus, the "validity of the Guidance must hinge on the specific circumstances in which it is deployed." *Texas*, 827 F.3d at 392 (Higginbotham, dissenting).

when wetlands should be considered to be waters.  That is far too amorphous an

invitation for judicial review.[9]

## **CONCLUSION**

For the above stated reasons, this suit should be dismissed for lack of subject-

matter jurisdiction.


DATED:        October 24, 2016              Respectfully submitted,

                                            BENJAMIN C. MIZER
                                            Principal Deputy Assistant Attorney
                                            General

                                            JOHN R. PARKER
                                            United States Attorney

                                            JOSHUA E. GARDNER
                                            Assistant Director, Federal Programs
                                            Branch

                                            *s/ Justin M. Sandberg*
                                            BRIAN G. KENNEDY (D.C. Bar No.
                                            228726)
                                            Senior Trial Counsel
                                            JUSTIN M. SANDBERG, IL Bar No.
                                            6278377
                                            Trial Attorney
                                            U.S. Department of Justice
                                            Civil Division, Federal Programs
                                            Branch
                                            20 Mass. Ave. NW, Rm. 7302
                                            Washington, D.C. 20530
                                            Telephone:   (202) 514-5838
                                            Facsimile:    (202) 616-8202
                                            Justin.Sandberg@usdoj.gov
                                            *Counsel for Defendants*

---

[9] Even if Texas had not abandoned its constitutional challenge to Title VII, that
claim too would fail because it is unripe.  Reply Br., ECF Dckt. No. 33, at 9

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on October 24, 2016, a true and correct copy of the

foregoing was served by CM/ECF on:

Scott Keller
Austin Nimocks
Andrew Leonie
Andrew Oldham
Arthur D'Andrea
Michael Toth
Office of the Texas Attorney General
209 West 14th Street
P.O. Box 12548
Austin, Texas 70711-2548

<u>s/ *Justin M. Sandberg*</u>
JUSTIN M. SANDBERG
Trial Attorney
U.S. Department of Justice