**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION**

STATE OF TEXAS,                     )
                                    )
       *Plaintiff*,                    )
                                    )
v.                                  )                    Case No. 5:13-CV-00255-C
                                    )
EQUAL EMPLOYMENT                    )
OPPORTUNITY COMMISSION, *et al.*,   )
                                    )
       *Defendants*.                   )


## TEXAS'S RESPONSE TO DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF DISMISSAL

## TABLE OF CONTENTS

Introduction ........................................................................................................................... 1

Background ............................................................................................................................ 3

Argument .............................................................................................................................. 8

    I.    The Felon Hiring Rule Constitutes Final Agency Action ................................. 8

        A.    *Hawkes* dictates that the Felon Hiring Rule is final agency action. .................. 8

        B.    EEOC's counterarguments have no merit. ........................................ 13

    II.    Texas Has Standing To Bring This Suit. ........................................................ 19

    III.    Texas's Challenge to the Felon Hiring Rule Is Ripe for Review. .................. 22

        A.    The issues are fit for review .......................................................... 22

        B.    The balance of hardships tip in favor of Texas. ............................... 25

Conclusion .......................................................................................................................... 25

Certificate of Service ......................................................................................................... 27

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Abbott Labs. v. Gardner,*
   387 U.S. 136 (1967) .................................................................. 11, 12, 19, 22, 23, 25

*Appalachian Power Co. v. EPA,*
   208 F.3d 1015 (D.C. Cir. 2000) ................................................................ 5, 17

*AT&T Co. v. EEOC,*
   270 F.3d 973 (D.C. Cir. 2001) ................................................................ 15, 16

*Barrick Goldstrike Mines, Inc. v. Browner,*
   215 F.3d 45 (D.C. Cir. 2000) .......................................................................... 17

*Belle Co., L.L.C. v. U.S. Army Corps of Eng'rs,*
   No. 13-30262, 2016 WL 4073301 (5th Cir. July 29, 2016) ........................... 2

*Bennett v. Spear,*
   520 U.S. 154 (1997) ........................................................... 2, 8, 10, 11, 19

*Clarke v. Stalder,*
   154 F.3d 186 (5th Cir. 1998) .......................................................................... 25

*Cohen v. United States,*
   578 F.3d 1 (D.C. Cir. 2009), *aff'd in relevant part, rev'd in part on other grounds,*
   650 F.3d 717 (D.C. Cir. 2011) ...................................................................... 13

*Contender Farms, L.L.P. v. U.S. Dep't of Agric.,*
   779 F.3d 258 (5th Cir. 2015) ......................................................................... 19

*EEOC v. Freeman,*
   961 F. Supp. 2d 783 (D. Md. 2013) ............................................................ 5, 14

*EEOC v. Peoplemark, Inc.,*
   732 F.3d 584 (6th Cir. 2013) ................................................................ 5, 14, 25

*Eagle-Picher Indus., Inc. v. EPA,*
   759 F.2d 905 (D.C. Cir. 1985) ..................................................................... 23

*Esfeller v. O'Keefe,*
   391 F. App'x 337 (5th Cir. 2010) ................................................................. 25

*Frozen Food Express v. United States,*
   351 U.S. 40 (1956) ......................................................................... 11, 12, 13

*Green v. Missouri Pacific Railroad,*
    549 F.2d 1158 (8th Cir. 1977) ................................................................................. 11, 17

*Hawkes Co. v. U.S. Army Corps of Eng'rs,*
    782 F.3d 994 (8th Cir. 2015) ................................................................................. 8

*Hill v. City of Hous.,*
    764 F.2d 1156 (5th Cir. 1985) ................................................................................. 21

*Holistic Candlers & Consumers Ass'n v. Food & Drug Admin.,*
    664 F.3d 940 (D.C. Cir. 2012) ................................................................................. 2–3, 19

*John Doe, Inc. v. DEA,*
    484 F.3d 561 (D.C. Cir. 2007) ................................................................................. 3

*Los Angeles Haven Hospice, Inc. v. Sebelius,*
    638 F.3d 644 (9th Cir. 2011) ................................................................................. 20–21

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ................................................................................. 19, 20, 21

*NRDC v. EPA,*
    643 F.3d 311 (D.C. Cir. 2011) ................................................................................. 16–17

*O'Hair v. White,*
    675 F.2d 680 (5th Cir. 1982) ................................................................................. 21

*Ohio Forestry Ass'n v. Sierra Club,*
    523 U.S. 726 (1998) ................................................................................. 23, 25

*Opulent Life Church v. City of Holly Springs,*
    697 F.3d 279 (5th Cir. 2012) ................................................................................. 22

*Reckitt Benckiser, Inc. v. EPA,*
    613 F.3d 1131 (D.C. Cir. 2010) ................................................................................. 25

*Roark & Hardee LP v. City of Austin,*
    522 F.3d 533 (5th Cir. 2008) ................................................................................. 23, 25

*Sackett v. EPA,*
    132 S. Ct. 1367 (2012) ................................................................................. 14

*Sierra Club v. Morton,*
    405 U.S. 727 (1972) ................................................................................. 21

*Summers v. Earth Island Inst.,*
    129 S. Ct. 1142 (2009) ................................................................................. 20, 21

*Teva Pharms. USA, Inc. v. Sebelius*,
   595 F.3d 1303 (D.C. Cir. 2010) ................................................................. 23–24

*Texas v. EEOC*,
   827 F.3d 372 (5th Cir. 2016) ............................................................... *passim*

*Texas v. EEOC*,
   No. 14-10949, 2016 WL 5349249 (5th Cir. Sept. 23, 2016) ........................ 1, 2, 7–8

*U.S. Army Corps of Eng'rs v. Hawkes Co.*,
   136 S. Ct. 1807 (2016) .......................................................................... *passim*

*Whitman v. Am. Trucking Assocs.*,
   531 U.S. 457 (2001) ................................................................................ 19, 23

**Statutes**

5 U.S.C. § 702 ............................................................................................ 7

28 U.S.C.
   § 2201 .................................................................................................. 7
   § 2202 .................................................................................................. 7

42 U.S.C.
   § 2000e-2 ............................................................................................ 21
   § 2000e-2(k)(1)(A) ............................................................................... 22
   § 2000e-5 ............................................................................................ 15
   § 2000e-5(f)(1) ................................................................................. 7, 15
   § 2000e-5(k) ........................................................................................ 15
   § 2000e-6 ............................................................................................ 15

Tex. Educ. Code § 22.085 ............................................................................ 5

Tex. Health & Safety Code ch. 250 .............................................................. 5

Tex. Occ. Code § 1701.312(a) ................................................................. 5, 24

**Other Authorities**

EEOC, Consideration of Arrest and Conviction Records in Employment Decisions
   Under Title VII of the Civil Rights Act of 1964, No. 915.002 Title VII (Apr. 25,
   2012) .............................................................................................. *passim*

EEOC, All Statutes: FY1997–FY2013, http://
   www.eeoc.gov/eeoc/statistics/enforcement/all.cfm ........................................ 7

EEOC, Performance and Accountability Report (2011) ........................................ 6

Br. of U.S. as Amicus Curiae, *Bd. of Educ. of City Sch. Dist. of City of N.Y. v. Gulino*,
No. 07-270 (U.S. May 23, 2008) ........................................................................................................18

### INTRODUCTION

The Fifth Circuit reversed this Court's order dismissing Texas's lawsuit against the Equal Employment Opportunity Commission (EEOC) and others who sought dismissal on the grounds of no final agency action under the Administrative Procedure Act (APA), and a lack of standing and ripeness. *Texas v. EEOC (EEOC I)*, 827 F.3d 372 (5th Cir. 2016). The reversal—particularly as to final agency action—was based largely on the United States Supreme Court's recent decision in *U.S. Army Corps of Engineers v. Hawkes Co.*, 136 S. Ct. 1807 (2016). *EEOC I*, 827 F.3d at 382–84. In *Hawkes*, the Supreme Court held that a federal agency's action was final when a regulation has the effect of committing agency staff to an interpretation of the law that, in turn, compels the plaintiff either to change its conduct or subject itself to potential liability. At the time this Court granted EEOC's motion to dismiss, *Hawkes* had not been decided. *Compare* Order, ECF No. 36 (signed Aug. 20, 2014), *with Hawkes*, 136 S. Ct. at 1807 (decided May 31, 2016).

After *EEOC I* was decided, EEOC petitioned for rehearing and rehearing en banc. In its opinion on rehearing, the Fifth Circuit withdrew its prior opinion, but its judgment still vacated the dismissal of Texas's complaint. The Fifth Circuit remanded the case for "further proceedings as, in [the District Court's] discretion, are required." *Texas v. EEOC (EEOC II)*, No. 14-10949, 2016 WL 5349249, at *1 (5th Cir. Sept. 23, 2016) (per curiam). In doing so, the Fifth Circuit specifically noted that because (1) this case "relate[s] closely to the issue that the Supreme Court decided in *Hawkes*," and (2) "the district court has not had the opportunity to apply *Hawkes* to the facts of this case," vacatur and remand was appropriate so that the District Court might give the case "further consideration in the light of *Hawkes*." *Id.* It was also noted that "*Hawkes* may or may not affect other issues raised in this appeal [*i.e.*, standing and ripeness]," and that the District Court should be given the opportunity "in the first instance to reconsider this case, and its opinion, *in its entirety* and to address the implications of *Hawkes* for this case." *Id.* (emphasis added). In addition, the Fifth Circuit observed that the remand for reconsideration in light of *Hawkes* was appropriate because of the "importance of the issue" and in order to promote "uniformity of [Fifth Circuit] precedent," in that the court had also

recently remanded another case for reconsideration in light of *Hawkes*. *Id.* (citing *Belle Co., L.L.C. v. U.S. Army Corps of Eng'rs*, No. 13-30262, 2016 WL 4073301, at *1 (5th Cir. July 29, 2016) (per curiam)).

In keeping with the Fifth Circuit's remand, this Court invited the parties to file motions and briefing on the impact, if any, that *Hawkes* may have on this case, and EEOC has taken this opportunity to renew its previous motion to dismiss. *See* Supp. Br. i/s/o Dismissal (Supp. Br.), ECF No. 47, at 1 & n.1; *see also* Mot. to Dismiss, ECF No. 15; Mem. i/s/o Mot. to Dismiss, ECF No. 16.[1] EEOC's latest briefing supplements its previous motion to dismiss briefing. Accordingly, Texas renews its previous oppositions to EEOC's motion to dismiss and files this response to EEOC's supplemental briefing.[2]

As directed by the Fifth Circuit and this Court, Texas shall focus primarily on the implications of *Hawkes* to EEOC's motion to dismiss this case. At the outset, it should be noted that *Hawkes* is a case about final agency action under the APA, and it controls and dictates that the Felon Hiring Rule constitutes final agency action. EEOC, however, conflates standing and ripeness with final agency action and claims that *Hawkes* supports dismissal on all three grounds. Despite the fact that *Hawkes'* holding dealt only with final agency action, EEOC is correct that *Hawkes* is relevant on all three issues, but EEOC is incorrect that *Hawkes* favors EEOC's position rather than Texas's.

Indeed, although there may be some overlap between the three doctrines, they are analytically distinct theories that analyze different elements of a lawsuit: standing examines the plaintiff's injury, while final agency action examines the nature of the defendant's action. Constitutional standing analysis is a separate inquiry from the question of whether there is "final agency action" under § 704 of the APA. *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997); *see also Holistic Candlers & Consumers Ass'n v. Food & Drug Admin.*, 664 F.3d 940, 943–46 (D.C. Cir. 2012) (concluding that the plaintiffs established constitutional standing, but nonetheless finding that the plaintiffs failed to show "final agency action"

---

[1] EEOC has incorporated by reference "the arguments made in their previous briefs in support of dismissal" into its Supplemental Brief. Supp. Br. 1 & n.2.

[2] As EEOC has done, Texas likewise incorporates by reference into this response the arguments made in its previous Opposition to EEOC's Motion to Dismiss. *See* Pl.'s Opp'n to Mot. to Dismiss, ECF No. 25; Pl.'s Opp'n to Mot. to Dismiss First Am. Compl., ECF No. 32.

under the APA). Likewise, the doctrine of final agency action cannot be conflated with the jurisdictional ripeness doctrine. *See John Doe, Inc. v. DEA*, 484 F.3d 561, 567 (D.C. Cir. 2007) ("Finality, ripeness, and exhaustion of administrative remedies are related, overlapping doctrines that are analytically but not categorically distinct."). Although EEOC's standing and ripeness arguments are technically still on the table, they are plainly untenable for the reasons set forth in *EEOC I*. The Fifth Circuit reversed this Court's holdings on standing and ripeness without resort to the *Hawkes* decision. *EEOC I*, 827 F.3d at 377–80, 388 n.9. The Court reversed on standing because Texas was the object of the regulation and on ripeness because there is no need for further factual development to answer the purely legal issues raised by this case.

Accordingly, EEOC's latest request for dismissal should be rejected, especially now in light of the *Hawkes* decision. There is final agency action as per *Hawkes*, Texas has standing to bring this suit as an employer directly regulated by the EEOC's action, and the claims are ripe for determination because they are pure legal questions of statutory interpretation that are fit for review immediately.

## BACKGROUND

At the heart of this case and controversy is EEOC's so-called "Enforcement Guidance," which purports to limit the prerogative of employers, including Texas, to exclude convicted felons from employment. *See* EEOC, Consideration of Arrest and Conviction Records in Employment Decisions Under Title VII of the Civil Rights Act of 1964, No. 915.002 (Apr. 25, 2012) (variously referred to herein as "Felon Hiring Rule," "Rule" or "FHR"). The Rule does this by directing (1) employers to conform their hiring practices to EEOC's "guidance," (2) individuals to file charges of discrimination for alleged violations of EEOC's "guidance," and (3) EEOC staff to bring the full weight of the United States's enforcement authority to bear on those employers who might disobey the Commission's "guidance." Specifically:

> The Commission intends this document for use by employers considering the use of criminal records in their selection and retention processes; by individuals who suspect that they have been denied jobs or promotions, or have been discharged because of their criminal records; and by EEOC staff who are investigating discrimination charges involving the use of criminal records in employment decisions.

3

*Id.* at 3.

The Felon Hiring Rule reflects EEOC's substantive interpretation of Title VII. In EEOC's view, hiring policies or practices that categorically exclude all convicted felons create a per se, unlawful "disparate impact" under Title VII; the statute instead mandates that all employers conduct "individualized assessments" of convicted felons' job applications. *Id.* at 9, 18–20. If an employer refuses to hire a convicted felon, it is the employer's burden to prove that the felony disqualification is "job related for the position in question and consistent with business necessity." *Id.* at 9. The Rule warns that EEOC will investigate and challenge employers who use felony convictions as "an absolute bar to employment." *Id.* at 11 n.90. And it further cautions that "[a]n employer's evidence of a racially balanced workforce will not be enough to disprove disparate impact." *Id.* at 10.

The Rule also instructs employers, including Texas, to ignore state and local laws that disqualify convicted felons from holding certain jobs, to the extent those state and local laws conflict with EEOC's interpretation of Title VII. *See id.* at 24 ("States and local jurisdictions also have laws and/or regulations that restrict or prohibit the employment of individuals with records of certain criminal conduct. … Unlike federal laws or regulations, however, state and local laws or regulations are preempted by Title VII.").

Critically, the Rule purports to bind "EEOC staff" by requiring them to investigate and to find that employers commit unlawful employment practices where they refuse to give individualized consideration to job applicants with felony convictions. *Id.* at 3; *see, e.g., id.* at 8 ("EEOC would find reasonable cause to believe that discrimination occurred."); *id.* at 12 ("EEOC would find reasonable cause to believe that his employer violated Title VII."); *id.* at 17 ("EEOC concludes that there is reasonable cause to believe that the [employer's] policy" violates EEOC's felon hiring rule.); *id.* at 20 ("EEOC finds reasonable cause to believe that Title VII was violated."); *id.* at 21 ("EEOC finds that the policy is" unlawful.).

Moreover, EEOC's Felon Hiring Rule specifically holds that state policies prohibiting the hiring of felons (*a.k.a.* "no-felon" policies) are unlawful, and the Commission directs its staff to enforce that finding in the field. *See id.* at 24 ("EEOC investigates [the no-felon hiring policy required by state

4

law], finding disparate impact based on race and also that the exclusionary policy is not job related and consistent with business necessity."). In short, the Rule, "from beginning to end …[,] reads like a ukase. It commands, it requires, it orders, it dictates." *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1023 (D.C. Cir. 2000).

EEOC considers itself bound by the Rule, and its employees unwaveringly follow it. In the Commission's own estimation, the Rule reflects its staff's "well-established" practice of finding un-lawful employment practices where employers categorically refuse to hire felons. FHR 3. Neither EEOC nor the Attorney General has identified a single instance in which either of them has failed to follow the substantive interpretation of Title VII promulgated in the Felon Hiring Rule.

Since its promulgation, the Rule has had a profound effect. EEOC has launched hundreds of investigations against employers who, in EEOC's estimation, are insufficiently solicitous of convicted felons who want jobs. *See, e.g.*, First Am. Compl., ECF No. 24, ¶¶ 17–19. And the targets of these investigations and prosecutions have been subjected to abusive litigation tactics. *See, e.g., EEOC v. Peoplemark, Inc.*, 732 F.3d 584, 592 (6th Cir. 2013) (affirming sanctions award against EEOC for its abusive, groundless, and frivolous enforcement of the Rule); *EEOC v. Freeman*, 961 F. Supp. 2d 783, 803 (D. Md. 2013) ("The story of the present action has been that of a theory in search of facts to support it. But there are simply no facts here to support a theory of disparate impact resulting from any identified, specific practice of the Defendant. … By bringing actions of this nature, the EEOC has placed many employers in the 'Hobson's choice' of ignoring criminal history and credit back-ground, thus exposing themselves to potential liability for criminal and fraudulent acts committed by employees, on the one hand, or incurring the wrath of the EEOC for having utilized information deemed fundamental by most employers.").

EEOC's Felon Hiring Rule takes direct aim at Texas and its sovereign arms. Texas, its agen-cies, and political subdivisions employ hundreds of thousands of people. For many of its jobs, Texas law and longstanding hiring policies impose absolute bans on hiring convicted felons (or in some instances persons convicted of certain categories of felonies). *See, e.g.*, Tex. Occ. Code § 1701.312(a); Tex. Educ. Code § 22.085; Tex. Health & Safety Code ch. 250. The no-felon hiring policy is

applied to all job applicants, without regard to their races, and there has never been any allegation that Texas's prohibitions on hiring felons could constitute "Title VII disparate *treatment* liability" through purposeful racial discrimination. FHR 6 (emphasis added). But EEOC's view of disparate impact liability turns Texas's race-neutral virtue into a vice: because its agencies apply absolute and categorical exclusions against all convicted felons, they never make the sort of race-conscious "individualized assessments" that EEOC's Felon Hiring Rule purports to require. *Id.* at 18–20.

Thus, EEOC's Felon Hiring Rule immediately affects the day-to-day business of Texas, its agencies, and its political subdivisions. EEOC has propounded a substantive interpretation of Title VII that purports to preempt Texas's sovereign power to enact and abide by longstanding, state-law hiring practices. Texas either must violate state and local laws that prohibit the "individualized assessments" that EEOC requires and consider convicted felons for hire as Troopers, jailers, and school teachers—or Texas must ignore the EEOC's Enforcement Guidance and risk an EEOC enforcement action like the ones the Commission launched against Peoplemark and Freeman.

If Texas agencies could even potentially comply with the EEOC's interpretation, they would not only violate Texas law, but they would also have to rewrite their hiring policies at taxpayer expense. And these agencies also must begin contemplating hiring felons to serve in law enforcement, teach in local elementary schools, nurse veterans and the disabled, counsel juvenile detainees, and coach little league. This would expose Texas—including, in particular, its most vulnerable citizens—to a class of individuals who have previously disobeyed the law. And it could expose Texas governmental entities to liability for employee misconduct.

But adhering to Texas law also is a perilous and costly option with the EEOC's Rule in place. Noncompliance with EEOC's interpretation could trigger an EEOC investigation or challenge, exposing Texas to class-like liability. Indeed, EEOC has publicly adopted a strategy of prosecuting high-profile cases against major employers to attract attention from the media. *See* EEOC, Performance and Accountability Report 20 (2011) ("[T]he quantity of systemic lawsuits and their representation on the total docket is expected to continue to steadily increase."). And it has a proven track record of abusive litigation tactics. An EEOC challenge of this nature would do lasting and unwarranted damage

to Texas's reputation as an equal-opportunity employer, undermining its efforts to recruit and retain employees of all races.

The only difference between the EEOC's authority over state versus private employers is that the Commission does not have authority directly to prosecute states. *See* 42 U.S.C. § 2000e-5(f)(1). When it is a state employer that allegedly committed an unlawful employment practice, EEOC must refer the charge of discrimination to the U.S. Attorney General. *Id.* The Attorney General, in turn, either can sue the state or authorize the employee to do so. *Id.* But the federal government brings enforcement suits in its own name in only 18% of its cases. *See* EEOC, All Statutes: FY1997–FY2013, http://www.eeoc.gov/eeoc/statistics/enforcement/all.cfm. The overwhelming majority of cases are resolved during the EEOC's abusive investigatory process. *See id.*

Texas brought this suit for declaratory and injunctive relief against EEOC and its Felon Hiring Rule, as well as the Attorney General, who has authority to enforce the Executive Branch's interpretation against the States. This lawsuit was brought under section 10(a) of the APA, 5 U.S.C. § 702, and the Declaratory Judgment Act (DJA), 28 U.S.C. §§ 2201, 2202. Texas contends that it and its constituent agencies have the sovereign right to impose categorical bans on the hiring of criminals, neither the EEOC nor the Attorney General has authority to say otherwise, and that the Felon Hiring Rule is invalid on its face.

EEOC moved to dismiss Texas's suit on the grounds that the Rule does not constitute final agency action, that Texas lacks standing to bring this suit, and that Texas's claims are unripe. *See* Mot. to Dismiss, ECF No. 15; Mem. i/s/o Mot. to Dismiss, ECF No. 16. This Court granted EEOC's motion, Order, ECF No. 36, and entered a final judgment dismissing this case without prejudice for lack of subject-matter jurisdiction, Judgment, ECF No. 37. A divided panel of the Fifth Circuit reversed. *EEOC I*, 827 F.3d at 376, 388. The panel majority found that the Felon Hiring Rule constitutes final agency action, that Texas has standing to bring this lawsuit, and that Texas's claims are indeed ripe. The Fifth Circuit, however, granted EEOC a rehearing, withdrew its opinion, yet still vacated this Court's judgment and remanded the case for reconsideration in light of *Hawkes. EEOC II*, 2016

WL 5349249, at *1. This Court, in turn, has invited the parties to file motions and briefing "on the issues that *Hawkes* may implicate" in this case. Order, ECF No. 43.

ARGUMENT

## I.    The Felon Hiring Rule Constitutes Final Agency Action.

EEOC's Felon Hiring Rule is "final" and thus reviewable under APA § 704 because (1) it marks the consummation of the Commission's decision-making process and (2) legal consequences flow from the Commission's promulgation of the Rule. *See, e.g.*, *Bennett*, 520 U.S. at 177–78. There is no dispute that the Felon Hiring Rule is the consummation of EEOC's decision-making process. But EEOC argues that the Rule is not final, because it creates no legal consequences. EEOC is wrong, and *Hawkes* explains why.

### A.    *Hawkes* dictates that the Felon Hiring Rule is final agency action.

In *Hawkes*, three companies that engaged in the mining of peat from wetlands and bogs sought a permit from U.S. Army Corps of Engineers (Corps) to conduct mining operations on a tract of their land. 136 S. Ct. 1812–13. As part of the permitting process, the Corps issued an "approved" "jurisdictional determination" (JD), which was the agency's determination that the property contained "waters of the United States" (WOTUS) and was therefore subject to its regulatory authority under the Clean Water Act (CWA). *Id.* at 1813. Corps JDs come in two forms: "preliminary" or "approved." *Id.* at 1812. Preliminary JDs merely advise property owners that their property may contain WOTUS, whereas approved JDs "definitively" determine the presence or absence of WOTUS on a parcel of land. *Id.* Approved JDs can be administratively appealed and are binding for five years. Not so for preliminary JDs. *Id.*

The landowners in *Hawkes* sought judicial review of the Corps' JD determination, but the district court dismissed for want of subject-matter jurisdiction, holding that the JD was not final agency action. *Id.* at 1813. The district court's decision was reversed on appeal, *Hawkes Co. v. U.S. Army Corps of Eng'rs*, 782 F.3d 994 (8th Cir. 2015), and the Supreme Court affirmed, holding, among

other things, that the JD constituted final agency action because legal consequences flow from the JD, 136 S. Ct. at 1813–16.

The Court's reasoning in *Hawkes* controls the analysis here. The Court noted that the JD was of the "approved" variety and not just "preliminary." *Id.* at 1813–14. The approved JD was not simply "advisory in nature"; rather, it was the culmination of an "extensive factfinding" that was "typically not revisited if the permitting process moves forward." *Id.* "[F]or all practical purposes," the issuance of the approved JD meant that the Corps "ha[d] ruled definitively" on whether the land contained WOTUS. *Id.* at 1814.

EEOC's Felon Hiring Rule is similar to the approved JD in *Hawkes*. First, like the approved JD, the Rule is not preliminary. The Rule itself notes that it is the culmination of years of extensive factfinding, to wit: "The [Rule] builds on *longstanding* court decisions and existing guidance documents that [EEOC] *issued over twenty years ago*." FHR 1 (emphasis added). In particular:

> The Commission, which has enforced Title VII since it became effective in 1965, has well-established guidance applying Title VII principles to employers' use of criminal records to screen for employment. This [Felon Hiring Rule] builds on longstanding court decisions and policy documents that were issued over twenty years ago. In light of employers' increased access to criminal history information, case law analyzing Title VII requirements for criminal record exclusions, and other developments, the Commission has decided to update and consolidate in this document all of its prior policy statements about Title VII and the use of criminal records in employment decisions. Thus, this [Rule] will supersede the Commission's previous policy statements on this issue.

*Id.* at 3 & n.15 (footnotes omitted).

The Rule is also like the approved JD in *Hawkes* because it is "definitive" and not merely "advisory in nature." The Rule warns that EEOC will investigate and challenge employers who use felony convictions as "an absolute bar to employment." *Id.* at 11 n.90. It cautions that "[a]n employer's evidence of a racially balanced workforce will not be enough to disprove disparate impact." *Id.* at 10. And it instructs that state and local laws that disqualify convicted felons from holding certain jobs conflict with EEOC's interpretation of Title VII and are preempted. *See id.* at 24 ("States and local jurisdictions also have laws and/or regulations that restrict or prohibit the employment of individuals

with records of certain criminal conduct. . . . Unlike federal laws or regulations, however, state and local laws or regulations are preempted by Title VII.").

Another similarity to the approved JD in *Hawkes* is the provision of a "safe harbor." The Supreme Court in *Hawkes* considered "the effect of an approved JD stating that a party's property does not contain jurisdictional waters—a 'negative' JD, in Corps parlance." 136 S. Ct. at 1814. A negative JD, the Court observed, gave rise to direct and appreciable legal consequences because it would prevent both the Corps and the EPA from bringing civil enforcement proceedings for five years, thus "creating a five-year safe harbor from such proceedings for a property owner." *Id.* A negative JD had the further legal consequence of insulating the property owner from "civil liability for wholly past violations" in a citizen suit brought under the CWA. *Id.* "In other words, a negative JD both narrow[ed] the field of potential plaintiffs and limit[ed] the potential liability a landowner face[d] for discharging pollutants without a permit. Each of those effects [was] a 'legal consequence[ ]' satisfying the second *Bennett* prong." *Id.* The Court concluded, "It follows that affirmative JDs have legal consequences as well: *They represent the denial of the safe harbor that negative JDs afford.*" *Id.* (emphasis added). Thus, the Court signaled that agency action involving the promise or withdrawal of a safe harbor from the commencement of legal proceedings and liability is indicative of finality.

The Felon Hiring Rule does precisely that by offering two safe harbors. The Rule alerts employers that a "neutral policy (*e.g.*, excluding applicants from employment based on certain criminal conduct) may disproportionately impact some individuals protected under Title VII, and may violate the law if not job related and consistent with business necessity (disparate impact liability)." FHR 1. Next, it advises that "[t]o establish that a criminal conduct exclusion that has a disparate impact is job related and consistent with business necessity under Title VII, the employer needs to show that the policy operates to effectively link specific criminal conduct, and its dangers, with the risks inherent in the duties of a particular position." *Id.* at 14. Then, the Rule describes "[t]wo circumstances"—safe harbors—"in which the Commission believes employers will consistently meet the 'job related and consistent with business necessity' defense." *Id.* at 2; *see also id.* at 14. Those safe harbors are:

1. The employer validates the criminal conduct exclusion for the position in question in light of the Uniform Guidelines on Employee Selection Procedures (if there is data or analysis about criminal conduct as related to subsequent work performance or behaviors); or

2. The employer develops a targeted screen considering at least the nature of the crime, the time elapsed, and the nature of the job (the three factors identified by the court in *Green v. Missouri Pacific Railroad*, 549 F.2d 1158 (8th Cir. 1977)). The employer's policy then provides an opportunity for an individualized assessment for those people identified by the screen, to determine if the policy as applied is job related and consistent with business necessity. (Although Title VII does not require individualized assessment in all circumstances, the use of a screen that does not include individualized assessment is more likely to violate Title VII.).

*Id.* at 2; *see also id.* at 14. Finally, the Rule unequivocally announces that resorting to the safe harbor afforded by "the use of individualized assessments can help employers avoid Title VII liability by allowing them to consider more complete information on individual applicants or employees, as part of a policy that is job related and consistent with business necessity." *Id.* at 14.

Just like the safe harbor of a negative JD in *Hawkes*, "legal consequences … flow" from the Rule's safe harbor provisions. 136 S. Ct. at 1814 (quoting *Bennett*, 520 U.S. at 178). As in *Hawkes*, the Rule's safe harbors "narrow[ ] the field of potential plaintiffs and limits the potential liability" that an employer faces when considering criminal history as part of hiring decisions. *Id.* By succumbing to EEOC's Felon Hiring Rule, state employers are assured that they will be protected from the federal government and private citizens through the "targeted screen" and "individualized assessment" requirements, thereby narrowing the field of potential plaintiffs. And as in *Hawkes*, state employers are assured that in a civil suit brought by a private citizen, any potential liability would likely be limited (if imposed at all) because compliance with the safe-harbor provision would be evidence that the state employer conformed its conduct to EEOC-endorsed normative behavior.

Significantly, the Supreme Court in *Hawkes* noted that its holding of final agency action in that case was consistent with "the 'pragmatic' approach we have long taken to finality." 136 S. Ct. at 1815 (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)). As an example of the pragmatic approach to finality, the Court cited *Frozen Food Express v. United States*, 351 U.S. 40 (1956). *Id.* In *Frozen Food*, the Court observed, "an order specifying which commodities the Interstate Commerce Commission

*believed* were exempt by statute from regulation, and which it *believed* were not" was "immediately reviewable" under the APA. *Hawkes*, 136 S. Ct. at 1815 (emphasis added). The *Hawkes* Court noted that it did not matter in *Frozen Food* that the order in question "'had no authority except to give notice of how [it] interpreted' the relevant statute and 'would have effect only if and when a particular action was brought against a particular carrier.'" *Id.* (quoting *Abbott Labs.*, 387 U.S. at 150). The order was final and reviewable nonetheless. *Id.* (citing *Frozen Food*, 351 U.S. at 44–45). It was enough for finality purposes that the order merely "warn[ed]" carriers "of the risk of incurring criminal penalties." *Id.* (quoting *Frozen Food*, 351 U.S. at 44). The same was true of the approved JD in *Hawkes*—besides depriving the land owners a five-year safe harbor from liability under the CWA, the JD warned of potential "significant criminal and civil penalties." *Id.* Thus, the takeaway from the Court's pragmatic approach to finality of agency action is that even if the agency order only professes to be an interpretation of a statute and expression of the issuing agency's beliefs—and disclaims any effect unless and until a specific lawsuit is brought against a particular entity—an agency order that warns of the potential risk of liability is final and reviewable. That is precisely the situation here.

Nevertheless, EEOC's claims that the Rule is a nonbinding advisory that reflects what "the Commission *believes*" and contains "simply a prediction." Supp. Br. 7 (emphasis in original). But *Hawkes'* reliance on *Frozen Food* refutes that argument.

The Fifth Circuit panel majority concurred with this view. According to that opinion:

> [A]n agency action can create legal consequences even when the action, in itself, is disassociated with the filing of an enforcement proceeding, and is not authority for the imposition of civil or criminal penalties. Instead, "legal consequences" are created whenever the challenged agency action has the effect of committing the agency itself to a view of the law that, in turn, forces the plaintiff either to alter its conduct, or expose itself to potential liability. In *Hawkes Co.*, this agency action was the issuance of a JD asserting that the plaintiff's land was subject to the CWA's permitting requirements, thus depriving the plaintiff of the agency-created safe harbor and forcing the plaintiff to submit to the agency's view or risk liability. Here, it is the EEOC's promulgation of the [Felon Hiring Rule], which offers regulated entities a safe harbor from DOJ referral, and thus ultimately from liability, only if employers alter their hiring policies to comply with the [Rule's] directives.

*EEOC I*, 827 F.3d at 383–84. The panel majority's opinion is consistent with *Hawkes*.

**B.      EEOC's counterarguments have no merit.**

EEOC argues that "[a]lthough *Hawkes* addresses the meaning of the term 'final agency action,'" "nothing in *Hawkes* supports" Texas's arguments that that the Felon Hiring Rule "is a final agency action." Supp. Br. 6. EEOC is wrong.

**1.**      To begin, EEOC claims that *Hawkes*' discussion of safe-harbor provisions is inapplicable to this case. *Id.* at 7. EEOC argues that the provisions in the Rule that Texas points to as creating safe harbors cannot possibly be such because they contain "mushy language" and "simply a prediction—and a significantly caveated one at that—about how the EEOC might view a situation if it were to investigate," which offer "no guarantee of safety." *Id.* at 7–8. The language in question is that portion of the Rule which states: "[t]wo circumstances in which the Commission *believes* employers will *consistently* meet the 'job related and consistent with business necessity' defense." *Id.* at 7 (emphasis in original). But the language EEOC highlights is not magic words that somehow inoculate the Rule from being final agency action. The Court in *Hawkes* rejected an argument very similar to this one. As mentioned above, the *Hawkes* Court, in discussing *Frozen Food*, gave no credence to the argument that an order merely expressed the Commission's beliefs. *Hawkes*, 136 S. Ct. at 1815. Likewise, the fact that an agency cannot or will not describe every situation in which an agency order will have effect does not insulate that order from being final agency action. *Id.*

Moreover, EEOC's equivocal-language argument takes a form-over-substance approach that is not part of the "pragmatic" test for final agency action. *Id.* The language of a safe-harbor provision in an agency document is "binding as a practical matter" if it "is such that private parties can rely on it as a norm" and "shape their actions" by it. *Cohen v. United States*, 578 F.3d 1, 9 (D.C. Cir. 2009), *aff'd in relevant part, rev'd in part on other grounds*, 650 F.3d 717 (D.C. Cir. 2011) (en banc). The Felon Hiring Rule's safe-harbor provisions easily pass this test. As the panel majority noted:

> [W]e find that the [Felon Hiring Rule] imposes "legal consequences" in the sense that the EEOC has committed itself to applying the [Rule] when conducting enforcement and referral actions; in particular, the [Rule] suggests that its provisions are to be taken as conclusive, and offers only two escapes from an adverse EEOC determination. Moreover, the promulgation of the [Rule] is an agency action by which "rights and obligations" have been determined: the agency has committed itself to following the [Rule], and has assured employers that if they conform their conduct to the [Rule's]

> "safe harbor" requirements, they will not be deemed to be in violation of Title VII by
> EEOC investigators. Such an exoneration by EEOC investigators would, in turn, en-
> sure that Texas is protected from referral of its case to the U.S. Attorney General for
> prosecution, and, ultimately, from a potential finding of injunctive and/or monetary
> liability in a DOJ-led prosecution.

*EEOC I*, 827 F.3d at 381.

In a similar vein, EEOC argues that this case is distinguishable from *Hawkes* in that "unlike the landowner in *Hawkes*, [Texas] has not sought the benefit of a safe harbor with respect to a specific action (peat mining in *Hawkes*) in a specific context (the property at issue in *Hawkes*), only to have its request denied." Supp. Br. 8. While that may be true, it is both unsurprising and irrelevant. First, the analysis in *Hawkes* does not turn on the specificity of the JD at issue. And even if it did, further specificity is not needed in this situation, because the applicability of the Felon Hiring Rule in this context does not depend on specific facts. EEOC's argument regarding specificity is a red herring and does not allow it to escape the logic of *Hawkes*.

Second, no application and denial is needed for the agency action at issue to be considered "final." Texas admittedly has brought a proper and typical facial challenge to the Rule, choosing not to sit back and wait for the federal government to commence investigatory and litigation proceedings into its no-felon hiring laws and policies and subject itself to similar abusive tactics as the ones that the parties in *Peoplemark* and *Freeman* experienced. Texas need not "assume such risks while waiting for [EEOC] to 'drop the hammer' in order to have [its] day in court." *Hawkes*, 136 S. Ct. at 1815 (quoting *Sackett v. EPA*, 132 S. Ct. 1367, 1372 (2012)). More importantly, the distinction that EEOC proffers does not make any difference. The Supreme Court's holding in *Hawkes* did not turn on the fact that request for an approved JD was made and a negative JD was denied; rather, it was predicated on the Court's "pragmatic" approach, which will find final agency action in a situation in which an agency order has warned regulated entities to conform to the agency's interpretation of a statute or avail themselves of the order's safe-harbor protection in order to avoid penalties and liability. *See* 136 S. Ct. at 1815. So EEOC is correct that Texas is arguing that the Rule's creation of safe harbors, among other reasons, "renders the entirety of the [Rule] final agency action"—because that is what *Hawkes* holds.

14

**2.**    In addition, EEOC notes that the Rule's safe harbor provisions cannot shield Texas from a government-enforcement action because Department of Justice (DOJ) can commence such a suit on behalf of an individual even when there is no referral from EEOC pursuant to 42 U.S.C. §§ 2000e-5(f)(1), 2000e-6. Supp. Br. 10 n.4. EEOC also notes that a private citizen can bring a disparate-impact action against a state employer even if DOJ does not. *Id.* n.5 (citing 42 U.S.C. § 2000e-5(k)). Yet even in these instances, legal consequences still flow from the Rule because its safe harbor provisions foreclose EEOC investigation and potential referral to DOJ for enforcement. Legal consequences also flow from the Rule when a private person brings a civil action under section 2000e-5 because a state employer's compliance with the safe harbor provisions would be significant evidence in a private citizen's civil action under section 2000e-5. Indeed, it is difficult to imagine how a private-citizen suit would succeed when no government enforcement action was undertaken because the employer conformed its conduct to an agency-endorsed safe harbor.

EEOC further claims that even if it could sue states, the Felon Hiring Rule would not be final agency action because it does not bind EEOC to do so. Supp. Br. 11. In other words, according to EEOC, if the authority to sue is discretionary, the Rule is of no legal consequence, non-binding, and cannot constitute final agency action. But in *Hawkes,* an affirmative JD did not bind the agency to pursue legal action against the plaintiff. The Court still determined that it was a reviewable final agency action because it warned that violation would "*risk* . . . significant criminal and civil penalties." 136 S. Ct. at 1815 (emphasis added).

EEOC cites *AT&T Co. v. EEOC*, 270 F.3d 973 (D.C. Cir. 2001), for their argument, but that case is inapposite. Supp. Br. 11. In *AT&T*, the agency document merely expressed EEOC's view of the law in a way that did not force a party to change its behavior and did not require EEOC to sue the employer. 270 F.3d at 976. The obvious difference between *AT&T* and this case is that the Felon Hiring Rule is not a mere suggestion of how an agency might possibly interpret Title VII; it binds EEOC staff to an interpretation of the statute and forewarns of certain investigation, referral, and legal action to come. Had the policy guidance at issue in *AT&T* attempted to bind EEOC staff in their official conduct, instead of merely expressing the agency's views regarding employers' actions,

the court would likely have reached a different conclusion. *See id.* at 975–76 ("Although there are ... particular circumstances in which an agency's taking a legal position itself inflicts injury or forces a party to change its behavior, such that taking that position may be deemed final agency action, ... this is not such a case. . . . *[T]he EEOC Compliance Manual does not affect the regulated community. Whereas 'EPA officials in the field [were] bound to apply' the EPA Guidance ... the EEOC is not bound to sue AT & T.'*") (emphasis added) (internal citations omitted).

      **3.**    EEOC also argues that the Felon Hiring Rule is not final agency action because EEOC cannot bring an enforcement action against Texas, as only the Attorney General can enforce Title VII against a state. *See* Supp. Br. 9–10. But that argument assumes the Rule is limited to investigations and enforcement actions against states—it is not. The Rule "is a blanket policy that the EEOC has committed itself to applying with respect to virtually all public and private employers." *EEOC I*, 827 F.3d at 382; *see* FHR 3 (stating that Rule applies to private employers as well as federal, state, and local governments). Whether the Rule is final agency action does not depend on whether EEOC may itself directly bring an enforcement action against Texas; that is, the question whether a blanket agency rule constitutes "final agency action" does not turn on the identity of the class of plaintiffs but rather on "the nature, character, and effect of the rule in and of itself." *EEOC I*, 827 F.3d at 382. As the panel majority pointed out: "[T]o hold that the [Felon Hiring Rule] is not 'final agency action' solely because of the EEOC's limited enforcement authority with respect to a state employer is essentially to hold that there is no rule-related EEOC action against a state that is reviewable under the APA, even though the EEOC clearly can subject state employers to harms sufficient to confer Article III standing." *Id.* EEOC's argument cannot be correct.

      **4.**    EEOC also takes issue with Texas's argument that the Felon Hiring Rule is final agency action and has legal consequences because it binds EEOC staff to the Commission's legal position against employers' no-felon hiring policies. *See* Supp. Br. 10. Courts frequently find final agency action when agency documents—that purport to be mere "guidance"— contain mandatory language that binds agency staff and limits their discretion. *See, e.g., NRDC v. EPA*, 643 F.3d 311, 319–20 (D.C. Cir. 2011) (holding that "[g]uidance" document constituted final agency action because it

restrained administrative staff's discretion); *Barrick Goldstrike Mines, Inc. v. Browner*, 215 F.3d 45, 48 (D.C. Cir. 2000) (finding final agency action because guidance bound the agency's staff in its application of a de minimis exception); *Appalachian Power*, 208 F.3d at 1023 (finding final agency action because agency guidance created "obligations on the part of Texas regulators and those they regulate" and "read[ ] like a ukase").

The Felon Hiring Rule is replete with such mandatory language. *See, e.g.*, FHR 10 ("[I]n determining disparate impact, the Commission will assess the probative value of an employer's applicant data."), 14 ("To establish that a criminal conduct exclusion that has a disparate impact is job related and consistent with business necessity under Title VII, the employer needs to show that the policy operates to effectively link specific criminal conduct, and its dangers, with the risks inherent in the duties of a particular position."), 14 ("[T]he use of individualized assessments can help employers avoid Title VII liability by allowing them to consider more complete information on individual applicants or employees, as part of a policy that is job related and consistent with business necessity."), 15 ("Absent a validation study that meets the Uniform Guidelines' standards, the *Green* factors provide the starting point for analyzing how specific criminal conduct may be linked to particular positions."), 16 ("A policy or practice requiring an automatic, across-the-board exclusion from all employment opportunities because of any criminal conduct is inconsistent with the *Green* factors because it does not focus on the dangers of particular crimes and the risks in particular positions."), 21 ("Title VII does not preempt these federally imposed restrictions. However, if an employer decides to impose an exclusion that goes beyond the scope of a federally imposed restriction, the discretionary aspect of the policy would be subject to Title VII analysis."). Thus, as the panel majority correctly held, the Felon Hiring Rule constitutes final agency action because it "imposes 'legal consequences' in the sense that the EEOC has committed itself to applying the [Rule] when conducting enforcement and referral actions." *EEOC I*, 827 F.3d at 381.

Still, EEOC argues that, although the Rule may bind EEOC staff in some respects, it does not bind them "in a manner that affects Texas's rights or obligations or results in legal consequences."

Supp. Br. 10. But the Commission has committed to applying the Rule in investigations and enforce-ment actions and intends EEOC staff and regulated employers to treat the Rule as being conclusive. The Rule states:

> The Commission intends this document for use by employers considering the use of criminal records in their selection and retention processes; by individuals who suspect that they have been denied jobs or promotions, or have been discharged because of their criminal records; and by EEOC staff who are investigating discrimination charges involving the use of criminal records in employment decisions.

FHR 3. The Rule commands that "[a]n employer's evidence of a racially balanced workforce will not be enough to disprove disparate impact," and that "the Commission will assess the probative value of an employer's applicant data." *Id.* at 10. The Rule advises that "[t]he Commission will determine the persuasiveness of such evidence on a case-by-case basis," *id.* at 10, and instructs EEOC staff that "the employer needs to show that the policy operates to effectively link specific criminal conduct, and its dangers, with the risks inherent in the duties of a particular position," *id.* at 14. Indeed, the Rule's provisions are so conclusive that EEOC saw fit to create two safe harbors from investigation, referral, and enforcement. *Id.* at 14.

**5.**     EEOC further claims that there is no final agency action here because the Felon Hiring Rule cannot serve as a source of liability in a civil action; only Title VII can. *See* Supp. Br. 12 n.6. Under this argument, the EEOC's interpretation of Title VII could *never* be final agency action. Moreover, there is no practical separation between the Rule and Title VII in this context, because the Rule pur-ports to interpret Title VII such that state and local laws or regulations that embody facially neutral no-felon hiring policies are preempted by Title VII if they cause disparate impact. *See* FHR 2, 8–20. This is a novel interpretation and a major expansion of Title VII. *See* Br. of U.S. as Amicus Curiae at 7–15, *Bd. of Educ. of City Sch. Dist. of City of N.Y. v. Gulino*, No. 07-270 (U.S. May 23, 2008) (arguing that facially neutral state-law hiring requirements do not violate Title VII). To accept EEOC's argument would essentially unfairly shield the Rule from APA review when it is the Commission's novel inter-pretation of Title VII expressed in the Rule that serves as the de facto source of disparate-impact liability under the statute. The Rule's effort to preempt state laws constitutes agency action within the

meaning of APA section 704, "which is meant to cover comprehensively every manner in which an agency may exercise its power." *Whitman v. Am. Trucking Assocs.*, 531 U.S. 457, 478 (2001).

## II.    Texas Has Standing To Bring This Suit.

EEOC claims that "*Hawkes* also 'implicates' standing" because the Felon Hiring Rule has no "regulatory effect" and inflicts no "'concrete' harm" on Texas. Supp. Br. 12. For one thing, *Hawkes* never addressed the issue of Article III standing, much less rendered a holding on such an issue.[3] But *Hawkes* only aids Texas here, because it confirms that there is final agency action, *see supra* Part I, while EEOC largely conflates that final-agency-action doctrine with standing and ripeness arguments. *See*, *e.g.*, *Bennett*, 520 U.S. at 177–78 (noting that constitutional standing and final agency action are separate inquires); *Holistic Candlers*, 664 F.3d at 943–45 (concluding that the plaintiffs established constitutional standing, but nonetheless finding that the plaintiffs failed to show "final agency action" under the APA). The two ask separate questions and employ different tests. In any event, the Rule does indeed inflict concrete harm upon Texas.

At the outset, the test for standing here is simple: Texas has standing to challenge the Felon Hiring Rule because Texas is an employer and employers are the "object of" the regulation:

> When the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred (at the summary judgment stage) or proved (at the trial stage) in order to establish standing depends considerably upon whether the plaintiff is himself an object of the action (or forgone action) at issue. If he is, there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561–62 (1992). "Whether someone is in fact an object of a regulation is a flexible inquiry rooted in common sense." *Contender Farms, L.L.P. v. U.S. Dep't of Agric.*, 779 F.3d 258, 265 (5th Cir. 2015). Texas undoubtedly satisfies the object-of-the-regulation test. As the panel majority correctly held, "[w]e have no question but that Texas is an 'object' of the challenged

---

[3] Although, the *Hawkes* court seems to presume that the risk of penalties for the plaintiff creates a redressable concrete injury. *See* 136 S. Ct. at 1815 ("As we have long held, parties need not await enforcement proceedings before challenging final agency action where such proceedings carry the risk of 'serious criminal and civil penalties'") (quoting *Abbott Labs.*, 387 U.S. at 153).

[Felon Hiring Rule], … [and] [a]s Texas is an object of the [Rule], there is no reason to deviate from the presumption that Texas has constitutional standing to challenge it." *EEOC I*, 827 F.3d at 378.

Texas is clearly an object of the Felon Hiring Rule, and EEOC wisely does not contend otherwise. EEOC instead asserts that Texas is not entitled to the presumption of standing because the Rule is purely advisory, in the sense that it does not impose mandatory conditions on Texas and neither requires or forbids any action by Texas. *See* Supp. Br. 13. EEOC is essentially arguing that Texas lacks standing to sue because the Rule does not bind Texas. *See id.* 13 ("EEOC lacks the authority to enact substantive rules under Title VII binding any third party, including Texas."). Again, that argument erroneously conflates the issue of final agency action with standing and is not reason for ruling against Texas on standing.

Contrary to EEOC's argument, the Felon Hiring Rule does in fact regulate and forbid employers' no-felon hiring policies by means of the Rule's novel interpretation of Title VII. And the Rule goes so far as to definitively declare that its interpretation of Title VII preempts state no-felon hiring laws and regulations. The Rule therefore plainly coerces Texas into abandoning such laws to avoid adverse action. In this way, the Rule inflicts concrete harm on Texas because it must either succumb to the Rule or take the substantial risk of being subjected to abusive investigatory tactics by EEOC, almost certain referral to DOJ for litigation, and liability.

EEOC also argues that Texas is not entitled to the presumption of standing afforded to entities that are the object of the agency's action. EEOC cites *Lujan*, 504 U.S. at 561–62; *Summers v. Earth Island Inst.*, 555 U.S. 488, 493–494 (2009); and *Los Angeles Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 655 (9th Cir. 2011), as support for its argument. Those cases, however, actually support Texas's position or are inapposite. EEOC's reliance on *Lujan* is particularly curious, as *Lujan* is the precise case that sets forth the presumption of standing for persons and entities that are the object of a regulation. *See* 504 U.S. at 561–62. Unlike here, the plaintiffs in *Lujan* were not the object of regulation, so they were not entitled to the presumption—"much more [was] needed" from the plaintiffs. *Id.* But that is not the case here, because the Rule takes direct aim at government employers like Texas.

Likewise, EEOC's reliance on *Summers* is equally misplaced. Unlike here, the regulations there did not control the plaintiffs; rather, the regulations governed the conduct of government officials who were not party to the lawsuit. 555 U.S. at 493–494. Like the plaintiffs in *Lujan*, the plaintiffs in *Summers* were not the objects of the regulations, could not therefore avail themselves of the presumption of standing, and could not meet their "substantially more difficult" burden of showing that the regulations in question personally affected them in a manner consistent with the requirements of constitutional standing. *See id.*

*Haven Hospice* is no help to EEOC either. The Ninth Circuit held that Haven Hospice had Article III standing to challenge the hospice cap regulation because "there [was] no question but that Haven Hospice was the object of the governmental action challenged in its complaint." 638 F.3d at 649, 655. Thus, *Haven Hospice* supports Texas's position rather than undercuts it.

EEOC also argues that Texas lacks standing because the Felon Hiring Rule "does not require or forbid any action on the part of Texas—Title VII does." Supp. Br. 13. According to EEOC, "[e]liminating the [Felon Hiring Rule] would not 'remedy' Texas's supposed injury because Title VII mandates non-discrimination in hiring (and creates disparate impact liability for race discrimination), 42 U.S.C. § 2000e-2, and it would not fall away even if the [Rule] were struck down." *Id.* at 14. That is just another way of rehashing EEOC's argument that its statutory interpretation of Title VII is in fact correct. But that is the entire point of the *merits* of this lawsuit, and the jurisdictional standing inquiry does not analyze the merits. *See, e.g., Hill v. City of Hous.*, 764 F.2d 1156, 1159–60 (5th Cir. 1985) (stating that "it is not proper for the court to consider the likelihood of success on the merits in determining the plaintiff's standing to proceed."); *O'Hair v. White*, 675 F.2d 680, 685 (5th Cir. 1982) ("Perhaps the most fundamental aspect of the standing doctrine is that it focuses on the particular plaintiff seeking to bring his claim before the federal court, not on the issues or merits of the case."); *see also Sierra Club v. Morton*, 405 U.S. 727, 741 (1972) ("As we conclude that the Court of Appeals was correct in its holding that the Sierra Club lacked standing to maintain this action, we do not reach any other questions presented in the petition, and we intimate no view on the merits of the complaint."). Texas's complaint pleads that Title VII itself does not prohibit no-felon-hiring rules. First Am. Compl., ECF

No. 24, at 16, ¶ 43 (stating that Texas has a "right to maintain and enforce its laws and policies that absolutely bar convicted felons (or certain categories of convicted felons) from serving as police officers, youth-correction officers, state-supported living-center employees, GLO employees, lottery officials, game wardens, school teachers, and any other job the State and its Legislature deem appropriate. Such absolute bars do not constitute an "unlawful employment practice" under 42 U.S.C. § 2000e-2(k)(1)(A)."). At this motion to dismiss phase, that is enough.

## III.    Texas's Challenge to the Felon Hiring Rule Is Ripe for Review.

On the issue of whether Texas's challenge to the Felon Hiring Rule is ripe for review, EEOC recognizes that the holding in *Hawkes*—a case about final agency action—does not directly address the analytically distinct issue concerning the doctrine of ripeness. *See* Supp. Br. 15. But EEOC does concede that the panel majority concluded "that Texas's challenge was ripe" because that conclusion "followed 'naturally' from the fact that the [Rule] constitutes final agency action." *Id.* (quoting *EEOC I*, 827 F.3d at 388 n.9). Thus, as the panel majority suggests, *Hawkes* is implicated to the extent that a finding that a case is ripe for review is to be expected where there is already a finding of a finding of final agency action. EEOC does not take issue with the panel majority's conclusion, only its premise that final agency action is present here. Texas has already shown above that the Felon Hiring Rule is final agency action and will not rehash that here.

Turning then to the separate issue of Article III ripeness, EEOC has the burden to prove Congress intended to forbid pre-enforcement review of the Felon-Hiring Rule. *Abbott Labs.*, 387 U.S. at 139–40. That burden is made more difficult by the presumption of reviewability embodied in the APA. *Id.* at 140. Under well-established doctrine, EEOC has to show that (1) the issues are unfit for judicial review and (2) the balance of hardships tip in EEOC's favor. *Id.* at 149. It can show neither.

### A.    The issues are fit for review.

The issues raised by Texas's claims are fit for review because they are purely legal, facial challenges to the Felon Hiring Rule's statutory interpretation of Title VII. *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 287–88 (5th Cir. 2012). The fitness-for-review question turns on whether the

case "would benefit from further factual development" and "whether judicial intervention would inappropriately interfere with further administrative action." *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 733 (1998); *see also Whitman*, 531 U.S. at 479–80. These considerations protect "the agency's interest in crystallizing its policy before that policy is subjected to judicial review and the court's interests in avoiding unnecessary adjudication and in deciding issues in a concrete setting." *Eagle-Picher Indus., Inc. v. EPA*, 759 F.2d 905, 915 (D.C. Cir. 1985).

Here, Texas is seeking a declaration that a categorical felon-hiring ban does not violate Title VII because (1) any disparate impact is always justified by business necessity and job-relatedness, (2) Congress specifically disclaimed the EEOC's authority to promulgate a contrary rule, and (3) the private-party disparate-impact suits contemplated by the EEOC's Felon Hiring Rule are unconstitutional. These categorical claims do not require answers to factual questions. *See* First Am. Compl., ECF No. 24, at 14–18. Accordingly, the panel majority correctly held that "Texas's challenge to the [Felon Hiring Rule] is a purely legal one, and as such it is unnecessary to wait for further factual development before rendering a decision." *EEOC I*, 827 F.3d at 388 n.9 (citing *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 545 (5th Cir. 2008)). EEOC nonetheless insists that Texas's claims "would be better resolved in a concrete factual setting" and that "further factual development" is needed. Supp. Br. 15–16. EEOC also asserts that Texas's claims raise only an "abstract inquiry" and are "far too amorphous an invitation for judicial review." *Id.* at 16–17. EEOC is wrong.

There are only two facts that matter for purposes of pre-enforcement review of Texas's claims. First, state law and policy require many Texas employers to impose categorical bans against convicted felons who apply for jobs. *See* First Am. Compl., ECF No. 24, at 8–11. And second, EEOC believes that Texas's policies are unlawful because they never allow Texas to make "individualized" and race-conscious assessments of job applicants that the EEOC somehow thinks Title VII requires. *See* FHR 18–20. Thus, the case poses a conflict of two mutually incompatible interpretations of Title VII. And the parties' respective interpretations "turn on questions of statutory construction" and "constitute bright-line rules" that are "impervious … to factual variation." *Teva Pharms. USA, Inc. v. Sebelius*, 595

F.3d 1303, 1308–09 (D.C. Cir. 2010). No context-specific factual questions related to a particular employment decision need answering to resolve the parties' disagreement of the proper facial interpretation of Title VII. When advancing its final-agency-action and standing arguments, EEOC argued that Title VII categorically prohibits felon-hiring bans, yet on ripeness they somehow claim that further factual development is needed. What is more, facts and context do not matter under the very terms of the Felon Hiring Rule. The Rule already predetermines that all facially neutral felon-hiring bans violate Title VII and mandates employers' use of individualized assessments to avoid Title VII liability. *See* FHR 1–2, 14. No further factual development is needed to address these questions of pure statutory interpretation.

EEOC also argues that Texas's assertion of a facial challenge to the Felon Hiring Rule is unripe because the Rule "covers not only disparate impact, but disparate treatment provisions … that are not challenged by Texas." Supp. Br. 16 n.8. This is completely irrelevant. EEOC tries to inject the disparate-treatment prong of Title VII liability (which turns on *purposeful* discrimination, rather than mere disparate impact) into this lawsuit to argue that "the 'validity of the [Rule] must hinge on the specific circumstances in which it is deployed.'" *Id.* (quoting *EEOC I*, 827 F.3d at 392 (Higginbotham, J., dissenting)). But neither EEOC nor the dissent explains how the Felon Hiring Rule's disparate-*treatment* provisions have any bearing on the ripeness of the parties' dispute over the disparate-*impact* provisions. The Rule's view is that there is always a disparate impact in violation of Title VII whenever an employer has a per se rule against hiring felons. Texas raises a facial challenge to that interpretation of Title VII, arguing that it is invalid in all applications. This issue is fit for review right now, and needs no additional factual development. Texas does not have to challenge all the various theories of Title VII liability to raise a facial challenge to the novel interpretation of Title VII created by the EEOC's Rule. Moreover, in light of the fact that certain Texas statutes and regulations categorically forbid the hiring of felons for certain positions, *see*, *e.g.*, TEX. OCC. CODE § 1701.312(a), it is unclear how the kind of factual scenario envisioned by EEOC involving purposeful, disparate treatment of felon applicants would ever develop. Nor does EEOC dispute the propriety of Texas's decision to limit its facial challenge to only the disparate-impact provisions of the Felon-Hiring Rule. Facial challenges often attack

only select provisions. *See, e.g., Esfeller v. O'Keefe*, 391 F. App'x 337, 341 (5th Cir. 2010); *Clarke v. Stalder*, 154 F.3d 186, 187 (5th Cir. 1998) (en banc). In short, the unsurprising fact that Texas has not challenged the disparate-treatment provisions affects neither the facial nature of its challenge to the disparate-impact provisions nor whether the scope of Title VII disparate-impact liability is fit for review.

### B.    The balance of hardships tip in favor of Texas.

In its supplemental brief, EEOC has not even tried to show that the balance of hardships tips in its favor—and for good reason. The balance tips decidedly in Texas's favor because Texas will be harmed by: (a) investigations by an agency with a proven track record of "frivolous" and "groundless" enforcement tactics, *see Peoplemark*, 732 F.3d at 592; (b) damage to its reputation associated with allegations of racial discrimination; and (c) unconstitutional damages actions by individuals, which infringe Texas's sovereign immunity. At base, the Felon Hiring Rule requires Texas and its constituent agencies to comply with EEOC's new Title VII interpretation or risk a federal enforcement action; that is sufficient for ripeness. *Abbott Labs.*, 387 U.S. at 152; *Roark*, 522 F.3d at 545; *accord Ohio Forestry Ass'n*, 523 U.S. at 733; *Reckitt Benckiser, Inc. v. EPA*, 613 F.3d 1131, 1136–41 (D.C. Cir. 2010). By contrast, EEOC can hardly claim it will be harmed by litigating the propriety of a statutory interpretation to which it has bound its staff.

### CONCLUSION

EEOC's renewed motion to dismiss should be denied.

DATED: November 10, 2016.               Respectfully submitted,

                                        KEN PAXTON
                                        Attorney General of Texas

                                        JEFFREY C. MATEER
                                        First Assistant Attorney General

                                        BRANTLEY D. STARR
                                        Deputy First Assistant Attorney General

                                        PRERAK SHAH
                                        Senior Counsel to the Attorney General

                                        ANDREW D. LEONIE
                                        Associate Deputy Attorney General

                                        */s/ Austin R. Nimocks*
                                        AUSTIN R. NIMOCKS
                                        Associate Deputy Attorney General
                                        Texas Bar. No. 24002695

                                        MICHAEL C. TOTH
                                        Senior Counsel

                                        JOEL STONEDALE
                                        Counsel

                                        OFFICE OF SPECIAL LITIGATION
                                        ATTORNEY GENERAL OF TEXAS
                                        P.O. Box 12548 (MC009)
                                        Austin, Texas 78711-2548
                                        Tel.: (512) 936-1414
                                        austin.nimocks@oag.texas.gov

                                        *Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 10, 2016, a true and correct copy of the foregoing was

served by CM/ECF on:

>Benjamin C. Mizer
>John R. Parker
>Joshua E. Gardner
>Brian G. Kennedy
>Justin M. Sandberg
>U.S. Department of Justice
>Civil Division, Federal Programs Branch
>20 Mass. Ave., NW, Rm. 7302
>Washington, D.C. 20530

>*/s/ Austin R. Nimocks*
>AUSTIN R. NIMOCKS
>Associate Deputy Attorney General