IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| STATE OF TEXAS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 5:13-CV-00255-C |
| ) | ECF |
| EQUAL EMPLOYMENT ) | |
| OPPORTUNITY COMMISSION, *et al.*, ) | |
| ) | |
| Defendants ) | |
| _____ ) | |

### REPLY IN SUPPORT OF SUPPLEMENTAL BRIEF SEEKING DISMISSAL

### INTRODUCTION

Voltaire famously observed that the Holy Roman Empire was neither holy, nor Roman, nor an empire. "Felon Hiring Rule," Texas's made-up moniker for the EEOC Enforcement Guidance (App'x at 1-55), is similarly inaccurate.

The EEOC Enforcement Guidance on "Consideration of Arrest and Conviction Records in Employment Decisions" (the actual stated subject of the Guidance, EEOC Guidance at 1) is no Rule. Neither Texas nor any other employer can ever "violate" the Guidance, because the Guidance forbids nothing. The only relevant prohibitions that Texas, or other employers, can violate are contained in the *statute*, Title VII of the Civil Rights Act of 1964, which the Guidance interprets. With or without the Guidance, it will remain the case that in some instances employers who to one degree or another consider arrests *or* convictions for misdemeanors *or* felonies in making employment decisions may be violating Title VII; and in some instances they may not be violating Title VII. If the defendant Attorney General were ever to file a suit against Texas, it would be to enforce Title VII, not the EEOC's Guidance.

While *Texas* may have some unidentified number of statutes that categorically ban the hiring of felons, the EEOC's Guidance is more nuanced and stresses throughout that facts and circumstances matter. But, contrary to Texas's contention, it is also not categorically anti-

categorical: "Title VII thus does not necessarily require individualized assessment in all circumstances." Guidance at 18. There is no basis for Texas's attempt to embroil the Court in deciding whether individualized assessments are or are not always required when the Guidance nowhere purports always to require individualized assessments in the first place, where the Guidance does not affect Texas in any concrete way, and where there is no factual setting that makes this non-dispute ripe for review. The Supreme Court's decision in *Hawkes* does not change this conclusion, and dismissal of this case is thus warranted.

## ARGUMENT

### I.     The EEOC Enforcement Guidance Does Not Constitute Final Agency Action

*U.S. Army Corps of Engineers v. Hawkes Co.*, 136 S. Ct. 1807 (2016), held that there was final agency action where the agency's jurisdictional determination that specific property contained waters of the United States gave rise to direct and appreciable legal consequences for a petitioner who wanted to mine that very property. As defendants explained in their supplemental brief (at 6-12), no final agency action is present in the quite different circumstances of this case: 1) *Hawkes* involved the denial of an actual safe harbor to a concrete circumstance, whereas here there is no safe harbor, let alone the denial of one, and there are no concrete circumstances; 2) no supposed safe harbor in the Guidance could provide meaningful protection because of the availability of citizen suits and enforcement by the Department of Justice independent of the EEOC; and 3) the Guidance does not bind EEOC employees to take actions that affect Texas's rights or obligations or result in legal consequences, *see AT&T Co. v. E.E.O.C.*, 270 F.3d 973, 975 (D.C. Cir. 2001) (emphasizing importance of employees being bound to take such actions when assessing whether there is final agency action).

What Texas supposes to be safe harbor language would disappoint any interested party seeking shelter, for it simply describes "[t]wo circumstances in which the Commission *believes* employers will consistently meet the 'job related and consistent with business necessity' defense." App'x at 5 (emphasis added).  As Judge Higginbotham wrote, "[t]his mushy language

2

Reply in Support of Supp. Br.

cannot fairly be read as a promise to do anything." *Texas*, 827 F.3d at 395 (Higginbotham, dissenting). Texas, invoking *Hawkes*' discussion of *Frozen Food Express v. United States*, 351 U.S. 40 (1956), insists that the "Court in *Hawkes* rejected an argument very similar to this one." Supp. Opp. at 13. Not so. In both *Hawkes* and *Frozen Food Express* the agency decisions denied safe harbors. In neither case was there any occasion to address or decide at what point a generalized agency expression that conduct may be lawful is sufficiently unequivocal and specific that it does create a safe harbor. Neither *Hawkes* nor *Frozen Food Express* involved mushy language like that here. *See Hawkes*, 136 S. Ct. at 1815; *Frozen Food Express*, 351 U.S. at 42. The Guidance here does not create any safe harbors, so any argument by Texas premised on the existence of a safe harbor fails at the outset.

This case differs from *Hawkes* in another crucial regard: *Hawkes* involved the concrete denial of a request for the application of a safe harbor. 136 S. Ct. at 1814. It is that denial that constitutes a final agency action, *i.e.*, an action "by which rights or obligations have been determined or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). Texas demurs, arguing that the creation of a safe harbor is enough under the pragmatic approach to finality endorsed by the Court in *Hawkes*. Supp. Opp. at 13-14; *Hawkes*, 136 S. Ct. at 1815.

Texas's arguments find no ally in pragmatism. The EEOC issued "Enforcement *Guidance*," and guidance is all it could be because the EEOC lacks the authority to enact substantive rules regarding Title VII. *Edelman v. Lynchburg Coll*., 535 U.S. 106, 113, (2002); 42 U.S.C. § 2000e-12(a). This *Guidance* states that "[a]n employer's neutral policy (*e.g*., excluding applicants from employment based on certain criminal conduct) *may* disproportionately impact some individuals protected under Title VII, and *may* violate the law if not job related and consistent with business necessity (disparate impact liability)." App'x at 4 (emphasis added). And Texas does not dispute that the EEOC cannot, in any event, seek to enforce its views of Title VII against Texas: only the Department of Justice can bring Title VII suits against States on behalf of the federal government. Not does Texas dispute that, even if the EEOC refers a case to

it, the Department has the discretion to decide whether to bring such an action or not. 42 U.S.C. § 2000e-5(f)(1). And even if the EEOC were purporting to create a safe harbor in the Guidance, which it did not, it would lack the authority to do so since the Department of Justice has authority to enforce Title VII without an EEOC referral in cases involving a pattern or practice of discrimination. 42 U.S.C. § 2000e-6(a). In short, the Guidance does not profess to bind, cannot be binding (*Edelman*), and cannot be enforced by the issuing agency. No pragmatist would call that an action "by which rights or obligations have been determined or from which legal consequences will flow." *Bennett*, 520 U.S. at 177-78.

Even if Texas feels some pressure to do something as a result of the Guidance – though what exactly that might be is not clear given the abstract nature of this challenge – that does not render the Guidance final agency action, as any such pressures would be, at most, "practical, as opposed to legal, ones." *Louisiana State v. United States Army Corps of Engineers*, 834 F.3d 574, 583 (5th Cir. 2016). In any case, there is no allegation that the EEOC's views have pressured Texas to do anything: Texas acknowledges that the EEOC has held the same basic view of the potential for hiring policies to result in to disparate impact discrimination for a quarter of a century (App'x at 113-17), and Texas has not alleged or argued that it has done anything in those many years to change its hiring practices. Far from representing that Texas has done or is doing anything to change or even reexamine its practices in light of the Guidance (or in light of Title VII), the Supplemental Brief expresses doubt whether "Texas agencies *could* even potentially comply [*sic*] with the EEOC's interpretation"; argues that doing so "*would . . .* violate Texas law" without suggesting that a single agency *is* doing so; and implies that agencies have yet to even "begin contemplating hiring felons [*sic*]." Supp. Opp. at 6 (emphasis supplied). *Cf. Texas v. Equal Employment Opportunity Comm'n*, 827 F.3d at 396 (Higginbotham, dissenting) (observing that pressure from outside the Guidance drove the suit).

Texas relies heavily on the contention that any agency document that describes the potential for penalties for certain conduct constitutes final agency action. Supp. Opp. at 13-14. It divines this argument from *Hawkes*' discussion of *Frozen Food Express*. 136 S. Ct. at 1815. But

4

Reply in Support of Supp. Br.

Texas over reads *Hawkes* and *Frozen Foods*. Those cases addressed documents with clearer language and more concrete facts than present here. *Hawkes* involved an unequivocal finding that a specific property constitute waters of the United States; *Frozen Foods* involved an unequivocal finding that a specific commodity was not an exempt agricultural product, 351 U.S. at 43-44. By contrast, the EEOC Guidance does not state that employment decisions that consider felony or misdemeanor arrest or conviction records are always and everywhere forbidden; rather, the Guidance emphasizes the contextual nature of any criminal record inquiry. App'x at 12-15**.** Regardless of whether a document that simply warned regulated parties not to do *A*, *B*, or *C* upon pain of penalties could constitute final agency action, it is a bridge too far to say that a document stating that *A*, *B*, or *C* may constitute forbidden conduct – or may not, depending on the circumstances – determines any rights or obligations or has legal consequences.

Texas also argues that the Guidance is final agency action because it "binds EEOC staff to an interpretation of the statute and forewarns of certain investigation, referral, and legal action to come." Supp. Opp. at 15. But, as defendants pointed out in their opening brief, the question is not whether EEOC employees are bound in some way by the Guidance; the question is whether they are bound in a manner that affects Texas's rights or obligations or results in legal consequences. *AT&T Co. v. E.E.O.C.*, 270 F.3d at 975. They are not. As explained above, the Guidance does not establish a safe harbor, so it does not bind an EEOC employee to approve or deny a request for shelter under a safe harbor provision. Nor does the Guidance bind the government to bring an enforcement action: The Department of Justice, not the EEOC, brings enforcement actions against states on behalf of the federal government and does so at its discretion; even as to private employers, the Guidance does not strip the EEOC of its presumptive discretion regarding whether to initiate enforcement actions, *Heckler v. Chaney*, 470 U.S. 821, 831-32, (1985) (decision whether to enforce presumptively discretionary); App'x at 6 (noting only that the Guidance is for the use of staff "investigating" discrimination charges).

Texas responds that *Hawkes* establishes that an agency action can be final even if it does not bind an agency to bring an enforcement action. Supp. Opp. at 15. True, but defendants'

Reply in Support of Supp. Br.

position is not that an agency action is final only if employees are bound to bring an enforcement action. Rather, defendants' position is that, to the extent Texas argues that an agency action is final *because* of the purported binding effect on agency employees, Texas must demonstrate that the agency employees are bound to act in a manner that affects *Texas's* rights or obligations or results in legal consequences. And, Texas has not shown that EEOC employees are bound to act in any such way, be it through bringing an enforcement action or otherwise.

*AT&T Co. v. E.E.O.C.* is instructive. In that case, the D.C. Circuit concluded that the EEOC's expression of its views of what the law requires in its compliance manual (which resembles the Guidance), App'x at 56-112, did not constitute final agency action because the view would have "force only to the extent the agency can persuade a court to the same conclusion." *AT&T v. E.E.O.C.*, 270 F.3d 973, 976 (D.C. Cir. 2001). Just so here. Texas responds that "[i]n *AT&T*, the agency document merely expressed EEOC's view of the law in a way that did not force a party to change its behavior and did not require EEOC to sue the employer." Supp. Opp. at 15. But this is not a distinction: the same would be said of the Guidance by the *AT&T* court. In *AT&T*, the company said that the EEOC's adoption of a legal position through the compliance manual harmed it, just as the guidance document had harmed the plaintiff in *Appalachian Power Co. v. E.P.A.*, 208 F.3d 1015, 1022 (D.C. Cir. 2000). The State takes the same basic view here. Supp. Opp. at 17 (citing *Appalachian Power*). But the court in *AT&T* rejected that argument because the Compliance Manual did not bind the EEOC to take any action that had legal consequences. *AT&T*, 270 F.3d at 976. This Court should employ the same logic.

Texas closes the final agency action section of its supplemental brief by trying to reframe the debate, insisting that the Guidance constitutes "agency action" because that term is meant to "cover comprehensively every manner in which an agency may exercise its power." Supp. Opp. at 18-19 (quoting *Whitman v. American Trucking Associations*, 531 U.S. 457, 478 (2001)). This argument conflates "final agency action" and "agency action," which are distinct concepts under the APA – the former being narrower than the latter. *Compare* 5 U.S.C. § 551(13) and 5 U.S.C.

§ 704. Indeed, the very paragraph from *American Trucking* quoted by Texas recognizes the distinction. *American Trucking Associations*, 531 U.S. at 478.[1] There was no final agency action in this case before *Hawkes*, and there is none after it. Dismissal is warranted.

## II. Texas Lacks Standing To Sue

Plaintiff's recycled standing arguments have not improved with age. The crux of those arguments is that Texas must "either succumb to the [Guidance] or take the substantial risk of being subjected to abusive investigatory tactics by EEOC, almost certain referral to DOJ for litigation, and liability." Supp. Opp. at 20. But "a page of history is worth a volume of logic," *New York Trust Co. v. Eisner*, 256 U.S. 345, 349 (1921), and decades of history here refute plaintiff's argument. As Texas has recognized, the EEOC's view that hiring policies which include criminal background checks can result in a disparate impact is not new: The agency has espoused it for more than a quarter of a century. *See* App'x at 113-117. Nonetheless, Texas has not alleged or argued that in all that time it has *ever* been subjected to supposed abusive investigatory tactics by the EEOC, sued by the Department of Justice under Title VII for disparate impact discrimination stemming from one of its many different background check-policies, or found liable in any such a suit. (Texas has the burden to establish standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).) Nor has Texas alleged that it – the largest employer in the second largest state in the nation – was forced to "succumb" to the EEOC's view. Its latest brief implies or states that Texas has not changed a single policy. Supp. Opp. at 6.

---

[1] Texas also repeats the canard (*see* MTD Reply at 4-5) that the interpretation of Title VII put forth in the Guidance is a "novel interpretation and a major expansion of Title VII," a proposition for which it cites an amicus brief filed by the United States, See Br. of United States as Amicus Curiae at 7–15, *Bd. of Educ. of City Sch. Dist. of City of N.Y. v. Gulino*, 2008 WL 2219970, No. 07-270 (U.S. May 23, 2008). But contrary to plaintiff's contention, the United States did not argue that "facially neutral state-law hiring requirements do not violate Title VII." Supp. Opp. at 18. Instead, the Government wrote that Title VII's "prohibitions against intentional discrimination and disparate impacts govern a State's employment practices concerning its own employees." *Gulino* Br. at 15 n.7. This interpretation is consistent with Supreme Court precedent. *See Connecticut v. Teal*, 457 U.S. 440. 449 (1982).

7

Reply in Support of Supp. Br.

There is also no basis for Texas to claim that the *Guidance* has had a decisive effect since its issuance in 2012 that the underlying statutory obligation not to discriminate in making employment decisions did not already have. For the proposition that "*[s]ince* its promulgation, the Rule [*sic*] has had a profound effect," Supp. Opp. at 5 (emphasis supplied), Texas cites only two specific instances, neither of which involves Texas. One instance is *EEOC v. Peoplemark, Inc.*, 732 F.3d 584 (6th Cir. 2013), where the investigation began in 2005 and the suit was filed in 2008. *See id*. at 587-88. The other is *EEOC v. Freeman*, 961 F. Supp. 2d 783 (D. Md. 2013), *aff'd on other grounds*, 778 F.3d 463 (4th Cir. 2015), where the investigation began in 2008 and the suit was filed in 2009. 961 F. Supp. 2d at 789. Neither of those cases could have been an "effect," "profound" or otherwise, of Guidance that would not be issued until 2012.[2]

Texas tries to buoy its standing argument by invoking a presumption that an entity that is the object of a regulation has standing to challenge the regulation. Supp. Opp. at 19-20. In their opening brief, defendants identified an insurmountable flaw with this argument – namely, that the Guidance does not trigger this presumption because it does not bind (*i.e*., regulate) Texas. Def. Supp. Br. at 13. Texas parries this by criticizing defendants for conflating the doctrines of standing and final agency action. Supp. Opp. at 19-20. But it is Texas that argues that there should be a presumption in favor of its *standing* because it is the object of a regulation. It is a direct, non-conflated, response to that standing argument to note the Texas is not the object of a regulation because the Guidance is just that—guidance, not a binding regulation. *See, e.g., Summers v. Earth Island Inst*., 555 U.S. 488, 493-94 (2009) (rejecting standing argument based on object-of-regulation presumption where challenged standards "govern only the conduct" of agency employees).

---

[2] Texas's notion that the EEOC's views of Title VII are novel, or that it has only recently been placed between a rock and a hard place by the Guidance, is contradicted by at least one case decided in this Circuit more than thirty-five years ago. *See Davis v. City of Dallas*, 487 F. Supp. 389 (N.D. Tex. 1980) (recognizing disparate impact liability under Title VII where city employer's hiring practices included, among other things, consideration of background checks).

Reply in Support of Supp. Br.

### III. Texas's Challenge to the EEOC Guidelines Is Not Ripe

Texas's claims are unripe for two reasons: the Guidance does not constitute final agency action and Texas's claims are not fit for review because they would be better resolved in a concrete factual setting. Supp. Br. at 15-17. And, as defendants' opening brief notes, Texas's arguments are not aided by *Hawkes*. *See id.* The arguments about final agency action have been restated above. With respect to fitness for review, Texas argues as follows:

> There are only two facts that matter for purposes of pre-enforcement review of Texas' claims. First, state law and policy require many Texas employers to impose categorical bans against convicted felons who apply for jobs. . . . And second, EEOC believes that Texas's policies are unlawful because they never allow Texas to make "individualized" and race-conscious assessments of job applicants that the EEOC somehow thinks Title VII requires. *See* FHR 18-20.

Supp. Opp. at 23.

The first point – stating Texas's view of its own statutes -- is fine as far as it goes. And, if the issue were whether a challenge by civil rights plaintiffs to Texas's statutes was ripe, that point might even matter. But the second point – where Texas distorts the Guidance -- is wrong. In the very first paragraph of the cited pages of the Guidance the EEOC states: "Title VII thus does *not* necessarily require individualized assessment in all circumstances." Guidance at 18 (emphasis supplied). The two examples on the cited pages do not help Texas either. The first (Example 7) sets forth hypothetical facts under which the EEOC would *not* find reasonable cause to believe that discrimination occurred. Guidance at 18-19. That discussion of one circumstance in which the EEOC believes that Title VII would not be violated does not imply that any Texas statute would violate Title VII. The second and final example on the cited pages, Example 8, on pages 19-20, does set forth hypothetical facts on which the EEOC would find reasonable cause for a violation because, among other problems, the hypothetical employer did not perform an individualized assessment. But those hypothetical facts involved a *misdemeanor* conviction.

9

Reply in Support of Supp. Br.

Guidance at 20. Texas distorts the meaning of that example by claiming that it presents a crystallized EEOC decision about Texas's alleged employment laws or policies involving felony convictions. Thus, there is no universal "mutually incompatible interpretation of Title VII" – and there is no claim that is ripe for review.

## CONCLUSION

The Court should dismiss plaintiff's amended complaint for lack of jurisdiction.

DATED:  November 23, 2016

Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

JOHN R. PARKER
United States Attorney

JOSHUA E. GARDNER
Assistant Director, Federal Programs Branch

*s/ Brian G. Kennedy*
BRIAN G. KENNEDY (D.C. Bar No. 228726)
Senior Trial Counsel
JUSTIN M. SANDBERG, (IL Bar No. 6278377)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Mass. Ave. NW, Rm. 7302
Washington, D.C. 20001
Telephone:     (202) 514-5838
Facsimile:      (202) 616-8202
Justin.Sandberg@usdoj.gov
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

      I hereby certify that, on November 23, 2016, a true and correct copy of the foregoing was served by CM/ECF on:

Scott Keller
Austin Nimocks
Andrew Leonie
Andrew Oldham
Arthur D'Andrea
Michael Toth
Office of the Texas Attorney General
209 West 14th Street
P.O. Box 12548
Austin, Texas 70711-2548

                                          s/ *Brian G. Kennedy*
                                          BRIAN G. KENNEDY
                                          Senior Trial Counsel
                                          U.S. Department of Justice

Reply in Support of Supp. Br.