**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION**

| | |
|---|---|
| STATE OF TEXAS,<br>*Plaintiff*,<br><br>v.<br><br>EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, *et al.*,<br>*Defendants*,<br><br>and<br><br>BEVERLY HARRISON and TEXAS STATE CONFERENCE OF THE NAACP,<br><br>*Proposed Defendant-Intervenors.* | Civil Action. No. 5:13-CV-255-C |

**<u>APPENDIX TO MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE</u>**

Corrected & Supplemental Declaration of Beverly Harrison, re: *Texas v. Equal Employment Opportunity Comm'n, et al.*, No. 5:13-cv-00255-C, August 2, 2017 .............. Ex. A. – 0001

Declaration of Dr. Richard Watkins, Chair of the Criminal Justice Committee of the Texas State Conference of the NAACP re: *Texas v. Equal Employment Opportunity Comm'n, et al.,* No. 5:13-cv-00255-C, July 31, 2017 .............................................................. Ex. B – 0004

1

## CORRECTED & SUPPLEMENTAL DECLARATION OF BEVERLY HARRISON

1. My name is Beverly Harrison. I am of legal age and competent to give this declaration. All of the information herein is based on my own personal knowledge unless otherwise indicated.

2. I am 61 years old and, for most of my life, I have lived in Dallas, Texas. Currently, I reside at 3637 Kimballdale Drive in Dallas.

3. I worked for 28 years for the City of Dallas, including in the Marshal's Office, a division of Court and Detention Services, before I retired in 2009.

4. After retiring, I wanted to continue working in a limited capacity in my community and to earn supplemental income. Therefore, I worked as a Certified Nursing Assistant and Home Health Aide for ProCare Home Health, Inc., between 2009 and 2013. In that capacity, among other things, I reminded patients to take their medicine, cooked and cleaned for them, and helped them maintain their hygiene.

5. Then, from 2014 to the present, I have been employed as a school cafeteria worker for the Dallas Independent School District ("DISD").

6. With my other time, I am an avid member of the church that my father founded more than 50 years ago. My responsibilities there include: organizing birthday parties and other events for church members and summer feeding programs for neighborhood children; cooking in the kitchen; running the clothing donation closet; and chairing the hospitality committee.

7. As my employment history and other activities reflect, I enjoy serving the public and my community.

8. In 2013, I applied for a job as a school crossing guard or as a bus monitor with Dallas County Schools ("DCS"). I was given a conditional offer of employment by DCS and began to work as a school crossing guard.

9. I especially love working with children and ensuring their safety is very important to me, as I am both a mother and grandmother myself. For example, when my granddaughter was in elementary school, I picked her up from school every day. Now that she's in middle school, I occasionally pick her up.

10. Therefore, I was excited to apply for a position with DCS. I very much looked forward to the chance of continuing to contribute to my community by looking out for the safety of our children. You never know what a child is going to encounter walking home from school and I knew that I was just the person to watch out for them.

1

**001**

11. And I was delighted when DCS hired me as a school crossing guard. I was so happy to have a chance to give back to others by making sure that the children in my community reached home safely.

12. But, after only eight days working on the job, I was terminated because a criminal background check revealed a nearly 40-year old conviction.

13. The conviction at issue occurred in 1975 when I was young (19 years old). In 1974, I was in an altercation with another woman. I was convicted of aggravated assault in the third degree and sentenced to five years of probation. After completing two years of my probation without incident, a court set aside my conviction and dismissed the indictment. The court's order stated that I was "hereby released from all penalties and disabilities resulting from the Judgement of Conviction in this cause."

14. In the more than 40 years since, I have not been convicted of any other crime.

15. During my interview for a job with the City of Dallas, I had an opportunity to explain the circumstances surrounding this conviction and to put it in context. I was subsequently hired and worked there for 28 years. By contrast, DCS terminated me without providing me with a meaningful opportunity to provide an explanation as to why this conviction did not make me unsuitable for the job.

16. I made a mistake, as people do, when I was young, but I do not think that that mistake should prevent me from working and making money to support myself and my family many decades later. I have already given 28 years of exemplary service to the city of Dallas, including as an employee of the Marshal's Office. But I have much more left to give to my city and community.

17. I feel that I have been unfairly denied the chance to do a job that I loved. I would be a great crossing guard and, based on my previous work history, I believe that I would be a good employee generally. I am disappointed that this opportunity was denied to me. Therefore, I filed a complaint with the Dallas Office of the Equal Opportunity Employment Commission, challenging principally DCS's denial of a job to me based on my criminal background record and in violation of federal and other laws.

18. Because of health challenges, I will not return to DISD as a school cafeteria worker during the upcoming school year and intend to seek other employment in Texas that is less physically onerous. Therefore, I also am concerned that I may be denied jobs in the future based on similar policies to that of DCS that bar individuals like me with criminal convictions from employment even though my conviction is four decades old and I have demonstrated that I can be a valuable and dependable professional. For example, within the past week, on July 31, 2017, I learned that one home health agency would not employ me after it conducted a background check, even though, as above, I've already worked as

a home health aide for several years. It all seems so arbitrary because the very next day on August 1, 2017, I learned that another agency, after conducting a background check, is willing to hire me.

19. I do not understand why the officials in my state, including the Attorney General, defend a policy that would keep me, a long-time public servant and grandmother, and others like me, from earning an honest living and giving back to the people in my community.

\*\*\*

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed in ___DALLAS___ (city), ___DALLAS___ (county), Texas on August ___2___, 2017.

_____
Beverly Harrison

3

003

Aug 02 17 07:39p         214 330 3510         p.4

# DECLARATION OF DR. RICHARD WATKINS

1. My name is Dr. Richard Watkins. I am of legal age and competent to give this declaration. All of the information herein is based on my own personal knowledge unless otherwise indicated.

2. I am Chair of the Criminal Justice Committee of the Texas State Conference of the NAACP ("Texas NAACP"), a subsidiary organization of the National Association for the Advancement of Colored People, Inc. ("NAACP"), a national non-profit, non-partisan interracial membership organization founded in 1909.

3. The Texas NAACP was founded in 1936 and incorporated in 1937, making it the oldest and one of the largest and most significant non-profit organizations in the state of Texas that promotes and protects the rights of Black Americans.

4. I have had held many other positions in the Texas NAACP including President of the Huntsville Branch.

5. The Texas NAACP is headquartered in Austin; the office is located at 7901 Cameron Road, Building 3.

6. The Texas NAACP has over 70 adult branches across Texas and dozens more youth units, and thousands of members who are residents of every region of the state.

7. The Texas NAACP's mission is to ensure equal economic, political, educational, and social rights of all persons, and to eliminate racial hatred and racial discrimination. To achieve these goals, our organization seeks to educate the public about the adverse effects of racial discrimination, enact and enforce federal, state, and local laws securing civil rights, and take any and all lawful action to remove barriers of racial discrimination through democratic processes.

8. My responsibilities as Chair of the Criminal Justice Committee are to address issues of criminal justice discrimination or injustice wherever it exists and to aggressively promote our mission and goals, to encourage all NAACP units in the State to engage in independent action to advance our mission, and to work with the Executive Committee to build relationships with other advocacy organizations that share our policies and objectives.

9. I am a former Warden in the Texas prison system and worked in a liaison capacity in the landmark Texas prison case *Ruiz v. Estelle*. I have testified on criminal justice issues in front of various committees of the Texas Legislature.

10. In my capacity as Chair of the Texas NAACP, I am aware that millions of people in our country have some sort of criminal record, regardless of conviction or any time spent incarcerated.

11. In Texas, millions of its citizens are also likely to be either arrested or convicted of a crime in their lifetime. Each year, a substantial number of Texans are arrested, and many of them will either be incarcerated or placed under state surveillance.

12. These Texans are disproportionately men of color with Black Americans making up a disproportionate number of those in the prison/state jail population as compared to their population in the state. I am aware that it is more likely that Black men, as compared to white men, are expected to spend some time in prison in their lifetime. This is in significant part due to the role of racism in our criminal justice system.

13. I also am aware that each year, thousands of Texans are released from confinement and must reintegrate into society and rejoin our communities. However, upon their return they face barriers to re-entry in the form of employment discrimination.

14. In recent decades and with the ever-advancing technology, criminal background checks have become commonplace (nationally and in Texas) when seeking employment.

15. Many employers here in Texas are completely unwilling to hire anyone who has had contact, especially recent contact, with the criminal justice system, limiting the opportunities that are available to people with criminal records who are trying to find meaningful and gainful employment. It is common for individuals who have had recent contact with the criminal justice system to be unemployed for almost a year afterwards. Those who are able to find employment often earn much less and are relegated to employment that is less likely to last for a long period of time.

16. Those impacted are our neighbors, family members, and are vital to the survival of their loved ones. When adult members of our community are relegated to lower paying jobs, which is often the case with people with criminal records, this affects their children, and the adult's capacity to provide food, shelter, and joy to their children. Economic stressors placed on low income families affect childhood outcomes and family stability.

17. Preclusion from work also prevents those with criminal backgrounds from re-integrating meaningfully back into their community. Without gainful employment, these Texans face an elevated risk of recidivism rather than successful re-integration and rehabilitation.

18. The effects of criminal background checks also disproportionately affect Black Texans. Even if they are not convicted, the effects of an arrest can last a lifetime. Black Texans already face discrimination in the hiring process, and discrimination against people with criminal records further amplifies existing barriers.

19. Therefore, the Texas Attorney General's defense of broad-sweeping bans on hiring people with criminal convictions affects the lives of millions of Texans, including thousands of members of the NAACP in Texas.

20. These statistics are not just numbers for the Texas NAACP. These statistics are our members, our families, and our communities. Some of our members are or were incarcerated or have family members who are or were incarcerated. Many of our members live in communities that are heavily impacted by the criminal justice system and have a disproportionate number of residents with criminal records.

21. When members of our community are incarcerated it depletes the wealth of the neighborhoods in which members of the NAACP in Texas reside. Recovery from the loss of this wealth in our communities, many of which already are low-income, is extremely difficult.

22. The Texas NAACP, along with its branches, furthers its mission by advancing the rights of the formerly incarcerated through affirmative litigation and ex-offender re-entry programs. Local branches do extensive work assisting individuals with convictions to obtain the benefits of full citizenship at home and in the workplace. The Texas NAACP and its branches often does this work in partnership with other advocates in Texas, including the Texas Public Policy Foundation and the Texas Criminal Justice Coalition.

23. For example, the San Antonio branch of the NAACP does extensive outreach to those with criminal records seeking employment. In 2012, the Branch partnered with the public transit authority (VIA Metropolitan Transit) on behalf of ex-offenders to "ban the box." They interviewed over 200 individuals that year who were facing hiring and labor barriers. The San Antonio branch also has met monthly with inmates at the county jail who are facing criminal charges to discuss their legal issues. In addition, it co-chairs a subcommittee of the Re-Entry Council of Bexar County to help ex-offenders with issues like employment, regaining voter registration, obtaining affordable housing, and other means to achieve full citizenship.

24. During recent legislative sessions, the Texas NAACP has engaged in a number of actions related to individuals with criminal records, including: fighting back against efforts to ban second chance hiring ordinances that cities may enact; advocating for Senate Bill 578, which would have required the Texas Department of Criminal Justice to provide comprehensive, county-specific reentry and reintegration resources to individuals being released from prison; and, advocating for House Bill 1510, which would have increased housing options for individuals with criminal records.

25. When Texas's Attorney General defends a sweeping policy that creates additional hurdles for those with criminal records, he forces the Texas NAACP to allocate

significant resources to help its members and constituents secure employment that would otherwise be devoted to other activities. As a result, continued enforcement of this policy severely undermines our organization's capacity to fulfill its stated mission. Instead of directing our efforts to, among other things, job search and training skills, we must instead devote substantial resources to enforcement of Title VII of the Civil Rights Act of 1964 and other antidiscrimination laws.

26. The economic recovery in Texas (and across our nation) has been slow, and the jobs that have returned pay less than many that were initially lost. Creating additional barriers to employment needlessly inflicts harm on the Black communities that have been disproportionately affected by both the criminal justice system and the economic downturn.

27. Indeed, given the impact of criminal records on the lives of Black American individuals and communities, removing barriers to reentry is a national priority for the NAACP. On the federal level, the NAACP supports legislation and policies that increase educational, employment, and housing opportunities for individuals with criminal records. At the same time, the Association provides resources, training and support to state and local units, such as the Texas NAACP and its branches, to assist them in pursuing legislative and policy changes that increase the opportunities available to people with criminal records.

28. Working with governmental, non-profit and corporate partners, the NAACP works to change employers' hiring practices. As a result, the NAACP has successfully convinced companies like Walmart to ban the box, delaying questions about criminal records until after the initial application stage. The NAACP continues to educate employers about the EEOC guidance, which flesh out the legal requirement for a holistic consideration of an applicant's background that takes into account the context of the applicant's criminal record. Through both advocacy and employer engagement, the NAACP continues to work to ensure that employers ban the box and increase opportunities for individuals with criminal records.

29. When members of the NAACP in Texas cannot work, their access to housing is jeopardized, their ability to care for their families is weakened, and meeting many other financial obligations becomes almost impossible.

30. The Texas NAACP believes that barriers against those individuals with criminal records will deny millions of Texans of a fair chance to earn an honest living, support and protect their families, and rejoin society as full, reformed members of the community.

*** 

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed in HUNTSVILLE (city), WALKER (county), Texas on July 31, 2017.

*Richard K Watkins*
Dr. Richard Watkins

5

## **CERTIFICATE OF SERVICE**

I hereby certify that, on August 2, 2017, a true and correct copy of the foregoing was served by CM/ECF all counsel of record.

*s/ Edward B. Cloutman*
Edward B. Cloutman III (Bar No. 04411000)
