IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| TEXAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 5:13-CV-00255-C |
| | ) | |
| EQUAL EMPLOYMENT | ) | |
| OPPORTUNITY COMMISSION, *et al.*, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

## DEFENDANTS' OPPOSITION TO MOTION TO INTERVENE AS OF RIGHT

## INTRODUCTION

This is a case between the State of Texas and two federal agencies: the Equal Employment Opportunity Commission (EEOC) and the United States Department of Justice. Texas wants the Court to, among other things, throw out a guidance document (interpreting Title VII) issued by the EEOC – Consideration of Arrest and Conviction Records in Employment Decisions Under Title VII, No. 915.002 (April 25, 2012) (Guidance) (available at https://www.eeoc.gov/laws/guidance/ arrest_conviction.cfm) – and to prohibit both agencies from issuing right-to-sue letters authorized by Title VII. The Federal Government has been vigorously litigating this case for years, filing three motions to dismiss in this Court – two of which were decided, one of which was mooted – and litigating before the Fifth Circuit. Recently, Defendants asked the Court to postpone a summary judgment deadline to create time for discovery practice, and they took the opportunity to serve Texas with interrogatories, requests for production, and requests for admission. The parties are currently engaged in discussions regarding the sufficiency of Texas' objections and responses.

1

Now, Beverly Harrison and the Texas State Conference of the NAACP (NAACP) (also collectively Movants) seek to intervene as of right[1] as defendants to defend the EEOC's Guidance and the right of the EEOC and Department of Justice to issue right-to-sue letters. As they must in seeking intervention as of right, Movants contend that their interests may not be adequately represented by the federal Defendants. But, of course, the EEOC and Department of Justice have an interest in defending their own prerogatives – and, as highlighted above, have been doing so for years. Skepticism about the "right" (or need) of anyone to intervene in such circumstances is natural, and it is embodied in Fifth Circuit law in the form of two presumptions: 1) that government entities will adequately represent the interests of potential intervenors, and 2) that a party with the same objectives as potential intervenors will adequately represent the interests of the potential intervenors. Harrison and the NAACP concede that these presumptions apply to this case. And would-be intervenors cannot easily overcome these presumptions – they must show an actual misalignment of interests, not just a possibility of divergence. Harrison and the NAACP cannot satisfy this standard: They provide no argument demonstrating an actual divergence of interests between themselves and Defendants.

The motion to intervene as of right should be denied.

## BACKGROUND

The Court has decided two motions to dismiss in this case, Orders, ECF Dckt. Nos. 36, 52, which has also yielded two opinions from the Fifth Circuit (one of which was withdrawn after rehearing by the panel), *Texas v. Equal Employment Opportunity Comm'n,* 827 F.3d 372, 375 (5th Cir.), *reh'g en banc granted, opinion withdrawn*, 838 F.3d 511 (5th Cir. 2016).

---

[1] Movants also seek permissive intervention. Defendants take no position on that request.

Accordingly, there is no need for an exhaustive retelling of its background. A brief recitation of facts will suffice.

The State of Texas has sued the EEOC and Department of Justice. The lawsuit focuses, in part, on the Guidance, which interprets Title VII. (The Department of Justice enforces Title VII against state governmental entities. 42 U.S.C. §§ 2000e-5(f)(1), 2000e-6(a).) The EEOC used the Guidance "to update and consolidate in [one] document all of its prior policy statements about Title VII and the use of criminal records in employment decisions." Guidance at 3. Texas alleges that it employs laws and policies that prohibit the hiring of felons or categories of felons for certain jobs. Second Am. Compl. (SAC) ¶¶ 23-31. And it contends that the Guidance violates substantive and procedural provisions of the APA, SAC ¶48-50, that the Federal Government should be prohibited from issuing right-to-sue letters under Title VII (for claims that hiring bars tied to felony convictions have a disparate impact), *id.* ¶ 44, and that the Court should issue a declaration cementing the State's right to ban felons or categories of felons from "any [ ] job Texas and its Legislature deem appropriate," *id.* at ¶ 43. In June, the Court denied Defendants' most recent motion to dismiss, and set a deadline for filing summary judgment briefs. Order, ECF Dckt. No. 52, at 9. Defendants sought and received an extension of that deadline to make time for discovery. ECF Dckt. Nos. 58 and 59. Defendants then served interrogatories, documents requests, and requests for admission on the State. Texas has answered this discovery, and the parties are discussing the sufficiency of the State's objections and responses. Summary judgment briefs are now due September 14, 2017. ECF Dckt. No. 59.

Harrison and the NAACP want to jump into the fray by intervening as defendants. Memorandum in Support of Mtn. to Intervene (Interv. Memo.), August 2, 2017, ECF Dckt. No. 73. They seek intervention both permissively and as of right. *Id.* at 1. According to the

intervention papers, Harrison was terminated from a position as a crossing guard with the Dallas County Schools, after only eight days on the job, because of a nearly four-decade-old felony conviction. *Id.* at 3-4. The NAACP, among other things, "seek[s] enforcement of and defend[s] federal antidiscrimination laws, such as Title VII." *Id.* at 4. Harrison and the NAACP want to intervene to defend the Guidance and the Federal Government's ability to issue right to sue letters. *Id.* at 11-13.

## ARGUMENT

The Court should reject Harrison's and the NAACP's motion to intervene as of right because Movants cannot overcome the presumption that Defendants adequately represent Movants' interests.

Harrison and the NAACP seek to intervene as of right under Federal Rule of Civil Procedure 24(a)(2). To do so, they must demonstrate (1) that their request is timely, (2) that they have "an interest relating to the property or transaction that is the subject of the action," Fed. R. Civ. P. 24(a)(2); (3) that a decision in the case may harm their ability to protect their interest; and (4) that their interest is inadequately represented by the parties to the suit. *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir. 1984).

To satisfy the fourth element of the test, a movant ordinarily must show only that their interest "may" be inadequately represented. *Sierra Club v. Espy*, 18 F.3d 1202, 1207 (5th Cir.1994). Notwithstanding use of the qualifier "may," however, the burden "cannot be treated as so minimal as to write the requirement completely out of the rule." *Bush v. Viterna*, 740 F.2d 350, 355 (5th Cir.1984). Fifth Circuit case law creates a presumption of adequate representation in two circumstances. *Edwards v. City of Houston*, 78 F.3d 983, 1005 (5th Cir. 1996). "First, when the putative representative is a governmental body or officer charged by law with

4

representing the interests of the absentee, a presumption of adequate representation arises whether the would-be intervenor is a citizen or subdivision of the governmental entity." *Id.* And when this presumption applies, "a much stronger showing of inadequacy is required." *Hopwood v. State of Texas*, 21 F.3d 603, 605 (5th Cir. 1994). More specifically, the movant must demonstrate "that its interest is *in fact* different from that of the [governmental entity] and that the interest will not be represented by [it]." *Hopwood*, 21 F.3d at 605. Second, a presumption of adequate representation exists "when the would-be intervenor has the same ultimate objective as a party to the lawsuit." *Edwards*, 78 F.3d at 1005. To overcome this presumption, a movant must show an "adversity of interest, collusion, or nonfeasance on the part of the existing party . . . ." *Id.*

Harrison and the NAACP concede, as they must, that both presumptions apply to this case. Interv. Memo. at 16. But they contend that the presumptions can be overcome. They do not argue that there is any collusion or nonfeasance on the part of defendants, so the inquiry hinges on the alignment of interests between Defendants and Harrison and the NAACP. Harrison and the NAACP make four basic arguments in support of the contention that they have different interests than defendants: (1) "[r]ecent changes in the federal government's litigation and policy positions reflect a willingness to repeal or weaken protections adopted, promulgated, and enforced during the prior administration, creating a significant risk that Defendants will not adequately and forcefully defend the Guidance," *id.* at 17; (2) "[a]pplicants and Defendants may raise very different arguments in defense of the Guidance, and, thus, do not share identical objectives with regard to its defense," *id.* at 19; (3) "the Supreme Court's analysis of the legislative history of the 1972 amendments to Title VII, providing the EEOC's enforcement authority, explicitly states that the interest of a private party, like Ms. Harrison, and the EEOC do

5

not completely overlap, and thus are in fact different," *id.* at 19-20; and (4) the Movants bring a different perspective to this case because they understand the "real-life effects of absolute bans on hiring people with felony convictions," *id.* at 20-21.

None of Harrison's or the NAACP's arguments is persuasive. First, they argue that the presumptions are overcome because the government may change its position. Interv. Memo. at 16-19. This argument lacks merit. Recall, to overcome the presumption that Defendants, as government agencies, represent their interests, Harrison and the NAACP must demonstrate an actual misalignment of interests, not the mere possibility of one. *E.g., Hopwood*, 21 F.3d at 605 (the movant must demonstrate "that its interest is *in fact* different from that of the [governmental entity] and that the interest will not be represented by [it]"). But Movants' first argument is based on speculation, not fact. Defendants have not changed their position in this case. To the contrary, they continue to vigorously litigate it, as shown by the fact that, just over a month ago, they sought and received an amendment of the briefing schedule to serve the State with interrogatories, requests for production, and requests for admission. *See* Order, ECF Dckt. No. 59. Texas has now answered the discovery, but Defendants have not left the matter at that: the parties are currently engaged in discussions about the sufficiency of the responses and objections provided by Texas. In short, the facts contradict Movants' speculation, so their argument fails.

Second, Harrison and the NAACP also insist that they may raise different arguments than Defendants. Interv. Memo. at 19. As an example, they contend that Defendants' view that the Guidance is not "legally binding and does not carry legal consequences . . . may affect the zealousness with which they approach the defense of that important Guidance." *Id.* In other words, Movants suggest that Defendants may think the Guidance unimportant, unlike them. Not so. The EEOC took the time to formulate and issue the Guidance, notwithstanding that, in its

6

view, the Guidance lacked binding force. Moreover, Defendants have litigated this case to the court of appeals and back with the view that the Guidance is not binding, so there is nothing about Defendants' position on the (non)binding nature of the document that dictates a less than full-throated defense. *See, e.g.*, Supplemental Brief in Support of Dismissal, Oct. 24, 2016, ECF Dckt. No. 47. Also, this argument fails because, like the first, it similarly dwells in the realm of speculation, in this instance about whether Defendants' view of the Guidance "may" affect their defense of it.

  Harrison's and the NAACP's other example of a divergence in litigation strategies is that "Defendants may seek to defend broadly their power to promulgate and enforce the Guidance, regardless of whether Defendants intend to use that power against Texas's discriminatory hiring laws" whereas the Movants "seek[ ] that the government maintain that enforcement power in a form that can be used specifically against the Texas law that took her job away. . . ." Interv. Memo. at 19. This argument fares no better. For one thing, it too is speculative, relying on movants' suppositions about what "may" happen. For another, the argument is internally inconsistent: "[D]efend[ing] broadly" the "power to promulgate" the Guidance would not be antithetical to anything that Movants want, as they are squarely in favor of the Guidance.[2] Finally, the argument is too vague to overcome the presumptions in favor of representation: How might "defend[ing] broadly" the "power to promulgate" the Guidance not maintain "enforcement power in a form that can be used specifically against [Texas]"? Harrison and the

---

[2] The reference to "enforce[ing]" the Guidance seems to be a slip, for Movants do not elsewhere indicate that they believe that the EEOC or Department of Justice would ever enforce the Guidance, as opposed to Title VII. *See* Interv. Memo. at 2 (quoting the Guidance for the proposition that employment policies can be subject to Title VII liability).

7

NAACP do not say, and such vague statements should not carry the day in the face of the two presumptions of adequate representation.

Third, Harrison and the NAACP argue that the Supreme Court held in *General Telephone Company of the Northwest. v. EEOC*, 446 U.S. 318, 326 (1980), that the EEOC does not have identical interests to private litigants, so, Movants continue, it has different ones. Interv. Memo. at 20. To support their argument, Harrison and the NAACP quote the following passage from *General Telephone*: "The amendments did not transfer all private enforcement to the EEOC and assign to that agency exclusively the task of protecting private interests. The EEOC's civil suit was intended to supplement, not replace, the private action." 446 U.S. at 326 (quoted at p. 20 of the Interv. Memo.). This case also involves the Department of Justice, of course, but presumably Movants would contend the general point holds, *i.e.*, there remains a place for enforcement by private individuals. This is true but irrelevant. The question is not whether private parties may sometimes sue under Title VII to challenge alleged workplace discrimination when the EEOC or Department of Justice do not. Rather, in this case, the question is whether the EEOC and Department of Justice, who are already parties, will adequately represent the interests of the NAACP and Harrison – or, more precisely, whether Movants can overcome the presumption that they will. They cannot: No facts demonstrate that the EEOC and Department of Justice have different interests from Movants. That there may (or may not) be a divergence of interest in some future enforcement case or cases – thereby permitting private enforcement – is irrelevant for today. The EEOC and Department of Justice represent Movants' interests insofar as this case is concerned, and that is enough.

Finally, Harrison and the NAACP maintain that they should be allowed to intervene as of right because they have insight into the real-world effects of felon-hiring bans that government

agencies lack.  Interv. Memo. at 20.  That may be the case, and Defendants welcome Harrison and the NAACP to share any relevant information they may have.  *Hopwood,* 21 F.3d at 605 (rejecting motion to intervene and noting that while "the [Black Pre-Law Association] and [Thurgood Marshall Legal Society] may have ready access to more evidence than the State, we see no reason they cannot provide this evidence to the State").  But the focus of the representation inquiry is on alignment of interests, not experiences.  With respect to interests in the litigation, Harrison and the NAACP have not shown any misalignment, let alone any sufficient to overcome the two presumptions that they admit apply to this case.

## **CONCLUSION**

The Court should deny Movants' request to intervene as of right.

Dated:  August 21, 2017

Counsel for Defendants:

CHAD A. READLER
Acting Assistant Attorney General

JOHN R. PARKER
United States Attorney

JOSHUA E. GARDNER
Assistant Director, Federal Programs Branch

 /s/  Justin  M. Sandberg
JUSTIN M. SANDBERG (Ill. Bar No. 6278377)
JAMES R. POWERS (TX. Bar No. 24092989)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue NW
Washington, DC 20001
(202) 514-5838
justin.sandberg@usdoj.gov

9

## **CERTIFICATE OF SERVICE**

I certify that on August 21, 2017, I served Defendants' Opposition to Motion to Intervene as of Right, via the CM/ECF System, on:

Counsel for Plaintiff:

>Scott Keller
>Austin Nimocks
>Andrew Leonie
>Andrew Oldham
>Arthur D'Andrea
>Michael Toth
>David Hacker
>Office of the Texas Attorney General
>209 West 14th Street
>P.O. Box 12548
>Austin, Texas 70711-2548

Counsel for Proposed Intervenors:

>Edward B Cloutman , III
>Cloutman & Cloutman, L.L.P.
>3301 Elm Street
>Dallas, TX 75226-2562
>
>Coty Montag
>NAACP Legal Defense and Educational Fund, Inc.
>1444 I Street
>NW 10th Floor
>Washington, DC 20005
>
>Dana Lossia
>Levy Ratner
>80 Eighth Avenue
>8th Floor
>New York, NY 10011
>
>Elizabeth Lauren Avery
>National Employment Law Project
>2030 Addison Street
>Suite 310
>Berkeley, CA 94704
>
>Leah C Aden
>NAACP Legal Defense and Educational Fund, Inc.

40 Rector Street, 5th Floor
New York, NY 10006

Nana Wilberforce
NAACP Legal Defense and Educational Fund, Inc.
40 Rector St.
New York, NY 10006

Natasha Merle
NAACP Legal Defense and Educational Fund Inc.
40 Rector St
5th Floor
New York, NY 10006

Robert H Stroup
Levy Ratner PC
80 Eighth Avenue
8th Floor
New York, NY 10011

Samuel Spital
NAACP Legal Defense and Educational Fund Inc.
40 Rector St
5th Floor
New York, NY 10006

         *s/ Justin M. Sandberg*
         JUSTIN M. SANDBERG
         Trial Attorney, Federal Programs Branch