**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**LUBBOCK DIVISION**

| | |
|---|---|
| TEXAS, | |
| *Plaintiff,* | |
| v. | Case No. 5:13-CV-00255-C |
| EQUAL EMPLOYMENT OPPOR- TUNITY COMMISSION; VICTORIA A. LIPNIC, in her official capacity as Act- ing Chair of the Equal Employment Op- portunity Commission; and JEFFER- SON B. SESSIONS, III, in his official ca- pacity as Attorney General of the United States, | |
| *Defendants.* | |

**PLAINTIFF'S OPPOSITION TO PUTATIVE INTERVENORS'**
**MOTION TO INTERVENE**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................iii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 1

I.      The Court Should Deny Putative Intervenors' Motion for Failure to
        Attach a Proposed Pleading.................................................................................. 1

II.     Putative Intervenors Possess No Right to Intervene. ....................................... 2

        A.      Putative Intervenors' Motion Is Untimely. ............................................. 3

        B.      Putative Intervenors Lack Substantial Interests. ................................. 6

                1.      Ms. Harrison lacks an interest................................................... 7

                2.      The NAACP lacks an interest. .................................................. 11

        C.      Adjudication Without Putative Intervenors Will Not Impair
                Their Interests........................................................................................ 13

        D.      The Federal Government Adequately Represents Putative
                Intervenors' Interests............................................................................ 14

III.    The Court Should Deny Putative Intervenors' Request for Permissive
        Intervention........................................................................................................ 18

IV.     Putative Intervenors May Seek to Participate as *Amici Curiae*..................... 21

CONCLUSION.................................................................................................................. 21

CERTIFICATE OF SERVICE ......................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Associated Indus. of Ala. v. Train,*
    543 F.2d 1159 (5th Cir. 1976) ............................................................... 17

*Atlantis Dev. Corp. v. United States,*
    379 F.2d 818 (5th Cir. 1967) ................................................................. 17

*Black Fire Fighters Association of Dallas v. City of Dallas,*
    19 F.3d 992 (5th Cir. 1994) ................................................................... 13

*Brumfield v. Dodd,*
    749 F.3d 339 (5th Cir. 2014) .................................................................... 2

*Bush v. Viterna,*
    740 F.2d 350 (5th Cir. 1984) ...........................................................*passim*

*Diamond v. Charles,*
    476 U.S. 54 (1986) ................................................................................. 1

*Diaz v. S. Drilling Corp.,*
    427 F.2d 1118 (5th Cir. 1970) ............................................................... 16

*Edwards v. City of Hous.,*
    78 F.3d 983 (5th Cir. 1996) ............................................................. 15, 20

*EEOC v. Air Exp. Int'l, USA, Inc.,*
    No. 3:11-CV-2581-L, 2011 WL 6409121 (N.D. Tex. Dec. 21, 2011) ..................... 20

*Entergy Gulf States La., LLC v. EPA,*
    817 F.3d 198 (5th Cir. 2016) ................................................................. 14

*Haspel & Davis Milling & Planting Co. Ltd. v. Bd. of Levee Comm'rs,*
    493 F.3d 570 (5th Cir. 2007) ................................................................. 17

*Hopwood v. Texas,*
    21 F.3d 603 (5th Cir. 1994) ......................................................... 15, 17, 18

*Izzio v. Century Partners Golf Mgmt., LP,*
    No. 3:14–CV–03194–P, 2015 WL 5472845 (N.D. Tex. Sept. 15, 2015) ............... 16

*Johnson v. City of Dall.,*
    155 F.R.D. 581 (N.D. Tex. 1994) ...................................................*passim*

*King v. Univ. Healthcare Sys., L.C.,*
  645 F.3d 713 (5th Cir. 2011) ............................................................. 1

*Kneeland v. Nat'l Collegiate Athletic Ass'n,*
  806 F.2d 1285 (5th Cir. 1987) ........................................................... 18

*League of United Latin Am. Citizens, Council No. 4434 v. Clements,*
  884 F.2d 185 (5th Cir. 1989) ........................................................ 19, 20

*League of United Latin Am. Citizens, Dist. 19 v. City of Boerne,*
  659 F.3d 421 (5th Cir. 2011) ............................................................. 6

*Lucas v. McKeithen,*
  102 F.3d 171 (5th Cir. 1996) .......................................................... 4, 5

*Nat'l Fed'n of Indep. Bus. v. Perez,*
  5:16-CV-066-C, 2016 WL 8193279 (N.D. Tex. Nov. 16, 2016) ........................... 15

*In re Nat'l Gypsum Co.,*
  No. Civ.A.3:94-cv-2452-R, 1999 WL 20952 (N.D. Tex. Jan. 8, 1999) .................... 4

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.,*
  732 F.2d 452 (5th Cir. 1984) ........................................................ 6, 13

*Ouch v. Sharpless,*
  237 F.R.D. 163 (E.D. Tex. 2006) ....................................................... 19

*Richardson v. United Steel Workers of America,*
  864 F.2d 1162 (5th Cir. 1989) ....................................................... 9, 10

*Rigco, Inc. v. Rauscher Pierce Refsnes, Inc.,*
  110 F.R.D. 180 (N.D. Tex. 1986) ........................................................ 6

*Roussell v. Brinker Int'l, Inc.,*
  No. CIV.A. H-05-3733, 2009 WL 6496504 (S.D. Tex. Jan. 26, 2009) ............... 9, 10

*Saldano v. Roach,*
  363 F.3d 545 (5th Cir. 2004) ........................................................ 6, 16

*Save Our Springs All. Inc. v. Babbitt,*
  115 F.3d 346 (5th Cir. 1997) ........................................................... 4

*Sierra Club v. Espy,*
  18 F.3d 1202 (5th Cir. 1994) .....................................................*passim*

*Staley v. Harris Cty.,*
  160 F. App'x 410 (5th Cir. 2005) ...................................................... 20

*Stallworth v. Monsanto Co.*,
    558 F.2d 257 (5th Cir. 1977) ............................................................................. 3, 16

*Stout v. Baxter Healthcare Corp.*,
    282 F.3d 856 (5th Cir. 2002) ............................................................................. 7, 12

*Taylor Commc'ns Grp., Inc. v. Sw. Bell Tel. Co.*,
    172 F.3d 385 (5th Cir. 1999) ............................................................................. 19

*Terrebonne Par. Branch NAACP v. Jindal*,
    No. 14-69-JJB-EWD, 2016 WL 2743525 (M.D. La. May 11, 2016) ....................... 4

*Town of Chester, N.Y. v. Laroe Estates, Inc.*,
    137 S. Ct. 1645 (2017) ...................................................................................... 6

*Trans Chem. Ltd. v. China Nat'l Mach. Imp. & Exp. Corp.*,
    332 F.3d 815 (5th Cir. 2003) ............................................................................. 18

*United States v. Louisiana*,
    669 F.2d 314 (5th Cir. 1982) ............................................................................. 3

*United States v. Louisiana*,
    90 F.R.D. 365 (E.D. La. 1981) ........................................................................... 16

*United States v. Moore*,
    485 F.2d 1165 (5th Cir. 1973) ........................................................................... 17

*United States v. Texas Educ. Agency*,
    138 F.R.D. 503 (N.D. Tex. 1991) ....................................................................... 17

*Villas at Parkside Partners v. City of Farmers Branch*,
    245 F.R.D. 551 (N.D. Tex. 2007) ............................................................... 11, 12, 20

*Villas at Parkside Partners v. City of Farmers Branch*,
    577 F. Supp. 2d 858 (N.D. Tex. 2008) ................................................................ 11

*Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Commission*,
    834 F.3d 562 (5th Cir. 2016) ............................................................................. 11

*Waste Mgmt. of La., LLC v. River Birch, Inc.*,
    No. CIV.A. 11-2405, 2013 WL 5175620 (E.D. La. Sept. 12, 2013) ....................... 19

*Watson v. Fort Worth Bank & Trust*,
    487 U.S. 977 (1988) .......................................................................................... 7

*Williams v. City of Dallas*,
    No. Civ.A. 3:97-cv-0296-D, 1999 WL 375564 (N.D. Tex. June 8, 1999) ............... 1

*XL Specialty Ins. Co. v. G & GM Consultants, Inc.*,
    No. 6:15-0639, 2015 WL 13065132 (W.D. La. Aug. 20, 2015) ................................ 1

*Yazdchi v. Am. Honda Fin. Corp.*,
    No. Civ.A. 3:05-cv-0737-L 2005 WL 1943611 (N.D. Tex. Aug. 12, 2005) .............. 1

## Constitutional Provisions

Tex. Const. art. 7, § 1 ................................................................................................ 8

## Statutes

42 U.S.C. § 2000e-5 .............................................................................................. 8, 9

Tex. Labor Code § 21.202(a) ................................................................................... 9

## Rules

Fed. R. Civ. P. 17 .................................................................................................. 13

Fed. R. Civ. P. 24 ............................................................................................*passim*

## Other Authorities

7C Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure §
    1909 (1986) .......................................................................................................... 15

U.S. Equal Emp't Opportunity Comm'n, *What You Can Expect After You
File a Charge*, https://www.eeoc.gov/employees/process.cfm (last visited
Aug. 21, 2017) ....................................................................................................... 9

## INTRODUCTION

After nearly four years of litigation, and on the brink of the parties' dispositive motion deadline, putative intervenors seek leave to participate as full-fledged parties, inject facts particularized to one person and unrelated to disparate impact theory, and mount defenses already provided by the federal defendants. But they also seek to exempt themselves from discovery and other normal responsibilities of parties. The Court should reject their intervention.

First, putative intervenors failed to comply with Rule 24(c) by providing a proposed pleading with their motion, a deficiency which, standing alone, gives the Court grounds to deny the motion. Second, they fail to satisfy the requirements for intervention as of right: their motion is untimely, they lack a substantial interest in this matter, they will not be prejudiced by a denial of intervention, and the federal government will adequately represent their interests. Third, putative intervenors fail to satisfy the standards for permissive intervention. Rather than cluttering the case with another party at this late hour, the Court should deny their motion and direct putative intervenors to seek *amici curiae* status, if they so choose.

## ARGUMENT

### I.    The Court Should Deny Putative Intervenors' Motion for Failure to Attach a Proposed Pleading.

When a nonparty seeks to intervene, he must file a "timely motion" satisfying the standards for intervention as of right or permissively, Fed. R. Civ. P. 24(a) & (b), and the motion must "be accompanied by a pleading that sets out the claim or defense for which intervention is sought," Fed. R. Civ. P. 24(c). Putative intervenors seek to intervene in this matter as defendants, but did not file a proposed answer that will allow the Court, or the parties, to evaluate whether putative intervenors' claims and defenses have common questions of law or fact with the underlying matter. *See Dia-*

1

*mond v. Charles*, 476 U.S. 54, 76–77 (1986) (discussing the need for a proposed pleading to help evaluate whether there are common questions of law or fact). For this reason alone—failure to attach a proposed pleading—the Court should deny putative intervenors' motion. *See King v. Univ. Healthcare Sys., L.C.*, 645 F.3d 713, 727 (5th Cir. 2011) (noting the inadequacy of a motion to intervene filed without a pleading); *XL Specialty Ins. Co. v. G & GM Consultants, Inc.*, No. 6:15-0639, 2015 WL 13065132, at \*2 (W.D. La. Aug. 20, 2015) (denying motion to intervene because it was not accompanied with a pleading that set out the claim for which intervention was sought); *Yazdchi v. Am. Honda Fin. Corp.*, No. Civ.A. 3:05-cv-0737-L 2005 WL 1943611, at \*2 n.4 (N.D. Tex. Aug. 12, 2005) (noting the deficiency of a Rule 24 motion to intervene because it failed to include a proposed pleading); *Williams v. City of Dallas*, No. Civ.A. 3:97-cv-0296-D, 1999 WL 375564, at \*1 n.1 (N.D. Tex. June 8, 1999) (same).

Even if putative intervenors were to cure this defect, and renew their motion to intervene with a proposed pleading attached on the date of this filing (Aug. 21, 2017), Plaintiff and Defendants' deadline to respond would be twenty-one days later, or Sept. 11, 2017—just three days before the parties are required to file their cross-motions for summary judgment. Putative intervenors' failure to provide a proposed pleading is a fatal, incurable defect.

## II.   Putative Intervenors Possess No Right to Intervene.

The Federal Rules permit intervention as of right when the movant "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). In the Fifth Circuit, a party seeking to intervene as of right must satisfy four requirements:

(1) The application must be timely;

(2) the applicant must have an interest relating to the property or transaction that is the subject of the action;

2

(3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; and

(4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*Brumfield v. Dodd*, 749 F.3d 339, 341 (5th Cir. 2014) (quoting *Sierra Club v. Espy*, 18 F.3d 1202, 1204–05 (5th Cir. 1994)). "If a would-be intervenor fails to meet any one of these requirements then it cannot intervene as a matter or right." *Bush v. Viterna*, 740 F.2d 350, 354 (5th Cir. 1984). Here, putative intervenors fail each requirement.

### A.    Putative Intervenors' Motion Is Untimely.

Courts evaluate the timeliness of a motion to intervene by considering four factors:

(1) The length of time during which the would-be intervenor actually knew or reasonably should have known of its interest in the case before it petitioned for leave to intervene;

(2) the extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as it knew or reasonably should have known of its interest in the case;

(3) the extent of the prejudice that the would-be intervenor may suffer if intervention is denied; and

(4) the existence of unusual circumstances militating either for or against a determination that the application is timely.

*Espy*, 18 F.3d at 1205 (citing *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264–66 (5th Cir. 1977)). Under each of these factors, putative intervenors' motion is untimely.

First, putative intervenors waited until the month before summary judgment motions are due to reassert their request to intervene, despite the fact that they have known about the case since it was filed in 2013. This is similar to *United States v. Louisiana*, 669 F.2d 314, 315 (5th Cir. 1982), where the NAACP tried to intervene in a lawsuit that was two years old. The district court denied the motion without a hearing, and, after an appeal, the Fifth Circuit remanded the case for a hearing on the motion. *Id.* Several years passed and "the NAACP never re-urged the motion for intervention but instead monitored the case as amicus curiae." *Id.* But when the case

3

appeared to be moving toward trial, NAACP filed a second motion to intervene, which a three-judge district court denied because (1) it was untimely, (2) the United States adequately represented NAACP's interests, and (3) NAACP had other means of protecting its rights. *Id.* The Fifth Circuit affirmed. *See id.* (finding a "delay of over four years . . . between our remand and the filing of the NAACP's second motion to intervene" was "an adequate and sufficient ground for its denial").

Like *Louisiana*, putative intervenors sat on their hands until the final inning. Texas filed its original complaint on November 4, 2013. ECF No. 1. Over six months later, on May 22, 2014, putative intervenors filed their first motion to intervene. ECF No. 34. In August 2014, the Court dismissed Texas's complaint, ECF No. 36, though the Fifth Circuit remanded the case for further proceedings, ECF No. 42. Other than their initial motion to intervene in May 2014, putative intervenors sought neither to intervene on appeal, nor to participate in the appeal as *amici curiae*. Moreover, once the case returned to this Court in September 2016, putative intervenors remained silent, even though the Court considered and denied a new motion to dismiss and ordered the parties to submit dispositive motions by July 31, 2017, ECF No. 52, which was later extended to September 14, 2017, ECF No. 59.

Now, nearly a year since this case returned to this Court, about a month before dispositive motions are due, and despite many opportunities to make their opinions known, putative intervenors claim intervention is warranted because "the litigation is in its earliest stages." Mot. 5, ECF No. 72. But putative intervenors knew about this case since the beginning and failed to press their intervention. Their request now is too little, too late, and should be denied. *See Save Our Springs All. Inc. v. Babbitt,* 115 F.3d 346, 348 (5th Cir. 1997) (holding three month delay in seeking intervention too long when party knew its interests would be adversely affected, warranting denial of the motion); *Lucas v. McKeithen,* 102 F.3d 171, 173 (5th Cir. 1996) (denying inter-

4

vention when nonparties knew or should have known about their interest in the law-suit for more than a year before seeking to intervene); *Terrebonne Par. Branch NAACP v. Jindal*, No. 14-69-JJB-EWD, 2016 WL 2743525, *3 (M.D. La. May 11, 2016) (denying intervention when the litigation was "well beyond the initial stages" after discovery and filing of summary judgment motions); *In re Nat'l Gypsum Co.*, No. Civ.A.3:94-cv-2452-R, 1999 WL 20952, at *4 (N.D. Tex. Jan. 8, 1999) (finding putative intervenor's delay of five months in filing motion to warrant its denial).

Second, allowing putative intervenors to intervene now will significantly prej-udice Texas. Putative intervenors assert that they will not disrupt discovery and only wish to participate in summary judgment briefing. But this increases, not diminishes, the prejudice to the current parties.

If the Court allows putative intervenors into the case on the eve of summary judgment, then the current parties cannot take any discovery of them to test the va-lidity of their interests and factual allegations absent another delay in dispositive motions, which Texas wants to avoid. In other words, putative intervenors will get all the benefits of intervention—party status at the summary judgment stage and the potential to appeal an adverse ruling—but apparently none of the responsibilities to expose themselves to discovery (or even pleadings) normally required of parties.

Moreover, though the issues in this case are largely legal in nature, putative intervenors seek to inject facts regarding their legal position—depriving Texas of the ability to test the validity of those allegations in discovery. This puts Texas at a dis-advantage and results in prejudice by the "inordinate delay" that could result if more discovery is necessary. *Lucas*, 102 F.3d at 173. Putative intervenors cannot have their cake and eat it too.

Third, unlike the prejudice to Texas, putative intervenors suffer no prejudice if the Court denies their intervention as the tardiness of their motion is self-inflicted. They did not seek intervention on appeal. They did not participate as *amici curiae* on

appeal. And they did not re-urge intervention when the case returned to this Court. Putative intervenors' lack of interest for the past three years exemplifies the absence of any prejudice that could befall them if the Court denies intervention at this late juncture.

Finally, the unusual silence of putative intervenors over a course of several years despite their claim of a substantial interest, illustrates the untimeliness of the motion. On appeal, and afterward in this Court, putative intervenors remained silent. They could have expressed any concerns as *amici curiae*, or moved to intervene on appeal, or even in this Court when the case returned. But they did not. Only now, a month before dispositive motions are due, putative intervenors want party status without any of the discovery obligations of parties. This unusual position, considered alongside the other timeliness factors, warrants denying their motion to intervene as untimely.

### B.    Putative Intervenors Lack Substantial Interests.

In addition to their motion being untimely, putative intervenors lack a substantial interest in this matter. The second requirement of intervention as of right is that a potential intervenor must demonstrate an interest related to the property or transaction that forms the basis of the controversy. *Saldano v. Roach*, 363 F.3d 545, 551 (5th Cir. 2004). "Not any interest, however, is sufficient." *Id*. The interest "must be direct, substantial, and legally protectable." *Espy*, 18 F.3d at 1207 (quotation marks and citation omitted). "What is required is that the interest be one which the substantive law recognizes as belonging to or being owned by the applicant." *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.* ("*NOPSI*"), 732 F.2d 452, 464 (5th Cir. 1984). Thus, "the claim the applicant seeks intervention in order to assert be a claim as to which the applicant is the real party in interest." *Id*. This "inquiry is a flexible one which focuses on the particular facts and circumstances surrounding

6

each application measured by a practical rather than technical yardstick." *Rigco, Inc. v. Rauscher Pierce Refsnes, Inc.*, 110 F.R.D. 180, 182 (N.D. Tex. 1986).

Although it is impossible to know for certain without a proposed pleading, which putative intervenors failed to file, *see supra* Part I, it appears they seek relief beyond what the federal defendants seek in defending this lawsuit. Thus, they must prove Article III standing, which they failed to do. *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017); *League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 428 (5th Cir. 2011).

Texas challenges the EEOC's Rule on felon hiring, of which it is an object, ECF No. 52 at 7–8, among other reasons, because the EEOC failed to demonstrate with evidence and statistics specific to Texas, as an employer, that Texas's policy decisions to disqualify people with prior felony convictions from certain employment opportunities disparately impacts people based on race. Putative intervenors "construe the interest requirement far too broadly and fail to demonstrate a sufficient interest in the case to warrant intervention under Rule 24(a)." *Johnson v. City of Dall.*, 155 F.R.D. 581, 584 (N.D. Tex. 1994).

Putative intervenors claim a "sufficient, indeed strong interest," but that unsubstantiated claim is not enough. Mot. 3. Under their "conception of the interest requirement, the number of those allowed to intervene of right would be virtually unbounded." *Johnson*, 155 F.R.D. at 584. Neither Ms. Harrison nor the NAACP possess an interest, let alone a substantial one, in this lawsuit.

### 1.    Ms. Harrison lacks an interest.

Ms. Harrison lacks an interest for two reasons. First, she does not allege that her individual experience with the Dallas County Schools is the result of a policy that has a disparate impact based on racial classifications. Second, the particularized nature of her facts and circumstances lack commonality with Texas's employment practices.

Ms. Harrison alleges that the Dallas County Schools terminated her employment based on a prior felony conviction. A *prima facie* disparate impact case is established when a plaintiff shows (1) a specific employment practice that appears facially neutral, and (2) statistical analysis that shows the challenged practice has a disparate impact on a protected group. *Stout v. Baxter Healthcare Corp.*, 282 F.3d 856, 860 (5th Cir. 2002); *see also Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1988) ("Once the employment practice at issue has been identified, causation must be proved; that is, the plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group.").

Ms. Harrison does not provide evidence to establish a *prima facie* disparate impact case. She does not identify a specific employment practice of Dallas County Schools, such as a policy or practice of refusing to hire persons with felony convictions. Harrison Decl. ¶¶ 1–19, ECF No. 74 at 001–003. She simply asserts that in *her* situation, Dallas County Schools terminated her employment based on her prior conviction. *Id*. ¶¶ 8–12. Even assuming Ms. Harrison could satisfy the first prong of the *prima facie* case, she does not provide any statistical evidence that Dallas County Schools alleged policy of refusing to hire people with felony convictions has a disparate impact based on race. *Id*. Thus, Ms. Harrison has not shown that the underlying dispute over the EEOC's power to use disparate impact theory to regulate Texas's employment practices will have any effect on her alleged employment discrimination claim against Dallas County Schools.

Ms. Harrison also asserts that she already filed a claim with the EEOC concerning her experience with Dallas County Schools. *Id*. ¶ 17. To grant her intervention in this matter allows her to circumvent the well-established EEOC process for evaluating the merits of her claim and determining whether she has a right to sue. 42 U.S.C. § 2000e-5. Because Ms. Harrison and the NAACP failed to file a proposed

8

pleading with their motion to intervene, Rule 24(c), one may only guess as to what claims and defenses she plans to assert in this case concerning her experience with Dallas County Schools. In fact, because her intervention is based solely on those experiences, and not based on a disparate impact theory, one must assume that she intends to litigate her claim against Dallas County Schools in this case. But Ms. Harrison does not have a right to be in court litigating her claim against Dallas County Schools because there is no evidence that she received a right to sue letter from EEOC. Even if she did, this case is not the proper venue for adjudicating those claims because Texas school districts are independent sovereigns, Tex. Const. art. 7, § 1, and, in any event, allowing her to intervene would give her two bites at the apple.[1]

Furthermore, when a "would-be intervenor['s] interests depend on individualized factual determinations, the movant[ ] do[es] not have a legally protectable interest in the proceedings." *Roussell v. Brinker Int'l, Inc.*, No. CIV.A. H-05-3733, 2009 WL 6496504, at *7 (S.D. Tex. Jan. 26, 2009). Ms. Harrison also lacks a legally protectable interest in this case because her interest depends on individualized factual determinations.

In *Richardson v. United Steel Workers of America*, 864 F.2d 1162, 1164 (5th Cir. 1989), former refinery employees sued their union for failing to warn them of the refinery's statutory right to replace them if they went on strike. A group of additional

---

[1] Ms. Harrison's alleged EEOC charge against Dallas County Schools is also curiously long-lasting. She alleges that she applied for a job with Dallas County Schools in 2013. Harrison Decl. ¶ 8. She does not state when she was hired, but assuming she applied on December 31, 2013, and was not hired until a full year later on December 31, 2014, she only worked for Dallas County Schools until January 8, 2015. *Id.* ¶ 12. Under federal and Texas law, she had 180 days to file a charge of discrimination with either the EEOC or Texas Workforce Commission Civil Rights Division. 42 U.S.C. § 2000e-5(e); Tex. Labor Code § 21.202(a). Thus, she should have filed a charge by July 7, 2015. EEOC reports that in 2015, it took nearly 10 months to investigate a charge, if not faster. U.S. Equal Emp't Opportunity Comm'n, *What You Can Expect After You File a Charge*, https://www.eeoc.gov/employees/process.cfm (last visited Aug. 21, 2017). If Ms. Harrison's charge had merit, she should have received a right-to-sue letter by May 7, 2016. So Ms. Harrison's claim did not merit a right-to-sue letter, or she already filed her own lawsuit, or she had the opportunity to do so and chose not to file. These are additional reasons for denying her intervention now.

former employees attempted to intervene. *Id.* at 1170. The Fifth Circuit affirmed the district court's denial of intervention. Even though putative intervenors had the same claims against the union, "each [had] to prove his own knowledge, and reliance thereon, concerning the consequences of a strike." *Id.* Thus, they lacked a direct, substantial, legally protectable interest in the proceedings. *Id.*

Similarly, in *Roussell*, 2009 WL 6496504, at *7, a group of employees sought to intervene in a Fair Labor Standards Act case concerning alleged minimum wage violations by Chili's Bar & Grill restaurants. Although they had interests under the statute, each movant "represent[ed] a separate set of facts that would have to be tried individually, and would present significant delay, and trial manageability problems." *Id.* at *8. Thus, the court held the employees could not intervene, either as of right or permissively. *Id.* at *10 & 12.

Ms. Harrison's attempt to intervene in this matter should be rejected for the same reasons as those present in *Richardson* and *Roussell*. The individualized facts concerning her complaint against Dallas County Schools do not relate to the APA challenge in this case. Indeed, injecting Ms. Harrison's experiences into this case would present significant delay, because, as discussed above, the parties would need to take discovery from her. And if Ms. Harrison may intervene, then who couldn't? Every person that alleges they were denied a job because of a past criminal history has the same right intervene as her. "Who in the whole [State] would not have an interest in such [a claim] and therefore right to intervene under [putative intervenors'] formulation?" *Johnson*, 155 F.R.D. at 584. Thus, Ms. Harrison's individualized claims, defenses, and facts are not a direct, substantial, and legally protectable interests in these proceedings.

### 2.    The NAACP lacks an interest.

Like Ms. Harrison, the NAACP lacks a direct, substantial, and legally protect-able interest in this matter because it has not alleged a legally protectable disparate impact theory and it is not the real party in interest.

In *Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Commission*, 834 F.3d 562 (5th Cir. 2016), the Fifth Circuit permitted an association of stores holding liquor licenses to intervene in a lawsuit between Wal-Mart and the Texas Alcoholic Bever-age Commission claiming that the Commission's regulatory system operated exclu-sively for the benefit of the association in violation of the Constitution. The associa-tion's interest in the regulatory system that governed its members' licenses was suf-ficient for intervention. *Id.* at 566. Likewise, in *Espy*, 18 F.3d at 1207, the Fifth Cir-cuit allowed two trade associations representing timber purchasers to intervene in a case brought by environmental groups against the United States Forest Service over its management of forests in Texas. The court determined that the trade associations had legally protectable property interests in existing timber contracts that the law-suit threatened. *Id.*

By contrast, in *Villas at Parkside Partners v. City of Farmers Branch*, the Fed-eration for American Immigration Reform ("FAIR") moved to intervene as a defend-ant in a case challenging a city ordinance that required tenants to provide proof of citizenship or eligible immigration status as a prerequisite for entering into a lease. 245 F.R.D. 551, 554 (N.D. Tex. 2007); *see also Villas at Parkside Partners v. City of Farmers Branch*, 577 F. Supp. 2d 858, 861–62 (N.D. Tex. 2008) (describing the un-derlying facts). FAIR is a nonprofit with 200,000 members, including some who owned and rented property in Farmers Branch. 245 F.R.D. at 553. The Court denied FAIR's motion to intervene and held that it lacked a substantial interest in the liti-gation, despite its policy purposes that aligned with the ordinance. *Id.* at 554. The Court reasoned that "[i]f FAIR was allowed to intervene in this case, then any citizen

of Farmers Branch, and even those outside the city, would arguably have a right to intervene in the case," which would "open the floodgates" to any intervention. *Id.*

*Villas at Parkside Partners* grounded its holding on *Johnson v. City of Dallas*, another case where intervention was denied to a public interest group. There, business associations moved to intervene in a case challenging the constitutionality of Dallas ordinances relating to the homeless. 155 F.R.D. at 583. They argued that an injunction against the ordinance adversely affected their business interests. *Id.* The Court denied the motion to intervene and held that the movants construed the "substantial interest" requirement too broadly and failed to demonstrate a particular interest in the case. *Id.*

*Villas at Parkside Partners* and *Johnson* require the denial of NAACP's motion. NAACP broadly claims an interest in "furthering its organizational mission of eliminating racial barriers in employment practices." Defs.' Br. 13, ECF No. 73. This includes eliminating racial barriers caused by bans on hiring felons, and helping those with criminal convictions obtain employment. *Id.* It also claims an interest in ensuring that the EEOC can issue right-to-sue letters. *Id.* But "[w]ho in the whole [State] would not have an interest in such [a mission] and therefore right to intervene under [putative intervenors'] formulation?" *Johnson*, 155 F.R.D. at 584. NAACP does not allege an interest in justifying the Rule under a disparate impact theory. It points to generalizations about "[m]any employers here in Texas" being unwilling to hire felons. Watkins Decl. ¶ 15, ECF No. 74 at 005. It discusses "criminal background checks . . . disproportionately affect[ing] Black Texans." *Id.* ¶ 18. It also points to data about Black Texans in the criminal justice system. Defs.' Br. 6. But nowhere does the NAACP provide specific statistics justifying the imposition of EEOC's Rule on any particular Texas government employer. That is the issue in this case and what putative intervenors must show to demonstrate a substantial interest. *Stout*, 282 F.3d at 860.

12

NAACP's reliance on *Black Fire Fighters Association of Dallas v. City of Dallas*, 19 F.3d 992, 994–95 (5th Cir. 1994), lends no support to its position. There, the Fifth Circuit granted intervention to the Dallas Fire Fighters' Association because it had a direct interest in the consent decree that would govern the promotional opportunities of its members. Here, NAACP's interests are generalizations, like those in *Villas at Parkside Partners* and *Johnson*, and do not point to any concrete and particular legally-protectable interest that warrants their intervention in this case.

Additionally, NAACP is not the real party in interest for the claims and defenses it purports to assert. "The real party in interest requirement of Rule 17(a), applies to intervenors as well as plaintiffs, as does also the rule that a party has no standing to assert a right if it is not his own." *NOPSI*, 732 F.2d at 464 (citations and quotation marks omitted). According to putative intervenors' evidence, NAACP rests its claims on the experiences of its members. But it does not provide any specific evidence concerning its members who have been adversely affected by pre-Guidance hiring standards in Texas.

Ms. Harrison is not a member of the NAACP, so it cannot bootstrap its interest to her alleged employment experiences. Nor does it provide any statistics demonstrating that felon hiring policies cause a disparate impact based on race for a particular Texas employer. As the Fifth Circuit has shown in *Wal–Mart* and *Espy*, and as held in *Villas at Parkside Partners* and *Johnson*, associations like the NAACP must show something more than just a generalized interest in the subject and outcome of the case to merit intervention. The Court should deny putative intervenors' motion because they lack a substantial interest in this matter.

### C.    Adjudication Without Putative Intervenors Will Not Impair Their Interests.

Putative intervenors also fail to satisfy the third intervention as of right requirement—that the movant "must be so situated that the disposition of the action

may, as a practical matter, impair or impede his ability to protect his interest." *Espy*, 18 F.3d at 1207. Of course, putative intervenors' failure to demonstrate a cognizable interest in this matter "may moot this third prong of the analysis." *Johnson*, 155 F.R.D. at 585. Moreover, if the Court declares the Rule unlawful, then the federal defendants may rethink how they want to achieve the ultimate goal of the Rule and approach it differently. *Id.* If Texas is successful in challenging the Rule, putative intervenors claim that Ms. Harrison and members of the NAACP may be blocked from employment opportunities, may have less legal protection, and the work of the NAACP will be threatened. Defs.' Br. 13–16. But NAACP may continue to assert its purported interests outside a judicial forum, and can continue to "address, and ha[s] been addressing, [its] concerns without the necessity of [ ] intervening in this suit." *Johnson*, 155 F.R.D. at 586.

Moreover, Ms. Harrison already filed an EEOC charge concerning Dallas County Schools. Adjudication of that matter, which she states is based on several potential legal claims, some of which are irrelevant to this case, through those well-established administrative avenues, and which provide a right to sue in the end, demonstrates that she will not be prejudiced if denied intervention. Harrison Decl. ¶¶ 12, 17, ECF No. 74 at 002. Denying putative intervenors' motion will not impair their interests.

### D. The Federal Government Adequately Represents Putative Intervenors' Interests.

Putative intervenors fail to demonstrate that the federal government—which created the Rule—will not adequately defend their interests. While the burden of demonstrating inadequate representation is "minimal," the burden "cannot be treated as so minimal as to write the requirement completely out of the rule." *Entergy Gulf States La., LLC v. EPA*, 817 F.3d 198, 203 (5th Cir. 2016) (citations and quotations marks omitted).

14

In the Fifth Circuit, there are two presumptions of adequate representation. "First, when the putative representative is a governmental body or officer charged by law with representing the interests of the absentee, a presumption of adequate representation arises whether the would-be intervenor is a citizen or subdivision of the governmental entity." *Edwards v. City of Hous.*, 78 F.3d 983, 1005 (5th Cir. 1996) (citation omitted); *see also Hopwood v. Texas*, 21 F.3d 603, 605 (5th Cir. 1994) ("But where the party whose representation is said to be inadequate is a governmental agency, a much stronger showing of inadequacy is required." (citing 7C Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1909 (1986))); *Johnson*, 155 F.R.D. at 586 (finding when "the existing representative in the suit is the government, there is a presumption of adequate representation"). "To overcome this presumption, the applicant must show 'that its interest is in fact different from that of the [governmental entity] and that the interest will not be represented by [it].'" *Edwards*, 78 F.3d at 1005 (quoting *Hopwood* 21 F.3d at 605). This first presumption is limited to matters of sovereign interest. *Id.* Second, courts presume adequate representation "when the would-be intervenor has the same ultimate objective as a party to the lawsuit. In such cases, the applicant for intervention must show adversity of interest, collusion, or nonfeasances on the party of the existing party to overcome the presumption." *Id.* (citations omitted).

Putative intervenors' interest in this matter is in the preservation of the Rule, an interest shared by the federal government and demonstrated through its zealous defense of this lawsuit. Putative intervenors cannot reasonably contend that the Department of Justice lacks the experience necessary to defend the legality of a federal agency's Rule. The federal government is well experienced in litigating constitutional and APA issues, *Johnson*, 155 F.R.D. at 586, even recently in this Court, *see, e.g., Nat'l Fed'n of Indep. Bus. v. Perez*, 5:16-CV-066-C, 2016 WL 8193279, at *1 (N.D. Tex.

Nov. 16, 2016) (DOJ representing the U.S. Department of Labor in APA challenge to Persuader Rule).

Putative intervenors claim that Ms. Harrison's individual experiences and those of members of the NAACP will inform the factual background of this case. But this case involves legal questions, with no need for particularized facts best asserted in an as-applied context. "Indeed, representation is not inadequate simply . . . where the applicant and the existing party have different views on the facts." *Izzio v. Century Partners Golf Mgmt., LP*, No. 3:14–CV–03194–P, 2015 WL 5472845, at * 3 (N.D. Tex. Sept. 15, 2015) (citations and quotation marks omitted). And Ms. Harrison's interests with respect to Dallas County Schools will be adequately vindicated by EEOC's processing of her particular complaint. *See United States v. Louisiana*, 90 F.R.D. 365, 367 (E.D. La. 1981) (denying intervention because putative intervenor's interests in alleged employment discrimination against faculty will be vindicated by bringing a separate lawsuit).

Moreover, putative intervenors' interests are not inadequately represented simply because the federal government may make different arguments in defense of the EEOC's Rule. Mere "tactical differences do not make inadequate the representation of those whose interests are identical." *Bush*, 740 F.2d at 358; *see also Saldano*, 363 F.3d at 555 (finding that the Texas Attorney General did not inadequately represent a district attorney's interests simply because he "would have made different decision[s]" concerning legal strategy and argumentation).

Putative intervenors' motion is thus distinguishable from prior cases in which courts have found an applicant's interest inadequately represented. *See Stallworth*, 558 F.2d 257 (no existing party voiced applicant's concerns); *Diaz v. S. Drilling Corp.*, 427 F.2d 1118, 1125 (5th Cir. 1970) (no party viewed the applicant's claims favorably). In fact, putative intervenors' motion is more closely aligned with those cases in which courts have determined that the burden of showing inadequacy of representation

have not been met. *See Haspel & Davis Milling & Planting Co. Ltd. v. Bd. of Levee Comm'rs*, 493 F.3d 570, 579 (5th Cir. 2007); (denying intervention when intervenor's broader interests did not align with the narrower issues in the case); *Hopwood*, 21 F.3d at 605 (denying intervention to associations because Texas adequately represented their interests and any factual information they sought to add to the litigation could be given to Texas for its defense); *Associated Indus. of Ala. v. Train*, 543 F.2d 1159, 1160–61 (5th Cir. 1976) (denying intervention to Alabama in suit against EPA challenging validity of water quality standards for Alabama because Alabama's position was identical to the EPA's, there was no showing that there was a defense or claim on behalf of Alabama that could not be asserted by EPA, and there was no aspect of the case that would be illuminated by Alabama's presence in the suit); *United States v. Moore*, 485 F.2d 1165 (5th Cir. 1973) (holding denial of intervention to taxpayer as not prejudicial since taxpayer was adequately represented by existing party who sought to assert precisely the position taxpayer sought to raise); *United States v. Texas Educ. Agency*, 138 F.R.D. 503, 506–07 (N.D. Tex. 1991) (finding no inadequate representation in desegregation case involving federal government despite its alleged lack of knowledge of local facts). Therefore, this is not a case in which we can say that putative intervenors are "without a friend in this litigation." *Bush*, 740 F.2d at 358 (quoting *Atlantis Dev. Corp. v. United States*, 379 F.2d 818, 825 (5th Cir. 1967)).

Putative intervenors also provide no evidence of adversity of interests, collusion, or nonfeasance. First, other than the fact that putative intervenors provide no evidence of it, the absence of collusion and nonfeasance is evident from the federal government's continued vigorous defense of the Rule, even after the change in presidential administrations. Having no evidence of adversity, putative intervenors erect a straw man to create the impression of contrary interests between them and the federal government. They assert that the new presidential administration may not

enforce the Rule with the same vigor as the previous administration, and cite purported examples from other cases. But generalizations about why the federal government changed positions in other cases hardly demonstrates adversity of interest here when the EEOC continues to defend its Rule. Moreover, "the mere possibility that a party may at some future time enter into a settlement cannot alone show inadequate representation." *Id.* The one case putative intervenors cite where the EEOC and the Department of Justice took different positions involved those agencies filing opposing amicus briefs on a contentious topic. Here, EEOC is DOJ's client and calls the shots on how the case should proceed. Every indication is that it intends to continue a vigorous defense.

For these reasons, the Court should deny putative intervenors' motion to intervene as of right.

## III. The Court Should Deny Putative Intervenors' Request for Permissive Intervention.

Putative intervenors also fail to satisfy the requirements for permissive intervention. Rule 24(b) provides: "Upon timely application anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common." Even if the requirements of Rule 24(b) are met, however, permissive intervention remains "wholly discretionary with the district court." *Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285, 1289 & n.2 (5th Cir. 1987) (alteration omitted). A denial of permissive intervention is reviewed only for "clear abuse of discretion" and can be reversed only in "extraordinary circumstances." *Trans Chem. Ltd. v. China Nat'l Mach. Imp. & Exp. Corp.*, 332 F.3d 815, 822 (5th Cir. 2003). Perhaps for that reason, the Fifth Circuit has never reversed a denial of permissive intervention. *Kneeland*, 806 F.2d at 1289–90; *accord Hopwood*, 21 F.3d at 606 ("As we have noted, we have never reversed a lower court's decision on Rule 24(b) intervention.").

As discussed, putative intervenors' claims and defenses (as far as one can tell without a proposed pleading) do not have common questions of law and fact with this case. *See supra* Part II.B. This case concerns the legality of a federal agency's Rule on hiring practices based on alleged racial discrimination that, *inter alia*, lacks any justification under a disparate impact theory.

To exercise its discretion over a request for permissive intervention, the Court must consider not only the existence of common questions of law or fact, but also three more factors:

> (1) "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties";
> (2) "whether intervention is likely to contribute significantly to the development of the underlying factual issues"; and
> (3) "whether [the] intervenor is adequately represented by other parties."

*Waste Mgmt. of La., LLC v. River Birch, Inc.*, No. CIV.A. 11-2405, 2013 WL 5175620, at *3 (E.D. La. Sept. 12, 2013) (citing Rule 24(b) and *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 884 F.2d 185, 189 (5th Cir. 1989)); *accord Ouch v. Sharpless*, 237 F.R.D. 163, 166 (E.D. Tex. 2006) (denying permissive intervention). Here, all three factors weigh against intervention.

First, granting intervention would unduly delay and prejudice the adjudication of Texas's claims. As the Fifth Circuit observed, "[a]dditional parties always take additional time." *Bush*, 740 F.2d at 359 (internal quotation omitted). "Even if they have no witnesses of their own, they are the source of additional questions, briefs, arguments, motions and the like which tend to make the proceeding a Donnybrook Fair." *Id*. Putative intervenors here not only have Ms. Harrison as a witness, they potentially have all of NAACP's members as witnesses. This means more discovery, which exponentially increases the cost and duration of the litigation, something which the parties have no interest in increasing. All of this interferes with "the ability of the original parties to . . . have the court resolve [their dispute] expeditiously." *Taylor*

*Commc'ns Grp., Inc. v. Sw. Bell Tel. Co.*, 172 F.3d 385, 389 (5th Cir. 1999). That is particularly true here, where putative intervenors seek intervention at the eleventh hour, four years into the case and a month before dispositive motions are due. If they become parties, they will only cause more delay and prejudice to the adjudication of Texas's claims. "[T]he intrusion of Movants into this litigation would do little more than needlessly increase costs and delay disposition of the case." *Johnson*, 155 F.R.D. at 586; *see Villas at Parkside Partners*, 245 F.R.D. at 556 (denying permissive intervention because adding an intervenor to the litigation would unduly delay the proceedings).

Second, putative intervenors will not "contribute significantly to the development of the underlying factual issues." *Clements*, 884 F.2d at 189. Although the federal defendants requested discovery from Texas, the issues in this case are legal in nature, so the development of additional facts will undermine expeditious resolution of the matter, not contribute significantly to it. Moreover, even the factual circumstances they purport to raise on behalf of Ms. Harrison and the NAACP's members—the racial barriers in employment practices—do not align with the disparate impact issues in this case.

Third, as stated above, the federal government adequately represents putative intervenors. *See supra* Part II.D. They share with the federal government the same ultimate objective—namely, a finding that the Rule is lawful. And they failed to rebut the presumption of adequate representation by demonstrating "adversity of interest, collusion, or nonfeasance." *Edwards*, 78 F.3d at 1005 (citation omitted). This alone is sufficient grounds for denying permissive intervention. *See, e.g., Staley v. Harris Cty.*, 160 F. App'x 410, 414 (5th Cir. 2005) (denial of permissive intervention was proper where another party "adequately represents [intervenor's] interests"); *EEOC v. Air Exp. Int'l, USA, Inc.*, No. 3:11-CV-2581-L, 2011 WL 6409121, at *3 (N.D. Tex. Dec.

21, 2011) (denying intervention to employees allegedly subjected to hostile work environment and national origin discrimination because EEOC adequately represented their interests after it brought action in response to their charge). The Court should deny putative intervenors' request for permissive intervention.

## IV.    Putative Intervenors May Seek to Participate as *Amici Curiae.*

Nonparties who wish to comment on cases that interest them should seek leave to participate as *amici curiae. See Johnson*, 155 F.R.D. at 586 ("The issues involved are primarily legal, and for that reason, as well as those discussed above, the Court concludes that Movants could adequately voice whatever concerns to the Court they have by appearing as amici rather than as intervenors."). Because they fail to satisfy the standards for intervention under Rule 24, putative intervenors may seek leave to participate as *amici curiae.*

## CONCLUSION

Putative intervenors' motion to intervene, both as of right or permissively, should be denied.

Respectfully submitted this the 21st day of August, 2017.

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY D. STARR
Deputy First Assistant Attorney General

MICHAEL C. TOTH
Special Counsel to the First Assistant
Attorney General

AUSTIN R. NIMOCKS
Associate Deputy Attorney General

*/s/David J. Hacker*
DAVID J. HACKER
Senior Counsel
Texas Bar No. 24103323
david.hacker@oag.texas.gov

21

Office of Special Litigation
ATTORNEY GENERAL OF TEXAS
P.O. Box 12548, Mail Code 009
Austin, Texas 78711-2548
(512) 936-1414
(512) 936-0545 Fax

*ATTORNEYS FOR PLAINTIFF*

## CERTIFICATE OF SERVICE

I, David J. Hacker, hereby certify that on this the 21st day of August, 2017, a true and correct copy of the foregoing document was transmitted using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

*/s/David J. Hacker*
David J. Hacker