# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### LUBBOCK DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 5:13-CV-00255-C |
| | ) | |
| EQUAL EMPLOYMENT | ) | |
| OPPORTUNITY COMMISSION, *et al.*, | ) | |
| | ) | |
| Defendants | ) | |
| _____ | ) | |

## <u>MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

Defendants' Memo. in
Support of Summary Judgment

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

BACKGROUND ..................................................................................................5

ARGUMENT ......................................................................................................9

I.    The Court Should Dismiss Count I for Lack of Jurisdiction, or, in the Alternative,
      Enter Judgment in Favor of Defendants ................................................................9

      A.    Texas' Request for a Declaration Regarding the Validity of Its Hiring
            Practices is Unripe and Meritless..............................................................9

            1.    The Request is Unripe..........................................................................9

                  a.    The Claim is Not Fit for Review...........................................10

                  b.    There is No Hardship to Texas if the Court Withholds Review ............15

            2.    Texas' Claim for a Declaration Regarding the Validity of Its Hiring
                  Practices is Meritless............................................................16

      B.    Texas' Requests for a Declaration Regarding the Interpretation of Title VII
            and Defendants' Ability to Issue Right to Sue Letters Fail ......................20

II.   The Court Should Dismiss Count II for Lack of Jurisdiction or, in the Alternative,
      Enter Judgment in Favor of Defendants ............................................................22

      A.    Texas Lacks Standing to Pursue Count II................................................23

      B.    The Procedural Challenges to the Guidance Fail....................................27

      C.    The Substantive Challenge to the Guidance Fails ..................................34

CONCLUSION....................................................................................................38

## TABLE OF AUTHORITIES

**CASES**                                                              **PAGE(S)**

*Air Transport Ass'n of Am. v. FAA*,
    291 F.3d 49 (D.C. Cir. 2002) ................................................................... 31

*Allison v. Citgo Petroleum Corp.*,
    151 F.3d 402 (5th Cir. 1998) ........................................................... 17, 22

*Am. Hosp. Ass'n v. Bowen*,
    834 F.2d 1037 (D.C. Cir. 1987) ............................................................. 32

*Am. Mining Congress v. Mine Safety & Health Admin.*,
    995 F.2d 1106 (D.C. Cir. 1993) ....................................................... 29, 30

*Ass'n of Cmty. Orgs. for Reform Now v. Fowler*,
    178 F.3d 350 (5th Cir. 1999) ................................................................. 24

*Associated Builders & Contractors of Tex., Inc. v. Nat'l Labor Relations Board*,
    826 F.3d 215 (5th Cir. 2016) ........................................................... 34, 35

*Bauer v. Texas*,
    341 F.3d 352 (5th Cir. 2003) ........................................................... 23, 25

*Brown Express, Inc. v. United States*,
    607 F.2d 695 (5th Cir. 1979) ..................................................... 27, 30, 32

*Cal. Fed. Sav. & Loan Ass'n v. Guerra*,
    479 U.S. 272 (1987) ............................................................................. 26

*Caston v. Methodist Med. Ctr. of Ill.*,
    215 F. Supp. 2d 1002 (C.D. Ill. 2002) .................................................. 36

*Cent. Tex. Telephone Coop., Inc. v. FCC*,
    402 F.3d 205 (D.C. Cir. 2005) .............................................................. 31

*Clapper v. Amnesty Int'l*,
    568 U.S. 398 (2013) ............................................................................. 23

*Clouser v. Espy*,
    42 F.3d 1522 (9th Cir. 1994) ........................................................... 11, 12

*Collin Cty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods*,
    915 F.2d 167 (5th Cir. 1990) .........................................................*passim*

*Davis v. City of Dallas*,
    777 F.2d 205 (5th Cir. 1985) ............................................................... 19

*Dothard v. Rawlinson*,
    433 U.S. 321 (1977) ............................................................... 5, 15, 36

*EEOC v. Arabian Am. Oil Co.*,
    499 U.S. 244 (1991) ............................................................... 28

*El v. Southeastern Penn. Transp. Auth.*,
    479 F.3d 232 (3d Cir. 2007) ...................................................... *passim*

*Evans v. Martin*,
    496 F. App'x 442 (5th Cir. 2012) ............................................... 32

*Fertilizer Inst. v. U.S. EPA*,
    935 F.2d 1303 (D.C. Cir. 1991) ................................................. 31

*Gen. Elec. Co. v. Gilbert*,
    429 U.S. 125 (1976) ............................................................... 28

*Green v. Mo. Pac. R.R. Co.*,
    549 F.2d 1158 (8th Cir. 1977) ............................................... 37, 38

*Green v. Mo. Pac. R.R. Co.*,
    523 F.2d 1290 (8th Cir. 1975) ........................................ 31, 36, 37

*Griggs v. Duke Power Co.*,
    401 U.S. 424 (1971) ............................................................... 5, 17

*Hoctor v. USDA*,
    82 F.3d 165 (7th Cir. 1996) ..................................................... 30

*Int'l Shortstop, Inc. v. Rally's, Inc.*,
    939 F.2d 1257 (5th Cir. 1991) ....................................... 3, 17, 18, 19

*Levin v. Delta Air Lines*,
    730 F.2d 994 (5th Cir. 1984) ................................................ 18, 19

*Lopez v. City of Houston*,
    617 F.3d 336 (5th Cir. 2010) ................................................... 10

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ............................................................ 11, 23

Defendants' Memo. in
Support of Summary Judgment

*Machete Prods., LLC v. Page,*
    809 F.3d 281 (5th Cir. 2015) .................................................................. 23

*McCain v. United States,*
    No. 2:14-cv-92, 2015 WL 1221257 (D. Vt. Mar. 17, 2015) ...................... 36

*Middle South Energy, Inc. v. City of New Orleans,*
    800 F.2d 488 (5th Cir. 1986) .............................................................. 11, 13

*Nat'l R.R. Passenger Corp. v. Morgan,*
    536 U.S. 101 (2002) .................................................................................. 28

*Orix Credit All., Inc. v. Wolfe,*
    212 F.3d 891 (5th Cir. 2000) .............................................................. 10, 11

*Perez v. Mortg. Bankers Ass'n,*
    135 S. Ct. 1199 (2015) ........................................................................ 29, 30

*Princeton Univ. v. Schmid,*
    455 U.S. 100 (1982) .......................................................................... 10, 12

*Professionals & Patients for Customized Care v. Shalala,*
    56 F.3d 592 (5th Cir. 1995) ..................................................................... 30

*Reed v. Reno,*
    146 F.3d 392 (6th Cir. 1998) ................................................................... 12

*Regions Ins., Inc. v. Ace Prop. & Cas. Ins. Co.,*
    80 F. Supp. 3d 730 (M.D. La. 2015) ........................................................ 11

*Severance v. Patterson,*
    566 F.3d 490 (5th Cir. 2009) ................................................................... 10

*Shalala v. Guernsey Mem'l Hosp.,*
    514 U.S. 87 (1995) .................................................................................... 33

*Shell Offshore Inc. v. Babbitt,*
    238 F.3d 622 (5th Cir. 2001) ................................................................... 30

*Skidmore v. Swift & Co.,*
    323 U.S. 134 (1944) .................................................................................. 28

*Splane v. West,*
    216 F.3d 1058 (Fed. Cir. 2000) ......................................................... 32, 33

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) .................................................................................25, 27

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) .............................................................................................25

*Texas v. EEOC*,
   838 F.3d 511 (5th Cir. 2016) (Mem.) ..............................................................8, 9

*Texas v. EEOC*,
   827 F.3d 372 (5th Cir. 2016) .....................................................................8, 16, 35

*Texas v. EEOC*,
   5:13-cv-255-C, 2014 WL 4782992 (N.D. Tex. Aug. 20, 2014) ...........................8

*Texas v. United States*,
   809 F.3d 134 (5th Cir. 2015) ........................................................................27, 28

*Texas v. United States*,
   787 F.3d 733 (5th Cir. 2015) .............................................................................26

*Texas v. United States*,
   523 U.S. 296 (1998) ...................................................................................*passim*

*Town of Chester, N.Y. v. Laroe Estates, Inc.*,
   137 S. Ct. 1645 (2017) ......................................................................................23

*Tribble v. Chuff*,
   642 F. Supp. 2d 737 (E.D. Mich. 2009) ...........................................................10

*U.S. Army Corps of Engineers v. Hawkes*,
   136 S. Ct. 1807 (2016) ........................................................................................8

*Vermont Agency of Natural Res. v. U.S. ex rel. Stevens*,
   529 U.S. 765 (2000) ...........................................................................................25

*Waldon v. Cincinnati Pub. Schools*,
   941 F. Supp. 2d 884 (S.D. Ohio 2013) ........................................................31, 36

*Wallace v. Magnolia Family Servs.*,
   Civil Action No. 13-4703, 2013 WL 6198277 (E.D. La. Nov. 27, 2013) ...........36

*Wallace v. Methodist Hosp. Sys.*,
   271 F.3d 212 (5th Cir. 2001) .............................................................................35

*Williams v. Compassionate Care Hospice*,
   Civil No. 16-2095, 2016 WL 4149987 (D.N.J. Aug. 3, 2016) ............................................... 36

## FEDERAL STATUTES

5 U.S.C. § 553 .......................................................................................................... 27, 29
5 U.S.C. § 704 ............................................................................................................... 28
5 U.S.C. § 706 ............................................................................................................... 20
28 U.S.C. § 2201 .............................................................................................................. 1
28 U.S.C. § 2202 .............................................................................................................. 1
42 U.S.C. § 2000e-2 ............................................................................................. 20, 22, 36
42 U.S.C. § 2000e-3 ........................................................................................................ 20
42 U.S.C. § 2000e-5 ................................................................................................... *passim*
42 U.S.C. § 2000e-6 .......................................................................................................... 7
42 U.S.C. § 2000e-7 ..................................................................................................... 6, 26

Civil Rights Act of 1991,
   Pub. L. No. 102-166, 105 Stat. 1071 ...................................................................... *passim*

## STATE STATUTES

Tex. Occ. Code § 1701.312 ............................................................................................ 5, 8
Tex. Health & Safety Code § 250.006 ........................................................................... 5, 8

## RULES & REGULATIONS

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 13
Fed. R. Civ. P. 56 .................................................................................................... 38dispa
Fed. R. Civ. P. 65(d) ..................................................................................................... 14
29 C.F.R. § 1601.28 ........................................................................................................ 7

## <u>INTRODUCTION</u>

A lawsuit can be an effective problem-solving device.  But Texas's suit – against the United States Equal Employment Opportunity Commission (EEOC) and the United States Department of Justice – offers "solutions" in search of problems.

In Count I of the Second Amended Complaint, the State seeks a declaration, under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, that its felony conviction related employment practices – *i.e*., its practices prohibiting felons or certain categories of felons from obtaining or retaining jobs with the State – do not constitute disparate impact discrimination under Title VII of the Civil Rights Act of 1964.  Second Amended Compl. (SAC) ¶ 43, ECF No. 62.  The Declaratory Judgment Act permits a plaintiff to obtain an early resolution of a claim that the defendant intends to file against it.  *Collin Cty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 171 (5th Cir. 1990) (hereinafter *HAVEN*) ("[I]t is the underlying cause of action of the defendant against the plaintiff that is actually litigated.").  But the EEOC cannot sue Texas under Title VII, so Texas has no need to secure a declaration regarding the validity of a claim that the EEOC cannot file.  The Department of Justice does have the power to sue Texas regarding its conviction-related employment practices, but it has never done so and has given no indication that it intends to do so anytime soon.

Count I also contains claims under the Declaratory Judgment Act for (i) a declaration that the Defendants cannot enforce the interpretation of Title VII contained in a document issued by the EEOC entitled *Consideration of Arrest and Conviction Records in Employment Decisions Under Title VII of the Civil Rights Act of 1964*, EEOC Enforcement Guidance Number 915.002 (Apr. 25, 2012) (Guidance), App'x at 1, and an injunction to the same effect; and (ii) a declaration that Defendants cannot issue right-to-sue letters to individuals claiming that the State's

employment practices violate Title VII "pursuant" to the interpretation of Title VII contained in the Guidance, and an injunction to the same effect.  SAC ¶ 44.  These claims similarly attempt to "solve" nonexistent problems.  First, the EEOC cannot sue Texas under Title VII, so Texas need not – and cannot – secure declaratory and injunctive relief against the EEOC on a Title VII claim.  Second, the Department of Justice cannot file a Title VII claim against the State of Texas with regard to these claims:  Title VII allows the Department of Justice to sue a state to stop unlawful employment practices, not to get a declaration about abstract interpretive questions regarding Title VII, including about Defendants' authority to issue right-to-sue letters.  Accordingly, Texas cannot use the Declaratory Judgment Act to bring these claims against the Department of Justice.

In Count II, Texas has also challenged the Guidance under the Administrative Procedure Act; the State seeks declaratory and injunctive relief as to this claim.  SAC ¶¶ 46-50, Demand for Judgment.  But Texas cannot meet its burden of demonstrating that it has suffered a continuing injury as a result of the Guidance or that any future one is certainly impending.  The State contends that the Guidance threatens its sovereignty, but discovery has established that Texas fully exercises its sovereignty by applying its felony conviction-related employment practices in the manner it chooses.  Moreover, the State has not alleged that it plans to change its approach.  And neither Defendant has argued that any particular state law or practice violates Title VII (and is therefore preempted).  Texas's sovereignty, then, has been untouched, and the State cannot establish that the Guidance has harmed it in any legally meaningful way.

Both counts, in short, are legally superfluous.  Their superfluity is not a detail.  Article III of the Constitution – in this case expressed through the ripeness and standing doctrines – prohibits federal courts from exercising "the Judicial power" to do anything other than solve *concrete* legal

problems in cases or controversies between adverse parties. Texas's claims do not satisfy all of these conditions. Dismissal for lack of jurisdiction is warranted.

In any event, the "solutions" offered by Texas lack merit. Texas apparently seeks a declaration that its felony conviction-related employment practices are job related and consistent with business necessity, and thus legally permissible even if they result in a disparate impact on a protected class. Texas is not entitled to this declaration for at least two reasons. First, Texas has not identified necessary evidence regarding the jobs at issue. For example, it has failed to identify all of the thousands of jobs to which such a declaration would apply (notwithstanding a request in discovery to do so). Second, even if Texas's bar on the hiring of felons disparately impacted a protected group under Title VII (an assertion that neither party has made, let alone established), Texas lacks evidence demonstrating that its felony conviction-related employment practices are job related and consistent with business necessity. That is, it cannot demonstrate that the few practices it describes in five declarations – a handful of the apparently 300 practices that exist – distinguish between those applicants and employees who pose an unacceptable risk and those who do not. Where, as here, "the record is devoid of evidence necessary to sustain plaintiff's burden of proof," Defendants are "entitled to judgment in [their] favor." *See Int'l Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1264-65 (5th Cir. 1991).

Nor should Texas prevail on the merits of its other Count I claims, *i.e.*, the Declaratory Judgment claims that Defendants may not enforce the interpretation of Title VII contained in the Guidance and that Defendants may not issue right-to-sue letters based on that interpretation. These claims fail for lack of a cause of action. As described above, the EEOC and Department of Justice cannot bring claims against Texas seeking a declaration that Texas's felon-hiring practices violate Title VII or that Defendants have a right to issue right-to-sue letters against Texas. Accordingly,

Texas cannot obtain a declaratory judgment against the EEOC and Department of Justice with regard to these claims.

Both claims fail for another reason as well:  They are premised on misinterpretations of Title VII.  Texas's claim regarding the Guidance's interpretation of Title VII runs aground because Title VII's disparate impact liability provisions encompass conviction-related hiring practices, and there is no blanket business necessity insulating all such practices from liability.  As for the State's claim regarding right-to-sue letters, the premise of that claim is that Defendants would stop issuing right-to-sue letters if only they interpreted Title VII in the way that Texas does.  That premise is false.  Title VII requires Defendants to issue right to sue letters to individuals even if the agencies believe that the individuals' claims are meritless.

The "solution" offered by Count II is no better.  In Count II, Texas alleges (1) that the Guidance is a legislative rule beyond EEOC's authority to issue, (2) that it should have been issued through notice and comment rulemaking, and (3) that, on its face, it improperly interprets Title VII.  Texas goes zero for three on this argument.  The Guidance is not a legislative rule.  It is best construed for purposes of this motion as an interpretive rule, one that simply provides the EEOC's understanding of Title VII's meaning in a particular context.  Because the Guidance is not a legislative rule, it also did not need to be issued through the notice and comment process.  Finally, the Guidance sensibly interprets Title VII:  There is no basis in Title VII's test for concluding that conviction-related employment practices are immune from either disparate treatment or disparate impact liability, and courts that have addressed the issue have recognized that conviction-related employment practices can lead to disparate impact liability.

The Court should dismiss this case for lack of jurisdiction or, in the alternative, enter judgment in favor of Defendants on both Counts of Texas's Second Amended Complaint.

## BACKGROUND

Congress codified disparate impact liability in 1991. Civil Rights Act of 1991, Pub. L. No. 102–166, 105 Stat 1071. But disparate impact liability existed long before that as a judge-made rule. Indeed, the Supreme Court recognized disparate impact liability in 1971, *Griggs v. Duke Power Co.*, 401 U.S. 424 (1971), and applied it to a state – the State of Alabama – in 1977, *Dothard v. Rawlinson*, 433 U.S. 321, 331 (1977). And for decades (since at least 1987), the EEOC has taken the position that conviction-related employment practices – *i.e.*, employment practices that condition one's ability to obtain or retain a job on the absence of a felony conviction – may cause a disparate impact on the basis of race and/or ethnicity and, therefore, may violate Title VII. App'x at 56-58. Conviction-related employment practices are not uncommon. App'x at 9. Indeed, the State of Texas conditions employment for a large (but untold) number of jobs on the absence of a felony conviction (or conviction of certain kinds of felonies), *see, e.g.,* App'x at 61, 68-69, and it has done so for many years, *see, e.g.,* Tex. Occ. Code § 1701.312, Credits (original act effective Sept. 1, 1999); Tex. Health & Safety Code § 250.006, Credits (original act effective Sept. 1, 1993), notwithstanding the EEOC's longstanding position.

The EEOC issued the Guidance in 2012. App'x at 1. Through it, the EEOC intended "to update and consolidate in this document all of its prior policy statements about Title VII and the use of criminal records in employment decisions." App'x at 6. The Guidance discusses the application of Title VII to the use of criminal history information in employment decisions, both with respect to disparate treatment and disparate impact analyses. App'x at 1.

With regard to disparate impact—the focus of Texas's challenge—the Guidance restates well-settled disparate impact principles by explaining that "[a]n employer's neutral policy (*e.g.,* excluding applicants from employment based on certain [past] criminal conduct) *may*

disproportionately impact some individuals protected under Title VII, and *may* violate the law if not job related and consistent with business necessity (disparate-impact liability)."  App'x at 1 (emphasis added).  The Guidance further explains that, during its investigation, when assessing whether a practice has a legally prohibited disparate impact, the EEOC conducts a fact-based inquiry into the particular circumstances of each case.  It (i) identifies the "particular policy or practice" at issue, (ii) reviews statistical data on whether the practice has a disparate impact on a protected class, and, (iii) if necessary, assesses whether facts demonstrate that the practice is job related and consistent with business necessity.  App'x at 11-15.

The Guidance addresses states in their capacity as employers "as part of [its] efforts to eliminate unlawful discrimination in employment screening . . . by entities covered by Title VII, including private employers as well as federal, state, and local governments."  App'x at 6.  It also invokes Title VII's preemption provision, noting that "State and local laws or regulations are preempted *by Title VII* if they purport to require or permit the doing of any act which would be an unlawful employment practice under Title VII."  App'x at 5 (emphasis added); *see* 42 U.S.C. § 2000e-7.

The EEOC plays a more limited role in implementing Title VII with respect to states than it does with private employers.  Indeed, Title VII itself prohibits the EEOC from bringing enforcement actions against states.  42 U.S.C. § 2000e-5(f)(1).  If a state employee or job applicant thinks s/he has been subjected to an unlawful employment practice, then s/he can file a charge with the EEOC.  *Id.* § 2000e-5(b).  The EEOC will then conduct an investigation and if, after completing its investigation, it determines that "there is not reasonable cause to believe that the charge is true, it shall dismiss the charge and promptly notify the person claiming to be aggrieved and the [state] of its action."  *Id.*  The notice to the employee or applicant is typically referred to as a right-to-sue

letter[1] because, as a general matter, the employee or applicant can file a suit once s/he receives the letter, but not before. *Id.* § 2000e-5(f)(1). If, however, the EEOC concludes that there is reasonable cause to believe that a violation of Title VII has occurred, then it initiates conciliation. *Id.* § 2000e-5(b). This is essentially a process by which the EEOC tries to facilitate a settlement agreement between the parties to the charge. *Id.* But if conciliation fails, the EEOC *cannot* bring an enforcement action against the state employer. *Id.* § 2000e-5(f)(1).

Title VII requires, instead, that the EEOC refer the matter to the Department of Justice for it to make an independent judgment regarding whether to bring an enforcement action or issue a right-to-sue letter. *Id.* (Department of Justice "may" file suit). And even without an EEOC referral, the Department of Justice can file a lawsuit challenging pattern and practice discrimination. 42 U.S.C. § 2000e-6(a); App'x at 114-15. Notably, notwithstanding the numerous allegations regarding EEOC enforcement actions, SAC ¶¶ 16-22, Texas does not allege that the Department of Justice has ever brought a case against a state premised on a disparate impact resulting from a felony-conviction hiring exclusion. Not one. And in discovery, Texas failed to identify a single case brought against it by the Department of Justice. App'x at 92.[2]

Texas alleges that it employs thousands of people, and it claims that "[f]or many jobs, Texas law and longstanding hiring policies impose absolute bans on hiring convicted felons (or in some instances persons convicted of certain categories of felonies)." SAC ¶ 23. The practices

---

[1] An individual can also request that the EEOC issue a right to sue letter before it completes its investigation. 29 C.F.R. § 1601.28(a)(1), (a)(2), (d)(2).

[2] Texas also points to only one EEOC investigation against it relating to the use of criminal background information, which arose in response to a charge of discrimination by an applicant for employment at the Texas Department of Public Safety ("DPS"). App'x at 68. The applicant stated, in part, that he had been discriminated against on the basis of his prior felony conviction. *Id.* The EEOC ultimately dismissed the charge and issued the applicant a right to sue notice because the EEOC was unable to conclude that information obtained established a violation of Title VII. App'x at 101.

Defendants' Memo. in
Support of Summary Judgment

apparently differ by agency. For example, the Texas Juvenile Justice Department refuses to hire applicants convicted of a number of different types of crimes depending on the nature of the job, crime, and time elapsed since the date of conviction. App'x at 75-76. There is a blanket prohibition on employment for all time with respect to at least some types of crimes and positions. *See id.* The Texas Lottery Commission, to name another agency referenced in the complaint, has a policy of refusing to hire anyone who finished serving his or her sentence for a felony conviction (or certain misdemeanor convictions) in the last ten years. App'x at 79. Just like the EEOC's application of disparate impact liability to the use of criminal background information in employment decisions, the hiring practices at issue in the Second Amended Complaint are not new. At least some of them have existed for more than a decade. *See* Tex. Occ. Code § 1701.312, Credits (original act effective Sept. 1, 1999); Tex. Health & Safety Code § 250.006, Credits (original act effective Sept. 1, 1993).

This Court previously dismissed the suit for lack of jurisdiction, concluding that the Guidance did not constitute final agency action, that Texas's claims were not ripe, and that the State lacked standing. *Texas v. EEOC*, No. 5:13-cv-255-C, 2014 WL 4782992, at *3-4 (N.D. Tex. Aug. 20, 2014). The Court of Appeals reversed. *Texas v. EEOC*, 827 F.3d 372, 376 (5th Cir. 2016), *reh'g en banc granted, op. withdrawn*, 838 F.3d 511 (5th Cir. 2016).

But the EEOC sought rehearing, and the Court of Appeals granted the EEOC's petition for rehearing, vacating its opinion and remanding the case to this Court to permit it to address the impact of *U.S. Army Corps of Engineers v. Hawkes*, 136 S. Ct. 1807 (2016) on this case. *Texas*, 838 F.3d at 511. After further supplemental briefing by the parties, this Court denied the EEOC's motion to dismiss. June 2, 2017 Order ("Order"), ECF No. 52. The Court concluded that Texas had established standing at the motion to dismiss stage because "tak[ing] as true" the complaint's

allegations, "the Guidance amounts to an increased regulatory burden on Texas as an employer and forces Texas to undergo an analysis of each agency's hiring practices and policies." *Id.* at 8. The Court also found that the Guidance is final agency action for purposes of APA review and that, because standing and final agency action had been established, Texas's claims were ripe. *Id.* at 8-9. The EEOC now files this motion for summary judgment in accord with the Court's Order dated July 5, 2017. ECF No. 59.

## ARGUMENT

### I.    The Court Should Dismiss Count I for Lack of Jurisdiction, or, in the Alternative, Enter Judgment in Favor of Defendants.

In Count I of its Second Amended Complaint, Texas seeks the following: (1) a declaration "of its right to maintain and enforce its laws and policies that absolutely bar convicted felons (or certain categories of convicted felons) from serving [in specific jobs] and any other job Texas and its Legislature deem appropriate," SAC ¶ 43; (2) a declaration and injunction that defendants "cannot enforce the interpretation of Title VII that appears in [the Guidance]," SAC ¶ 44; and (3) a declaration and injunction that defendants cannot "issue right-to-sue letters pursuant to that [Guidance]," *id.* These claims fail for both lack of jurisdiction and merit.

#### A. Texas's Request for a Declaration Regarding the Validity of Its Hiring Practices is Unripe and Meritless.

##### 1. The request is unripe.

Texas's request for a declaratory judgment approving its hiring practices under Title VII is not ripe. The ripeness test comprises two elements: (1) the fitness of the matter for adjudication, and (2) the hardship to the plaintiff of withholding review. *Lopez v. City of Houston*, 617 F.3d 336, 341 (5th Cir. 2010). The request for a declaratory judgment blessing Texas's employment practices is not fit for review because there are no truly adverse parties to the Title VII claim and

because there is no sufficiently concrete dispute. Also, there would be no hardship to the State if the Court were to abstain from deciding this hypothetical dispute.

The Court has not yet specifically addressed the ripeness of this claim. The Court's Order resolving the motion to dismiss addressed ripeness in a single sentence, stating: "Finally, with a finding of standing and a 'final agency action,' the Court determines that Texas's claims are ripe for review." Order at 9. At bottom, this was an evaluation of the ripeness of Count II, in which Texas challenges the Guidance under the APA. SAC ¶¶ 45-50. The Court's standing assessment focused on the regulatory burden allegedly imposed by the Guidance, Order at 8 ("[T]he Court finds that Texas has constitutional standing to challenge the Guidance."), and the final agency action analysis focused on whether the Guidance was subject to review under the APA, *id.* at 8-9. The Court did not address the ripeness of Count I, *see* SAC ¶ 43, and ripeness must be independently established for each claim. *See, e.g.*, *Severance v. Patterson*, 566 F.3d 490, 496 (5th Cir. 2009) ("Because distinct ripeness inquiries apply to these claims, we address each in turn."); *Tribble v. Chuff*, 642 F. Supp. 2d 737, 753 (E.D. Mich. 2009) ("The plaintiff must establish that each claim brought is ripe for judicial resolution.").

a.   The claim is not fit for review.

A claim is not fit for review unless it involves adverse parties and a concrete dispute. *Princeton Univ. v. Schmid*, 455 U.S. 100, 102 (1982). With regard to declaratory judgment claims, courts assess adversity by determining whether there is an "actual controversy" between the parties. *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000) (claim is not ripe absent an actual controversy); *Regions Ins., Inc. v. Ace Prop. & Cas. Ins. Co.*, 80 F. Supp. 3d 730, 735 (M.D. La. 2015) (fitness depends on the existence of an actual controversy). An actual controversy exists when "a substantial controversy of sufficient immediacy and reality [exists] between parties

having adverse legal interests." *Middle South Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir. 1986).

Under the Declaratory Judgment Act, "[a] party's legal interest must relate to an actual claim arising under federal law that another asserts against him." *HAVEN*, 915 F.2d at 170–71 (citation omitted). In other words, "it is the underlying cause of action of the defendant against the plaintiff that is actually litigated." *Id.* at 171. "The Act is designed to allow potential defendants in cases of actual and immediate controversy within the subject matter jurisdiction of the federal courts to petition the court for an early resolution of the parties['] rights and liabilities." *Id.* at 172.

There is no actual controversy between Texas and the Department of Justice regarding any of Texas's felony conviction-related hiring practices. As noted above, in a declaratory judgment action, "it is the underlying cause of action of the defendant against the plaintiff that is actually litigated." *HAVEN*, 915 F.2d at 171. In this instance, then, Texas is seeking to litigate a Title VII action that the Department of Justice might bring against it at an unspecified point in the future. But no such Title VII action is sufficiently "immediate and real" to warrant action by this Court. *Orix Credit,* 212 F.3d at 896. Texas has never contended that the Department of Justice has threatened litigation regarding its felony conviction related hiring practices. *See generally* SAC. Nor has the Department of Justice even announced any enforcement guidelines: The Department of Justice did not issue the Guidance and is not bound to follow it. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 569-70, 570 n.4 (1992); *Clouser v. Espy*, 42 F.3d 1522, 1535 (9th Cir. 1994); *Reed v. Reno*, 146 F.3d 392, 397 (6th Cir. 1998). Even if the Department had issued its own guidelines, that fact alone would not justify invoking this Court's power to decide hypothetical Title VII claims; guidelines are not straightjackets, and many contingencies stand

between guidance documents and lawsuits.  Moreover, neither Texas nor Defendants are aware of any suit that the Department of Justice has ever brought against Texas with regard to its felony conviction-related hiring practices.  App'x at 92.  Simply put, Texas seeks an advisory opinion from the Court blessing its employment practices with respect to the hiring and retention of individuals with felony convictions.  *Schmid*, 455 U.S. at 102 ("We do not sit to . . . give advisory opinions about issues as to which there are not adverse parties before us.").

The Title VII claim against the Department of Justice lacks not only adverse parties, but also concrete facts and identified legal authorities upon which the Court can base its decision.  To that end, the Supreme Court has held that the "determination of the scope . . . of legislation in advance of its immediate adverse effect in the context of a concrete case involves too remote and abstract an inquiry for the proper exercise of the judicial function."  *Texas v. United States*, 523 U.S. 296, 301 (1998) (citation and bracket omitted).  This case demonstrates the wisdom of that conclusion.  The Department of Justice has not filed or threatened to file a Title VII suit against the State.  Yet the State asks this Court for a declaration approving all of its (apparently) hundreds of felon hiring practices, which apply to an untold number of jobs.

Discovery has highlighted the abstract and unwieldy nature of the case that Texas has conjured up.  First, the State has refused to specifically identify the hiring practices at issue in this case, instead relying on a few examples in its complaint and in five declarations, *see* SAC ¶¶ 24-30, App'x at 63-80, and directing Defendants to a website that lists various restrictions on felons, Texas State Law Library, *Restrictions on Convicted Felons in Texas*, https://www.sll.texas.gov/library-resources/collections/restrictions-on-convicted-felons, App'x at 89-90.  Second, the State has refused to identify and describe all of the jobs affected by its felony conviction employment practices.  App'x at 89-90.  Third, the State has balked at the work its

sprawling, acontextual suit requires.  Defendants asked the State in a request for admission to "[a]dmit that [it] cannot identify a state or local law concerning the hiring of convicted felons that disparately impacts a group protected under Title VII."  App'x at 95-96.  In correspondence, counsel for the State wrote, "RFA No. 6, if I'm reading it correctly, requires me to take the over 300 Texas laws regarding felons, identified within our responses [*sic*], and then search regarding each of them to find statistical evidence that may support a disparate impact claim.  With respect, such an inquiry is not reasonable."  App'x at 61.  The State should not be allowed to ask the Court to do what it is unwilling to do – identify and assess hundreds of hiring practices in a vacuum to determine if they comply with Title VII.

Texas's Title VII claim against the EEOC regarding the validity of the State's hiring practices is similarly unripe.  For a Declaratory Judgment Act claim to be ripe, the controversy between the parties must be sufficiently immediate and real.  *Middle South Energy*, 800 F.2d at 490.  The EEOC cannot bring Title VII claims against state governments, including Texas.  42 U.S.C. § 2000e-5(f)(1).  Thus, as the EEOC can never file Title VII suits against Texas, there will never be a "real" threat of such an action and this declaratory judgment claim is not now – and will never be – ripe.[3]  *See Collin Cty.*, 915 F.2d at 171 ("[A] party bringing a declaratory judgment must have been a proper party had the defendant brought suit on the underlying cause of action.").  And the claim is just as amorphous against the EEOC as it is against the Department of Justice.

---

[3] The argument with regard to the EEOC can also be thought of in terms of a failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).    If the EEOC has no cause of action against Texas under Title VII, it necessarily follows that Texas cannot have a cause of action for declaratory relief against the EEOC.

Finally, Texas seeks a declaration regarding future hiring practices. This aspect of Texas's claim is unripe for the additional reason that claims are not fit for review when they rest on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas*, 523 U.S. at 300 (citation omitted). Who knows what these hypothetical hiring prohibitions will look like (*i.e.*, what jobs will they apply to, what felony convictions will be disqualifying, will there be a period after which the convictions are no longer disqualifying, etc.)? Not Texas. And the Court cannot know either. There is a key factual predicate remaining – the drafting and enactment of these prohibitions. Until that happens, Texas seeks the purest of advisory opinions. The Court should follow the Supreme Court's lead from an earlier case involving Texas, when it said, "Texas asks us to hold that under no circumstances can the imposition of these [state laws] constitute a [violation of federal law]. We do not have sufficient confidence in our powers of imagination to affirm such a negative." *Id.* at 301. Indeed, Texas appears to similarly lack confidence in its own "powers of imagination," as it refused (in response to a discovery request) to defend the legality of unenacted laws, but only "verif[ied] Texas's belief that it has the right to enact the laws and regulations *that exist.*" App'x at 61. Texas cannot properly ask the Court to approve of hypothetical laws that even it cannot identify, let alone defend.[4]

> b. There is no hardship to Texas if the Court withholds review.

---

[4] The State's request for an injunction fails for the independent reason that the request fails to satisfy the requirements of Federal Rule of Civil Procedure 65. Under Rule 65, any injunction that the Court issues must "state its terms with specificity," and "describe in reasonable detail – and not by referring to the complaint or other document – the act or acts restrained or required." *See* Fed. R. Civ. P. 65(d)(1)(B)-(C). The State's inability or refusal to identify with specificity those state laws that it believes are implicated by this lawsuit dooms its request for injunctive relief.

Defendants' Memo. in                                                              14
Support of Summary Judgment

Count I is unripe for the additional reason that Texas would not suffer any hardship if the Court withheld review of the State's request for a declaration approving its employment practices. Congress codified disparate impact discrimination in 1991. Civil Rights Act of 1991, Pub. L. No. 102–166, 105 Stat 1071. The EEOC has held the same view regarding the potential for conviction-based employment practices to lead to disparate impact liability for even longer. App'x at 56-58. And even further back than that, the Supreme Court explained that "Congress expressly indicated the intent that the same Title VII principles be applied to governmental and private employers alike." *Dothard*, 433 U.S. at 331 n.14. In all of these years, Texas has hired and fired as it pleased, never changing its practices in response to federal law. *See* App'x at 93-94, 95. And Texas has produced no evidence that there was any hardship on its day-to-day operations to not having a federal court opine on its conviction-related employment practices, nor has Texas produced in discovery any evidence that that has changed since the EEOC issued the Guidance. *See* App'x at 87-88, 93-94, 95. Thus, Texas would not be harmed if the Court declined its invitation to resolve this hypothetical Title VII dispute; it would be in the same position that it has been in for decades.

Put another way, if the matter is as clear as Texas contends, then Texas incurs no hardship in waiting. It can behave in the way that it believes is right, as it has for decades. The Supreme Court decided as much in an earlier case involving Texas, in which the State sued the Federal Government for a declaration that "under no circumstance" could the enforcement of state law (regarding voting) violate federal law. *Texas*, 523 U.S. at 300-01. The Court held that there was no hardship to waiting for that decision because if "the Attorney General or a private individual bring suit (and if the matter is as clear, even at this distance, as Texas thinks it is), we have no reason to doubt that a district court will deny a preliminary injunction." *Id.* at 302. Indeed, as Judge Higginbotham noted in his opinion when the present case went before the Court of Appeals,

"[i]f Texas is certain that its view of Title VII is correct, it faces no hardship in waiting for its day of vindication." *Texas*, 827 F.3d at 393 (Higginbotham, J., dissenting).

Texas may argue that a declaration approving its hiring practice is necessary because the combination of the EEOC's views on criminal record exclusions and Title VII implicate the State's personnel decisions and, therefore, constitute a threat to the State's sovereignty. But this threat is abstract, and in *Texas*, 523 U.S. at 302, the Supreme Court held that abstract threats to federalism do not support standing. The EEOC's views of Title VII have been the same for decades, and there is no evidence that Texas's sovereignty has been undermined. Indeed, the threat is even more abstract because only the Department of Justice can bring suit, and it is not bound by the Guidance. Texas has produced no evidence that it has modified its conduct to conform to the EEOC's longstanding understanding of Title VII. App'x at 87-88, 93-94, 95. Rather, Texas has hired and fired who it has wanted to when it comes to the consideration of felony convictions, fully exercising its sovereign authority. *Id.* That Texas fears that someday in the future it may not get its way does not establish that there is any hardship now. *Texas*, 523 U.S. at 302.

### 2. Texas's claim for a declaration regarding the validity of its hiring practices is meritless.

For the reasons stated above, the Court should not reach the merits of Texas's request for a declaration that its felony conviction-related employment practices do not constitute disparate impact discrimination. But if the Court reaches the merits of Texas's claim, it should reject Texas's request for a declaratory judgment.

In 1991, Congress codified the elements of a disparate impact claim under Title VII. Civil Rights Act of 1991, Pub. L 102–166, November 21, 1991, 105 Stat 1071 (codified at 42 U.S.C. § 2000e–2(k)(1)(A)). Under the law, there are two paths for establishing a successful disparate impact claim. First, a plaintiff can succeed if he identifies an employment practice that causes a

disparate impact on the basis of race, color, sex, or some other protected category, and the defendant "fails to demonstrate that the challenged practice is job related ... and consistent with business necessity." *Id.* § 2000e–2(k)(1)(A)(i). Second, a plaintiff can succeed even if the defendant establishes that a practice is job related and consistent with business necessity by demonstrating that there is an acceptable less discriminatory practice that the defendant has refused to adopt. *Id.* § 2000e–2(k)(1)(A)(i)(ii). The first path is the focus of this brief.

An oddity of this case is that no party to it is attempting to demonstrate that Texas's employment practices cause (or do not cause) a disparate impact on the basis of a protected characteristic. Texas refused to admit that its practices have a statistically disparate effect on a protected class, but it has also produced no evidence supporting its position. *See* App'x at 95-96. Rather, Texas attempts to leap-frog past this necessary predicate issue of disparate impact to instead focus on a declaration stating that its practices are "job related . . . and consistent with business necessity." 42 U.S.C. § 2000e–2(k)(1)(A)(i). Both job relatedness and consistency with business necessity are questions of fact. *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 424 (5th Cir. 1998). And Texas bears the burden of demonstrating that its hiring and retention bars are job-related and consistent with business necessity. *Griggs*, 401 U.S. at 432. Texas cannot establish these elements because it has produced absolutely no evidence establishing the necessary factual elements. Therefore, judgment in favor of Defendants is warranted. *See Int'l Shortstop, Inc.* 939 F.2d at 1265.

The Supreme Court's precedents regarding job-relatedness and business necessity are "worded to address ability, not risk." *El v. Se. Pa. Transp. Auth.* (*SEPTA*), 479 F.3d 232, 243 (3d Cir. 2007). In *SEPTA*, the Third Circuit decided that, in the context of a conviction-related employment practice, which "ultimately concern[s] the management of risk," the business

necessity and job-related requirements should be read to oblige an employer to demonstrate that its practices "accurately distinguish between applicants that pose an unacceptable level of risk and those that do not." *Id.* at 244-45.

No Fifth Circuit case has decided what the appropriate standard should be with respect to conviction-related hiring practices. But the Court of Appeals has said in the context of safety-related hiring standards – and Texas believes that its standards relate to the safety of people and property, SAC ¶ 33 – that "a discriminatory standard can be upheld only if its contribution to safety is more than minimal." *Levin v. Delta Air Lines*, 730 F.2d 994, 997 (5th Cir. 1984). It has also recognized that, while an employer should have some leeway in setting standards related to safety, there must be a "reasonable basis for its assessment of risk." *Id.* Finally, the Court of Appeals has allowed that the consideration of business necessity should consider both the probability that an incident might occur and the gravity of the potential hazard. *Id.*

The *SEPTA* Court's translation of the Supreme Court's precedent to the context of conviction-related employment practices is sensible, and it is consistent with Fifth Circuit precedent regarding safety-related hiring practice. Accordingly, the *SEPTA* Court's phrasing, which the EEOC relies upon in its Guidance, is used below, though the ultimate touchstone remains the statutory standard of job-relatedness and business necessity.

Texas has not identified the necessary evidence regarding the jobs at issue to allow the Court to approve its felony conviction-related employment practices. *See Int'l Shortstop, Inc.*, 939 F.2d at 1264-65 (defendant entitled to judgment if plaintiff fails to satisfy its burden). In its Second Amended Complaint, it identifies "police officers, youth corrections officers, Texas-supported-living-center employees, GLO [General Land Office] employees, lottery officials, game wardens, school teachers and any other job Texas and its Legislature deem appropriate." SAC ¶

43. Its declarations collectively provide a similarly broad listing of some state jobs. App'x at 63-80. These are, however, merely illustrative lists. *See* App'x at 89-90. Thus, Texas has not provided a complete list of the jobs at issue. *See* App'x at 89-90. And even with regard to the jobs – or more precisely, job categories – that the State has identified, it has failed to put forth any evidence regarding the nature of the jobs that would be relevant to the inquiry the Court is required to undertake. For example: Do the jobs involve significant or sensitive responsibilities, or more limited manual or administrative tasks? *Davis v. City of Dallas*, 777 F.2d 205, 211 (5th Cir. 1985) (nature of position "crucial" for assessing job relatedness and business necessity); *Levin*, 730 F.2d at 997 (when assessing safety, a court should look at the probability of an incident and the gravity of the potential incident). How much supervision is there? *SEPTA*, 479 F.3d at 245 (identifying this as an important fact). Who do the employees interact with and in what circumstances? *Id.* (recognizing these as important facts). Texas has provided none of these essentials facts for the countless jobs affected by the (apparently) more than three hundred employment practices at issue. Without these basic facts, Texas cannot demonstrate that its employment practices are a "business necessity."

Nor does Texas have evidence that any of the handful of felony conviction-related hiring practices that it has identified accurately distinguish between applicants who pose an unacceptable risk and those who do not. *See Int'l Shortstop, Inc*., 939 F.2d at 1265. These practices *may* appropriately screen out some applicants, but Texas offers no *evidence* of that fact. And, in any case, that the employment practices may work some of the time is not enough to support the broad declaration that Texas seeks, namely, that its 300 "absolute bars" – many of which are unidentified – never constitute an "unlawful employment practice" under Title VII. *See* SAC ¶ 43

     **B.**    **Texas's Requests for a Declaration Regarding the Interpretation of Title VII and Defendants' Ability to Issue Right to Sue Letters Fail.**

Texas also seeks declaratory and injunctive relief with respect to Defendants' ability to "enforce the interpretation of Title VII that appears in [the Guidance]" and to "issue right-to-sue letters pursuant to that [Guidance]." SAC ¶ 44. These claims too are unripe. In raising these claims, Texas has again lost sight of the fact that "it is the underlying cause of action of the defendant against the plaintiff that is actually litigated" in a declaratory judgment action. *HAVEN*, 915 F.2d at 171. The EEOC cannot sue Texas under Title VII, and that fact dooms these claims against the EEOC: There is not – and never will be – an actual and immediate controversy between Texas and the EEOC regarding these claims. As indicated earlier, Texas's claims against the EEOC under the Declaratory Judgement Act also falter for failure to state a claim because the EEOC has no Title VII cause of action against Texas on which the State can base its declaratory suit.

The claims against the Department of Justice fare no better. Under Title VII, the Department of Justice someday theoretically could sue Texas to challenge the legality of its employment practices. (Though, as explained earlier, there is no "actual and immediate" controversy that demands resolution.) But the Department of Justice could not sue for an abstract declaration of its right to enforce the interpretation of Title VII that appears in the Guidance, or for a declaration of its right to issue right-to-sue letters. Title VII simply creates no causes of action that would support such claims. Rather, the statute allows the Department of Justice to sue states to end "unlawful employment practices."[5] 42 U.S.C. §§ 2000e-2, 2000e-3, 2000e-5 (authorizing the Department of Justice to sue regarding "unlawful employment practices"). And if the Department of Justice could not bring such claims against Texas, then there is no "actual and

---

[5] Questions regarding the propriety of an agency's interpretation of law or the scope of agency authority should be litigated under the APA, *see* 5 U.S.C. § 706, not Title VII.

immediate controversy" between Texas and the Department of Justice regarding these claims for which Texas can seek an early resolution. *See HAVEN*, 915 F.2d at 171-72. Again, this claim could also be dismissed for failure to state a claim: If the Department of Justice has no such Title VII claims against Texas, then under the Declaratory Judgment Act, Texas has no such claims against the Department.

Texas's claim regarding right-to-sue letters lacks merit for those reasons (i.e., because there is no claim that the EEOC or Department of Justice could bring against Texas with regard to this issue under Title VII) – and one more: it is based on a misunderstanding of the statutory scheme. Texas believes that, by issuing a right-to-sue letter to an individual who alleges discrimination, the EEOC or Department of Justice thereby endorses the claim, and that if they did not endorse such claims, then they would stop issuing right-to-sue letters. *See* SAC ¶¶ 37, 44. Not so. The EEOC and Department of Justice issue right-to-sue letters whenever they dismiss the administrative claim because Title VII requires them to do so. 42 U.S.C.A. § 2000e-5(f)(1) ("If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, or if within one hundred and eighty days . . . the Commission has not filed a civil action under this section or the Attorney General has not filed a civil action in a case involving a government, governmental agency, or political subdivision . . . the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, *shall so notify the person aggrieved* and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved . . . .") (emphasis added). And whether the federal agencies dismiss a claim because they think that it fails to state a claim or because they just have not reached a final conclusion on the matter, the ultimate result is the same. *See id.* That is, even if the EEOC and Department of Justice agreed with the State of

Texas's interpretation of Title VII and dismissed administrative claims regarding the State's hiring practices for lack of merit, the EEOC and Department of Justice would still have to issue right-to-sue letters to individuals, who could then sue in federal court. *See id.* Texas has provided no basis to enjoin the statutorily mandated issuance of right-to-sue letters.

Texas' request for a declaration and injunction regarding "enforcement" of the interpretation of Title VII that appears in the Guidance, SAC ¶ 44, similarly fails on the merits. Texas does not specify the supposed defect with the Guidance's interpretation of Title VII. Texas's claim may be that felony conviction related hiring practices are categorically excluded from Title VII's prohibition on practices that have an unjustified disparate impact on a protected class. But no such blanket exclusion appears in the text of the statute. 42 U.S.C. § 2000e-2(k). And Defendants are aware of no case that has recognized any such blanket exclusion. To the contrary, courts have assessed conviction-related hiring practices to determine if they comply with Title VII's disparate impact provisions. *See, e.g., SEPTA,* 479 F.3d at 237-49. Alternatively, Texas's argument may be that such employment practices are always justified because they are always job-related and consistent with business necessity. *See* 42 U.S.C. § 2000e-2(k). Job relatedness and business necessity, however, are factual questions that depend on the nature of the job and the nature of the employment practice at issue, *see Allison*, 151 F.3d at 424, *SEPTA*, 479 F.3d at 237-49; they cannot be decided in blunderbuss fashion in a factual vacuum. *See infra* § II.C. for additional argument on the propriety of the Guidance's interpretation of Title VII.

## II.    The Court Should Dismiss Count II for Lack of Jurisdiction or, in the Alternative, Enter Judgment in Favor of Defendants.

In Count II, Texas asks the Court to overturn the Guidance on three different bases: 1) that the EEOC exceeded its statutory authority in issuing the Guidance because "Congress withheld rulemaking authority from the EEOC," 2) that the Guidance is a rule subject to notice-and-

comment procedures mandated by the APA, and 3) that the Guidance is "plainly contrary to the text of Title VII and, in the alternative, it is an unreasonable interpretation of Title VII." SAC ¶¶ 48-50. None of these arguments holds water, for the reasons set forth below. But the Court should not reach the merits of Count II because Texas lacks standing to pursue this claim.

### A.    Texas Lacks Standing to Pursue Count II.

To establish standing to sue under Article III, a plaintiff must allege that it has suffered a concrete injury, or that such an injury is "imminent" or "certainly impending." *See Clapper v. Amnesty Int'l*, 568 U.S. 398, 409 (2013). In addition, to support standing the injury alleged must be traceable to the defendant's challenged conduct and able to be redressed by the relief sought. *Id.* Where, as here, a plaintiff seeks injunctive or declaratory relief, it cannot establish its standing on the basis of past injury alone but must, instead, show a "substantial likelihood that [it] will suffer injury in the future." *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003); *Machete Prods., L.L.C. v. Page*, 809 F.3d 281, 288 (5th Cir. 2015) (plaintiff must show a "real and immediate threat" of similar injury in the future) (citation omitted). And regardless of whether the Court finds Count I justiciable, Texas must also demonstrate standing with respect to Count II because "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (citation omitted).

Although the Court previously held that Texas established standing, it did so at the motion to dismiss stage and according to the standard of review applicable there. Order at 8. A plaintiff bears the burden of establishing standing throughout a lawsuit, with the burden of production and persuasion increasing at each stage of proceedings. *See Lujan*, 504 U.S. at 561. Where a movant seeks summary judgment for lack of standing, "the plaintiff must submit affidavits and comparable

evidence that indicate a genuine issue of fact exists on the standing issue." *Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 357 (5th Cir. 1999) (citation omitted).

In holding that Texas had sufficiently established standing to survive a motion to dismiss, the Court relied on the presumption of injury to Texas as an "object" of the Guidance and the allegations in the First Amended Complaint of "increased regulatory burden on Texas" in the form of a forced "analysis of each agency's hiring practices and policies."  Order at 7-8.

The discovery since served on Texas reveals, however, that no evidence of any such injuries exists, nor is there any evidence of certainly impending future injury or a substantial likelihood of such injury.  Therefore, there is now ample reason to "deviate from the presumption" of injury arising from Texas being deemed the "object" of the Guidance.

Texas's discovery responses confirm that many of the alleged theories of injury are without foundation.  First, Texas cannot point to any Department of Justice enforcement proceedings brought against it in relation to the Guidance.  App'x at 82-86, 92.  As discussed above, under Title VII, the Department is the only governmental entity with authority to initiate such enforcement proceedings; the EEOC cannot.  42 U.S.C. § 2000e-5(f)(1).  Second, Texas states that it is not aware of any state agency or local governmental entity that has altered its laws, policies, regulations, or practices in response to the Guidance.  App'x at 90, 93-94.  Third, Texas admits in its responses to the Defendants' requests for admission that it is unaware of any Texas agency "knowingly or willfully" violating Texas law "prohibiting the employment of convicted felons." App'x at 95.  Thus, Texas cannot meet its burden of establishing an injury by virtue of having chosen to forego enforcing its laws because of a perceived conflict with federal law.  Fourth, with the exception of the Texas Department of Public Safety, discussed below, Texas points to no instance of its agencies separately engaging in analysis of its laws, policies, regulations, or

practices in response to the Guidance.  *See* App'x at 88-89.  Therefore, Texas has not suffered the kind of "increased regulatory burden" that was key to the prior finding of standing.  Texas does point to the actions of the Texas Attorney General in this case as reflecting efforts to "analyze" Texas's laws, policies, regulations, or practices with respect to this issue.  *See id.*  But this does nothing to support Texas's standing because a party may not bootstrap its own standing through the "injury" created by that party's own lawsuit.  *See Vt. Agency of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 773 (2000) ("[A]n interest that is merely a 'byproduct' of the suit itself cannot give rise to a cognizable injury in fact for Article III standing purposes.") (citing *Steel Co. v. Citizens for A Better Env't*, 523 U.S. 83, 107 (1998)).

Texas points to two incidents that it could conceivably rely upon for a showing of past injury.[6]  Both are referenced in the Declaration of Kathleen T. Murphy, Senior Assistant General Counsel of the DPS.  App'x at 68-69.  But Texas does not and could not seek damages in Count II, and past injuries alone cannot support prospective relief.  *Bauer*, 341 F.3d at 358.  Texas, therefore, has no standing to pursue the prospective equitable relief it seeks in Count II.

Despite the absence of concrete injury, Texas indicates in its interrogatory responses that it intends to rely on a sovereign-interest theory of injury, namely that the Guidance creates "direct conflicts" with Texas law and hiring policies and that it "impermissibly invades the discretion" of the state in making "certain hiring decisions and/or otherwise maintain[ing] absolute bars to employment." App'x at 90-91.  Here, Texas is presumably pointing to the Guidance's invocation of Title VII and its provision that state laws are preempted by Title VII to the extent that such laws

---

[6] If Texas seeks to rely on its ignorance of its own injuries because of its ignorance of particular actions by its agencies, this is no help to Texas because the burden to establish standing falls on it as the party invoking federal jurisdiction.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

Defendants' Memo. in
Support of Summary Judgment

25

"require or permit the doing of any act which would be an unlawful employment practice under [Title VII]." *See* 42 U.S.C. § 2000e-7; *see also Cal. Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 281 (1987) (holding that Congress indicated in Title VII that "state laws will be pre-empted only if they actually conflict with federal law").

But Texas has been unable to show and claims to be unaware of any evidence showing that any of its laws is in fact in direct conflict with Title VII and thus actually preempted by federal law. App'x at 95-96 (stating that Texas is "unaware of statistical evidence that may be used to support a claim that a Texas state or local law concerning the hiring of convicted felons disparately impacts a group protected under Title VII")]; App'x at 91 (providing no information in response to an interrogatory asking Texas to identify state laws and hiring policies that Texas contends cause a disparate impact)]. As the party with the burden of establishing jurisdiction, the onus for showing such preemption falls on Texas.[7]  Texas also has not shown that any enforcement actions against it by the Department of Justice have occurred or that any are "certainly impending" or substantially likely to occur such that it could arguably be forced to choose between changing its hiring laws and policies or suffering adverse legal consequences. *Cf. Texas v. United States*, 787 F.3d 733, 748-49 (5th Cir. 2015) (recounting undisputed evidence that Texas would suffer substantial financial costs as a result of federal policy and concluding that a forced choice between incurring such undisputed costs and changing state law was sufficient to show injury in fact).

In the absence of any showing of these various points, what's left of Texas's sovereign interest theory of injury is Texas's vague assertion that there is some undefined but impermissible

---

[7] As for any supposed independent preemptive effect of the Guidance in the absence of Title VII, *see* SAC ¶ 32, it quite simply does not exist.  The Guidance does not purport to preempt any state law.  Instead, it describes what federal law—in the form of Title VII and the Constitution's Supremacy Clause—already provides: state laws are preempted to the extent they are in direct conflict with federal law.  *See* App'x at 27.

invasion of its sovereign discretion.  That is not enough to sustain this lawsuit, however, because an "abstract[]" "threat to federalism" is not sufficient "to support suit."  *See Texas v. United States*, 523 U.S. at 302; *but cf. Texas v. United States*, 809 F.3d 134, 153, 154-55 (5th Cir. 2015) (suggesting in dicta, in a decision explicitly limited to the facts of the case, that a state could secure standing if the federal government asserted authority to regulate in an area in which the state thought it had control).  To satisfy Article III, an injury must be "concrete," not "abstract." *Spokeo*, 136 S. Ct. at 1548.  Texas's abstract disagreement with federal law is not a concrete injury.

This Court previously held that Texas has standing at a prior stage of proceedings where Texas faced a lesser burden.  Now, the Court must revisit the issue of standing and—after evaluating the absence of evidence of injury put forward by Texas—it should conclude that Texas has failed to meet its heavier burden at the summary judgment stage to show standing as to Count II.

**B.** **The Procedural Challenges to the Guidance Fail.**

Turning to the merits of Count II, both of Texas's procedural challenges to the Guidance fail.

First, the EEOC did not exceed its statutory authority in issuing the Guidance.  This argument entirely turns on Texas's contention that the Guidance is a "substantive" or legislative rule under the APA.  *See* SAC ¶ 48.  But the Guidance is not a legislative rule.  To the contrary, it is best thought of as a "statement of policy," 5 U.S.C. § 553, because it "advise[s] the public prospectively of the manner in which the agency proposes to exercise a discretionary power." *Brown Express, Inc. v. United States*, 607 F.2d 695, 701 (5th Cir. 1979) (internal quotation marks omitted).  The test for determining whether a document is a statement of policy in this Circuit, however, overlaps considerably with this Court's test for determining whether an agency action

amounts to final agency action under the APA, 5 U.S.C. § 704; both focus on whether agency employees are bound and whether any rights or obligations are created. *Compare Texas*, 809 F.3d at 171 *with* Order at 8-9. Thus, absent reconsideration, this Court's decision that the Guidance constitutes final agency action effectively forecloses the argument (at this stage of the litigation) that the Guidance is a statement of policy. *But see Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 809, 812 (holding a policy statement to be final agency action). That does not mean however that the Guidance is a legislative rule. Rather, even taking this Court's final agency action decision as a given for purposes of this motion, the Guidance is better thought of as an interpretive rule than a legislative one.

If the Guidance is not a legislative rule, as discussed below, then the EEOC certainly had authority to issue it. While the EEOC does not have "authority to promulgate rules or regulations pursuant to [Title VII]," i.e. to issue legislative rules with the force of law concerning the substance of Title VII, it is not only permitted to interpret Title VII, but many courts have afforded those interpretations deference of the sort described in *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). *See Gen. Elec. Co. v. Gilbert*, 429 U.S. 125, 141 (1976) (evaluating EEOC guidelines interpreting Title VII); *accord Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 n.6 (2002); *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 257 (1991).

Texas's second procedural ground for challenging the Guidance—that it must have been issued pursuant to notice and comment procedures—similarly turns on the nature of the Guidance under administrative law. "Rules issued through the notice-and-comment process are often referred to as legislative rules because they have the force and effect of law." *Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199, 1203 (2015) (citation omitted). But the notice and comment procedure does not apply to *all* rulemaking that an agency might undertake. Instead, such

procedures are not required for "interpretative rules" (more commonly known as "interpretive rules").  *See* 5 U.S.C. § 553(b).  Thus, if the Guidance is not a legislative rule, but is instead an interpretive rule, Texas's notice and comment challenge fails as well.  *See Perez*, 135 S. Ct. at 1206.

As noted earlier, the Guidance is best understood (for purposes of this brief) as an interpretive rule, explaining EEOC's interpretation of Title VII with respect to the use of criminal background information in employment decisions.  Nonetheless, the infirmity of Texas's procedural arguments is even more strongly shown by what the Guidance *is not*, namely a legislative rule.  Under the analysis for what constitutes a legislative rule, the Guidance lands far from the mark.

The D.C. Circuit's four-factor test for determining a rule's legislative, as opposed to interpretive, status is illustrative.  *See Am. Mining Congress v. Mine Safety & Health Admin.*, 995 F.2d 1106 (D.C. Cir. 1993).  Under that test, a rule should be categorized as legislative if any of the following factors is met: "(1) whether in the absence of the rule there would not be an adequate legislative basis for enforcement action or other agency action to confer benefits or ensure the performance of duties, (2) whether the agency has published the rule in the Code of Federal Regulations, (3) whether the agency has explicitly invoked its general legislative authority, or (4) whether the rule effectively amends a prior legislative rule."  *See id.* at 1112.

None of those factors is met here.  The Guidance was not published in the Code of Federal Regulations.  The EEOC did not invoke any legislative authority in issuing it.  The Guidance neither amended nor effectively amended any prior legislative rule.  And most important, the Guidance only interpreted Title VII and, as such, an enforcement action *pursuant to Title VII* would be entirely supported in the absence of the Guidance, as confirmed by the various courts applying

Title VII in this context in the absence of or without reliance upon the Guidance.  The Guidance's own terms also confirm its non-legislative nature.  The document purports to only be making a "policy statement[]" about the issues discussed and it states that the Guidance is intended for "use by" employers and employees, not that it is intended to bind and regulate these parties.  *See* Guidance at 3.  These are not the hallmarks of an agency setting forth binding law.

Instead, for purposes of this motion, the Guidance is best construed as an interpretive rule.  The Supreme Court has explained that the "critical feature of interpretive rules is that they are issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers."  *Perez*, 135 S. Ct. at 1204 (citation omitted).  The Fifth Circuit similarly holds that "interpretative rules are statements as to what the administrative officer thinks the statute or regulation means."  *Shell Offshore Inc. v. Babbitt*, 238 F.3d 622, 628 (5th Cir. 2001) (citation omitted).  An interpretive rule "clarifies, rather than creates, law."  *Prof'ls & Patients for Customized Care v. Shalala*, 56 F.3d 592, 602 (5th Cir. 1995).  By contrast, "legislative" or "substantive" rules "are those which create law."  *Brown Express*, 607 F.2d at 700 (citation omitted).  Interpretive rules encourage predictability in the administrative process.  An agency that enforces "less than crystalline" statutes and regulations must interpret them, "and it does the public a favor if it announces the interpretation in advance of enforcement."  *Hoctor v. USDA*, 82 F.3d 165, 167 (7th Cir. 1996).  Courts should not "discourage the announcement of agencies' interpretations by burdening the interpretive process with cumbersome formalities."  *Id.*

An interpretive rule is no less interpretive simply because it "supplies crisper and more detailed lines than the authority being interpreted."  *Am. Mining Congress*, 995 F.2d at 1112.  Were it otherwise, "no rule could pass as an interpretation of a [statute] unless it were confined to parroting the [statute] or replacing the original vagueness with another."  *Id.*  Of course, that would

defeat the purpose of having interpretive rules in the first place.  Thus, an agency may use an interpretive rule to transform "a vague statutory duty or right into a sharply delineated duty or right."  *Cent. Tex. Tel. Coop., Inc. v. FCC*, 402 F.3d 205, 214 (D.C. Cir. 2005) (citation omitted).  Courts will construe rules as interpretive and uphold them when the rights or duties set forth therein are "fairly encompassed" by the underlying statute or regulation, such that there would be a legal basis to enforce the duty described by the interpretive rule in its absence.  *See Air Transport Ass'n of Am., Inc. v. FAA*, 291 F.3d 49, 55-56 (D.C. Cir. 2002).  The key question is the legal source for the duties described in the interpretive rule, not its effect on regulated parties.  *Fertilizer Inst. v. U.S. EPA*, 935 F.2d 1303, 1307-08 (D.C. Cir. 1991) (rule was interpretive even though it altered primary conduct).

Under these standards, the Guidance is best viewed as an interpretive rule for purposes of this motion.  First, the Guidance is "fairly encompassed" by Title VII and case law interpreting it such that enforcement of Title VII with regard to employer criminal background screens in the absence of the Guidance would be legally supported.  Indeed, long before the Guidance was ever issued, the Eighth Circuit recognized that disparate impact liability on the basis of criminal background screening could be cognizable under Title VII.  *See Green v. Mo. Pac. R.R. Co.*, 523 F.2d 1290, 1298-99 (8th Cir. 1975).  Later, the Third Circuit similarly recognized this type of claim while only affording *Skidmore* deference to EEOC policy statements on this issue.  *See SEPTA*, 479 F.3d at 244-45; *see also Waldon v. Cincinnati Pub. Sch.*, 941 F. Supp. 2d 884, 887-90 & n.3 (S.D. Ohio 2013) (denying a motion to dismiss a disparate impact claim while stating that the EEOC's guidelines in this context were "not entitled to great deference").  Given that some courts are enforcing Title VII in this context without reliance on the Guidance, one cannot reasonably say

that the EEOC has created law through its issuance.  Instead, the EEOC has only clarified its own understanding of existing law.

Second, the Guidance's own terms and the analysis it sets forth confirm that it is interpretive.  *Cf. Am. Hosp. Ass'n v. Bowen*, 834 F.2d 1037, 1047 (D.C. Cir. 1987) (in deciding whether an agency has issued a general statement of policy, the "agency's characterization of its own action, while not decisive, is a factor [to] consider").  The Guidance states that it builds on the EEOC's prior guidance "*applying Title VII principles* to employers' use of criminal records to screen for employment."  Guidance at 3 (emphasis added).  The Guidance goes on to analyze the use of criminal records in employment screening under the two fundamental analytical frameworks for Title VII discrimination liability that have been set forth by the statute and the courts, disparate treatment and disparate impact.  *Id.* at 6.  Later, with regard to disparate impact, the Guidance analyzes the particular issue of criminal background screens under the analytical framework crafted by the statute and the courts.  *See id.* at 8-20.  When an agency interprets statutory language to determine its application in a specific factual context, the agency is undertaking an interpretive act and issuing an interpretive rule.  *Cf. Brown Express*, 607 F.2d at 700 (no interpretive rule where agency's notice "d[id] not purport to interpret a statute or regulation"); *see also Evans v. Martin*, 496 F. App'x 442, 444 (5th Cir. 2012) (agency determination that a cell phone is a "hazardous tool" as that term is used in a federal prison discipline regulation is an "interpretive act" that does not give rise to a separate legislative rule).

The Federal Circuit's decision in *Splane v. West*, 216 F.3d 1058 (Fed. Cir. 2000), is instructive in showing that when an agency interprets and explains a statute's application to a specific factual context, it is crafting an interpretive rule.  There, the Department of Veterans Affairs' general counsel issued a precedential opinion construing a statutory presumption

providing that multiple sclerosis-related disability would be deemed incurred in or aggravated by military service if certain conditions were met. *Id.* at 1061-62. The opinion concluded, *inter alia*, that this presumption did not apply to chronic diseases existing prior to entry into service. *Id.* at 1062. The court held that the opinion was "essentially interpretive because it represents the agency's reading of statutes and rules rather than an attempt to make new law or modify existing law." *Id.* at 1063. The opinion did not involve "policy analysis" such as "weighing the pro's and con's of one course of action versus another," but instead simply "interpret[ed] the meaning of the statute with respect to the specific question presented." *Id.* And the opinion did not become legislative by virtue of the fact that it was binding on agency officials; the key was that the opinion did not create new law binding on courts outside the agency. *Id.* The Guidance is on all fours with the opinion issued in *Splane*. It does not involve a weighing of different policy choices essentially legislative in nature. Instead, it represents the agency "interpreting the meaning of" Title VII "with respect to the specific question presented." *See id.*; *see also Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 97-99 (1995) (agency issued "prototypical example of an interpretive rule" when its rule "implement[ed] [Medicare's] statutory ban on cross-subsidization" of costs between Medicare and non-Medicare services by requiring the amortization of losses over time, even though the relevant statute and regulations did not explicitly require amortization).

Here, by announcing its interpretation of Title VII, the EEOC has informed the public about its understanding of the law—and no more. The Guidance is non-binding on third parties, does not have the force and effect of law, and does not add substantively to existing laws. It simply "advise[s] the public of the agency's construction of the statutes and rules which it administers." *Guernsey Mem'l Hosp.*, 514 U.S. at 99 (citation omitted). Therefore, for purposes of this motion,

the Guidance is properly construed as an interpretive rule, not as a legislative rule. The EEOC had the authority to issue it and it is exempt from the notice-and-comment requirements of the APA.

* * *

The Court previously held that the Guidance constitutes final agency action, permitting review under the APA. Texas may argue that the EEOC seeks to relitigate the question of final agency action by arguing that the Guidance is an interpretive rule. Although the EEOC maintains that the Guidance is not final agency action and preserves that point for appeal, if necessary, the EEOC is not here seeking to relitigate that issue and the Court need not revisit the question in deciding that the Guidance is an interpretive rule because such rules may constitute final agency action. *See, e.g.*, *Hall v. Sebelius*, 689 F. Supp. 2d 10, 20 (D.D.C. 2009) ("Interpretive rules, unlike substantive rules, may constitute final agency action without fulfilling the APA's requirement of public notice and comment."). And even if the Guidance is final agency action, all of the arguments above still apply; the EEOC had authority to issue the Guidance and it was exempt from notice-and-comment as an interpretive rule.

### C.    The Substantive Challenge to the Guidance Fails.

Texas also brings a substantive challenge to the Guidance in Count II, contending that the Guidance is "plainly contrary to the text of Title VII and, in the alternative, it is an unreasonable interpretation of Title VII." SAC ¶ 50. This challenge falls short as well.

By its own terms, Count II only contests the facial validity of the Guidance. *See* SAC ¶ 50 ("[T]he Felon-Hiring Rule is invalid on its face . . . ."). There is no as-applied challenge at issue. Texas bears a heavy burden in bringing a facial challenge to the Guidance: it "must establish that *no set of circumstances* exists under which" the Guidance "would be valid." *See Associated Builders & Contractors of Tex., Inc. v. Nat'l Labor Relations Board*, 826 F.3d 215, 220 (5th Cir.

2016) (emphasis added).  Texas is far from showing that the Guidance's interpretation of Title VII is "plainly contrary" to the text of the statute or that it is "unreasonable" in all cases.

The Guidance discusses both disparate treatment and disparate impact liability under Title VII.  The reasonableness of the EEOC's discussion of disparate treatment—that "[f]or example, there is Title VII disparate treatment liability where the evidence shows that a covered employer rejected an African American applicant based on his criminal record but hired a similarly situated White applicant with a comparable criminal record"—cannot be seriously disputed.  *See* Guidance at 6-8; *see also Texas*, 827 F.3d at 392 (Higginbotham, J., dissenting) (deeming this statement to be an "elementary legal proposition").  Binding circuit precedent holds that an employer may be liable under Title VII for disparate treatment where the plaintiff shows he suffered an adverse employment action and he was treated differently from similarly situated employees in near identical circumstances.  *See Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219-22 (5th Cir. 2001).  This is precisely the scenario the Guidance describes above with respect to disparate treatment.  If Texas would argue that the issue of criminal background screening changes the analysis, Texas has not pled any such distinction and the Defendants are not aware of one.

Texas's failure to show the unreasonableness of the Guidance with respect to disparate treatment is fatal to Count II.  *See Associated Builders & Contractors*, 826 F.3d at 220 (facial challenge must show "no set of circumstances" under which the statute or regulation would be valid).  But the Guidance is also reasonable in its discussion of disparate impact liability.  First, the Guidance sets forth the basic legal standards applicable to Title VII disparate impact claims, citing the statute and Supreme Court precedent.  App'x at 11-12.  It then goes on to apply that analysis to the use of criminal background information in employment decisions, reasoning that Title VII disparate impact liability would be shown where "a covered employer's criminal record

screening policy or practice disproportionately screens out a Title VII-protected group and the employer does not demonstrate that the policy or practice is job related for the positions in question and consistent with business necessity."  App'x at 12.  This statement, again, is an elementary legal proposition; indeed, it is simply the application of Title VII's text to a specific factual context. *See* 42 U.S.C. § 2000e-2(k)(1)(A)(i).  If Texas would argue that some special additional analysis should apply to a disparate impact claim in this context, the relevant authorities support no such argument.  Indeed, the first court of appeals to have squarely considered the application of Title VII in this context agreed that Title VII disparate impact liability can arise with regard to use of a criminal background screen in employment decisions.  *See Green*, 523 F.2d at 1298-99 (finding plaintiff entitled to relief).  Numerous district courts have similarly held that a plaintiff can state a disparate impact claim on the basis of the use of criminal background information in employment decision making and denied motions to dismiss accordingly.  *See Waldon*, 941 F. Supp. 2d at 889-90; *Caston v. Methodist Med. Ctr. of Ill.*, 215 F. Supp. 2d 1002, 1008 (C.D. Ill. 2002); *Williams v. Compassionate Care Hospice*, Civil No. 16-2095, 2016 WL 4149987, at *4-5 (D.N.J. Aug. 3, 2016); *McCain v. United States*, No. 2:14-cv-92, 2015 WL 1221257, at *17 (D. Vt. Mar. 17, 2015); *Wallace v. Magnolia Family Servs.*, Civil No. 13-4703, 2013 WL 6198277, at *3-4 (E.D. La. Nov. 27, 2013).  And the fact that Texas is a state as opposed to a private party also does not change the applicable analysis.  *See Dothard*, 433 U.S. at 331 n.14.

In assessing the questions of job relatedness and consistency with business necessity, the EEOC observes that, at one end of the spectrum, a "policy or practice requiring an automatic, across-the-board exclusion from all employment opportunities because of any criminal conduct is inconsistent with the *Green* factors" and, thus, Title VII.  App'x at 19.  In so concluding, the agency construed Title VII to require that the employer's hiring "policy operate[] to effectively

link specific criminal conduct, and its dangers, with the risks inherent in the duties of a particular position." App'x at 17. The Guidance is not categorical, however, in describing what Title VII requires of employers seeking to meet this standard. Employers may engage in individualized assessments of some kind for individuals subject to a criminal record screen or, in some cases, they may simply rely on targeted screens that are tailored through consideration of the type of crime, the amount of time since its occurrence, and the nature of the job sought. *Id.*

This framework is also eminently reasonable. The EEOC's view that it would be problematic under Title VII to use a blanket screen against the hiring of persons based on their criminal history without regard to the type of crime, the amount of time since its occurrence, and the nature of the job sought is consistent with the conclusions reached by the Third and Eighth Circuits, the only courts of appeals to have squarely considered disparate impact liability in this context. *See Green*, 523 F.2d at 1298 ("We cannot conceive of any business necessity that would automatically place every individual convicted of any offense, except a minor traffic offense, in the permanent ranks of the unemployed."); *SEPTA*, 479 F.3d at 245 (holding that "[i]f a bright-line policy can distinguish between individual applicants that do and do not pose an unacceptable level of risk, then such a policy is consistent with business necessity" but holding that it is a question of fact whether the policy can do this). Additionally, these courts have stated a substantially similar standard for the business necessity defense as the EEOC lays out in the Guidance. *Id.* at 245 (Title VII "require[s] that the policy under review accurately distinguish between applicants that pose an unacceptable level of risk and those that do not"); *see Green v. Mo. Pac. R.R. Co.*, 549 F.2d 1158, 1160 (8th Cir. 1977) (affirming injunction that permitted consideration of an applicant's criminal record if the employer considered "the nature and gravity

of the offense or offenses, the time that has passed since the conviction and/or completion of sentence, and the nature of the job for which the applicant has applied").

In sum, there is no basis to argue that the Guidance is "plainly contrary" to the text of Title VII or that it is "unreasonable," let alone that it has these defects "in all cases." Texas's substantive challenge to the Guidance fails as well, and the Court should enter judgment in Defendants' favor.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion for Summary Judgment under Federal Rule of Civil Procedure 56.


Dated: September 14, 2017                    Counsel for Defendants:

                                             CHAD A. READLER
                                             Acting Assistant Attorney General

                                             JOHN R. PARKER
                                             United States Attorney

                                             JOSHUA E. GARDNER
                                             Assistant Director, Federal Programs
                                             Branch

                                              /s/  Justin  M. Sandberg
                                             JUSTIN M. SANDBERG (Ill. Bar No.
                                             6278377)
                                             JAMES R. POWERS (TX. Bar No.
                                             24092989)
                                             Trial Attorneys
                                             United States Department of Justice
                                             Civil Division, Federal Programs Branch
                                             20 Massachusetts Avenue NW
                                             Washington, DC 20001
                                             (202) 514-5838
                                             justin.sandberg@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on September 14, 2017, I served the foregoing memorandum and the related

appendix via the CM/ECF System on counsel of record for Plaintiff:

Scott Keller
Austin Nimocks
Andrew Leonie
Andrew Oldham
Arthur D'Andrea
Michael Toth
David Hacker
Office of the Texas Attorney General
209 West 14th Street
P.O. Box 12548
Austin, Texas 70711-2548


_s/ Justin M. Sandberg_____
JUSTIN M. SANDBERG
Trial Attorney, Federal Programs Branch