# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### LUBBOCK DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 5:13-CV-00255-C |
| | ) | |
| EQUAL EMPLOYMENT | ) | |
| OPPORTUNITY COMMISSION, *et al.*, | ) | |
| | ) | |
| Defendants | ) | |
| _____ | ) | |

## <u>MEMORANDUM IN OPPOSITION TO</u>
## <u>PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>

Defendants' Opp. to Plaintiff's SJ Mot.

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................... 1

ARGUMENT .......................................................................................................................... 3

I.     THE COURT SHOULD DISMISS COUNT I FOR LACK OF JURISDICTION OR ENTER JUDGMENT IN FAVOR OF DEFENDANTS. ...................................... 3

II.    PLAINTIFF LACKS STANDING TO PURSUE COUNT II, WHICH LACKS MERIT. ..................................................................................................................... 5

    A.    Texas Lacks Standing to Raise Count II. ......................................................... 5

    B.    Count II Fails on the Merits. ............................................................................. 8

CONCLUSION ...................................................................................................................... 18

# TABLE OF AUTHORITIES

## CASES

*Allison v. Citgo Petroleum Corp.,*
   151 F.3d 402 (5th Cir. 1998) ............................................................................... 13

*Baylor Cty. Hosp. Dist. v. Price,*
   850 F.3d 257 (5th Cir. 2017) ............................................................................... 15

*Davis v. City of Dallas,*
   777 F.2d 205 (5th Cir. 1985) ............................................................................... 13

*Dothard v. Rawlinson,*
   433 U.S. 321 (1977) ............................................................................... 3, 12, 18

*EEOC v. Arabian Am. Oil Co.,*
   499 U.S. 244 (1991) ............................................................................... 9

*El v. Se. Pa. Transp. Auth. (SEPTA),*
   479 F.3d 232 (3d Cir. 2007) ............................................................................... 12, 13, 17

*General Electric Co. v. Gilbert,*
   429 U.S. 125 (1976) ............................................................................... 8, 9, 10

*Green v. Missouri Pac. R. Co.,*
   523 F.2d 1290 (8th Cir. 1975) ............................................................................... 15, 16

*Green v. Missouri Pac. R. Co.,*
   549 F.2d 1158 (8th Cir. 1977) ............................................................................... 6, 15, 16

*Griggs v. Duke Power Co.,*
   401 U.S. 424 (1971) ............................................................................... 13

*Hoctor v. USDA,*
   82 F.3d 165 (7th Cir. 1996) ............................................................................... 10, 11

*McDonnell Douglas Corp. v. Green,*
   411 U.S. 792 (1973) ............................................................................... 16

*Nat'l R.R. Passenger Corp. v. Morgan,*
   536 U.S. 101 (2002) ............................................................................... 9

*New York Tr. Co. v. Eisner,*
   256 U.S. 345 (1921) ............................................................................... 6

*Orix Credit All., Inc. v. Wolfe,*
  212 F.3d 891 (5th Cir. 2000) ................................................................................... 4

*Perez v. Mortg. Bankers Ass'n,*
  135 S. Ct. 1199 (2015) .................................................................................... 10, 11

*United States v. Garcia-Gonzalez,*
  714 F.3d 306 (5th Cir. 2013) ................................................................................ 13

## STATUTES

5 U.S.C. § 551 ................................................................................................................... 1

5 U.S.C. § 553(b)(A) ...................................................................................................... 11

28 U.S.C. §§ 2201 ............................................................................................................ 3

28 U.S.C. §§ 2202 ............................................................................................................ 3

42 U.S.C. § 2000e-2 ........................................................................................... 5, 11, 13

Tex. Health & Safety Code Ann. § 250.006 ................................................................ 6

Tex. Occ. Code Ann. § 1701.312 ................................................................................. 6

## OTHER AUTHORITIES

Appellants' Brief, *Dothard v. Rawlinson*, 433 U.S. 321 (1977), 1977 WL 189472 .............. 12, 17

## INTRODUCTION

Texas repeatedly uses the scientific concept of "dark matter" as a metaphor for the Guidance. The metaphor is inapt. But Texas's brief brings to mind another (quasi-) scientific concept: the alternate universe. Why? Texas's brief seems to reside in an alternate universe, a universe in which, unlike this one, Texas faces a Hobson's choice that supports standing, the Guidance requires individualized assessments in all cases, an interpretive rule must be issued through notice-and-comment rulemaking, business necessity means whatever Texas's legislature says it means, and Congress did not intend for employment practices adopted by state statute to be covered by Title VII. (The list could go on, but the point is made). In the actual case before the Court, the story is a different one.

To start, Texas faces insuperable barriers to securing jurisdiction for its claims. As detailed in the Government's opening brief, Count I is not ripe, and Texas lacks standing to litigate Count II.[1]  *See* Memorandum in Support of Defendants' Mot. for Summ. J., ECF Dckt. No. 92 (U.S. SJ), at 9-16, 23-27. The State does not address ripeness. But it labors to demonstrate its standing to bring Count II. Texas's labors are fruitless. The heart of Texas's argument on standing is that the Guidance seeks to preempt State hiring practices, creating a "Hobson's choice":  apply the Guidance's supposedly mandatory individualized assessment requirement or apply certain state law categorical exclusions. The supposed Hobson's choice is a fiction. The Guidance does not have a categorical individualized assessment requirement.

---

[1] Count I seeks declaratory and injunctive relief blessing and protecting Texas's felony conviction-related employment practices as a generic matter and enjoining the interpretation of Title VII enshrined in the Guidance, as well as Defendants' authority to issue right-to-sue letters based on that interpretation. Second Amended Complaint (SAC) ¶¶ 43-44, ECF Dckt. No. 62. Count II raises various challenges to the Guidance under the Administrative Procedure Act (APA), 5 U.S.C. § 551 et seq. SAC ¶¶ 45-50.

Appendix to U.S. SJ, ECF Dckt. No. 98 (App'x), at 5.  And Texas's conviction-related hiring practices have coexisted for decades with the EEOC's view that conviction-related hiring practices can, under all the facts and circumstances, constitute disparate-impact discrimination. In all that time, the United States has not brought a single enforcement action against Texas with respect to these hiring practices.  Notably, Texas has not alleged otherwise.  And Texas does not submit any evidence showing that any of its laws regarding these hiring practices are actually preempted by Title VII.  Texas has thus failed to establish the existence of a Hobson's choice or, by extension, standing.

Texas's claims fare no better on the merits. With a few exceptions noted below, Texas's brief does not touch on the merits of Count I.  Defendants' opening brief, then, suffices to establish the first count's lack of merit.  And the outlook for Count II is no better.  Texas contends that the EEOC lacks rulemaking authority and that the Guidance violates the APA because it was not issued through notice-and-comment rulemaking.  But the EEOC possesses the authority to issue interpretive rules[2] and interpretive rules need not be issued through notice-and-comment rulemaking.  All that remains of Count II is Texas's contention that the Guidance misinterprets Title VII.  This contention is also flawed.  One pillar of Texas's argument on this score is that the Guidance too narrowly interprets business necessity, failing to account for the special interests of sovereigns like Texas.  But the Supreme Court scuttled this argument 40 years ago, concluding that "Congress expressly indicated the intent that the same Title VII

---

[2] Defendants explained in the opening brief that they consider the Guidance to be an interpretive rule solely for purposes of this motion.  U.S. SJ at 27-28.  Defendants contend that the Guidance is more properly classified as a statement of policy, but understand that argument to have been effectively foreclosed by the Court's ruling that the Guidance constitutes final agency action.  *Id.* Further references to the Guidance as an interpretive rule should be understood to be subject to the caveat that Defendants are treating it as an interpretive rule for purposes of this motion only.

principles be applied to governmental and private employers alike." *Dothard v. Rawlinson*, 433 U.S. 321, 331 n.14 (1977) (citations omitted).  Texas relatedly insists that Title VII does not apply to employment practices adopted by state law.  *Dothard* dooms that argument as well.  *Id.* None of Texas's other arguments has merit.

As explained in Defendants' opening brief and below, the Court should dismiss Texas's Second Amended Complaint for lack of jurisdiction and enter judgment in favor of Defendants.

## ARGUMENT

## I.      THE COURT SHOULD DISMISS COUNT I FOR LACK OF JURISDICTION OR ENTER JUDGMENT IN FAVOR OF DEFENDANTS.

Count I contains three separate claims: 1) a claim, under the Declaratory Judgment Act (DJA), 28 U.S.C. §§ 2201-02, seeking approval of Texas's felony conviction related hiring practices as being consistent with Title VII; 2) a claim seeking to prohibit Defendants from issuing right-to-sue letters; and 3) a claim seeking to prohibit Defendants from enforcing the interpretation of Title VII that appears in the Guidance.  SAC ¶¶ 43.

Defendants explained in their opening brief that the Court should dismiss Count I on ripeness grounds and enter judgment in Defendants' favor.  (The following argument summary is illustrative, not exhaustive.)  The EEOC cannot bring a Title VII action against Texas, so there is not now—and never will be—an impending Title VII claim (of any kind) by the EEOC as to which Texas can seek an early adjudication of its rights.  This dooms all three claims as to the EEOC.  U.S. SJ at 13.  And while the Department of Justice can bring a Title VII suit against Texas, it has never done so with respect to Texas's felony conviction related practices, and it has not threatened to do so.  *Id.* at 11-12.  Thus, Texas's first claim against the Department of Justice is unripe.  Moreover, the Department of Justice cannot file suits under Title VII seeking abstract determinations of its right to issue right-to-sue letters or enforce specific statutory interpretations.

*Id.* at 20-21.  Thus, Texas cannot seek an early determination of its rights with respect to its second and third claims.  *Id.*  Finally, all of the claims also fail for reasons more closely related to the merits:  1) even if Texas's multitude of laws concerning the hiring of felons created a disparate impact (a claim no party to the litigation has made, let alone established), Texas has provided no evidence establishing that its employment practices satisfy Title VII's defense to disparate-impact discrimination claims for employment practices that are job related and consistent with business necessity, *id.* at 19; 2) Title VII requires Defendants to issue right to sue letters even when they conclude that Title VII claims are meritless, so even if Texas were correct that the EEOC's interpretation of Title VII is incorrect, there is no basis for prohibiting the Defendants from issuing right-to-sue letters, *id.* at 21-22; and 3) the EEOC's Guidance correctly interprets Title VII, *id.* at 22.

Texas's opening brief addresses few of these points.  Thus, at this stage and with a few caveats, Defendants stand on their brief with respect to Count I.  The caveats follow.  Texas argues in its brief that the Guidance's interpretation of Title VII is incorrect.  *E.g.* Texas's Brief in Support of Mot. for Summ. J. (Texas SJ) at 33-50.  But Texas challenged the interpretation of Title VII in Count II of its Second Amended Complaint as well, SAC ¶ 50, and its brief focuses on that count, so the interpretation of Title VII is addressed below in the context of Count II.  Next, Texas contends that the Guidance does not establish that Texas's employment practices have a disparate impact on a protected class.  Texas SJ at 42.  This point merely further shows that Count I is not ripe.  Neither party has attempted to show disparate impact nor is there an imminent prospect of a Title VII suit.  In the absence of adverse parties and a concrete dispute, claims are not ripe for review.  *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 896-97 (5th Cir. 2000).  Additionally, if the Court determines that there has been no showing of disparate

impact, then it should not decide what the proper interpretation of Title VII's business necessity and job-relatedness defense is or whether Texas satisfies it, because the defense is unnecessary without the predicate showing of disparate impact. *See* 42 U.S.C. § 2000e-2(k). To decide the issue would be to issue an advisory opinion. Moreover, that issue is not ripe for review either, for the reasons set forth above and in Defendants' motion. Accordingly, summary judgment in favor of Defendants is warranted.

## II.   PLAINTIFF LACKS STANDING TO PURSUE COUNT II, WHICH LACKS MERIT.

Count II of Texas' lawsuit seeks an order setting the Guidance on three grounds under the APA: 1) the EEOC lacks the authority to issue the Guidance; 2) the Guidance should have been issued through notice-and-comment rulemaking; and 3) the Guidance is an impermissible interpretation of Title VII. The Court should dismiss these claims for lack of jurisdiction, or, in the alternative, enter judgment in favor of defendants on the merits.

### A.   Texas Lacks Standing to Raise Count II.

Defendants explained at length in their opening brief why Texas lacks standing to bring Count II. U.S. SJ at 23-27. It should suffice to say that, at this stage of the litigation, Texas must proffer evidence of an injury-in-fact and it has failed to do so. Predictably, Texas disagrees. It offers two basic arguments in support of standing. Neither has merit.

First, Texas insists that it has standing to litigate its APA claims because the Guidance interferes with its hiring practices by putting the State to the "Hobson's Choice of honoring Texas's categorical exclusions" and "risk an enforcement action" or following the Guidance's requirement for "individualized assessments." Texas SJ at 15 (footnote omitted). This so-called Hobson's choice is a fiction. The EEOC has held the same basic view of conviction-related hiring practices for decades, and during many, if not all, of those years the State of Texas has

used felony conviction employment practices that limit the ability of convicted felons to obtain

and retain jobs. *Compare* App'x at 56-58 with Tex. Occ. Code § 1701.312, Credits (original act

effective Sept. 1, 1999); Tex. Health & Safety Code § 250.006, Credits (original act effective

Sept. 1, 1993).  In all the years that the EEOC's views have coexisted with Texas law, the federal

government—through the Department of Justice—has brought exactly *zero* enforcement actions.

Not one.  This history decimates Texas's argument that it is faced with a Hobson's Choice.  *New*

*York Tr. Co. v. Eisner*, 256 U.S. 345, 349 (1921) ("[A] page of history is worth a volume of

logic.").

What is more, the Guidance does not take a categorical position on Texas's "categorical

exclusions."  Contrary to the State's oft-repeated contention, the Guidance explicitly—and

repeatedly—disclaims any flat requirement that employers conduct individualized assessments:

"Title VII does not require individualized assessment in all circumstances."  *See, e.g.*, App'x at

5.  Moreover, a categorical exclusion could consider the *Green* factors endorsed by the EEOC

(and unfairly maligned by the State) and thus fall within the bounds of the Guidance's supposed

"safe harbor."[3]  An employment practice could, for example, exclude only the category of

individuals who have been convicted of certain felonies in a certain time frame—and only for

certain kinds of jobs.  *See* App'x at 5.  At least one Texas agency, the Texas Parks and Wildlife

Department, uses such targeted categorical screens for certain positions.  Texas's Appendix, ECF

Dckt. No. 96, at 65 ¶ 7.  In any event, the Guidance does not express a conclusion regarding the

---

[3] The *Green f*actors are "the three factors identified by the court in *Green* Defendants' Opp. to Plaintiff's SJ Mot *Missouri Pacific Railroad*, 549 F.2d 1158 (8th Cir. 1977)"—"the nature of the crime, the time elapsed [since the crime], and the nature of the job"—that, under the Guidance, an employer should consider when using a conviction-related employment practice to increase the chances that the employment practice would be found to be job related and consistent with business necessity, if it were to cause a disparate impact on a protected class.  App'x at 5.

ultimate validity, under Title VII, of other "categorical exclusions" used by Texas, which do not

use *Green*-type factors, but which also are limited to certain positions (rather than all state jobs)

and to individuals with felony convictions (as opposed to, for example, including individuals

who have been convicted only of misdemeanors).  See App'x at 19.  While the Guidance

indicates that use of the *Green* factors may be *sufficient* to presumptively establish that a practice

satisfies Title VII's business necessity defense, it never says that the EEOC views consideration

of the factors as *necessary* for establishing business necessity.  App'x at 19, 21.  So even

ignoring the history of non-enforcement, which is hard to ignore, the text of the Guidance does

not demonstrate that the EEOC is imminently likely to request that the Department of Justice

initiate an enforcement action with respect to any of Texas's employment practices, much less

that the Department of Justice would actually accede to the request.

Thus, Texas has not demonstrated the existence of a Hobson's Choice, or, by extension,

an imminent injury-in-fact sufficient to support this Court's jurisdiction.

Second, Texas argues that it has standing to challenge the Guidance because it has a

panoply of laws regulating felons that are "inextricabl[y] connect[ed]" and the "EEOC removing

from Texas's juridical blueprint the absolute bars on employment is tantamount to removing a

critical piece from a structure's foundation," which will cause the structure to collapse.  Texas SJ

at 13-14.  This argument is flawed.  The EEOC has not removed anything from "Texas's

juridical blueprint."  The EEOC cannot sue Texas to enforce Title VII against States, and the

Department of Justice, which can, has not filed suit or threatened to file suit regarding any of

Texas's conviction-related employment practices.  Moreover, as explained above, Texas has not

demonstrated (to the extent it matters) that any of its hiring practices are inconsistent with the

Guidance:  The Guidance does not require individualized assessments in all cases or take a

categorical position on categorical exclusions and these issues only become relevant if a particular law or policy actually has a disparate impact.

Nor does Texas's metaphor accurately depict the nature of its own or the federal government's legal regimes.  Texas's non-employment felony restrictions would not become useless or invalid if its employment-related felony restrictions were invalidated; they would not tumble down like a house of cards because they do not depend on the employment restrictions for their existence.  And through its enactment of Title VII, it was Congress, not the EEOC, that created different legal restrictions on Texas's employment practices than on its laws concerning, for example, who may administer estates, *see* Texas SJ at 14.  Texas does not challenge Title VII's regulation of state employers, and the Court should not credit this apparent backdoor attempt to do so.  But these details are largely beside the point because, again, neither the EEOC nor the Department of Justice have tinkered with Texas's "juridical blueprint."

### B.      Count II Fails on the Merits.

Defendants spelled out in their opening memorandum why Texas's three APA claims fail on the merits.  U.S. SJ at 22-38.  In brief, 1) the EEOC has the authority to issue interpretive rules and, for purposes of this motion, the Guidance is best thought of as an interpretive rule; 2) interpretive rules need not be issued through notice-and-comment rulemaking; and 3) the Guidance reasonably interprets Title VII and is not *in all cases* plainly contrary to the statute or unreasonable, which Texas must show to prevail on its facial challenge to the Guidance.  *Id.* at 22-38.  Texas disputes these basic points.  It is wrong.

Texas argues that the "EEOC [l]acks [r]ulemaking [a]uthority."  Texas SJ at 32.  To that end, Texas insists, citing *General Electric. Co. v. Gilbert*, 429 U.S. 125, 156–57 (1976), that the EEOC is forbidden from "issu[ing] advisory opinions" like the Guidance, but can develop policies only through its adjudicatory functions.  *Id.*  Texas concludes that the Guidance is

"regulatory dark matter," Texas SJ at 32, *i.e.*, an agency document, such as an "interpretive rule"

that "'may enact policy while flouting the APA's public notice and comment requirements for

legislative rules,'" *id.* at 3 (quoting Clyde Wayne Crews, Jr., *Mapping Washington's*

*Lawlessness 2016: A Preliminary Inventory of "Regulatory Dark Matter,"* p. 3 (Competitive

Enterprise Institute 2015) (citation omitted), available at

https://papers.ssrn.com/sol3/papers.cfm?abstract_id=2733378).

Texas's statement that the EEOC lacks rulemaking authority is false:  The EEOC has the

authority to issue interpretive rules.  *See, e.g., Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S.

101, 110 n.6 (2002); *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 257 (1991); U.S. SJ at 28.

Texas's argument that the EEOC can act only through adjudication is equally wrong.  In

support of its position, Texas writes the following:  "The Supreme Court recognizes that, like

courts, 'EEOC work[s] to develop coherent polic[ies] . . . *through the pursuit of its normal*

*adjudicatory functions*.' *Gilbert*, 429 U.S. at 156-57 (emphasis added).  In other words, "EEOC

is to produce policy and substantive statements *only* through actual cases and controversies."

Texas SJ at 32.  But, as noted above, the EEOC has the authority to issue interpretive rules.

Moreover, Texas misrepresents the holding of *Gilbert*.  First, the *Gilbert* Court did not decide

that certain mechanisms for policy development were off limits to the EEOC.  Rather, it

primarily decided whether the failure of an employee benefit plan to cover pregnancy-related

disabilities amounted to sex discrimination in violation of Title VII.  *Gilbert*, 429 U.S. at 145-46.

In the course of doing so, the Court did decline to follow interpretive guidelines issued by the

EEOC, but it did so because it disagreed with the substance of the guidelines, not because it held

that the EEOC lacked the power to issue them.  *Id.* at 140-45.  Second, the language quoted by

Texas comes from the dissenting opinion.  *Id.* at 147, 156-57.  Third, to the extent that the

dissenting opinion addressed the issue, it indicated that the EEOC *can* issue documents like the

Guidance and is *not* limited to using its "adjudicatory functions" to develop policy.  A fuller

quotation from the *Gilbert* dissent proves the point:

> . . . [The] EEOC worked to develop a coherent policy toward pregnancy-oriented
> employment practices both through the pursuit of its normal adjudicatory functions
> and by engaging in comprehensive studies with such organizations as the
> President's Citizens' Advisory Council on the Status of Women . . . These
> investigations on the role of pregnancy in the labor market coupled with the
> Commission's 'review . . . (of) its case decisions on maternity preparatory to issuing
> formal guidelines,' *id.*, at 1161, culminated in the 1972 guideline . . . For me, the
> 1972 guideline represents a particularly conscientious and reasonable product of
> EEOC deliberations and, therefore, merits our 'great deference.'

*Id.* at 156-57 (emphasis added).  In short, one cannot fairly read the dissent to say that the EEOC

is relegated to using adjudications as its only tool for interpreting Title VII when it says that the

EEOC's guideline is entitled to "great deference."  Texas's argument to the contrary fails, as

does its corollary that the EEOC cannot issue "advisory opinions."  The EEOC is not a federal

court subject to Article III's prohibition on issuing advisory opinions, and it would not make

sense for the EEOC, as a law enforcement agency, to follow that model:  Employers benefit from

knowing how the EEOC interprets Title VII.  *See Hoctor v. U.S. Dep't of Agric.*, 82 F.3d 165,

167 (7th Cir. 1996) ("Every governmental agency that enforces a less than crystalline statute

must interpret the statute, and it does the public a favor if it announces the interpretation in

advance of enforcement . . . .").

Relatedly, the Guidance is not "regulatory dark matter."  The article quoted by Texas

affixes the "regulatory dark matter" label to interpretive rules because they "may enact policy

while flouting the APA's public notice and comment requirements for legislative rules."

*Mapping Washington's Lawlessness* at 3 (quoted at Texas SJ at 3).  But the APA provides that

interpretive rules need not be issued through notice-and-comment rulemaking.  *Perez v. Mortg.*

*Bankers Ass'n*, 135 S. Ct. 1199, 1203-04 (2015) ("Not all 'rules' must be issued through the

notice-and-comment process.  Section 4(b)(A) of the APA provides that, unless another statute

states otherwise, the notice-and-comment requirement 'does not apply' to 'interpretative

rules'. . . 5 U.S.C. § 553(b)(A)").  So, the EEOC did not violate the APA by declining to use

notice-and-comment procedures when issuing the Guidance.  And there is nothing else "dark"

about the Guidance, or documents like it.  To the contrary, they shed light on agencies' thinking

to the public's benefit.[4]  *See Hoctor*, 82 F.3d at 167.

Texas's assertion that the EEOC misinterpreted Title VII fares no better.  The State

makes five primary arguments in support of its position:  1) the EEOC too narrowly interprets

business necessity, failing to account for the needs of states, like Texas, Texas SJ at 2; 2) the

Guidance does not account for employers who want to use a "no-risk hiring policy," *id.* at 34;

3) the eight documents cited by the EEOC as support for the Guidance "form an inadequate basis

for the [R]ule," *id.*; 4) the EEOC insensibly emphasizes the *Green* factors, *id.* at 37-39; and 5)

Congress did not delegate to the EEOC the authority to issue rules that encroach upon statutorily

enacted employment practices, *id.* at 44-47.  These arguments are addressed—and dispatched—

in turn.

Texas contends that the EEOC's interpretation of Title VII—in particular, of the meaning

of "business necessity," 42 U.S.C. § 2000e-2(k)(1)(A)(i)—does not account for the needs of a

sovereign like Texas.  Texas SJ at 2.  According to the State, the EEOC has not accounted for

either the State's desire for its employment practices to jibe with its non-employment restrictions

on felons, by recognizing the purportedly "permanent stain of a felony conviction," *id.* at 8, or its

---

[4] Moreover, Texas's quarrel with the concept of interpretive rules is with Congress (as it enacted
the APA), not with the EEOC; it is bedrock administrative law that courts may not impose
procedural requirements on agencies beyond those created by the APA.  *Perez*, 135 S. Ct. at
1207.

interest in advancing the at-will employment doctrine and policies emphasizing loyalty and trust in employment. *Id.* at 2, 8-11, 26, 28-29.

Texas's argument misses the mark. Courts have viewed conviction-related employment practices as risk-mitigation measures. *El v. Se. Pa. Transp. Auth. (SEPTA)*, 479 F.3d 232, 244-45 (3d Cir. 2007). Accordingly, to determine whether such practices satisfy Title VII's business necessity requirement, they have assessed whether the practices appropriately distinguish between applicants and employees who pose an unacceptable risk, and those who do not. *See id.* Texas challenges this view of business necessity. It contends, in essence, that it imposes conviction-related employment practices not only as a risk mitigation measure, but as an expressive measure, to convey Texas's strongly held views about the indelible stain of a felony conviction and the importance of certain virtues. Texas SJ at 9-11, 13-14, 33. Given Texas's status as a sovereign, the argument continues, the Guidance should recognize that this interest satisfies the business necessity defense. *Id.*

There are three problems with the argument. First, when enacting Title VII, "Congress expressly indicated the intent that the same Title VII principles be applied to governmental and private employers alike." *Dothard v. Rawlinson*, 433 U.S. 321, 331 n.14 (1977). In *Dothard*, the State of Alabama argued that it was entitled to special treatment under Title VII because of its sovereign status. Appellants' Brief, *Dothard v. Rawlinson*, 433 U.S. 321 (1977), 1977 WL 189472, at 27-28, 45. As noted above, the Supreme Court rejected that argument, concluding that private and public employers alike are judged by the same standards. *Dothard*, 433 U.S. at 331 n.14. Thus, there was no need for the EEOC to make special allowances in the Guidance for sovereign interests.

Second, the State's argument is nullification in the guise of business necessity.  Congress has expressed its policy preferences through Title VII, including that employers are not allowed to discriminate against employees or applicants on an unlawful basis.  Permitting States to satisfy business necessity by arguing that they have their own policy goals to satisfy would eviscerate Title VII as applied to states.  States would have a de facto veto over Title VII's disparate-impact provision by uttering magic words about their own policy preferences.  Texas offers no limiting principle for this state-policy rationale (let alone any support in the case law), and there's no reason to believe that Congress adopts statutes that facilitate their own negation.

Third, the statute provides a defense to employers who establish that the employment practice is *both* "job related for the position in question and consistent with business necessity," 42 U.S.C.A. § 2000e-2, but Texas's argument ignores the "job related for the position in question" aspect of the defense.  Congress wanted the employer to show that its practice served an important employment goal with respect to the specific job at issue, considering its duties, level of supervision, level of responsibility, setting, and the like.  *See, e.g.*, *Griggs v. Duke Power Co.*, 401 U.S. 424, 436 (1971); *Davis v. City of Dallas*, 777 F.2d 205, 210-13 (5th Cir. 1985); *SEPTA*, 479 F.3d at 245.  This is a fact-bound inquiry regarding the connection between an employment practice and a job.  *See Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 424 (5th Cir. 1998).  Texas's view ignores that aspect of the defense.  The State's supposed need for conviction-related employment practices as billboards for the State's policy preferences is divorced from the nature of the positions at issue.  Indeed, consideration of the need for the employment practice on a job-by-job basis is antithetical to the State's position because it could dilute the consistency with which the State seeks to highlight the opprobrium of a felony conviction.  Texas SJ at 13-14.  Ignoring a statutory provision is not an accepted method of

interpretation, *United States v. Garcia-Gonzalez*, 714 F.3d 306, 312 (5th Cir. 2013); the EEOC was right not to make the same error Texas does.  The argument fails.

Texas also argues that the EEOC erred by "mak[ing] no room in its Rule for employers that possess a no-risk hiring policy—an approach that per se excludes the 'business necessity' needs (and legal protections) of countless businesses and employers where minimizing risk is essential to success."  Texas SJ at 34.  Not so.  There is no such thing as no-risk hiring, humans being what they are.  But if minimizing risk is essential to the success of an employer, then, under Title VII (and consistent with the Guidance) the employer can demonstrate that fact by producing evidence supporting the need to minimize risk with respect to the position at issue.  *See* App'x at 17 (explaining that, in the EEOC's view, an employer can establish that a practice is job-related and consistent with business necessity by "show[ing] that the policy operates to effectively link specific criminal conduct, and its dangers, with the risks inherent in the duties of a particular position").  If Texas's position, instead, is that felony-conviction-related employment screens can satisfy the job-relatedness and business necessity defense on a blanket basis related to this "no risk" rationale, it offers no authority in support of the position.  Defendants are not aware of any either, which comes as no surprise given that the position would be wholly contrary to Title VII's provision for disparate-impact liability and job-specific defenses.

Texas also maintains that the eights documents cited by the EEOC do not supply an adequate "basis" for the Guidance.  *See* Texas SJ at 33.  This argument too comes up short.  As an initial matter, the argument carries with it an incorrect implication—*i.e.*, that these documents were the only support offered by the EEOC in support of the Guidance.  In fact, the EEOC relied on many more sources than the eight documents highlighted by Texas, as is evident from a review of the 167 endnotes contained in the Guidance.  App'x at 30-55.  In all events, however,

the eight documents do support the Guidance's interpretation of Title VII because they demonstrate that the EEOC's interpretation of the statute with respect to conviction-related practices has been consistent through the years.  *See Baylor Cty. Hosp. Dist. v. Price*, 850 F.3d 257, 261 (5th Cir. 2017) (agency interpretation of statute more persuasive if consistent with prior interpretations); Texas App'x at 265-356 (citing 8 docs).  Texas argues that none of the documents support the Guidance because they all advance too crabbed a definition of business necessity, one that ignores the sort of interests that Texas has.  Texas SJ at 34-42.  But Texas argues that the Guidance does the same thing, *i.e.*, too narrowly interprets business necessity. *See, e.g., Id.* at 13-14.  (To be clear, as explained earlier in the brief, Texas's more capacious interpretation of business necessity is incorrect.)   Thus, Texas's argument fails because its own brief establishes that the eight documents are consistent with—and therefore provide a "basis for"—the Guidance.

Next, Texas insists that the Guidance falters by improperly relying on the "*Green* factors."  Texas SJ at 38-39; App'x at 18.  The *Green* court approved the district court's conclusion that a conviction-related employment practice should take account of the following three elements:  "the nature and gravity of the offense or offenses, the time that has passed since the conviction and/or completion of sentence, and the nature of the job for which the applicant has applied."  *Green v. Missouri Pac. R. Co.*, 549 F.2d 1158, 1160 (8th Cir. 1977).  The Guidance expresses the EEOC's view that, "[a]bsent a validation study that meets the Uniform Guidelines' standards, the *Green* factors provide the starting point for analyzing how specific criminal conduct may be linked to particular positions."  App'x at 18.

Texas objects that the EEOC has misread *Green* and that, in any case, "*Green* is neither a significant nor profound Title VII case."  Texas SJ at 38.  As to misreading, Texas asserts that

"[t]he Eighth Circuit did not analyze merely '[t]he nature of the job held or sought,' but whether a denial 'rest[ed] upon a tenuous or insubstantial basis.'" *Id.* (quoting *Green v. Missouri Pac. R. Co.*, 523 F.2d 1290, 1296 (8th Cir. 1975)). And Texas concludes that *Green* lacks significance or profundity because it has been cited only 11 times by circuit courts. Texas SJ at 38-39.

The State is wrong on both counts. The "tenuous" language comes from the first of two appellate decisions in *Green*. The court used it when explaining that the Supreme Court had indicated that conviction-related employment practices could violate Title VII: "We perceive this comment [from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 806 (1973)] to suggest a sweeping disqualification for employment resting solely on past behavior can violate Title VII where that employment practice has a disproportionate racial impact and rests upon a tenuous or insubstantial basis." *Green*, 523 F.2d at 1296. In context, then, it is evident that the "tenuous or insubstantial basis" language was not meant as a definition of job-relatedness and business necessity, but as a placeholder for those terms. And in the second *Green* appellate opinion, the Court approves the factors adopted by the district court for assessing job-relatedness and consistency with business necessity. *Green*, 549 F.2d at 1160. Thus, the EEOC did not misread *Green*, but rather followed the most relevant part of the *Green* opinions—the portion that provides specific guidance for determining when a practice is job-related and consistent with business necessity.

Texas's second argument also fails. Texas has provided no reason to believe that eleven citations by courts of appeal is evidence of insignificance or a lack of profundity. In any case, the relevance and correctness of the *Green* factors is not changed by the number of times that the case has been cited, popularity not being a recognized doctrine for assessing either. And the EEOC correctly included the *Green* factors as indicia of job-relatedness and business necessity

Defendants' Opp. to Plaintiff's SJ Mot.     16

because they are commonsense measures of the risk entailed in hiring or retaining an individual for a particular job—and conviction-related employment practices are risk management practices, *SEPTA*, 479 F.3d at 244-45.

Finally, Texas argues that Congress did not delegate to the EEOC the authority to issue rules that preempt states' statutorily-enacted employment practices because there is no clear statement authorizing such rules. Texas SJ at 47. As an initial matter, the Guidance does not displace any state statutes: Title VII can preempt state laws, but the Guidance does not do so. *See* App'x at 5. And in any case, Supreme Court precedent dooms this argument. In *Dothard*, the State of Alabama challenged the application of Title VII to its practices for hiring prison guards. Appellants' Brief, *Dothard*, 433 U.S. 321, 1977 WL 189472. It argued, among other things, that "[e]ven though this statute was the result of the collective wisdom of the entire Alabama legislature, it was called into question with no more proof than that required to challenge the caprice in employment of an individual proprietor . . . No acknowledgement was made of the state legislature's province . . . The appellants contend that such derogation of the state's rights is violative of the tenth amendment." *Id.* at 29. Alabama argued in the alternative that it was entitled to greater deference under Title VII than private employers. *Id.* at 45. Texas's argument closely tracks the arguments that the State of Alabama made in *Dothard*: "Indeed, it is one thing for Congress to provide a remedy for the victims of embedded, invidious bureaucratic discrimination within certain agencies or elements of state and local government. It is quite another thing to conclude that Congress called into question the reasoned, specific, democratically-produced restrictions of a contemporary state legislature." Texas SJ at 47. The Supreme Court rejected Alabama's argument in a footnote, concluding that no special solicitude is owed to statutorily enacted practices because "[t]he relevant legislative history of the 1972

amendments extending Title VII to the States . . . expressly indicated the intent that the same

Title VII principles be applied to governmental and private employers alike." *Dothard*, 433 U.S.

at 331 n.14.[5]  In short, there is no ambiguity about the application of Title VII to state

employment practices, whether enacted through statute or otherwise.

## CONCLUSION

For the reasons stated above and in Defendants' opening brief, the Court should dismiss

this case for lack of jurisdiction or enter judgment in favor of Defendants on the merits.


Dated:  October 5, 2017                         Counsel for Defendants:

                                                CHAD A. READLER
                                                Acting Assistant Attorney General

                                                JOHN R. PARKER
                                                United States Attorney

                                                JOSHUA E. GARDNER
                                                Assistant Director, Federal Programs
                                                Branch

                                                 /s/ Justin M. Sandberg
                                                JUSTIN M. SANDBERG (Ill. Bar No.
                                                6278377)
                                                Senior Trial Counsel
                                                JAMES R. POWERS (TX. Bar No.
                                                24092989)
                                                Trial Attorneys
                                                United States Department of Justice
                                                Civil Division, Federal Programs Branch
                                                20 Massachusetts Avenue NW
                                                Washington, DC 20001
                                                (202) 514-5838
                                                justin.sandberg@usdoj.gov

---

[5] For similar reasons, Texas's assertion in passing that the Guidance "exceeds Congress's
Commerce Clause powers" is without merit.  Texas SJ at 48.  Aside from again constituting a
backdoor, unpled attack on Title VII's regulation of states, it is directly contradicted by the
Supreme Court precedent described above.

Defendants' Opp. to Plaintiff's SJ Mot.            18

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 5, 2017, I served the foregoing via the CM/ECF System on

counsel of record for Plaintiff:

Scott Keller
Austin Nimocks
Andrew Leonie
Andrew Oldham
Arthur D'Andrea
Michael Toth
David Hacker
Office of the Texas Attorney General
209 West 14th Street
P.O. Box 12548
Austin, Texas 70711-2548


                                          */s/ Justin M. Sandberg*
                                          JUSTIN M. SANDBERG
                                          Senior Trial Counsel, Federal Programs
                                          Branch