**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION**

| | |
|---|---|
| TEXAS,<br><br>　　　　　*Plaintiff,*<br><br>v.<br><br>EQUAL EMPLOYMENT OPPOR-<br>TUNITY COMMISSION; VICTORIA<br>A. LIPNIC, in her official capacity as<br>Acting Chair of the Equal Employ-<br>ment Opportunity Commission; and<br>JEFFERSON B. SESSIONS, III, in<br>his official capacity as Attorney Gen-<br>eral of the United States,<br><br>　　　　　*Defendants.* | Case No. 5:13-CV-00255-C |

**TEXAS'S BRIEF IN RESPONSE TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

# Table of Contents

Table of Authorities ........................................................................... ii

Introduction to Texas's Response ...................................................... 1

Response Argument ........................................................................... 2

    I.    The Conflict Before the Court is Significant and Ripe. ......................... 2

        A.    The Rule Conflicts with Texas Laws and Policies........................ 2

            1.    The Rule creates many specific conflicts with various Texas laws and policies.......................................... 3

            2.    The Rule threatens Texas's sovereign plan regarding the privileges of felons. .................................... 5

        B.    To Have Standing, Texas Need Not Change Its Laws or Policies or Wait to Be Sued. ........................................... 6

        C.    Texas's Suit Is Proper Under the Declaratory Judgment Act. ...................................................................... 10

        D.    The Rule Causes Texas an Increased Regulatory Burden........ 13

    II.    The Court Can Grant Relief to Texas.................................................. 15

    III.    Defendants' Collectively Misconstrue Title VII. ............................... 17

        A.    DOJ Substantively Agrees With the Rule. ................................. 18

        B.    DOJ's View of the Law Lacks an Adequate Basis.................... 21

        C.    The Controversy Is Functionally One of First Impression. ....... 23

Conclusion ...................................................................................... 24

Certificate of Service ...................................................................... 25

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Alfred L. Snapp & Son, Inc. v. Puerto Rico,*
    458 U.S. 592, 607 (1982) ................................................................. 5

*Anderson v. U.S. Dep't of Hous. & Urban Dev.,*
    554 F.3d 525 (5th Cir. 2008) .......................................................... 20

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ........................................................................ 20

*Burlington Northern & Santa Fe Ry. Co. v. Poole Chemical Co.,*
    419 F.3d 355 (5th Cir. 2005) .......................................................... 17

*Butts v. Nichols,*
    381 F. Supp. 573 (S.D. Iowa 1974) ................................................ 21

*Cent. and S.W. Servs., Inc. v. EPA,*
    220 F.3d 683 (5th Cir. 2000) .......................................................... 11

*Citizens United v. Fed. Elec. Comm'n,*
    558 U.S. 310 (2010) .......................................................................... 4

*City of Cleburne v. Cleburne Living Ctr.,*
    473 U.S. 432 (1985) ........................................................................ 17

*Clapper v. Amnesty Int'l, USA,*
    568 U.S. 398 (2013) ..................................................................... 7, 9

*Collin Cty., Tex. v. Homeowners Ass'n for Values Essential to*
    *Neighborhoods,*
    915 F.2d 167 (5th Cir. 1990) .................................................... 11, 12

*Contender Farms LLP v. U.S. Dep't of Agric.,*
    779 F.3d 258 (5th Cir. 2015) ....................................................... 4, 8

*Davis v. FEC,*
    554 U.S. 724 (2008) .......................................................................... 7

*Dothard v. Rawlinson,*
    433 U.S. 321 (1977) ........................................................................ 24

*EEOC v. Arabian Am. Oil Co.,*
    499 U.S. 244 (1991) ........................................................................ 23

*El v. Se. Pa. Transp. Auth. (SEPTA),*
  479 F.3d 232 (3d Cir. 2007)........................................................... 18, 22, 23

*Enron Corp. v. Spring Indep. Sch. Dist.,*
  922 S.W. 2d 931 (Tex. 1996)................................................................ 17

*Fisher v. Johnson,*
  174 F.3d 710 (5th Cir. 1999) ............................................................... 14

*Freeport–McMoRan, Inc. v. K N Energy, Inc.,*
  498 U.S. 426 (1991) ......................................................................... 10

*Fry v. Napoleon Cmty. Sch.,*
  137 S. Ct. 743 (2017) ......................................................................... 4

*Green v. Missouri Pacific Railroad Co.,*
  523 F.2d 1290 (8th Cir. 1975) .......................................................... 18, 21, 22

*Griggs v. Duke Power Co.,*
  401 U.S. 424 (1971) ......................................................................... 18

*Halter v. Nebraska,*
  205 U.S. 34 (1907) ............................................................................ 5

*Johnson v. Onion,*
  761 F.2d 224 (5th Cir. 1985) ............................................................... 7

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992) ......................................................................... 5, 7

*Massachusetts v. EPA,*
  549 U.S. 497 (2007) ...................................................................... 2, 5, 6

*Md. Cas. Co. v. Pac. Coal & Oil Co.,*
  312 U.S. 270 (1941) .................................................................. 7, 10, 11

*MedImmune, Inc. v. Genentech, Inc.,*
  549 U.S. 118 (2007) ....................................................................... 9, 10

*Middle S. Energy, Inc. v. City of N.O.,*
  800 F.2d 488 (5th Cir. 1986) ............................................................... 7

*Mieth v. Dothard,*
  418 F. Supp. 1169 (M.D. Ala. 1976), *aff'd in part, rev'd in part sub nom.,*
  *Dothard v. Rawlinson*, 433 U.S. 321 (1977) ........................................... 24

iii

*Morris v. Dearborne,*
    69 F. Supp. 2d 868 (E.D. Tex. 1999) ...................................................... 11

*NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.,*
    28 F.3d 572 (7th Cir. 1994) ..................................................... 12, 13

*Orix Credit All., Inc. v. Wolfe,*
    212 F.3d 891 (5th Cir. 2000) ...................................................... 11

*Pederson v. La. State Univ.,*
    213 F.3d 858 (5th Cir. 2000) ........................................................ 7

*Pub. Serv. Comm. v. Wycoff Co.,*
    344 U.S. 237 (1952) .................................................................. 11

*Regions Ins., Inc. v. Ace Prop. & Cas. Ins. Co.,*
    80 F. Supp. 3d 730 (M.D. La. 2015) ............................................. 12

*Shepherd v. Trevino,*
    575 F.2d 1110 (5th Cir. 1978) .................................................... 24

*Sherwin-Williams Co. v. Holmes Cty.,*
    343 F.3d 383 (5th Cir. 2003) ...................................................... 12

*Skidmore v. Swift & Co.,*
    323 U.S. 134 (1944) .................................................................. 23

*Smith v. Sperling,*
    354 U.S. 91 (1957) ..................................................................... 9

*St. Paul Ins. Co. v. Trejo,*
    39 F.3d 585 (5th Cir. 1994) ......................................................... 12

*Steffel v. Thompson,*
    415 U.S. 452 (1974) ................................................................... 9

*Susan B. Anthony List v. Driehaus,*
    134 S. Ct. 2334 (2014) ................................................................ 9

*Teemac v. Henderson,*
    298 F.3d 452 (5th Cir. 2002) ....................................................... 14

*Texas v. EEOC,*
    827 F.3d 372 (5th Cir. 2016), *reh'g en banc granted, opinion withdrawn,*
    838 F.3d 511 (5th Cir. 2016) .............................................. 2, 4, 7, 13

iv

*Texas v. Richards,*
    301 S.W.2d 597 (Tex. 1957)..................................................................... 5

*Texas v. United States,*
    201 F. Supp. 3d 810 (N.D. Tex. 2016), *order clarified,* No. 7:16-CV-
    00054-O, 2016 WL 7852331 (N.D. Tex. Oct. 18, 2016), *appeal dismissed*
    *sub nom. Texas, et al. v. United States et al.* (Oct. 21, 2016) ............................... 12

*Texas v. United States,*
    787 F.3d 733 (5th Cir. 2015) .................................................................. 6

*Texas v. United States,*
    809 F.3d 134 (5th Cir. 2015), *aff'd by an equally divided Court,* 136 S.
    Ct. 2271 (2016) (per curiam) ................................................... 2, 5, 6, 12

*Texas v. W. Publ'g. Co.,*
    882 F.2d 171 (5th Cir. 1989) .................................................................. 12

*Toilet Goods Ass'n, Inc. v. Gardner,*
    387 U.S. 158 (1967) ............................................................................. 8

*Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.,*
    996 F.2d 774 (5th Cir. 1993) ........................................................... 12, 13

*Wilton v. Seven Falls Co.,*
    515 U.S. 277 (1995) ............................................................................ 10

*Wolfer v. Thaler,*
    525 F.2d 977 (5th Cir.), *cert. denied,* 425 U.S. 975 (1976) ...................................... 7

## Statutes

28 U.S.C. § 2201(a) ............................................................................ 10

42 U.S.C. § 2000e-2............................................................................. 17

74 Pa. Stat. § 1711 ............................................................................. 23

Tex. Educ. Code § 22.085(a) ................................................................... 22

Tex. Occ. Code § 1701.312(a)................................................................... 19

## Other Authorities

EEOC Meeting to Examine Arrest and Conviction Records as a Hiring
    Barrier, *Arrest and Conviction Records as a Hiring Barrier* (July 26,
    2011) (meeting transcript), http://www.eeoc.gov/eeoc/meetings/7-26-
    11/transcript.cfm. ................................................................................. 19

Letter of U.S. Attorney General Eric H. Holder, Jr. to all Attorneys
    General, April 18, 2011, https://csgjusticecenter.org/wp-content/uploads/
    2014/02/Reentry_Council_AG_Letter.pdf................................................ 19

*Testimony for Amy Solomon Senior Advisor to the Assistant Attorney
    General Office of Justice Programs, U.S. Department of Justice* (July 26,
    2011), https://www.eeoc.gov/eeoc/meetings/7-26-11/solomon.cfm#fn34 .............. 18

Texas State Law Library, *Restrictions on Convicted Felons in Texas*,
    https:// www.sll.texas.gov/library-resources/collections/restrictions-on-
    convicted-felons/. ................................................................................. 22

TWC, *How to Submit an Employment Discrimination Complaint*, http://
    www.twc.state.tx.us/jobseekers/how-submit-employment-
    discrimination-complaint ....................................................................... 14

## Introduction to Texas's Response

Defendants continue to take issue with the Supreme Court, Fifth Circuit, and this Court regarding Texas's standing. Indeed, the Department of Justice ("DOJ") declares that no case or controversy actually exists because it has yet to sue Texas over its felon-hiring laws. But the law demands that the Court ask whether DOJ could sue Texas at the time the lawsuit was instituted—November 4, 2013. It could.

On November 1, 2013, Texas was accused of violating Title VII for applying a categorical ban on hiring felons. Three days later, Texas brought this suit. That a ripe controversy existed at that moment—on November 4, 2013—cannot be reasonably questioned. And EEOC's Rule,[1] which empowered the complaint against Texas, also represents the position of DOJ. In this posture, Texas need not wait to be sued, but is entitled to take action, as the Fifth Circuit has repeatedly affirmed.

Therefore, the Court need only address the merits. DOJ's brief brings to the fore its belief that Title VII eviscerates Texas's right to maintain zero-risk employment policies where necessary to safeguard vulnerable Texans or the public interest. Characterizing the Rule as "eminently reasonable" and "fairly encompassed by Title VII," DOJ confirms the existence of the substantive conflict afoot in this matter.

By verifying its approval of only "individualized assessment" or "targeted screens," DOJ joins EEOC in implying that felons *are* eligible to serve in law enforcement, teach in elementary schools, nurse veterans and the disabled, counsel juvenile detainees, and coach little league. The "public interest" supporting Texas's viewpoint is self-evident and presumptively job related and consistent with Texas's "business necessity." But Texas still provided evidence to sustain its policies, and DOJ makes no effort to rebut it. Summary judgment for Texas is proper.

---

[1] App. 1–55; EEOC, Enforcement Guidance Number 915.002, *Consideration of Arrest and Conviction Records in Employment Decisions Under Title VII of the Civil Rights Act of 1964* (Apr. 25, 2012) ("Rule").

1

Response Argument

## I.   The Conflict Before the Court is Significant and Ripe.

There is nothing abstract about the direct conflict between the Rule and Texas law. Defendants characterize the conflict as "perceived," ECF No. 92 at 24, but the Rule clashes with Texas's categorical hiring bans, as well as Texas's larger legal scheme regarding felons. And because "Texas is an object of the Guidance at issue, there is no reason to deviate from the presumption that Texas has constitutional standing to challenge it." *Texas v. EEOC*, 827 F.3d 372, 378 (5th Cir. 2016), *reh'g en banc granted, opinion withdrawn*, 838 F.3d 511 (5th Cir. 2016). These direct conflicts make the harm to Texas irreparable as a matter of law. *See* ECF No. 95 at 16 n.28.

Beyond the rivalry the Rule creates with Texas law, the evidence provided by Texas shows that the Rule caused Texas an increased regulatory burden. And because the Fifth Circuit is clear that Texas need not wait to be sued to seek relief for this conflict, Texas's right to bring this matter for adjudication is clear. *See Texas v. United States*, 809 F.3d 134, 150–51 (5th Cir. 2015), *aff'd by an equally divided Court*, 136 S. Ct. 2271 (2016) (per curiam). ("When a litigant is vested with a procedural right, that litigant has standing if there is some possibility that the requested relief will prompt the injury-causing party to reconsider the decision that allegedly harmed the litigant." (quoting *Massachusetts v. EPA*, 549 U.S. 497, 518 (2007)).

### A.   The Rule Conflicts with Texas Laws and Policies.

In analyzing whether the case is ripe, Defendants focus almost exclusively on whether the Rule presents an "'increased regulatory burden on Texas.'" ECF No. 92 at 24 (quoting ECF No. 52 at 7–8). Yet, while Texas demonstrates its increased regulatory burden, *see infra* Part I.D., Texas's complaint is replete with lament over the Rule's direct conflicts with Texas law.[2] And lest there be any doubt, Texas's "Demand

---

[2] Texas clearly complains about the Rule's clash with Texas's categorical hiring bans. *See, e.g.*, ECF No. 62 ¶¶ 1, 11, 12, 13, 14, 15, 17–22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 33, 34, 37, 39, 40, 41, 42, 43.

for Judgment" brings into clear focus Texas's primary problem with the Rule—the direct conflict with Texas law. Texas seeks:

> [a] declaratory judgment that Texas and its constituent agencies and its officials are entitled to maintain and enforce laws and policies that absolutely bar convicted felons, or a certain category of convicted felons, from government employment, and that Texas need not conduct the "individualized assessments" that EEOC purports to require.

ECF No. 62 at 16. This demand remains Texas's primary focus as Texas is resolute that its selective, tailored no-risk employment policies, like those that Texas has for certain positions of employment, are permissible, especially by a sovereign charged with overseeing and safeguarding the larger public trust.

### 1.   The Rule creates many specific conflicts with various Texas laws and policies.

The conflicts between the Rule and Texas law are clear. On the one hand are myriad, codified Texas laws, and agency policies, that exclude felons for certain societal opportunities, including jobs. *See* ECF No. 95 at 14–23. On the other hand, the Rule demands that employers must *always* "provide[] an opportunity to [an] individual [rejected for employment because of a felony conviction] to demonstrate that the exclusion does not properly apply to him." App. 21; Rule 18. Under the Rule, this is required because hiring policies or practices that categorically exclude all convicted felons likely create a *per se,* unlawful disparate impact under Title VII. App. 5; Rule 2 ("the use of a screen that does not include individualized assessment is more likely to violate Title VII"). Indeed, EEOC provides a hypothetical to demonstrate that a "**Targeted Exclusion Without Individualized Assessment Is Not Job Related and Consistent with Business Necessity.**" App. 22; Rule 19 (emphasis in original). And if evidence of disparate impact is required to sustain the legal imposition of these direct conflicts, the Rule is undergirded by "national data"[3] that Defendants extrapolate to every employer within Title VII's jurisdictional reach. Because of these

---

[3] App. 4, 6; Rule 1, 3.

3

direct conflicts, Texas suffers irreparable harm. ECF No. 95 at 16 n.28.

The Fifth Circuit discussed this conflict. Beyond "increased regulatory burden[s]," the Fifth Circuit recognized standing in "that the Guidance forces Texas to alter its hiring policies or incur significant costs." *Texas v. EEOC*, 827 F.3d at 380. And because Texas's hiring policies are largely the products of the Texas Legislature, the Fifth Circuit acknowledged Texas's concern that the Legislature must reconcile Texas's longstanding public policy with the Rule.

Presumably to avoid judicial review, EEOC carefully chose its words. *See, e.g.*, App. 5; Rule 2 ("*more likely* to violate Title VII" (emphasis added)). DOJ looks to seize upon this language, declaring that the Rule "is *not* categorical." ECF No. 92 at 37 (emphasis added). But EEOC cannot wiggle out of its imposition by employing a few adverbs. "Whether someone is in fact an object of a regulation is a flexible inquiry rooted in common sense." *Contender Farms LLP v. U.S. Dep't of Agric.*, 779 F.3d 258, 265 (5th Cir. 2015). Were EEOC able to dodge accountability through using a "likely" here, or a "probably" there, the APA would be meaningless if agencies can always find safe harbors through using "magic words."[4]

To remove any doubt, DOJ states that "there is no blanket business necessity insulating all such practices from liability." ECF No. 92 at 4. Thus, according to DOJ, though Texas's legislative enactments are presumptively valid, *see infra* Part II, Texas is not in compliance with how DOJ interprets Title VII and what Texas must do to sustain its "public interest." Necessarily, these concessions by DOJ eviscerate any daylight DOJ seeks to manufacture between it and EEOC. *See, e.g.*, ECF No. 92 at 1 ("the EEOC cannot sue Texas under Title VII"). EEOC and DOJ are aligned.

---

[4] *See, e.g.*, *Citizens United v. Fed. Elec. Comm'n*, 558 U.S. 310, 439–40 (2010) (disapproving the use of "magic words" to circumvent liability under election laws); *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 755 (2017) ("a 'magic words' approach would make § 1415(l)'s exhaustion rule too easy to bypass.").

### 2.    The Rule threatens Texas's sovereign plan regarding the privileges of felons.

The Rule also threatens the larger sovereign scheme regarding the allowances of felons in Texas, ECF No. 95 at 13–31, and Texas deserves "'special solicitude in the Court's standing analysis'" as it is not a "'normal litigant[] for the purpose of invoking federal jurisdiction.'" *Texas v. United States*, 809 F.3d at 152 (quoting *Massachusetts*, 549 U.S. at 518, 520). Thus, Texas has standing under Article III.

As both an employer and sovereign, Texas is within the zone of interests protected by the APA. One "who has been accorded a procedural right to protect his concrete interests can assert that right without meeting all the normal standards for redressability and immediacy." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 573 n.7 (1992). Moreover, Texas's "'quasi-sovereign' interest in its territory," and the health and safety of the citizenry within that territory, establishes standing. *Texas v. United States*, 809 F.3d at 151 (quoting *Massachusetts*, 549 U.S. at 520).

As *parens patriae*, Texas may protect the health, welfare, and safety of its citizens. In *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, the Supreme Court affirmed *parens patriae* standing when "a State has a quasi-sovereign interest in the health and well-being—both physical and economic—of its residents in general." 458 U.S. 592, 607 (1982).[5] A "helpful indication" of *parens patriae* standing "is whether the injury is one that the State, if it could, would likely attempt to address through its sovereign lawmaking powers." *Id. Parens patriae* standing also exists when Texas alleges an "injury to a sufficiently substantial segment of its population." *Id*.

Felons violate the public trust. Thus, the restrictions that accompany their

---

[5] *See Halter v. Nebraska*, 205 U.S. 34, 40–41 (1907) ("[A] state possesses all legislative power consistent with a republican form of government; therefore each state, when not thus restrained, and so far as this court is concerned, may, by legislation, provide not only for the health, morals, and safety of its people, but for the common good, as involved in the well-being, peace, happiness, and prosperity of the people."). *See also Texas v. Richards*, 301 S.W.2d 597, 602 (Tex. 1957) ("As a general rule the [police] power is commensurate with, but does not exceed, the duty to provide for the real needs of the people in their health, safety, comfort and convenience . . . .").

transgressions, safeguard the rights and safety of the citizens of Texas. *See* ECF No. 95 *passim*. Moreover, the record is teeming with evidence undergirding Texas's "public interest" and the need to close certain opportunities to felons in order to protect the citizenry and vulnerable Texans. *See, e.g.*, App. 56–74, 89–118.

### B. To Have Standing, Texas Need Not Change Its Laws or Policies or Wait to Be Sued.

Defendants acknowledge the conflict between Texas law and the Rule, though maintain that the dispute is not ripe for judicial review because Texas applies its felon-hiring policies "in the manner it chooses," and Texas "has not alleged that it plans to change its approach." ECF No. 92 at 2, 24–25. But Texas need not take such action to have standing. Rather, merely "being *pressured* to change state law constitutes an injury," *Texas v. United States*, 787 F.3d 733, 749 (5th Cir. 2015) (emphasis added), and federal action can "affect[] the states' 'quasi-sovereign' interests by imposing substantial pressure on them to change their laws," *Texas v. United States*, 809 F.3d at 153 (quoting *Massachusetts*, 549 U.S. at 520).

Here, "[t]he flaw in the government's reasoning is that Texas's forced choice between incurring [Title VII damages] and changing its [laws] is itself an injury: A plaintiff suffers an injury even if it can avoid that injury by incurring other costs." *Texas v. United States*, 787 F.3d at 749. Thus, it makes no difference whether Texas legislatively and/or administratively responded to the pressure inflicted by the Rule, or chose to come to court and stop the impending harm. Texas has standing even when harm can potentially be avoided by changing its own laws and practices. *Texas v. United States*, 809 F.3d at 156–57.

Therefore, contrary to the suggestion of DOJ, Texas's injury was not created by this lawsuit. ECF No. 92 at 25. As recognized by the Fifth Circuit, Texas is an object of the Rule and felt its pressure, especially when notified of a pending complaint by a felon on November 1, 2013. Thus, the injury predated the lawsuit. By

filing this case to protect Texas's sovereignty, the Legislature and agencies affected are permitted to pause and await the outcome. Certainly, Article III does not require Texas to go beyond the pressure applied by the Rule, and self-inflict even more injury before coming to court. To require such runs contrary to the principles of Article III that plaintiffs "cannot manufacture standing merely by inflicting harm on themselves." *Clapper v. Amnesty Int'l, USA*, 568 U.S. 398, 416 (2013). Therefore, this lawsuit functionally represents and encompasses the legislative and administrative nightmare afoot for Texas if its felon-hiring policies are found unlawful.

Defendants also contend that "[DOJ] has not filed or threatened to file a Title VII suit against the State." ECF No. 92 at 12. But the actual filing of "[a]n enforcement action is not, however, the only injury sufficient to confer constitutional standing upon Texas." *Texas v. EEOC*, 827 F.3d at 378. Rather, Texas's standing is assessed in gauging the threat as of November 4, 2013—when this suit was filed. *Davis v. FEC*, 554 U.S. 724, 734 (2008) ("[T]he standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." (citing cases)); *Lujan*, 504 U.S. at 571 n.4 (the "longstanding rule [is that] jurisdiction is to be assessed under the facts existing when the complaint is filed"); *Pederson v. La. State Univ.*, 213 F.3d 858, 870 (5th Cir. 2000) (disapproving the assessment of standing at "the time of trial" versus "the time the suit was filed").

To be sure, the Rule conflicted with Texas law when it was promulgated on April 25, 2012. App. 1. Though this lawsuit was ripe on April 25, 2012, when a complaint of discrimination was filed against Texas on November 1, 2013, there can be no question that "a substantial controversy of sufficient immediacy and reality between parties having adverse legal interests" was now afoot. *Middle S. Energy, Inc. v. City of N.O.*, 800 F.2d 488, 490 (5th Cir. 1986) (citing *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941); *Johnson v. Onion*, 761 F.2d 224, 225 (5th Cir. 1985); *Wolfer v. Thaler*, 525 F.2d 977, 979 (5th Cir.), *cert. denied*, 425 U.S. 975 (1976)).

Because the Court must view the conflict at the time the lawsuit is filed, the question on November 4, 2013 is whether "the impact of the administrative action could be said to be felt immediately by those subject to it in conducting their day-to-day affairs." *Toilet Goods Ass'n, Inc. v. Gardner*, 387 U.S. 158, 164 (1967). It was. Beyond the Rule's general condemnation of Texas's categorical bans, when Texas was accused of discrimination under Title VII on November 1, 2013, App. 89–90 (Att. 4, Notice of Charge of Discrimination), one bans was now squarely within the coercive and enforcement-oriented crosshairs of Defendants' Title VII powers.

Instead of being drug through the administrative doldrums of EEOC's conciliatory authority, and DOJ's enforcement power, Texas sought relief in this Court— something the Administrative Procedure Act ("APA") and Declaratory Judgment Act ("DJA") entitles it to do. *See infra* Part I.C. That DOJ's enforcement mechanisms were chilled by Texas's lawsuit, or that DOJ chose to not file suit for any number of reasons, does not change the facts on November 4, 2013—that the Rule condemned Texas's categorical bars, and that the lawfulness of those bars was now being challenged by a felon demanding a job within a Texas agency charged with "combating crime and terrorism, enhancing highway and public safety," etc. App. 60.

Moreover, because the query "is a flexible inquiry rooted in common sense," *Contender Farms*, 779 F.3d at 265, the circumstances cannot be viewed in a vacuum. At the time this lawsuit was filed, the U.S. Attorney General had publicly called into question the validity of Texas's felon-related employment policies, *see infra* Part III.A., and the clear fervor with which the Federal Government was enforcing the Rule was on full display. ECF No. 95 at 6–7.[6] Texas had no reason to expect that

---

[6] To be sure, the cases cited by Texas, ECF No. 95 at 6–7, are enforcement actions brought by EEOC, and not DOJ. Defendants repeatedly mention the distinction between the two as it pertains to bringing an enforcement action against Texas. *See, e.g.*, ECF No. 92 at 11. This distinction, however, makes no substantive difference as DOJ repeatedly affirms EEOC's substantive view of the law. *See infra* Part III. Were DOJ to disavow the parts of the Rule about which Texas expresses concern, its effort to distinguish itself from EEOC may have more force. Alas, DOJ is clear that it and EEOC are fully

Defendants would not attack the Texas Department of Public Safety ("DPS") with the same zeal that provoked the rebuke of federal judges. *Id*. Indeed, it would stretch the imagination to conclude that, looking at the landscape from Texas's shoes on November 4, 2013, the full enforcement authority of the Defendants was not forthcoming.

Eeven apart from the charge of discrimination against DPS, an allegation of future injury may suffice if the threatened injury is "certainly impending," or there is a "'substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (quoting *Clapper*, 568 U.S. at 409, 414 n.5 (emphasis deleted and internal quotation marks omitted)). And "[w]hen an individual is subject to such a threat, an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law." *Driehaus*, 134 S. Ct. at 2342. Thus, "it is not necessary that [Texas] first expose [itself] to actual arrest or prosecution to be entitled to challenge a [rule] that [it] claims deters the exercise of [its] constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). In other words, Texas need not wait for Defendants to target Texas's categorical bans like it did those of other employers. *See also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–29 (2007) ("[W]here threatened action by government is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat.").

Texas avers that its lawsuit dampened the willingness of EEOC and DOJ to challenge Texas's categorical bans on felons. But whether it did does not alter the immediacy of the dispute at the time Texas filed this case. That DOJ chose to not file an enforcement action subsequent to the filing of this matter does not undermine Texas's standing—something that clearly existed at the time this lawsuit was filed. *See Smith v. Sperling*, 354 U.S. 91, 93 (1957) ("It is quite clear, that the jurisdiction of the Court depends upon the state of things at the time of the action brought, and

---

aligned regarding Title VII. Therefore, the zest with which EEOC enforces the Rule is properly imputed to DOJ as it pertains to Texas and its sub-sovereigns.

that after vesting, it cannot be ousted by subsequent events." (citation omitted)); *Freeport–McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991) ("We have consistently held that if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events.").

Alternatively, DOJ's vigorous defense of this lawsuit can be construed as an enforcement action. DOJ's unwillingness to concede, even at an absolute minimum, that Texas satisfies the "public interest" requirement under Title VII in categorically prohibiting felons from serving as peace officers is a clever way to bringing its own enforcement action and putting before the Court its misguided vision of Title VII.

## C.   Texas's Suit Is Proper Under the Declaratory Judgment Act.

Texas's suit presents a ripe "case of actual controversy" under the DJA, 28 U.S.C. § 2201(a). The Supreme Court has dispelled any "doubts about the compatibility of declaratory-judgment actions with Article III's case-or-controversy requirement." *MedImmune*, 549 U.S. at 126. The DJA grants federal courts the power "in a case of actual controversy within its jurisdiction . . . [to] declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

The question is "whether the facts alleged, under all the circumstances, show that there is a *substantial controversy*, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co.*, 312 U.S. at 273 (emphasis added). And in "cases raising issues of federal law or cases in which there are no parallel state proceedings," *Wilton v. Seven Falls Co.*, 515 U.S. 277, 290 (1995), the Court should acknowledge jurisdiction.

Importantly, in a pre-enforcement declaratory judgment action, the Fifth Circuit asks whether the *defendant* has standing to sue the plaintiff:

> [s]ince it is the underlying cause of action of the defendant against the plaintiff that is actually litigated in a declaratory judgment action, a party bringing a declaratory judgment action must have been a proper

party had the defendant brought suit on the underlying cause of action. *Collin Cty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167 (5th Cir. 1990); *see Md. Cas. Co.*, 312 U.S. at 273 ("It is immaterial that frequently, in the declaratory judgment suit, the positions of the parties in the conventional suit are reversed; the inquiry is the same in either case.").

Thus, "in many actions for declaratory judgment, the realistic position of the parties is reversed" and that when "the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court." *Pub. Serv. Comm. v. Wycoff Co.*, 344 U.S. 237, 248 (1952).

A declaratory judgment action is ripe for judicial determination when "an issue presents purely legal questions" and the plaintiff shows "some hardship." *Cent. and S.W. Servs., Inc. v. EPA*, 220 F.3d 683, 690 (5th Cir. 2000). One way to establish a "substantial controversy" and "sufficient immediacy" is through a valid "threat of litigation." *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 897 (5th Cir. 2000). "The threat of litigation, if specific and concrete, can indeed establish a controversy upon which declaratory judgment can be based." *Id*. Standing is conferred with a "reasonable apprehension of litigation with defendant," and "point[ing] to conduct by defendant which supports that asserted fear. The focus is on defendant's conduct toward plaintiff," *Morris v. Dearborne*, 69 F. Supp. 2d 868, 880–81 (E.D. Tex. 1999), showing "a threat that is real and immediate, not conjectural or hypothetical." *Id*. at 881.

Thus, the proper inquiry here is whether DOJ has standing to sue Texas. DOJ does not disavow this notion, repeatedly stating that it has not sued Texas, but importantly (a) affirming its right to sue Texas under Title VII, and (b) affirming its agreement with EEOC regarding the interpretation of Title VII that EEOC puts forth in the Rule. Indeed, the only way that DOJ may not have standing to sue Texas is if

11

DOJ concedes that Texas is correct regarding its stated problems with the Rule. But not only does DOJ not disavow the Rule, DOJ agrees with it. *See infra* Part III. Thus, DOJ can come after Texas regarding its myriad categorical prohibitions regarding the hiring of felons. And if DOJ has standing, Texas's lawsuit is proper. Therefore, the Court has authority to provide Texas with declaratory relief. *See Sherwin-Williams Co. v. Holmes Cty.*, 343 F.3d 383, 388 (5th Cir. 2003); *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 591 (5th Cir. 1994); *Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 776–77 (5th Cir. 1993); *Collin Cty.*, 915 F.2d at 171.

The *threat* of litigation that sparked this lawsuit was real and imminent. Texas need not predict the future with a crystal ball, which makes DOJ's lack of a lawsuit (or counterclaim) to this point irrelevant. Given EEOC's past enforcement actions regarding the Rule, DOJ's historic agreement with EEOC regarding the Rule, *see infra* Part III.A., and the historic hostility of the Federal Government to the policies and rights of the several States,[7] including EEOC,[8] Texas acted properly.

Additionally, DPS is not the only Texas agency that has categorical prohibitions on the hiring of felons. Rather, Texas was staring down the barrel of countless lawsuits from any number of felons unsettled with their lack of employment opportunities. In the mind of Texas, litigation was imminent, and it need not wait to be sued by an individual, or DOJ, to pursue a declaratory judgment action.[9] Thus, consistent with the purposes of the DJA, Texas brings this action "to avoid a multiplicity of suits in various forums . . . ." *Travelers*, 996 F.2d at 777. Indeed, Texas may sue "so

---

[7] *See, e.g., Texas v. United States*, 809 F.3d at 163.

[8] *Texas v. United States*, 201 F. Supp. 3d 810, 816 n.4 (N.D. Tex. 2016), *order clarified,* No. 7:16-CV-00054-O, 2016 WL 7852331 (N.D. Tex. Oct. 18, 2016), *appeal dismissed sub nom. Texas, et al. v. United States et al.* (Oct. 21, 2016) (citations omitted) (challenging, in part, an "EEOC Fact Sheet").

[9] *See Texas v. W. Publ'g. Co.*, 882 F.2d 171, 176 (5th Cir. 1989) ("[T]he plaintiff must allege a course of conduct that implies an 'imminent threat of impending legal action' by the defendant."); *Regions Ins., Inc. v. Ace Prop. & Cas. Ins. Co.*, 80 F. Supp. 3d 730, 734 (M.D. La. 2015); *NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 578 (7th Cir. 1994) (affirming jurisdiction under DJA when party sent "notice letter" indicating intent to sue).

that the one pertinent issue, which [may] involve[ several individuals] . . . could be resolved consistently in one, rather than multiple, forums." *Id*.

These facts establish a concrete clash between the parties that warrants a judicial determination. This dispute rests on the purely legal issue of whether Texas's categorical bans regarding felons *per se* violate Title VII, as the Rule (and DOJ) claims they do, and thus is ripe for determination. Thus, the DJA provides a vehicle through which Texas can obtain that resolution.[10]

### D.   The Rule Causes Texas an Increased Regulatory Burden.

Though Texas's controversy with Defendants is ripe by virtue of the Rule's direct conflict with myriad provisions of Texas law (and concurrent agency policies), the Rule also created an "increased regulatory burden on Texas as an employer." ECF No. 52 at 8. This increased regulatory burden extends beyond the fact that "EEOC admitted at oral argument that it intended to investigate disparate impact complaints against Texas for non-compliance with the Guidance's criminal background screening standards," *Texas v. EEOC*, 827 F.3d at 396 n.3. This admission, of course, hangs as a permanent cloud over Texas's "public interest," reflected by its categorical bars on the licensing and hiring of felons. Unfortunately, in its brief, ECF. No. 92, DOJ does nothing to dissipate this legal fog precipitated by EEOC.

The increased regulatory burden is also demonstrated by DPS's interaction with EEOC after being accused of unlawful discrimination for refusing to consider the application of a felon. *See* App. 89–90, 107 (Att. 4, Notice of Charge of Discrimination). The applicant was undoubtedly aware that his prior felony conviction precluded him from being considered for employment with DPS. That information is

---

[10] *See NUCOR*, 28 F.3d at 578 (noting that "if the declaratory judgment will clarify and settle the disputed legal relationships and afford relief from the uncertainty and controversy that created the issues, it is usually resolved rather than dismissed").

made public and known to every prospective applicant *before* an application is submitted. App. 96–106, 119–21, 123–24. Even if the applicant chose to ignore the pre-application warnings about Texas law and DPS's policies, he nonetheless knew that his felony conviction may categorically disqualify him from consideration by virtue of DPS's application-express concerns about lawful status and criminal histories. App. 110–11. And even if these warnings were not provided by DPS, the applicant's ignorance of Texas law provides no excuse. *See, e.g.*, *Teemac v. Henderson*, 298 F.3d 452, 457 (5th Cir. 2002); *Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir. 1999).

Notwithstanding the clear notice provided by DPS and Texas law, the applicant was obviously bolstered by EEOC's Rule and viewpoint on the relative insignificance of a felony conviction. Thus, he complained about being excluded because of his felony conviction. App. 89–90. Note that the applicant did not complain to the Texas Workforce Commission ("TWC").[11] TWC has an easy-to-complete online form available to the applicant. The applicant sought to preempt Texas law, appealing to the authority he viewed capable of obtaining for him the result that he sought.

The resulting regulatory burden of EEOC's Rule is self-evident. "[E]mployees of DPS reviewed the [Rule] upon release and discern whether it presented a conflict with DPS policy regarding the hiring of felons, specifically section 01.15.10.03 of the Employment Policies and Procedures of DPS." App. 61 (Decl. of Kathleen Murphy 2). And regarding the EEOC complaint, DPS was required to internally rehash the entire application process for a "Customer Service Representative." DPS calculated the number of applicants, the number granted interviews, and was required to defend Texas's "business necessity" or "public interest" regarding the position in question

---

[11] The Civil Rights Division of TWC exists to help those that "believe the treatment you received from the employer was because of your race, color, national origin, age, religion, sex, disability, or because of retaliation for participating and/or filing another discrimination complaint." TWC, *How to Submit an Employment Discrimination Complaint*, http://www.twc.state.tx.us/jobseekers/how-submit-employment-discrimination-complaint.

14

and why the applicant was properly rejected without conducting an "individualized assessment." App. 92–117. Like assessments within numerous other Texas agencies, and school districts, are not improbable circumstances.

The increased regulatory burden is also demonstrated by other Texas agencies, many of which put forth evidence to justify or explain Texas's legitimate "public interest" for its categorical prohibitions in the face of the Rule. As to The Texas Department of Aging and Disability Services ("DADS"), "[a]ll of the criminal bars are for crimes related to harm to individuals, as DADS wants to protect the vulnerable individuals living in SSLCs from potential employees who have a history of causing harm to individuals." App. 58 (Decl. of Amy Tippie 3). As to the Texas Parks and Wildlife Department ("TPWD"), TPWD was required to justify its prerogative to reject felons, in addition to honoring the legislative bars to employment, as "critical to fulfilling TPWD's mission and maintaining the public trust we have over the natural and cultural resources of Texas." App. 65 (Decl. of Ann Bright 3). The Texas Juvenile Justice Department ("TJJD") justified its categorical bars to employment in the same manner as TPWD. App. 68–69 (Decl. of Royce Myers 2–3). And as for the Texas Lottery Commission ("TLC"), TLC explain its "core values" of "integrity and responsibility" which are essential to managing taxpayer monies. App. 72 (Decl. of Bob Biard 2). Moreover, "TLC works hard to maintain the public trust by protecting and ensuring the security of its lottery games, systems, drawings and operational facilities. TLC values and requires ethical behavior by its employees, licensees and vendors." *Id*.

## II.   THE COURT CAN GRANT RELIEF TO TEXAS.

Texas complains of several problems with the Rule. But well beyond EEOC's abuse of "regulatory dark matter," and the untenable legal foundations for its analysis, the Rule takes clear aim at Texas's categorical hiring bans.

As demonstrated in Texas's brief supporting summary judgment, the foundations for EEOC's Rule are questionable. ECF No. 95 at 33–41; *see infra* Parts III.A.

& III.B. Moreover, in the context of the significant political and economic issue presented, where the Rule threatens the entire legislative scheme of Texas, no deference to the interpretations of Defendants is warranted. *See* ECF No. 95 at 47–50. As such, the Court may declare the rights and obligations of the parties under Title VII.

This is especially so regarding Texas's numerous categorical bars, all of which are supported by the evidence presented and their self-evident need to safeguard the needs of the Texas citizenry and, in many instances, vulnerable Texans. Indeed, all of Texas's no-risk employment policies exist where the public trust and welfare of Texans is at its height and should be presumed essential to Texas's "public interest."

The "public interest" that undergirds these policy decisions is unassailable, and Defendants offer no argument in the face of this evidence as to why these policies do not survive scrutiny under their view of Title VII. In as much as Defendants demand "concrete facts and identified legal authorities upon which the Court can base its decision," ECF No. 92 at 12, Defendants curiously avoid the opportunity to take issue with the employment bars that Texas placed before the Court.

Therefore, the Court can easily reach this conclusion—that Title VII does not *per se* prohibit a sovereign, like Texas, from enacting categorical prohibitions on the hiring of felons. Indeed, when such prohibitions are the product of a fair and representative legislative assembly, and part of a larger, longstanding legislative scheme regarding the best interests and "public interest" of the Texas citizenry, that felon-hiring bans are job related and consistent with public interest should be presumed. And while the "business necessity" or "public interest" query can be factually intensive in some cases, when it comes to assessing the tailored restrictions by a sovereign, felons (and others) that protest the legislature's expression of the public interest should be required to rebut the presumptively lawful enactment. Indeed, "[t]he general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest."

*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985) (citations omitted); *see also Burlington Northern & Santa Fe Ry. Co. v. Poole Chemical Co.*, 419 F.3d 355, 361 (5th Cir. 2005) (citing *Enron Corp. v. Spring Indep. Sch. Dist.*, 922 S.W. 2d 931, 934 (Tex. 1996)). Indeed, it strains credibility to conclude that Congress intended Title VII to require Texas to waste valuable taxpayer resources in conducting "individualized assessments" of felons as peace officers, elementary school teachers, elderly caretakers, and other positions of significant public trust.

As identified by Defendants, ECF No. 92 at 14, Texas believes in its right to enact the existing categorical bans on the hiring of felons. These bars to employment are necessary to sustain the public trust and further Texas's "public interest" as a sovereign. In as much as Texas put forth evidence, and argument, regarding the clear "public interest" that justifies Texas's existing categorical bans on employment, the Court may declare that the Rule is improperly applied to Texas and the laws and policies duly enacted that do not abide by Defendants' "individualized assessment" mandate. As the bars are largely the product of the legislature, the legal presumption of their validity, *see Cleburne*, 473 U.S. at 440, more than satisfies any burden Texas has "to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity." 42 U.S.C. § 2000e-2. That DOJ offers nothing to rebut this presumption, or Texas's evidence, completes any factual query required by Title VII, and the Court may adjudicate the controversy.

## III. DEFENDANTS' COLLECTIVELY MISCONSTRUE TITLE VII.

If there was any question whether EEOC and DOJ are aligned, DOJ's brief affirms that there is no daylight between the two. DOJ doubles down on EEOC's vision that Texas's categorical bans are unlawful. ECF No. 92 at 37–38. Moreover, DOJ characterizes as "eminently reasonable" the view that Texas's categorical prohibitions on felons serving as peace officers, *inter alia*, are "problematic." Not once do Defendants mention the standard of Texas's "public interest," or the Rule's impact on

Texas's larger legal scheme regarding felons. Rather, DOJ affirms,

> that it would be problematic under Title VII to use a blanket screen against the hiring of persons based on their criminal history without regard to the type of crime, the amount of time since its occurrence, and the nature of the job sought is consistent with the conclusions reached by the Third and Eighth Circuits, the only courts of appeals to have squarely considered disparate impact liability in this context.

ECF No. 92 at 37 (citing *Green v. Mo. Pac. R.R. Co.*, 523 F.2d 1290 (8th Cir. 1975) and *El v. Se. Pa. Transp. Auth. (SEPTA)*, 479 F.3d 232 (3d Cir. 2007)). But *Green* and *SEPTA* are outliers and hardly mainstream about the requirements of Title VII. Thus, DOJ embraces the same flaws as the Rule.

These aspects of "law," however, represent neither the essence of Title VII nor what DOJ calls the "basic legal standards" regarding Title VII. Though "[t]he touchstone is business necessity," *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971), DOJ uplifts EEOC's "individualized assessment" standard and thus misses the mark.

### A.    DOJ Substantively Agrees With the Rule.

In an effort to "unripen" the controversy, DOJ repeatedly states that EEOC cannot sue Texas. ECF No. 92 at 1, 2, 7, 13, 20, 24. But any significance of this distinction is meaningless through DOJ's approval of the Rule and EEOC's viewpoint of Title VII. Were DOJ to disavow the Rule and EEOC's efforts to declare unlawful categorical felon-hiring bans, like those in Texas, the Court may have a basis to find legal daylight between the Defendants. But since EEOC and DOJ are of one mind, which of them has the technical power to file a lawsuit is of trivial significance.

DOJ assisted EEOC in developing the Rule. At a July 26, 2011 meeting of EEOC regarding arrest and conviction records as hiring barriers, a senior official from DOJ testified and called into question the legitimacy of hiring bans like those in Texas.[12] Of course, this testimony from DOJ merely furthered the words of the U.S.

---

[12] Amy Solomon, Senior Advisor to the Assistant Attorney General, U.S. Department of Justice, testified. In her written testimony, she criticized some state laws that deny employment opportunities to felons as "antiquated" and "unnecessary." *See* EEOC Meeting to Examine Arrest and Conviction Records as a Hiring Barrier, *Written Testimony for Amy Solomon Senior Advisor to the Assistant Attorney*

Attorney General. On April 18, 2011, U.S. Attorney General Eric H. Holder, Jr. sent a letter to all attorneys general asking that their "collateral consequences" laws impacting felons be reevaluated. In the opinion of General Holder,

> [c]ollateral consequence statutes and policies impose additional burdens on people who have served their sentences, including denial of employment and housing opportunities, without increasing public safety in essential ways. Some of those restrictions, such as the prohibition on gun possession, serve meaningful public safety goals.[13]

Thus, General Holder averred that laws removing employment opportunities from felons do not "increase[e] public safety in essential ways." Only regarding gun possession did General Holder concede the existence of "meaningful public safety goals."

DOJ's brief does not reflect a change in tone. Though DOJ avows that it "has given no indication that it intends to [sue Texas] anytime soon," ECF No. 92 at 1, this is hardly comforting. Rather, DOJ concludes that "the Guidance is 'fairly encompassed' by Title VII," ECF No. 92 at 31, and demands "individualized assessments" for every single potential job. *See, e.g.*, ECF No. 92 at 19 ("Do the jobs involve significant or sensitive responsibilities, or more limited manual or administrative tasks?").

DOJ will not even confess as *per se* reasonable, and clearly within Texas's "public interest," that "[a] person who has been convicted of a felony is disqualified to be an officer" for any law-enforcement agency anywhere in Texas. App. 126 (Att. 7, Tex. Occ. Code § 1701.312(a)). Rather, DOJ contends that Texas lacks "evidence that any

---

*General Office of Justice Programs, U.S. Department of Justice* (July 26, 2011), https://www.eeoc.gov/eeoc/meetings/7-26-11/solomon.cfm#fn34. When asked during her oral testimony whether employers should be banned from asking questions about someone's criminal history, she explained that, based on evidence she's reviewed, that after three to eight years following a felony conviction, that "there are no differences" which would justify an employer's concern with a prospective employee's criminal history. *See* EEOC Meeting to Examine Arrest and Conviction Records as a Hiring Barrier, *Arrest and Conviction Records as a Hiring Barrier* (July 26, 2011) (meeting transcript), http://www.eeoc.gov/eeoc/meetings/7-26-11/transcript.cfm. Ms. Solomon concluded that "we need to share that information very broadly with the field and with employers so that they know the relevance of that information for applicants who have basically been clean from the criminal justice system for a number of years." *Id.*

[13] Letter of U.S. Attorney General Eric H. Holder, Jr. to all Attorneys General, April 18, 2011, https://csgjusticecenter.org/wp-content/uploads/2014/02/Reentry_Council_AG_Letter.pdf.

of the handful of felony conviction-related hiring practices that it has identified accurately distinguish between applicants who pose an unacceptable risk and those who do not." ECF No. 92 at 19. This is absurd. Beyond the fact that the felon-hiring restrictions codified with the Texas Occupational Code are presumptively job related and consistent with Texas's public interest, does Texas really need to provide "essential facts" for the proposition that felons should not be carrying guns and charged with "combating crime and terrorism," among other things? App. 60. The propriety of the bar is self-evident, and when the Texas Legislature acts to safeguard the citizenry, the act of Texas lawmakers is clearly in the public interest and should be presumed as such. Nonetheless, Texas still provided evidence supporting these propositions, and DOJ largely ignores it. ECF No. 92 at 3. What is curiously missing from the equation is argumentation or evidence from DOJ as to why the evidence provided, accompanied by the self-evident public policy, makes Texas's categorical bans unlawful or otherwise disserving of Texas's "public interest."

Moreover, Texas even satisfies the "individualized assessment" standard regarding the complaint filed against Texas. All of the "essential facts" that DOJ seeks are in the record. The DPS hiring policy was called into question by a felon seeking work as a "Customer Service Representative." The job gives access to a database containing the intimate information for over 29 million Texans. App. 92–93 (Att. 4, Letter of Dec. 2, 2013 to Julia Way, EEOC). But even here, DOJ refuses to confess that DPS's categorical exclusion of felons is warranted by Texas's "public interest."[14]

---

[14] Perhaps as a tactic to circumvent the specific legal conflicts and evidence put forth by Texas, Defendants claim that "Count II only contests the facial validity of the Guidance." ECF No. 92 at 34. This claim is both erroneous and unsupportable. Beyond the fact that Count II, by its express terms, provides that "[t]he allegations in paragraphs 1–44 are reincorporated herein," ECF No. 62 at 15, thereby incorporating all of the Texas-specific problems that the Rule presents, no reasonable reading of Texas's Second Amended Complaint supports the conclusion that Texas does not challenge the application of the Rule to Texas's laws and policies. Notice pleading does not require specific facts, but only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Anderson v. U.S. Dep't of Hous. & Urban Dev.*, 554 F.3d 525, 528 (5th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

### B.      DOJ's View of the Law Lacks an Adequate Basis.

Like EEOC, DOJ clings to an unsupportable view of the law. DOJ claims that "an enforcement action pursuant to Title VII would be entirely supported in the absence of the Guidance, as confirmed by the *various courts* applying Title VII in this context in the absence of or without reliance upon the Guidance." ECF No. 92 at 29–30 (emphasis added).[15] The "various courts" referenced by DOJ regard only two circuit courts.[16] And not only do the "various courts" not tie the hands of this Court, but those "various courts" do not support DOJ's reading of Title VII.

*Green*

That *Green* undergirds the Rule's conclusion that categorical prohibitions to employment *per se* violate Title VII is problematic. *See* ECF No. 95 at 38–42. *Green* is an aging decision, cited sparingly by circuit courts in 42 years. *Id*. And contrary to what Defendants would have this Court believe, *Green* does not stand as a bulwark against categorical prohibitions to government employment.

*Green* involved the policy of a private employer—not a State government charged with securing the safety and peace of its citizenry. *Green* discusses as "instructive" a case about an Iowa law "which prohibits the employment of convicted felons in civil service positions in Iowa." *Butts v. Nichols*, 381 F. Supp. 573, 574 (S.D. Iowa 1974). *Butts* concluded "[t]here is simply no tailoring in an effort to limit these statutes to conform to what might be legitimate state interests." *Id*. at 580. Thus,

---

[15] *See also* ECF No. 92 at 4 ("courts that have addressed the issue have recognized that conviction-related employment practices can lead to disparate impact liability."); *id*. at 22 ("courts have assessed conviction-related hiring practices to determine if they comply with Title VII's disparate impact provisions."); *id*. at 31–32 ("Given that *some courts* are enforcing Title VII in this context without reliance on the Guidance, one cannot reasonably say that the EEOC has created law through its issuance." (emphasis added)); *id*. at 32 ("the two fundamental analytical frameworks for Title VII discrimination liability that have been set forth by the statute and *the courts*." (emphasis added)); *id*. ("the analytical framework crafted by the statute and *the courts*." (emphasis added)).

[16] DOJ contends that "EEOC's view that it would be problematic under Title VII to use a blanket screen against the hiring of persons based on their criminal history . . . is consistent with the conclusions reached by the Third and Eighth Circuits." ECF No. 92 at 37 (citing *Green* and *SEPTA*).

*Green* concluded that "[w]e cannot conceive of any business necessity that would automatically place every individual convicted of any offense, except a minor traffic offense, in the permanent ranks of the unemployed." *Green*, 523 F.2d at 1298.

But there is a significant chasm between a law that places *all* felons into "the permanent ranks of the unemployed," and Texas's various categorical bans that do *not* apply to all felons in all circumstances.[17] Indeed, that Texas has so many different laws regarding the opportunities of felons—over 300—indicates *exceptional* tailoring. Because the categorical exclusions under Texas law possess several indices of "tailoring," the legitimacy of an Iowa-style, blunt-force instrument of excluding all felons from all government jobs outright is not the question before the Court.

While the relevance of certain judicial decisions do not wane with age, the pronouncement in *Green*, as influenced by *Butts*, is clearly the product of a different social era. Substantively, *Green* simply doesn't support EEOC and DOJ's conclusions that "individualized assessments" are always required and that Texas may not categorically exclude felons from employment and other social opportunities as is necessary to safeguard the citizenry and further Texas's "public interest."

### *SEPTA*

EEOC and DOJ's affection for *SEPTA* stems from a different interest as the Third Circuit became the first and only circuit court to ever cite the three-part test.[18] The *SEPTA* court, however, did not cite EEOC's test with approval. After noting

---

[17] For example, section 22.085(a) of the Texas Education Code applies to only certain felonies. App. 77 (Att. 2, Tex. Educ. Code § 22.085(a)). The policy of TLC is limited to felony convictions less than ten years. App. 192 (Att. 20, TLC, *Enforcement Division: Procedure*); App. 72–73 (Decl. of Bob Biard 2–3). Indeed, tailoring is evident in all of the over 300 ways that the privileges of felons are impacted in Texas society. *See* Texas State Law Library, *Restrictions on Convicted Felons in Texas*, https://www.sll.texas.gov/library-resources/collections/restrictions-on-convicted-felons/.

[18] On February 4, 1987, EEOC released a "Policy Statement" in which it unveiled its new three-part test. *See* ECF No. 95 at 37–39; App. 286–87 (*Policy Statement on the Issue of Conviction Records Under Title VII of the Civil Rights Act of 1964*, U.S. Equal Emp't Opportunity Comm'n (Feb. 4, 1987). There are several problems with EEOC's three-part test. *See* ECF No. 95 at 37–38.

EEOC's test, the court concluded that "it does not appear that the EEOC's Guidelines are entitled to great deference," as "EEOC is entitled only to *Skidmore* deference." *SEPTA*, 479 F.3d at 244 (citing *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 257 (1991) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)) (superseded by statute on unrelated grounds)). Under *Skidmore*, "EEOC gets deference in accordance with the thoroughness of its research and the persuasiveness of its reasoning." *Id.*

Because it is problematic, the Third Circuit distanced itself from EEOC's viewpoint on Title VII. Specifically, EEOC's attitude is bereft of the context of government and jobs where safeguarding the public trust are critical. *SEPTA*, 479 F.3d at 243. Because the position at issue in *SEPTA* involved "door-to-door and curb-to-curb transportation service for people with mental and physical disabilities," *id.* at 235, "[t]he public safety concern is of more moment in our case," *id.* at 243.[19]

Moreover, the *SEPTA* court was asked to conclude that categorical bans on hiring felons *per se* violated Title VII. However, the Third Circuit declined.[20] Thus, contrary to what EEOC and DOJ would have this Court believe, no federal circuit has ever concluded that categorical bans on hiring felons *per se* violate Title VII.

## C.    The Controversy Is Functionally One of First Impression.

Obviously, numerous federal courts have addressed Title VII questions regarding felons. However, before this case, Texas is unaware of a single case that brings to the fore the questions presented here. Thus, contrary to DOJ's suggestion that "various courts [are] applying Title VII in this context in the absence of or without reliance upon the Guidance," ECF No. 92 at 29–30, no court has yet addressed the direct conflict here—whether Title VII *per se* invalidates the efficacy of a legislatively-enacted

---

[19] The "public interest" is also significant because SEPTA is a governmental unit. 74 Pa. Stat. § 1711.

[20] *See SEPTA*, 479 F.3d at 245 & n.14 ("El urges us to go further and hold that Title VII prohibits any bright-line policy with regard to criminal convictions; he argues, rather, that Title VII requires that each applicant's circumstances be considered individually without reference to any bright-line rules. We decline to go so far. . . . In this case, we have no occasion to hold that bright-line policies in the criminal conviction context are *per se* invalid.").

state statutory scheme that takes a no-risk policy to the employment of individuals charged with preserving the public trust in exceptional circumstances.

To support its claim that the controversy presented is nothing new, DOJ argues that the felon-hiring policies of a State were addressed in *Dothard v. Rawlinson*, 433 U.S. 321, 331 (1977). *Dothard*, however, was very narrow. In *Dothard*, the underlying lawsuit did not challenge Alabama law as a whole, but was brought against only the Alabama Department of Public Safety and Board of Corrections, and officials within those agencies. *Mieth v. Dothard*, 418 F. Supp. 1169, 1172 (M.D. Ala. 1976), *aff'd in part, rev'd in part sub nom.*, *Dothard v. Rawlinson*, 433 U.S. 321 (1977).

Moreover, in *Dothard*, the Supreme Court addressed discrimination on the basis of "sex"—an immutable characteristic. By contrast, nobody becomes a felon by an accident of birth. Additionally, the height and weight qualifications that created the disparate impact in *Dothard* were limited in their application and did not permeate the entirety of Alabama law. *Mieth*, 418 F. Supp. at 1177–78 (quoting the law at issue). Perhaps most importantly, the height and weight of an individual has never been adjudicated to be an absolute virtue or liability regarding the public trust. A far greater question is presented regarding the privileges or opportunities that Texas must extend to "persons who have manifested a fundamental antipathy to the criminal laws of the state or of the nation by violating those laws sufficiently important to be classed as felonies." *Shepherd v. Trevino*, 575 F.2d 1110, 1115 (5th Cir. 1978).

## CONCLUSION

Texas requests the Court grant its Motion for Summary Judgment and issue an order: (1) declaring the Rule unlawful; (2) declaring that Texas is entitled to maintain laws and policies that bar convicted felons from employment, and that Texas need not conduct the "individualize assessments" that the Rule requires; and (3) permanently enjoining Defendants from enforcing the Rule against Texas.

Respectfully submitted this the 5th day of October, 2017.

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY D. STARR
Deputy First Assistant Attorney General

MICHAEL C. TOTH
Special Counsel to the First Assistant Attorney General

ANDREW D. LEONIE
Associate Deputy Attorney General

*/s/ Austin R. Nimocks*
AUSTIN R. NIMOCKS
Associate Deputy Attorney General
Texas Bar No. 24002695
austin.nimocks@oag.texas.gov

DAVID J. HACKER
Senior Counsel

Office of Special Litigation
ATTORNEY GENERAL OF TEXAS
P.O. Box 12548, Mail Code 009
Austin, Texas 78711-2548
(512) 936-1414
(512) 936-0545 Fax

*ATTORNEYS FOR PLAINTIFFS*

### CERTIFICATE OF SERVICE

I certify that on the 5th day of October, 2017, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Austin R. Nimocks*
AUSTIN R. NIMOCKS
Associate Deputy Attorney General