# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### LUBBOCK DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 5:13-CV-00255-C |
| | ) | |
| EQUAL EMPLOYMENT | ) | |
| OPPORTUNITY COMMISSION, *et al.*, | ) | |
| | ) | |
| Defendants | ) | |
| ——————————————————— | ) | |

## DEFENDANTS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

## FINDINGS OF FACT

1.    Since at least 1987, the EEOC has taken the position that conviction-related employment practices—*i.e*., employment practices that condition one's ability to obtain or retain a job on the absence of a criminal arrest or conviction—may cause a disparate impact on the basis of race and/or ethnicity and, therefore, may violate Title VII's disparate impact liability provision, 42 U.S.C. § 2000e-2(k).  Defendants' Appendix (App'x) at 56-58, ECF No. 98.

2.    Congress codified disparate impact liability in 1991.  Civil Rights Act of 1991, Pub. L. No. 102–166, 105 Stat 1071.  Disparate impact liability existed for decades prior to that as a judge-made rule.  *See Griggs v. Duke Power Co.*, 401 U.S. 424 (1971).

3.    In 2012, the EEOC issued a document entitled *Consideration of Arrest and Conviction Records in Employment Decisions Under Title VII of the Civil Rights Act of 1964*, EEOC Enforcement Guidance Number 915.002 (Apr. 25, 2012) (Guidance), App'x at 1.

4.    The Guidance stated that it was intended "to update and consolidate in this document all of [the EEOC's] prior policy statements about Title VII and the use of criminal records in employment decisions."  App'x at 6.

5.    The Guidance discusses the application of Title VII to the use of criminal history information in employment decisions, both with respect to disparate treatment and disparate impact analyses.  App'x at 1.

6.    With regard to disparate impact, the Guidance explains that "[a]n employer's neutral policy (*e.g.*, excluding applicants from employment based on certain [past] criminal conduct) may disproportionately impact some individuals protected under Title VII, and may violate the law if not job related and consistent with business necessity (disparate-impact liability)."  App'x at 4.

7.     The Guidance further explains that, during its investigation of a charge, when assessing whether a practice has a legally prohibited disparate impact, the EEOC conducts a fact-based inquiry into the particular circumstances of each case.  It (i) identifies the "particular policy or practice" at issue, (ii) reviews statistical data on whether the practice has a disparate impact on a protected class, and, (iii) if necessary, assesses whether facts demonstrate that the practice is job related and consistent with business necessity.  App'x at 11-15.

8.     The Guidance addresses states in their capacity as employers "as part of [its] efforts to eliminate unlawful discrimination in employment screening . . . by entities covered by Title VII, including private employers as well as federal, state, and local governments."  App'x at 6.

9.      It also invokes Title VII's preemption provision, noting that "State and local laws or regulations are preempted *by Title VII* if they purport to require or permit the doing of any act which would be an unlawful employment practice under Title VII."  App'x at 5 (emphasis added); *see* 42 U.S.C. § 2000e-7.

10.     The Guidance construes Title VII and its business necessity defense to require that an employer's hiring "policy operate[] to effectively link specific criminal conduct, and its dangers, with the risks inherent in the duties of a particular position."  App'x at 17.

11.     The Guidance does not state that Title VII requires employers to adopt a particular method in seeking to meet this standard.  *See* App'x at 4-55.

12.     The Guidance states that employers are not required by Title VII to conduct individualized assessments in using criminal background information.  App'x at 5, 17, 21.

13.     The State of Texas conditions employment for a large number of jobs on the absence of a felony conviction (or conviction of certain kinds of felonies), *see, e.g.,* App'x at 61, 68-69, and it has done so for many years, *see, e.g.,* Tex. Occ. Code § 1701.312, Credits (original act effective

Sept. 1, 1999); Tex. Health & Safety Code § 250.006, Credits (original act effective Sept. 1, 1993), notwithstanding the EEOC's longstanding position.

14.    The record before the Court does not contain evidence of the number or nature of all of the felony conviction-related employment restrictions that Texas applies, *see* SAC ¶¶ 24-30, App'x at 63-80, or the identity or characteristics of all of the State jobs to which those restrictions apply, *see* App'x at 89-90.

15.    The record before the Court contains no evidence that Texas's employment practices accurately distinguish between applicants and employees who pose an unacceptable risk and those who do not.

16.    The record before the Court contains no evidence of any instance where the EEOC or the Department of Justice independently pursued a Title VII enforcement action against Plaintiff in relation to Plaintiff's use of felony conviction information in employment decision making.  *See* App'x at 92-93.

17.    The record contains no evidence that the Department of Justice has threatened litigation regarding Texas's felony conviction-related hiring practices.

18.    Texas points to one past EEOC investigation involving the State relating to the use of criminal background information, which arose in response to a charge of discrimination by an applicant for employment at the Texas Department of Public Safety (DPS).  App'x at 68.

19.    The applicant stated, in part, that he had been discriminated against on the basis of his prior felony conviction.  *Id.*

20.    The EEOC ultimately dismissed the charge and issued the applicant a right to sue notice. The dismissal stated that the EEOC was unable to conclude that the information obtained established a violation of Title VII.  App'x at 101.

Defendants' Proposed Findings
of Fact and Conclusions of Law                                                                              4

21.     The record before the Court contains no evidence showing that this individual's decision to pursue a charge of discrimination was motivated by or otherwise related to the Guidance.

22.     The record before the Court contains no evidence that Texas or any of its state or local agencies or governmental entities have altered their laws, policies, regulations, or practices concerning the use of felony conviction information in response to the Guidance.  *See* App'x at 93-94, 95.

23.     The record before the Court contains no evidence that Texas or any of its state or local agencies or governmental entities have intentionally violated their laws, policies, regulations, or practices concerning the use of felony conviction information in response to the Guidance. *See* App'x at 95.

24.    The record contains no evidence that Texas's day-to-day operations have been affected by not having a federal court opine on its conviction-related employment practices, nor has Texas produced in discovery any evidence that that has changed since the EEOC issued the Guidance. *See* App'x at 87-88, 93-94, 95.

25.    The record before the Court contains no evidence regarding any on-going or future costs incurred by Texas as a result of any effort to evaluate its laws, policies, regulations, or practices in relation to the Guidance.  App'x at 88-89.

26.     Texas admits to being unaware of evidence showing that any of its laws concerning the use of felony conviction information in State employment creates a disparate impact under Title VII.  App'x at 95-96 (stating that Texas is "unaware of statistical evidence that may be used to support a claim that a Texas state or local law concerning the hiring of convicted felons disparately impacts a group protected under Title VII"); App'x at 91 (providing no information in response to

an interrogatory asking Texas to identify state laws and hiring policies that Texas contends cause a disparate impact).

## CONCLUSIONS OF LAW

### I.    The Operation of Title VII

1.   A state employee or an applicant for a state job can file a charge of discrimination with the EEOC if she thinks she has been subjected to an unlawful employment practice.  42 U.S.C. § 2000e-5(b).

2.   The EEOC has the authority to investigate charges of discrimination.  42 U.S.C. § 2000e-5(b).

3.   If, after completing its investigation, the EEOC determines that "there is not reasonable cause to believe that the charge is true, it shall dismiss the charge and promptly notify the person claiming to be aggrieved and the [state] of its action." *Id.*; 29 C.F.R. §§ 1610.19(a), 1610.28(d).

4.   The notice to the employee or applicant is referred to as a notice of right to sue[1] because, as a general matter, the employee or applicant can file a suit once s/he receives the notice, but not before.  42 U.S.C. § 2000e-5(f)(1); 29 C.F.R. §§ 1610.19(a), 1610.28(d).

5.   If, however, the EEOC concludes that there is reasonable cause to believe that a violation of Title VII has occurred, then it initiates conciliation.  42 U.S.C. § 2000e-5(b).  This is a process by which the EEOC tries to facilitate a voluntary resolution of the charge.  *Id.*

6.   But if conciliation fails, the EEOC *cannot* bring an enforcement action against the state employer.  42 U.S.C. § 2000e-5(f)(1).  Title VII requires that the EEOC refer the matter to the

---

[1] An individual can also request that the EEOC issue a notice of right to sue before it completes its investigation.  29 C.F.R. § 1601.28(a)(1), (a)(2).   In this circumstance, if the charge involves a state employer, the notice of right to sue is issued by the Department of Justice.  29 C.F.R. § 1601.28(d).

Defendants' Proposed Findings
of Fact and Conclusions of Law                                          6

Department of Justice for it to make an independent judgment regarding whether to bring an enforcement action or issue a notice of right to sue. *Id.*

7.   Even without an EEOC referral, the Department of Justice can file a lawsuit challenging pattern or practice discrimination. 42 U.S.C. § 2000e-6(a); Reorganization Plan 1 of 1978, 43 Fed. Reg. 19807, 19808 (May 9, 1978) (ratified by Congress in Pub. L. No. 98-532 (1984)).

## II.   Texas's Request for a Declaration Regarding the Validity of Its Hiring Practices is Unripe.

8.   Texas's request for a declaratory judgment approving its hiring practices under Title VII is not ripe because it does not involve adverse parties or a concrete dispute and Texas would not suffer sufficient hardship if the Court withheld review. *See Princeton Univ. v. Schmid*, 455 U.S. 100, 102 (1982).

9.   The ripeness test comprises two elements: (A) the fitness of the matter for adjudication, and (B) the hardship to the plaintiff of withholding review. *Lopez v. City of Houston*, 617 F.3d 336, 341 (5th Cir. 2010).

A.   The claim is not fit for review.

10.   A claim is not fit for review unless it involves adverse parties and a concrete dispute. *Princeton Univ.*, 455 U.S. at 102. With regard to declaratory judgment claims, courts assess adversity by determining whether there is an "actual controversy" between the parties. *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000); *Regions Ins., Inc. v. Ace Prop. & Cas. Ins. Co.*, 80 F. Supp. 3d 730, 735 (M.D. La. 2015). An actual controversy exists when "a substantial controversy of sufficient immediacy and reality [exists] between parties having adverse legal interests." *Middle South Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir. 1986).

11.   The Declaratory Judgment Act permits a plaintiff to obtain an early resolution of a claim that the defendant intends to file against it. *Collin Cty., Tex. v. Homeowners Ass'n for Values*

Defendants' Proposed Findings
of Fact and Conclusions of Law                                                                                          7

*Essential to Neighborhoods*, 915 F.2d 167, 171 (5th Cir. 1990) (hereinafter *HAVEN*) ("[I]t is the underlying cause of action of the defendant against the plaintiff that is actually litigated."). Under the Declaratory Judgment Act, "[a] party's legal interest must relate to an actual claim arising under federal law that another asserts against him." *HAVEN*, 915 F.2d at 170–71 (citation omitted). In other words, "it is the underlying cause of action of the defendant against the plaintiff that is actually litigated." *Id.* at 171.

12. There is no actual controversy between Texas and the Department of Justice regarding any of Texas's felony conviction-related hiring practices. In this instance, Texas is seeking to litigate a Title VII action that the Department of Justice might bring against it at an unspecified point in the future. But no such Title VII action is sufficiently "immediate and real" to warrant action by this Court. *Orix Credit*, 212 F.3d at 896.

13. The Department of Justice did not issue the Guidance and has no obligation to follow it. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 569-70, 570 n.4 (1992); *Clouser v. Espy*, 42 F.3d 1522, 1535 (9th Cir. 1994); *Reed v. Reno*, 146 F.3d 392, 397 (6th Cir. 1998).

14. The Title VII claim against the Department of Justice is not fit for review, and therefore unripe, for another reason: The Court lacks concrete facts and identified legal authorities upon which it can base its decision. *See Texas v. United States*, 523 U.S. 296, 301 (1998).

15. The State has not adequately identified all of the hiring practices at issue in this case, *see* SAC ¶¶ 24-30, App'x at 63-80, nor has the State identified and described all of the jobs affected by its felony conviction-related employment practices, *see* App'x at 89-90

16. Texas's Title VII claim against the EEOC regarding the validity of the State's hiring practices is unripe because there is no sufficiently immediate and real controversy. *See Middle South Energy*, 800 F.2d at 490.

Defendants' Proposed Findings
of Fact and Conclusions of Law                                                                          8

17.   The EEOC cannot bring suit under Title VII against state governments, including Texas. 42 U.S.C. § 2000e-5(f)(1).  Thus, as the EEOC can never file Title VII suits against Texas, there will never be a "real" threat of such an action and this declaratory judgment claim is not now – and will never be – ripe.  *See HAVEN*, 915 F.2d at 171.  On this basis, it also necessarily follows that Texas cannot have a cause of action for declaratory relief against the EEOC.

18.   The Title VII claim against the EEOC is not fit for review, and is therefore unripe, for another reason:  The Court lacks concrete facts and identified legal authorities upon which it can base its decision.  *See* Conclusions of Law ¶¶ 14-15.

19.   The State has not adequately identified all of the hiring practices at issue in this case, *see* SAC ¶¶ 24-30, App'x at 63-80, nor has the State identified and described all of the jobs affected by its felony conviction-related employment practices, *see* App'x at 89-90.

20.   Texas's claim for a declaration regarding future hiring practices (SAC ¶ 43) is not fit for review, and is therefore unripe, because it rests on "contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Texas*, 523 U.S. at 300 (citation omitted).

B. There Would Be No Hardship If the Court Withheld Review.

21.   The State's request for a declaration approving its employment practices is unripe because it would not suffer any hardship if the Court withheld review.  *Lopez*, 617 F.3d at 341.

22.   The Supreme Court has held that abstract threats to federalism do not support standing. *Texas*, 523 U.S. at 302.

23.   Texas's fear of some future impingement on its sovereignty does not constitute hardship supporting the conclusion that its request for a declaration regarding its hiring practices is ripe, *Texas,* 523 U.S. at 302, especially as Texas's policies and the EEOC's position have co-existed for decades without Texas's sovereignty being affected.

### III.    Texas's Request for a Declaration Regarding the Validity of its Hiring Practices Is <u>Meritless.</u>

24.    Under Title VII, a plaintiff can succeed if he identifies an employment practice that causes a disparate impact on the basis of race, color, sex, or some other protected category, and the defendant "fails to demonstrate that the challenged practice is job related ... and consistent with business necessity."  42 U.S.C. § 2000e–2(k)(1)(A)(i).

25.    Both job relatedness and consistency with business necessity are questions of fact.  *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 424 (5th Cir. 1998).

26.    Texas bears the burden of demonstrating that its hiring and retention bars are job-related and consistent with business necessity.  *Griggs*, 401 U.S. at 432.  Texas cannot meet this burden because it has produced no evidence establishing the necessary factual elements.  *See* Proposed Findings of Fact ¶¶ 14, 15.  Therefore, judgment in favor of Defendants is warranted.  *See Int'l Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1265 (5th Cir. 1991).

27.    A conviction-related employment practice "ultimately concern[s] the management of risk."  *El v. Se. Pa. Transp. Auth*. (hereinafter *SEPTA*), 479 F.3d 232, 244-45 (3d Cir. 2007).

28.    Texas has not identified the necessary evidence regarding the jobs at issue to allow the Court to approve its felony conviction-related employment practices.  *See Int'l Shortstop, Inc*., 939 F.2d at 1264-65 (defendant entitled to judgment if plaintiff fails to satisfy its burden).  The State has failed to put forth any evidence regarding the nature of the jobs at issue that is relevant to the inquiry the Court is required to undertake, such as:  whether the jobs involve significant or sensitive responsibilities, or more limited manual or administrative tasks, *Davis v. City of Dallas*, 777 F.2d 205, 211 (5th Cir. 1985); *Levin v. Delta Air Lines*, 730 F.2d 994, 997 (5th Cir. 1984); whether there is significant or minimal supervision, *SEPTA*, 479 F.3d at 245; and whether the employees interact with vulnerable populations and, if so, in what circumstances.  *Id.*

Defendants' Proposed Findings
of Fact and Conclusions of Law                                                                                      10

29.  Texas has not proffered sufficient evidence that the felony conviction-related hiring practices that it has identified accurately distinguish between applicants who pose an unacceptable risk and those who do not.  *See Int'l Shortstop, Inc.*, 939 F.2d at 1265.

30.  The State's request for an injunction regarding its hiring practices fails because it does not satisfy the requirements of Federal Rule of Civil Procedure 65.  Under Rule 65, any injunction that the Court issues must "state its terms with specificity," and "describe in reasonable detail – and not by referring to the complaint or other document – the act or acts restrained or required."  See Fed. R. Civ. P. 65(d)(1)(B)-(C).  The State's inability or refusal to identify with specificity those state laws that it believes are implicated by this lawsuit dooms its request for injunctive relief.

31.  Texas's apparent request for a declaration concerning the business necessity and job-relatedness defense also fails because no party has shown disparate impact and application of the defense is unnecessary without the predicate showing of disparate impact.  *See* 42 U.S.C. § 2000e-2(k)

32.  There is no presumption that state employment practices, including those enacted by state statute, comport with Title VII.  *See Dothard v. Rawlinson*, 433 U.S. 321, 331 n.14 (1977).

**IV.   Texas's Request for a Declaration Regarding the Defendants' Authority to Enforce the Interpretation of Title VII Stated in the Guidance and to Issue Notices of Right to Sue Fails.**

33.  Texas's request for a declaration regarding the Defendants' authority to enforce the interpretation of Title VII stated in the Guidance and Defendants' ability to issue notices of right to sue (SAC ¶ 44) is unripe with respect to the EEOC.  The EEOC cannot sue Texas under Title VII.  42 U.S.C. § 2000e-5(f)(1).  Thus, there is not – and never will be – an actual and immediate controversy between Texas and the EEOC regarding these claims.  *Middle South Energy*, 800 F.2d at 490.

Defendants' Proposed Findings
of Fact and Conclusions of Law                                                                                    11

34.    Texas's request for a declaration regarding the Defendants' authority to enforce the interpretation of Title VII stated in the Guidance and Defendants' ability to issue notices of right to sue (SAC ¶ 44) is also unripe with respect to the Department of Justice.    Title VII allows the Department of Justice to sue states to end "unlawful employment practices."    42 U.S.C. §§ 2000e-2, 2000e-3, 2000e-5.    But the Department of Justice could not sue for a  declaration of its right to enforce the interpretation of Title VII that appears in the Guidance, or for a declaration of its right to issue notices of right to sue.    As the Department of Justice could not bring such claims against Texas, then there is no "actual and immediate controversy" between Texas and the Department of Justice regarding these claims for which Texas can seek an early resolution.    *See HAVEN*, 915 F.2d at 171-72

35.    Texas's request for a declaration regarding the Defendants' authority to enforce the interpretation of Title VII stated in the Guidance and Defendants' ability to issue notices of right to sue (SAC ¶ 44) also fails for lack of a cause of action.     If Defendants have no such Title VII claims against Texas, then under the Declaratory Judgment Act, Texas has no such claims against the Defendants.    *See HAVEN*, 915 F.2d at 171-72.

36.    The EEOC and Department of Justice issue notices of right to sue whenever they dismiss administrative claims because Title VII requires them to do so.    42 U.S.C. § 2000e-5(f)(1).    The issuance of a notice of right to sue is not an indication of the agencies' views of the merits of a claim.    *See id.*    The issuance of a notice of right to sue is, by statute, a predicate to a private plaintiff filing a lawsuit on his own behalf.    *See id.*

37.    Felony conviction-related employment practices are not categorically excluded from Title VII's prohibition on practices that have an unjustified disparate impact on a protected class.    42 U.S.C. § 2000e-2(k).

Defendants' Proposed Findings
of Fact and Conclusions of Law                                                                                            12

38.   The Court should dismiss Count I for lack of jurisdiction or enter judgment in Defendants

favor.

## V.     Texas Lacks Standing to Challenge the Guidance in Count II and Texas's Challenges to the Guidance Lack Merit.

### A.   Texas Lacks Standing to Pursue Count II.

39.   To establish standing to sue under Article III, a plaintiff must allege that it has suffered a concrete injury, or that such an injury is "imminent" or "certainly impending."  *See Clapper v. Amnesty Int'l*, 568 U.S. 398, 409 (2013).  In addition, to support standing, the injury alleged must be traceable to the defendant's challenged conduct and able to be redressed by the relief sought. *Id.*

40.   Where, as here, a plaintiff seeks injunctive or declaratory relief, it cannot establish its standing on the basis of past injury alone but must, instead, show a "substantial likelihood that [it] will suffer injury in the future."  *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003); *Machete Prods., L.L.C. v. Page*, 809 F.3d 281, 288 (5th Cir. 2015) (plaintiff must show a "real and immediate threat" of similar injury in the future) (citation omitted).

41.   A plaintiff bears the burden of establishing standing throughout a lawsuit, with the burden of production and persuasion increasing at each stage of proceedings.  *See Lujan*, 504 U.S. at 561.

42.   Where a movant seeks summary judgment for lack of standing, "the plaintiff must submit affidavits and comparable evidence that indicate a genuine issue of fact exists on the standing issue."  *Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 357 (5th Cir. 1999) (citation omitted).

43.   There is no evidence of a continuing injury or a certainly impending future injury sufficient to establish standing for the prospective relief Texas seeks.  *See* Proposed Findings of Fact ¶¶ 15-25.

Defendants' Proposed Findings
of Court and Conclusions of Law                                                                          13

44. Accordingly, Texas lacks Article III standing to pursue Count II and the Court is without jurisdiction to consider it.

45. To the extent Texas would rely on its own actions in this litigation as a basis for its standing, Texas may not do so because a party may not bootstrap its own standing through the "injury" created by that party's own lawsuit. *See Vt. Agency of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 773 (2000) ("[A]n interest that is merely a 'byproduct' of the suit itself cannot give rise to a cognizable injury in fact for Article III standing purposes.") (citing *Steel Co. v. Citizens for A Better Env't*, 523 U.S. 83, 107 (1998)).

46. Texas also has not been forced to choose whether to change or violate Texas law in a manner that would support Article III standing because Texas has not shown that any of its hiring practices pursuant to state statute violate Title VII or are preempted by Title VII.

47. The Guidance does not, of its own force, preempt any State law. Instead, Title VII may preempt State law in certain circumstances. *See* 42 U.S.C. § 2000e-7.

48. Texas also has not shown that any enforcement actions against it by the Department of Justice have occurred or that any are "certainly impending" or substantially likely to occur such that Texas could arguably be forced to choose between changing or violating its hiring laws and policies or suffering adverse legal consequences.

49. Thus, Texas has not shown that it, in fact, faces the forced choice of either complying with federal law or being compelled to change its own laws. *Cf. Texas v. United States*, 787 F.3d 733, 748-49 (5th Cir. 2015) (recounting undisputed evidence that Texas would suffer substantial financial costs as a result of federal policy and concluding that a forced choice between incurring such undisputed costs and changing state law had been shown and was sufficient to show injury in fact).

50.  In addition to having failed to sufficiently allege it, Texas may not invoke the *parens patriae* theory of standing in this suit, which seeks prevention of the enforcement of Title VII, because a "State does not have standing as *parens patriae* to bring an action against the Federal Government."  *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 610 n.16 (1982).

51.  The Guidance also did not, as a legal matter, expand the pool of potential Title VII plaintiffs who might bring suit against Texas because liability in this context would be pursuant to Title VII, not the Guidance.  *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (bulletins and interpretive rules are not controlling).  Moreover, Texas lacks standing to pursue this theory of injury for two additional reasons:  1) the supposed injury is not traceable to Defendants' conduct because it depends on the independent choice to sue by third parties not before the Court, *Lujan*, 504 U.S. at 560-61; and 2) the alleged injury would not be redressed by the requested relief because individual plaintiffs are entitled to pursue relief against the State under Title VII regardless of the Guidance's existence, 42 U.S.C. § 2000e-5(f)(1).

52.  In light of the foregoing conclusions of law, the record before the Court demonstrates that Texas has merely shown, at most, an abstract injury.  An "abstract[]" "threat to federalism" is not sufficient "to support suit" under Article III.  *See Texas v. United States*, 523 U.S. at 302.  To satisfy Article III, an injury must be "concrete," not "abstract."  *Spokeo*, 136 S. Ct. at 1548.

53.  Count II should be dismissed for lack of standing.

B.  The Procedural Challenges to the Guidance Fail.

54.  The EEOC does not have authority to issue legislative substantive rules under Title VII. 42 U.S.C. § 2000e-12.

55. Legislative rules affect individual rights and obligations and are binding on the courts. *See Tex. Sav. & Community Bankers Ass'n v. Fed. Housing Finance Bd.*, 201 F.3d 551, 556 (5th Cir. 2000).

56. The Guidance is not a legislative rule under the APA. It is not binding on third parties, does not have the force and effect of law, and does not add substantively to existing laws. It simply "advise[s] the public of the agency's construction of the statutes and rules which it administers." *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 99 (1995) (citation omitted).

57. The Guidance's non-legislative character is also shown by the fact that (1) there would be an adequate legislative basis for a Title VII enforcement action in this context in the absence of the Guidance, (2) the Guidance was not published in the Code of Federal Regulations, (3) the EEOC did not explicitly invoke any general legislative rulemaking authority in issuing the Guidance, and (4) the Guidance did not effectively amend a prior legislative rule. *See Am. Mining Congress v. Mine Safety & Health Admin.*, 995 F.2d 1106, 1112 (D.C. Cir. 1993).

58. The Guidance is consistent with prior EEOC statements on this subject in the record before the Court. *See* Tex. App'x at 265–356. The Guidance does not effectively amend prior EEOC statements on this subject. But even if it did, that would not transform the Guidance into a legislative rule. *See Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199, 1207 (2015) (interpretive rule can change agency interpretation of legislative regulation).

59. The Guidance's terms also confirm its non-legislative nature. The document purports to only be making a "policy statement[]" about the issues discussed and it states that the Guidance is intended for "use by" employers and employees, not that it is intended to bind and regulate these parties, let alone courts. *See* App'x at 6.

Defendants' Proposed Findings
of Fact and Conclusions of Law                                                      16

60. The Guidance is properly construed as an interpretive rule under the Administrative Procedure Act.

61. Interpretive rules "are statements as to what the administrative officer thinks the statute or regulation means." *Shell Offshore Inc. v. Babbitt*, 238 F.3d 622, 628 (5th Cir. 2001) (citation omitted); *see also Perez*, 135 S. Ct. at 1204 (explaining that the "critical feature of interpretive rules is that they are issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers") (citation omitted).

62. An interpretive rule may "suppl[y] crisper and more detailed lines than the authority being interpreted." *Am. Mining Congress*, 995 F.2d at 1112. Thus, an agency may use an interpretive rule to transform "a vague statutory duty or right into a sharply delineated duty or right." *Cent. Tex. Tel. Coop., Inc. v. FCC*, 402 F.3d 205, 214 (D.C. Cir. 2005) (citation omitted).

63. Along this line, an interpretive rule is proper where its statements are "fairly encompassed" by the underlying statute or regulation, such that there would be a legal basis to enforce the duty described by the interpretive rule in its absence. *See Air Transport Ass'n of Am., Inc. v. FAA*, 291 F.3d 49, 55-56 (D.C. Cir. 2002).

64. The key question is the legal source for the duties described in the interpretive rule, not its effect on regulated parties. *Fertilizer Inst. v. U.S. EPA*, 935 F.2d 1303, 1307-08 (D.C. Cir. 1991) (rule was interpretive even though it altered primary conduct).

65. The Guidance is "fairly encompassed" by Title VII and case law interpreting it such that enforcement of Title VII with regard to employer criminal background screens in the absence of the Guidance would be legally supported. Accordingly, Title VII, not the Guidance, is the source of the duties described in the Guidance.

66. This is shown, in part, by the actions of other courts in applying Title VII to this context without reliance upon the Guidance or similar statements by the EEOC. *See Green v. Mo. Pac. R.R. Co.*, 523 F.2d 1290, 1298-99 (8th Cir. 1975); *SEPTA*, 479 F.3d at 244-45; *Waldon v. Cincinnati Pub. Sch.*, 941 F. Supp. 2d 884, 887-90 & n.3 (S.D. Ohio 2013).

67. The Guidance's terms and the analysis it sets forth also confirm that it is interpretive. *Cf. Am. Hosp. Ass'n v. Bowen*, 834 F.2d 1037, 1047 (D.C. Cir. 1987) (in deciding whether an agency has issued a general statement of policy, the "agency's characterization of its own action, while not decisive, is a factor [to] consider").

68. The Guidance states that it builds on the EEOC's prior guidance, in place since the Commission approved it three decades ago, "*applying Title VII principles* to employers' use of criminal records to screen for employment." App'x at 6 (emphasis added). The Guidance goes on to analyze the use of criminal records in employment screening under the two fundamental analytical frameworks for Title VII discrimination liability that have been set forth by the statute and the courts, disparate treatment and disparate impact. App'x at 9. Later, with regard to disparate impact, the Guidance analyzes the particular issue of criminal background screens under the analytical framework crafted by the statute and the courts. *See* App'x at 11-23.

69. When an agency interprets statutory language to determine its application in a specific factual context, the agency is undertaking an interpretive act and issuing an interpretive rule. *Cf. Brown Express*, 607 F.2d at 700 (no interpretive rule where agency's notice "d[id] not purport to interpret a statute or regulation"); *see also Evans v. Martin*, 496 F. App'x 442, 444 (5th Cir. 2012) (agency determination that a cell phone is a "hazardous tool" as that term is used in a federal prison discipline regulation is an "interpretive act" that does not give rise to a separate legislative rule); *Splane v. West*, 216 F.3d 1058, 1061-63 (Fed. Cir. 2000).

70. The EEOC possessed legal authority to issue the Guidance. *Cf. Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 n.6 (2002) (EEOC interpretive guidelines entitled to deference of the type described in *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

71. The EEOC was not obligated to use notice and comment procedures in preparing and issuing the Guidance because the Guidance is properly construed as an interpretive rule. *See* 5 U.S.C. § 553(b); *Perez*, 135 S. Ct. at 1206.

72. Defendants are entitled to judgment on the procedural challenges to the Guidance raised in Count II.

C.  The Substantive Challenge to the Guidance Fails.

73. Count II contests the facial validity of the Guidance. *See* SAC ¶ 50 ("[T]he Felon-Hiring Rule is invalid on its face . . . ."). There is no as-applied challenge at issue.

74. To succeed on its facial challenge to the Guidance, Texas "must establish that *no set of circumstances* exists under which" the Guidance "would be valid." *See Associated Builders & Contractors of Tex., Inc. v. Nat'l Labor Relations Board*, 826 F.3d 215, 220 (5th Cir. 2016) (emphasis added).

75. The Guidance's interpretation of Title VII is not "plainly contrary" to the text of the statute nor "unreasonable" in all cases. To the contrary, the Guidance reasonably interprets Title VII.

76. The Guidance's discussion of disparate treatment liability, App'x at 9-11, includes "elementary legal proposition[s]" that reasonably interpret Title VII, *Texas v. EEOC*, 827 F.3d 372, 392 (5th Cir. 2016) (Higginbotham, J., dissenting) (observing that Guidance's discussion of disparate treatment contained an "elementary legal proposition"), *reh'g en banc granted, op. withdrawn*, 838 F.3d 511 (5th Cir. 2016).

Defendants' Proposed Findings
of Fact and Conclusions of Law                                                                    19

77. The Guidance's discussion of disparate treatment accords with Fifth Circuit precedent. *See Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219-22 (5th Cir. 2001) (holding that an employer may be liable under Title VII for disparate treatment where the plaintiff shows he suffered an adverse employment action and he was treated differently from similarly situated employees in near identical circumstances).

78. The Guidance also reasonably interprets Title VII with regard to disparate impact liability.

79. The Guidance sets forth the basic legal standards applicable to Title VII disparate impact claims, citing the statute and Supreme Court precedent, App'x at 11-12, and applies that analysis to the use of criminal background information in employment decisions.

80. Numerous courts agree that Title VII disparate impact claims may be stated in the context of the use of criminal background information in employment decision making, demonstrating the reasonableness of the Guidance's application of Title VII to this context. *See Green*, 523 F.2d at 1298-99; *Waldon*, 941 F. Supp. 2d at 889-90; *Caston v. Methodist Med. Ctr. of Ill.*, 215 F. Supp. 2d 1002, 1008 (C.D. Ill. 2002); *Williams v. Compassionate Care Hospice*, Civil No. 16-2095, 2016 WL 4149987, at *4-5 (D.N.J. Aug. 3, 2016); *McCain v. United States*, No. 2:14-cv-92, 2015 WL 1221257, at *17 (D. Vt. Mar. 17, 2015); *Wallace v. Magnolia Family Servs.*, Civil No. 13-4703, 2013 WL 6198277, at *3-4 (E.D. La. Nov. 27, 2013).

81. The Guidance's application of the business necessity defense is also reasonable.

82. The Guidance's view that it would be problematic under Title VII—assuming a showing of disparate impact—to use a total blanket screen against the hiring of persons for any job based on their criminal history without regard to the type of crime, the amount of time since its occurrence, and the nature of the job sought is consistent with the conclusions reached by the Third and Eighth Circuits, the only courts of appeals to have squarely considered disparate impact

liability in this context. *See Green*, 523 F.2d at 1298 ("We cannot conceive of any business necessity that would automatically place every individual convicted of any offense, except a minor traffic offense, in the permanent ranks of the unemployed."); *SEPTA*, 479 F.3d at 245.

83. The Guidance's view that a criminal background screening policy must "operate[] to effectively link specific criminal conduct, and its dangers, with the risks inherent in the duties of a particular position" is consistent with case law applying Title VII in this context. App'x at 17. *SEPTA*, 479 F.3d at 245 (Title VII "require[s] that the policy under review accurately distinguish between applicants that pose an unacceptable level of risk and those that do not"); *see Green v. Mo. Pac. R.R. Co.*, 549 F.2d 1158, 1160 (8th Cir. 1977).

84. This view is also consistent with the Fifth Circuit's application of the business necessity defense in the analogous context of safety-related practices. *Levin*, 730 F.2d at 997 (holding that "a discriminatory standard can be upheld only if its contribution to safety is more than minimal" and that, while an employer should have some leeway in setting standards related to safety, there must be a "reasonable basis for its assessment of risk").

85. This view is also consistent with the language of the statute and with the Supreme Court's discussion of the business necessity defense, which require a tie between the employment restriction at issue and the specific job to which it is applied in a Title VII case. *See* 42 U.S.C. § 2000e-2(k)(1)(A)(i) (upon a showing of disparate impact, employer must show both that the restriction is "consistent with business necessity" and that it is "job related for the position in question"); *Griggs*, 401 U.S. at 431-32.

86. No special analysis applies to the evaluation of Title VII claims or the business necessity defense as to Texas on the basis of Texas's status as a sovereign or the fact that certain of its employment restrictions are set by state statute. *Dothard*, 433 U.S. at 331 n.14.

87.  Defendants are entitled to judgment on the substantive challenge to the Guidance raised

in Count II.


Dated:  October 24, 2017                    Counsel for Defendants:

                                            CHAD A. READLER
                                            Acting Assistant Attorney General

                                            JOHN R. PARKER
                                            United States Attorney

                                            JOSHUA E. GARDNER
                                            Assistant Director, Federal Programs
                                            Branch

                                             /s/  Justin  M. Sandberg
                                            JUSTIN M. SANDBERG (Ill. Bar No.
                                            6278377)
                                            JAMES R. POWERS (TX. Bar No.
                                            24092989)
                                            Trial Attorneys
                                            United States Department of Justice
                                            Civil Division, Federal Programs Branch
                                            20 Massachusetts Avenue NW
                                            Washington, DC 20001
                                            (202) 514-5838
                                            justin.sandberg@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on October 24, 2017, I served the foregoing via the CM/ECF System on

counsel of record for Plaintiff:

Scott Keller
Austin Nimocks
Andrew Leonie
Andrew Oldham
Arthur D'Andrea
Michael Toth
David Hacker
Office of the Texas Attorney General
209 West 14th Street
P.O. Box 12548
Austin, Texas 70711-2548


*s/ Justin M. Sandberg*
JUSTIN M. SANDBERG
Trial Attorney, Federal Programs Branch