IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| TEXAS,<br><br>*Plaintiff,*<br><br>v.<br><br>EQUAL EMPLOYMENT OPPOR-TUNITY COMMISSION; VICTORIA A. LIPNIC, in her official capacity as Acting Chair of the Equal Employment Opportunity Commission; and JEFFERSON B. SESSIONS, III, in his official capacity as Attorney General of the United States,<br><br>*Defendants.* | Case No. 5:13-CV-00255-C |

**TEXAS'S RESPONSE TO DEFENDANTS' MOTION
TO AMEND JUDGMENT AND FOR CLARIFICATION**

## INTRODUCTION

Defendants make no showing of "unusual or unique circumstances" in their motion, but rather reargue what has already been argued and briefed ad nauseam. While Defendants profess a need for "clarification," and posture that the Court's Order contains "some ambiguity," the Court's Order of February 1, 2018 is clear. Thus, Defendants' Motion to Amend Judgment and for Clarification should be denied.

"Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly," *In re Rodriguez*, 695 F.3d 360, 371–72 (5th Cir. 2012), and "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet*, 367 F.3d at 479 (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)).

The Court has "considerable discretion in deciding whether to reopen a case under Rule 59(e)," *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993), and "amending a judgment is appropriate (1) where there has been an intervening change in the controlling law; (2) where the movant presents newly discovered evidence that was previously unavailable; or (3) to correct a manifest error of law or fact," *Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 182 (5th Cir. 2012) (citation omitted). "'Manifest error' is one that is 'plain and indisputable, and that amounts to a complete disregard of the controlling law.'" *Guy v. Crown Equipment Corp.*, 394 F.3d 320,325 (5th Cir. 2004) (internal quotation omitted).

None of the circumstances antecedent to a Rule 59(e) motion are met. Defendants do not demonstrate any intervening change in the controlling law, nor have they presented any newly discovered evidence, or demonstrated any "manifest errors of law or fact." Rather, after exhaustive briefing, oral argument, and post-argument remitting of proposed findings of fact and conclusions of law, Defendants are merely unsatisfied. The motion is properly denied.

**RESPONSE ARGUMENT**

I. **THE NATURE AND SCOPE OF THE COURT'S INJUNCTION IS CLEAR AND SHOULD REMAIN UNALTERED.**

As briefed extensively, the interpretation of Title VII espoused by the Guidance is unique, existing *only* in the Guidance. Nowhere in federal law, much less Title VII, is there anything purporting to pre-empt and declare as unlawful *all* categorical bans on the hiring of felons. As the Court recognized, "[t]here are certainly many categories of employment for which specific prior criminal history profiles of applicants would be a poor fit and pose far too great a risk to the interests of the State of Texas and its citizens." ECF No. 117 at 3. The foundation used by Defendants for their collective assault on categorical bans is unsupportable, both legally and practically.

Yet DOJ now asks that it be freed from the reach of the Court's injunction to enforce, against Texas, that very interpretation. If granted, Defendants are permitted to play a regulatory shell game that depends not only upon an unlawful rule, but for the rule to become ubiquitous and tangible through the collective efforts of both EEOC and DOJ. It is too convenient that DOJ, can argue, as they do here, that they are not responsible for the Guidance and, thus, should not be bridled by its unlawfulness. But to enjoin only EEOC, and not DOJ, permits the rule to live at the expense of the Court's authority. And allowing the one agency that can sue Texas under Title VII to be free of the Court's injunction makes the injunction functionally meaningless.

A. **DOJ Helped Create the Rule.**

It should not be forgotten that the DOJ was intimately involved in the creation of the Guidance. If there was any question whether EEOC and DOJ are aligned, DOJ's summary judgment brief in the matter affirmed that there is no daylight between the two. DOJ doubled down on EEOC's vision that all of Texas's categorical bans are *per se* unlawful. ECF No. 92 at 37–38. Moreover, DOJ characterized as "eminently reasonable" the view that Texas's categorical prohibitions on felons serving

as peace officers, *inter alia*, are "problematic." Not once did DOJ mention the standard of Texas's "public interest," or the Rule's impact on Texas's larger legal scheme regarding felons. Rather, DOJ affirmed,

> that it would be problematic under Title VII to use a blanket screen against the hiring of persons based on their criminal history without regard to the type of crime, the amount of time since its occurrence, and the nature of the job sought is consistent with the conclusions reached by the Third and Eighth Circuits, the only courts of appeals to have squarely considered disparate impact liability in this context.

ECF No. 92 at 37 (citations omitted). DOJ embraces the same flaws as the Rule, uplifts the "individualized assessment" standard, and thus misses the mark.

## B.   DOJ Substantively Agrees With the Rule.

Repeatedly, DOJ notes its approval of the Rule and EEOC's viewpoint. At a July 26, 2011 EEOC meeting regarding arrests and convictions as hiring barriers, a senior official from DOJ testified and called into question the legitimacy of hiring bans like those in Texas.[1] Of course, this testimony from DOJ merely furthered the words of the U.S. Attorney General. On April 18, 2011, U.S. Attorney General Eric H. Holder, Jr. sent a letter to all attorneys general asking that their "collateral consequences" laws impacting felons be reevaluated. In the opinion of General Holder,

> [c]ollateral consequence statutes and policies impose additional burdens on people who have served their sentences, including denial of employment and housing opportunities, without increasing public safety in essential ways. Some of those restrictions, such as the prohibition on gun

---

[1] Amy Solomon, Senior Advisor to the Assistant Attorney General, U.S. DOJ, testified. In her written testimony, she criticized some state laws that deny employment opportunities to felons as "antiquated" and "unnecessary." *See* EEOC Meeting to Examine Arrest and Conviction Records as a Hiring Barrier, *Written Testimony for Amy Solomon Senior Advisor to the Assistant Attorney General Office of Justice Programs, U.S. DOJ* (July 26, 2011), https://www.eeoc.gov/eeoc/meetings/7-26-11/solomon.cfm#fn34. When asked during her oral testimony whether employers should be banned from asking questions about someone's criminal history, she explained that, based on evidence she's reviewed, that after three to eight years following a felony conviction, that "there are no differences" which would justify an employer's concern with a prospective employee's criminal history. *See* EEOC Meeting to Examine Arrest and Conviction Records as a Hiring Barrier, *Arrest and Conviction Records as a Hiring Barrier* (July 26, 2011) (meeting transcript), http://www.eeoc.gov/eeoc/meetings/7-26-11/transcript.cfm. Ms. Solomon concluded that "we need to share that information very broadly with the field and with employers so that they know the relevance of that information for applicants who have basically been clean from the criminal justice system for a number of years." *Id.*

possession, serve meaningful public safety goals.[2]

Thus, General Holder averred that laws removing employment opportunities from felons do not "increase[e] public safety in essential ways." Only regarding gun possession did General Holder concede the existence of "meaningful public safety goals."

DOJ's briefing in this matter did not reflect a change in tone. Though DOJ avowed that it "has given no indication that it intends to [sue Texas] anytime soon," ECF No. 92 at 1, and repeats this commitment in the current motion, this is hardly comforting. DOJ concluded that "the Guidance is 'fairly encompassed' by Title VII," ECF No. 92 at 31, and demanded "individualized assessments" for every single potential job. *See, e.g.*, ECF No. 92 at 19.

Even to this day, DOJ will not confess as *per se* reasonable that "[a] person who has been convicted of a felony is disqualified to be an officer" for any law-enforcement agency anywhere in Texas. App. 126 (Att. 7, Tex. Occ. Code § 1701.312(a)). Rather, DOJ maintained that Texas lacked "evidence that any of the handful of felony conviction-related hiring practices that it has identified accurately distinguish between applicants who pose an unacceptable risk and those who do not." ECF No. 92 at 19. This is absurd, as the Court itself recognized. ECF No. 117 at 3. The propriety of the bar is self-evident, and DOJ has refused every opportunity to take a reasonable view of Title VII. Nonetheless, Texas still provided evidence supporting these propositions, and DOJ has largely ignored it.

### C. DOJ's Non-Enforcement Statement Is Suspect.

DOJ now claims that it will not enforce the Guidance. ECF No. 121 at 6 n.1. But before the Court issued its ruling and injunction, DOJ claimed that "an enforcement action pursuant to Title VII would be entirely supported in the absence of the Guidance." ECF No. 92 at 29–30. Amidst this inconsistency, it is difficult to accept

---

[2] Letter of U.S. Attorney General Eric H. Holder, Jr. to all Attorneys General, April 18, 2011, https://csgjusticecenter.org/wp-content/uploads/2014/02/Reentry_Council_AG_Letter.pdf.

4

any single position or argument of DOJ as reliable or enduring.

But even if taken at face value, DOJ's argument belies the need for the clarification it seeks. Why does the DOJ need freedom from an injunction preventing it from doing what it claims it will not do? That DOJ seeks freedom from something that is not restraining it is certainly suspect.

~ ~ ~

To not enjoin all Defendants permits the circumvention of the notice and comment requirements of the APA. In the circumstances presented, DOJ must be enjoined. For if they are not, EEOC is given free reign to issue guidance after guidance, warning after warning, and DOJ is unimpeded in enforcing EEOC's view of the world.

## II.   STANDING

Because Texas's standing is clear, as exhaustively briefed, the Court need not explain the obvious. Nonetheless, Texas briefly rearticulates its standing.

The Guidance represents the consummation of the agency decision-making process. The Guidance also determines rights and obligations, and legal consequences flow from it. These legal consequences affect Texas.

First, the Guidance binds EEOC employees to utilize the Guidance in any investigation relating to the issues encompassed by the Guidance. Second, the Guidance creates two specific "safe harbors" that will purportedly protect an employer, like Texas, from a finding of liability. Both of these legal consequences are more than sufficient to sustain Texas's APA cause of action. However, several other legal consequences that flow from the Guidance.

The Guidance's condemnation of categorical hiring bars conflicts with many Texas laws and policies that prohibit the hiring of felons. The Guidance provides no quarter, safe harbor, or approval in any circumstance for any employer to maintain categorical exclusions on the hiring of felons. The legal consequence of the Guidance's

implicit declaration that Texas law violates Title VII is injury in and of itself.[3]

Moreover, Texas is acting to protect the consistency of and policies behind its larger sovereign scheme regarding the allowances of felons in Texas (including laws that do not directly regard employment). The over 300 legal consequences for felons in Texas law are largely the consistent, collective product of 85 different legislatures and reflect its reasoned judgment regarding Texas's policy aims. The inextricable connectivity of Texas's laws regarding felons means that inconsistent legal consequences may result if Texas can enforce its policy in some areas of law, but not others.

Defendants protest that any form of legal consequence is present, but the Guidance takes clear aim at categorical hiring exclusions, like those contained in Texas laws and policies. Yet, even if the Guidance did not express an ultimate opinion on the validity of certain categorical felon hiring bans, *by merely expressing an opinion* as to what it believes the law may be, the Guidance nonetheless represents an actionable legal consequence in the form of a warning.

In *Hawkes*, the Supreme Court discussed its conclusion in *Frozen Food Express*

---

[3] Sovereigns suffer injury when their duly enacted laws or policies are enjoined or impeded. *See Maryland v. King*, 133 S. Ct. 1, 3 (2012) (citing *New Motor Vehicle Bd. v. Orrin W. Fox Co.,* 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers) ("It also seems to me that any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.")); *Planned Parenthood of Greater Texas Surgical Health Servs. v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013) ("When a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws"); *Nat'l Fed'n of Indep. Bus. v. Perez*, No. 5:16-CV-00066-C, 2016 WL 3766121, at *44 (N.D. Tex. June 27, 2016) (Cummings, J.) ("By forcing state officials . . . to choose between a federal rule or complying with State law, the Rule causes an irreparable injury." (citations omitted)); *Texas v. United States*, 201 F. Supp. 3d 810, 834–35 (N.D. Tex. 2016), *order clarified,* No. 7:16-CV-00054-O, 2016 WL 7852331 (N.D. Tex. Oct. 18, 2016), and *appeal dismissed sub nom. Texas, et al. v. United States et al.* (Oct. 21, 2016) (citations omitted); *Nevada, Texas et al. v. U.S. Dep't of Labor*, 218 F. Supp. 3d 520, 532 (E.D. Tex. 2016) (finding harm to states where "compliance costs" were expended to comply with federal regulation). *Texas v. United States*, 95 F. Supp. 3d 965, 981 (N.D. Tex. 2015) ("[W]henever an enactment of a state's people is enjoined, the state suffers irreparable injury."); *Coalition for Econ. Equity v. Wilson,* 122 F.3d 718, 719 (9th Cir. 1997); *Illinois Dep't of Transp. v. Hinson*, 122 F.3d 370, 372 (7th Cir. 1997) (State has standing where it "complains that a federal regulation will preempt one of the state's laws"); *Alaska v. U.S. Dep't of Transp.*, 868 F.2d 441, 443 (D.C. Cir. 1989) (agreeing that the State has standing to seek declaratory and injunctive relief "because DOT claims that its rules preempt state consumer protection statutes, [and therefore] the States have suffered injury to their sovereign power to enforce state law").

*v. United States*, 351 U.S. 40 (1956). *Hawkes*, 136 S. Ct. at 1815. In *Frozen Food*, the Supreme Court "considered the finality of an order specifying which commodities the Interstate Commerce Commission *believed* were exempt by statute from regulation, and which it *believed* were not." *Id.* (emphasis added). Though the order in *Frozen Food* "'had no authority except to give notice of how the Commission interpreted' the relevant statute, and 'would have effect only if and when a particular action was brought against a particular carrier,' we held that the order was nonetheless immediately reviewable." *Id.* (quoting *Frozen Food*, 351 U.S. at 44–45). Thus, the Interstate Commerce Commission's order "'warns every carrier, who does not have authority from the Commission to transport those commodities, that it does so at the risk of incurring criminal penalties.'" *Id.* (quoting *Frozen Food*, 351 U.S. at 44). "So too here, while no administrative or criminal proceeding can be brought for failure to conform to the approved [jurisdictional determination] itself, that final agency determination not only deprives respondents of a five-year safe harbor from liability under the Act, but warns that if they discharge pollutants onto their property without obtaining a permit from the Corps, they do so at the risk of significant criminal and civil penalties." *Id.* This analysis is apt to the case *sub judice*.

   The Guidance issues a warning—a warning that DOJ now requests legal permission to enforce, if it chooses. The Guidance issues its warnings by its express terms, to "[a]ll entities covered by Title VII," and those entities "are subject to this analysis." Guidance 3 n.2. Therefore, the Guidance lets every employer "covered by Title VII" know that if they do not follow the Guidance's safe harbors, do not adopt its "individualized assessment" viewpoint, or otherwise maintain categorical felon hiring bans, "they do so at the risk of significant criminal and civil penalties." Thus, the mere warning put forth by the Guidance is a "legal consequence" that casts a legal shadow over Texas, the propriety of Texas law, and the relative safety and comfort that Texas government has in relying upon Texas law.

7

Another legal consequence of the Guidance is seen in its practical expansion of potential plaintiffs that can file Title VII claims against Texas. By taking aim at categorical hiring bans, like the many in Texas, the Guidance extends to every felon what was previously not firmly available to them—a legal gripe against employers that were previously able to exclude their employment candidacy by virtue of their felony conviction. The complaint filed against DPS in the wake of the Guidance demonstrates this fact. In *Hawkes*, the Supreme Court discussed as a "legal consequence" whether an administrative action affects "the field of potential plaintiffs." In *Hawkes*, the Supreme Court recognized that "a negative [jurisdictional determination] both narrows the field of potential plaintiffs and limits the potential liability a landowner faces for discharging pollutants without a permit." *Hawkes*, 136 S. Ct. at 1814. The Supreme Court concluded that the "narrow[ing]" in *Hawkes* was a "'legal consequence[ ]' satisfying the second *Bennett* prong." *Id*. That the Guidance functionally *increases* the field of those that can complain about Texas law simultaneously increases the legal shadow that Defendants cast over Texas law.

The Guidance also causes a "legal consequence" to Texas through an increased regulatory burden. That DPS was required to assess and defend its categorical felon hiring prohibition in response to the complaint of discrimination is an increased regulatory burden incurred as a direct result of the Guidance. Moreover, that the Guidance demands "individualized assessments" in *every* circumstance where an employer's hiring policies conflict with the prospective employee's felonious history represents yet another increased burden. In such an instance, the Guidance requires the prospective employer to converse with the applicant about his criminal history and other prospective qualifications for the job, notwithstanding the clear legislative or policy prohibition to their candidacy. And "[a]s we have long held, parties need not await enforcement proceedings before challenging final agency action where such proceedings carry the risk of 'serious criminal and civil penalties.'" *Hawkes*, 136 S. Ct. at

8

1815. (quoting *Abbott Labs.*, 387 U.S. at 153).

Texas also receives "'special solicitude in the Court's standing analysis'" as Texas is not a "'normal litigant[] for the purpose of invoking federal jurisdiction.'" *Texas v. United States*, 809 F.3d 134, 152 (5th Cir. 2015), *aff'd by an equally divided Court*, 136 S. Ct. 2271 (2016) (*per curiam*) (quoting *Massachusetts v. EPA*, 549 U.S. 497, 518, 520 (2007)). "When a litigant is vested with a procedural right," as Texas is under the APA, standing exists "if there is some possibility that the requested relief will prompt the injury-causing party to reconsider the decision that allegedly harmed the litigant." *Id.* at 150–51 (quoting *Massachusetts*, 549 U.S. at 518).

Additionally, as *parens patriae*, Texas may act to protect the health, welfare, and safety of its citizens. *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 607 (1982). Texas "has a quasi-sovereign interest in the health and well-being—both physical and economic—of its residents in general."[4] *Id.* A "helpful indication" of *parens patriae* standing "is whether the injury is one the State, if it could, would likely attempt to address through its sovereign lawmaking powers," *id.*, and when Texas alleges an "injury to a sufficiently substantial segment of its population," *id*. Felons violate the public trust, and limiting their ability to further harm the physical and/or economic security of the citizenry is why Texas law contains over 300 provisions where felony histories impact legal privileges. As the overseers of Texas law, the Texas Legislature comprehensively enacts, amends, and otherwise maintains Texas law with each legislative session. Many of the limitations for felons are the considered, reasoned, debated, and enacted product of Texans' elected representatives.

---

[4] *See Halter v. Nebraska*, 205 U.S. 34, 40–41 (1907) ("[A] state possesses all legislative power consistent with a republican form of government; therefore each state, when not thus restrained, and so far as this court is concerned, may, by legislation, provide not only for the health, morals, and safety of its people, but for the common good, as involved in the well-being, peace, happiness, and prosperity of the people."). *See also Texas v. Richards*, 301 S.W.2d 597, 602 (Tex. 1957) ("As a general rule the [police] power is commensurate with, but does not exceed, the duty to provide for the real needs of the people in their health, safety, comfort and convenience . . . .").

9

Finally, standing is assessed at the time the lawsuit was filed—November 4, 2013.[5] The question on November 4, 2013 is whether "the impact of the administrative action could be said to be felt immediately by those subject to it in conducting their day-to-day affairs." *Toilet Goods Ass'n, Inc. v. Gardner*, 387 U.S. 158, 164 (1967). It was. Beyond the Rule's general condemnation of Texas's categorical bans, when Texas was accused of discrimination under Title VII on November 1, 2013, App. 89–90 (Att. 4, Notice of Charge of Discrimination), one ban was now squarely within the coercive and enforcement-oriented crosshairs of Defendants' Title VII powers.

Instead of being drug through the administrative doldrums of EEOC's conciliatory authority, and DOJ's enforcement power, Texas sought relief in this Court—something the APA and DJA entitles it to do. That DOJ's enforcement mechanisms were chilled by Texas's lawsuit, or that DOJ chose to not file suit for any number of reasons, does not change the facts on November 4, 2013—that the Rule condemned Texas's categorical bars, and that the lawfulness of those bars was now being challenged by a felon. Texas had every reason to expect that DOJ would attack the Texas Department of Public Safety for its categorical bar on hiring felons.

Even apart from the charge of discrimination brought by a felon against DPS, an allegation of future injury may suffice if the threatened injury is "certainly impending," or there is a "'substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (quoting *Clapper*, 568 U.S. at 409, 414 n.5 (emphasis deleted and internal quotation marks omitted)). "When an individual

---

[5] *See Davis v. FEC*, 554 U.S. 724, 734 (2008) ("[T]he standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed."); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 571 n.4 (1992) (the "longstanding rule [is] that jurisdiction is to be assessed under the facts existing when the complaint is filed"); *Freeport–McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991) ("We have consistently held that if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events."); *Smith v. Sperling*, 354 U.S. 91, 93 (1957) ("the jurisdiction of the Court depends upon the state of things at the time of the action brought, and that after vesting, it cannot be ousted by subsequent events"); *Pederson v. La. State Univ.*, 213 F.3d 858, 870 (5th Cir. 2000) (disapproving the assessment of standing at "the time of trial" versus "the time the suit was filed").

is subject to such a threat, an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law." *Driehaus*, 134 S. Ct. at 2342. Thus, "it is not necessary that [Texas] first expose [itself] to actual arrest or prosecution to be entitled to challenge a [rule] that [it] claims deters the exercise of [its] constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). In other words, Texas need not wait for Defendants to target Texas's categorical bans (like it did of other employers). *See also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–29 (2007) ("[W]here threatened action by government is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat.").

Texas avers that this suit dampened the willingness of Defendants to challenge Texas law. But whether it did does not alter the immediacy of the dispute at the time Texas filed this case. That DOJ chose to not file an enforcement action subsequent to the filing of this matter does not undermine Texas's standing—something that clearly existed at the time this lawsuit was filed.

At bottom, Texas demonstrates an injury in fact. The standing query "is a flexible inquiry rooted in common sense." *Contender Farms LLP v. U.S. Dep't of Agric.*, 779 F.3d 258, 265 (5th Cir. 2015). Texas is an object of the Guidance. A formal complaint, based on the Guidance, was filed against a Texas agency. And because Texas comes within the "zone of interests" to be protected by the relevant laws, Texas satisfies prudential standing. By whatever measure, Texas's standing is clear.

## CONCLUSION

Defendants' motion should be denied.

Respectfully submitted this the 22nd day of March, 2018.

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY D. STARR
Deputy First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

*/s/ Austin R. Nimocks*
AUSTIN R. NIMOCKS
Special Counsel for Civil Litigation
Texas Bar No. 24002695
austin.nimocks@oag.texas.gov

ATTORNEY GENERAL OF TEXAS
P.O. Box 12548, Mail Code 001
Austin, Texas 78711-2548
(512) 936-1414
(512) 936-0545 Fax

*ATTORNEYS FOR PLAINTIFF*

### CERTIFICATE OF SERVICE

I certify that on the 22nd day of March, 2018, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/Austin R. Nimocks*
AUSTIN R. NIMOCKS